# JURY DEMAND

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| EXPRESS WORKING CAPITAL, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | 3:13-CV-3045-O |
| v. | § | |
| | § | |
| STARVING STUDENTS, INC., ET AL., | § | |
| | § | |
| | § | |
| Defendants. | § | |

# DEFENDANT STARVING STUDENTS' SUPPLEMENTAL
# AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Submitted by:

**R. ROGGE DUNN**
State Bar No. 06249500

Email:  dunn@trialtested.com

**JOSHUA J. IACUONE**
State Bar No. 24036818

**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Telephone:  (214) 220-3888
Facsimile:  (214) 220-3833

*Attorneys for Defendant Starving Students Inc. d/b/a
Starving Students Movers*

COMES NOW Defendant Starving Students, Inc. (hereinafter "SSI" or "Counter-Plaintiff"), and files this Counterclaim, complaining of Express Working Capital, LLC (hereinafter "Plaintiff," "EWC" or "Counter-Defendant") and would show unto the Court as follows:

## The Parties

1.      Counter-Plaintiff is a corporation formed and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.

2.      Counter-Defendant is a limited liability company formed and existing under the laws of the State of Delaware, with its principal place of business in the County of Dallas, State of Texas.

## Jurisdiction

3.      This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §1332(a), as there is complete diversity between the parties and the matter in controversy exceeds $75,000.   Venue is proper in this Court.

## Facts

4.      Counter-Plaintiff is a California company founded in 1973 by Ethan Margalith after he graduated from high school and it currently operates in 31 states throughout the country. Counter-Plaintiff annually employs more than 1,000 people nationwide.

5.      After being released from Federal prison (and serving time for securities fraud), in or around October 2007, Bradley Woy (hereinafter "Woy") founded EWC. Woy operated EWC as a sham to perpetrate a fraud, and EWC functioned as Woy's alter ego. EWC and Woy label EWC's predatory lending transactions as purchases of "future receivables." EWC's transactions essentially attempt to securitize repayment through the manipulation of its customers' credit card processors.

6.      Counter-Defendant is in the business of providing working capital loans to businesses.  In this case, the loans are secured by UCC-1 filings placing liens on all of Counter-Plaintiff's assets, including all of its tangible personal property, intangible property, and the like.  Counter-Defendant loaned Counter-Plaintiff amounts in a series of transactions, confirmed in writing by Future Receivables Sale Agreements dated 12/28/12, 01/30/13, 4/17/13, 5/29/13 and 7/11/13.  These agreements are attached to Plaintiff's Complaint [Doc 2] as exhibits A – E (hereinafter "Agreements") and are incorporated herein for all purposes.

7.      Counter-Defendant structures its loans as purported "purchases of future credit card receipts" and has described the transactions as similar to a factoring arrangement.  However, in a factoring arrangement, a lender advances funds on existing receivables based upon the credit worthiness of the obligor on such receivables.  Unlike a factoring arrangement, the advances at issue herein are paid

back through otherwise unidentified future cash flow, just like any other loan.  The transactions essentially attempt to securitize repayment through manipulation of the customer's credit card processors.

8.      As is set forth more fully below, Counter-Defendant's transactions are not, in fact, purchase transactions. Rather, they are illegal lending transactions in which the Counter-Defendant is extracting an unconscionable and illegal rate of interest.

9.      The Agreements are, functionally, loans and that percentage of future income is "interest" as defined by the Texas Finance Code. TEX. FIN. CODE § 301.002(4) ("'Interest' means compensation for the use, forbearance, or detention of money."). That interest is also in an amount that, when calculated as a percentage of the advance, clearly exceeds the Texas usury limits. See TEX. FIN. CODE §§ 302.001(b) and 305.001 (setting maximum interest rate and providing definition of usury).

10.     The rate of repayment on these loans are exorbitant – SSI was repaying Counter-Defendant at the rate up to 200,000 percent, and its effective interest rate regularly exceeded 150%. See the report of Bruce Ross attached hereto as Exhibit "A," which is incorporated herein for all purposes.  In order to continue paying the Counter-Defendant, Counter-Plaintiff was forced to continue to take additional advances from Counter-Defendant.

11.     Counter-Plaintiff several times requested that Counter-Defendant slow down its rate of repayment, and advised Counter-Defendant that it was harming Counter-Plaintiff with its usurious diversion of funds, but Counter-Defendant refused. In fact, Counter-Defendant advised Counter-Plaintiff's CEO that Counter-Plaintiff should "consider itself lucky" to "only" be paying 150% interest.

12.     As a proximate result of Counter-Defendant's actions, damages in excess of the minimum jurisdictional limits of this Court were incurred by Counter-Plaintiff.   The damages suffered include, but are not limited to, lost business, business interruption, and the loss of the use of money.

13.     EWC and Woy misrepresented to SSI and Margalith EWC's values and philosophy. For instance, EWC's website to this day proclaims, "We're a Dallas, Texas company (and proud of it) with solid, middle-American, conservative financial values. If only Wall Street had followed our lead . . . ."

14.     EWC did not stop there. EWC claimed, "We have no hidden agendas. Our only agenda is do whatever we can to become and remain your preferred cash advance provider – and we'll jump through hoops for you to make this happen."

15.     EWC omitted that its founder, Woy, had pled guilty to a securities fraud felony, that its "conservative financial values" included charging an oppressive 500% percent interest per annum, and that its purportedly non-existent "hidden

agendas" included a secret plan to take over SSI's business by charging it interest rates it knew SSI could not pay.

16.     SSI took a series of loans from EWC totaling approximately $3,400,000.00. SSI has repaid approximately $3,200,000.00 of this amount. For each of these loans, EWC required SSI to sign EWC's form agreement. EWC also required Margalith to personally guarantee the repayment of each of these loans.

17.     In these form agreements ("Agreements" or "Loans"), EWC and Woy mischaracterized EWC's transactions as "purchases" of SSI's future credit card receivables.

18.     These Agreements were in sum and substance loans from EWC to SSI, and EWC, Woy, SSI, and Margalith treated and regarded them as such.

19.     In fact, well over 90% of the revenue from SSI's credit card transactions is from SSI's customers paying for moving services at the time those services are rendered. Thus, the revenue from these transactions does not even constitute a "receivable."

20.     Both by name and by representations made to Margalith, EWC and Woy held EWC out to be a business dealing in "working capital." Woy made such representations and used EWC's name to mislead Margalith for his own direct benefit. Margalith signed these Agreements with EWC relying on those

representations. The Agreements, however, amount to loans from EWC to SSI (personally guaranteed by Margalith).

21.     EWC's method of "advancing" cash to SSI also mirrored the procedures used by typical lenders although, as will be seen, the interest rates charged were anything but typical.

22.     Before lending any sums to SSI, EWC ran a credit check on SSI and pre-qualified SSI by examining its recent credit card volume to figure how much it could lend SSI to be paid back within a certain number of months. EWC also engaged in typical underwriting and made risk assessments for repayment based on SSI's credit-worthiness and revenues.

23.     After going through these pre-approval lending processes, EWC "advanced" money to SSI pursuant to the Agreements that made the funds absolutely repayable by SSI (or if SSI breached the Agreements, absolutely repayable by Margalith). The Agreements also allowed EWC to file UCC liens, which it did, and gave EWC the right to resell the Loans in the secondary market, just like traditional lenders.

24.     To ensure the repayment of the Loans and as part of the loan process, EWC required SSI to switch credit card processors. Specifically, a percentage of each credit card payment from SSI's customers was required to be electronically

diverted directly to EWC by EWC's designated credit card processor before reaching SSI.  EWC had a longstanding relationship with this credit card processor.

25.     The rate of repayment on these Loans was exorbitant. Many times, SSI was paying EWC at the rate in excess of $150,000.00 per month. EWC and Woy specifically misled SSI to believe that the interest rate on the Loans was 11.25%—high, but much lower than the actual effective rates.

26.     In fact, although SSI did not know it at the time, SSI now knows that EWC's effective interest rate regularly exceeded 150% and at times skyrocketed to as high as 200,000 percent. In order to continue paying EWC, SSI was forced to continue taking additional loans from EWC. Each time SSI borrowed more money from EWC (essentially to pay EWC back), EWC significantly increased the percentage of SSI's "future receivables" that it would skim off the top.

27.     But in order to pay EWC back, SSI had no choice but to accept the predatory terms of each new loan.

28.     Nevertheless, EWC and Woy continued representing that EWC was a "working capital business." Woy made such representations and used EWC's name to mislead Margalith for his own direct benefit. Margalith relied on these continued representations in personally guaranteeing the additional Loans.

29.     Thereafter, Margalith repeatedly requested that EWC slow down its rate of repayment and advised EWC that it was harming SSI with its usurious charges. Nevertheless, EWC continued charging the exorbitant repayment rates.

30.     In a *D Magazine* article published on July 20, 2011, EWC's founder, Woy, claimed and represented that he "never does a deal that requires a merchant to use more than 12 percent of total cash flow to pay him back." Woy then admitted, "[a]nything more than that, and the merchant would likely struggle to make payments."

31.     But under the last loan, EWC requires SSI to pay 13.75% of its "future receivables" to EWC each day. After the Court entered a temporary restraining order and preliminary injunction against SSI, EWC was charging approximately 14% of SSI's cash flow to pay EWC back, much higher than the rate at which Woy has admitted that a merchant would "struggle to make payments."

32.     The self-help provision in the EWC-drafted Agreements authorizes EWC to accelerate the amounts owed by SSI (and personally guaranteed by Ethan Margalith) upon any event of breach or default by SSI. This acceleration provision specifically allows EWC and Woy to take over SSI. EWC's business model is to extract astronomical interest rates knowing that its borrowers will not be able to "make payments," thereby enabling EWC and Woy to seize ownership of its borrowers' businesses.

33.     Had EWC and/or Woy represented what EWC truly was -- a loan sharking business—SSI would not have entered into the agreements at issue. SSI would not have entrusted its finances had it known Woy was a convicted securities felon.


## Supplemental Affirmative Defenses

34.     In addition to the seven affirmative defenses previously pled by SSI, SSI pleads, in the alternative, if necessary, these supplemental affirmative defenses and in defense, in addition to the previously pled defenses, adds these supplemental defenses:

35.     EWC's claims are barred in whole or in part, by the doctrine of detrimental reliance;

36.     EWC's claims are barred in whole or in part, by the doctrine of promissory estoppel;

37.     EWC's claims are barred in whole or in part, by the doctrine of unjust enrichment.

38.     EWC's claims are barred in whole or in part, by supplemental facts below.

39.     In addition to facts previously pled in this pleading, SSI pleads the following facts in support of all of SSI's affirmative defenses, including those

originally plead on October 7, 2013, and the supplemental affirmative defenses pled herein.  Specifically, the representations made by Plaintiff on its website, in its materials, and in conversations Plaintiff's representatives had with one or more of SSI's employees and/or executives contrary to pleadings Plaintiff has filed in this case, statements made in the contracts on which Plaintiff is suing, and contrary to Texas usury and/or other lending laws.  SSI relied upon these representations as well as those stated in the facts section herein to its detriment and was reasonable in relying on these representations. A reasonably prudent person under the same or similar circumstances would rely on these representations.   Based on these representations, SSI undertook a reasonable course of conduct and did so to its detriment and suffered damages because of its detrimental reliance.  Plaintiff and/or its representatives made representations regarding the maximum amount of percentage of credit card receivables that it would ethically take.  (No more than 12%)  Plaintiff charged in excess of that 12% rate once SSI became "financial upside down" as a result of the predatory and usurious loans Plaintiff made to SSI.

## CAUSE OF ACTION:  USURY

40.    Counter-Plaintiff pleads a cause of action against Counter-Defendant for usury.  The allegations contained in all of the paragraphs of this Counter-Claim

are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

41.    Counter-Defendant loaned money to Counter-Plaintiff.

42.    Counter-Defendant's attempt to collect from Counter-Plaintiff what amounts to 150% interest (or more), exceeds the maximum amount allowed by law and violates Texas usury laws. Counter-Plaintiff seeks all rights, remedies and penalties it is permitted to recover under usury laws.

43.    Counter-Defendant's unlawful conduct caused injury to Counter-Plaintiff.

44.    As a direct and proximate consequence of said breach, Counter-Counter-Plaintiff suffered damages in an amount in excess of the minimum jurisdictional limits.

45.    Moreover, such wrongful acts or omissions were committed with malice, willfulness and/or reckless disregard to Counter-Plaintiff's rights and welfare and far exceed mere bad faith and wrongful conduct

46.    Accordingly, Counter-Plaintiff is entitled to multiple, special, exemplary/punitive damages against the Counter-Defendant in an amount to be determined by a jury.

47.    Counter-Plaintiff seeks unliquidated damages within the jurisdictional limits of this court.

48.    By and through the doctrines of ratification, vicarious liability, respondeat superior, express or apparent agency, joint enterprise liability and/or master/servant relationship, among other things, Counter-Defendant is liable for the wrongful acts and omissions of Counter-Defendant's employees, representatives, associates/affiliates and agents.

49.    All conditions precedent to Counter-Plaintiff's claim for relief have been performed or have occurred.

## CAUSE OF ACTION:
## FRAUD AND/OR FRAUDULENT INDUCEMENT

50.    Counter-Plaintiff pleads a cause of action against Counter-Defendant for fraud and/or fraudulent inducement.  The allegations contained in all of the paragraphs of this Counter-Claim are hereby reaverred and realleged for all purposes, and incorporated herein with the same force and effect as set forth verbatim herein.

51.    As delineated in more detail above, Counter-Defendant made numerous representations to Counter-Plaintiff.  At the time Counter-Defendant made the above-referenced representations it knew they were false, made them in bad faith or made them with a conscious indifference to their truth or falsity.  Counter-Defendant made these fraudulent misrepresentations and/or misrepresentation of material fact

to induce Counter-Plaintiff, among other things, to enter into the Agreements described above.

52.   Counter-Plaintiff in fact reasonably relied upon these misrepresentations and/or omissions and, as a result thereof entered into the Agreements with Counter-Defendant.  Counter-Plaintiff would not have taken these actions, among others, had Counter-Plaintiff known the falsity of Counter-Defendant's representations and/or of Counter-Defendant's omissions of material fact.  No reasonable person would have interpreted the representations made by Counter-Defendant in any different way than Counter-Plaintiff did.

53.   As a proximate result of Counter-Defendant's inducement to cause Counter-Plaintiff to enter into the Agreements with Counter-Defendant and its failure to abide by its promises and representations, Counter-Plaintiff has been damaged in excess of the minimum jurisdictional limits of this Court.

54.   In the application process and before entering into the Agreements, EWC and Woy made material and false representations to SSI. Specifically, EWC and Woy represented to SSI that EWC was a "working capital business." EWC and Woy further misrepresented EWC's "conservative financial values," the background of its founder as a convicted stock swindler, that the interest rates on the Loans was 11.25% instead of 500% or more, and that they had no hidden agenda of secretly

plotting to take over SSI by charging unconscionable interest rates that SSI could never pay.

55.     In fact, it was EWC and Woy's intention all along to exercise EWC's rights under the Agreements' acceleration provision. EWC and Woy specifically intended to take over SSI by requiring exorbitant payments at usurious interest at rates not enforced by courts.

56.     EWC and Woy knew that the representations were false when made and made the representations with the intent that SSI would rely upon the representations when deciding whether to enter into the agreements at issue.

57.     SSI relied upon EWC and Woy's material and false representations and suffered damages therefrom. In particular, SSI entered into the agreements at issue with EWC based on EWC and Woy's misrepresentations.

## CAUSE OF ACTION:
## NEGLIGENT MISREPRESENTATION

58.     In the alternative, if necessary, Counter-Plaintiff pleads a cause of action against Counter-Defendant for negligent misrepresentation.  The allegations contained in all of the paragraphs of this Counter-Claim are hereby reaverred and realleged for all purposes, and incorporated herein with the same force and effect as set forth verbatim herein.  Counter-Defendant made promises and representations to Counter-Plaintiff that induced Counter-Plaintiff to enter into Agreements with

Counter-Defendant.  Counter-Defendant made such misrepresentations negligently, without exercising reasonable care to determine their truth or falsity or made them in bad faith.  The false statements were made to induce Counter-Plaintiff to enter into the Agreements with Counter-Defendant.

59.     As a proximate result of Counter-Defendant's failure to abide by its representations, Counter-Plaintiff has been damaged in excess of the minimum jurisdictional limits of this Court.

## PUNITIVE DAMAGES

60.     As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against the Counter-Plaintiff, Counter-Plaintiff is entitled to exemplary damages in excess of the minimum jurisdictional limit of this court.

## REQUEST FOR ATTORNEYS' FEES

61.     Counter-Plaintiff requests to recover for all costs and reasonable and necessary attorneys' fees Counter-Plaintiff incurs herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of the United States, as the Court deems equitable and just.

## RIGHT TO AMEND

62.     Counter-Plaintiff reserves the right to further amend and/or supplement this Counter-Claim at a future date as is its right under the Rules of Civil Procedure.

## JURY DEMAND

63.     Counter-Plaintiff demands a jury trial of this case.

## REPORTER DEMAND

64.     Counter-Plaintiff requests the Official Court Reporter for this Court, perform all the duties of the office, including reporting all testimony and trial proceedings, voir dire examinations and jury arguments.

## RESERVATION OF RIGHTS

65.     The right to bring additional causes of action against and to amend this Counter-Claim as necessary is hereby specifically reserved.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiff prays that upon final hearing, the court enter judgment in favor of Counter-Plaintiff against Counter-Defendant, in an amount in excess of the minimum jurisdictional limits of this Court,

for compensatory damages, punitive damages, double or and/or treble damages as applicable, three times the portion of the interest wrongfully withheld, reasonable attorneys' fees, reasonable paralegal fees, costs of court and pre- and post-judgment interest at the highest rate allowed by law, and also enter an order revoking any license enabling Counter-Defendant to operate in Texas and revoking any certificate authorizing Counter-Defendant to do business in Texas if any judgment rendered in this case has not been satisfied within three (3) months from the date of filing said final judgment, and for such other and further relief, general or special, at law or in equity, to which Counter-Plaintiff may show itself to be justly entitled

RESPECTFULLY SUBMITTED,

**R. ROGGE DUNN**
State Bar No. 06249500

Email:  dunn@trialtested.com

**JOSHUA J. IACUONE**
State Bar No. 24036818

**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Telephone:  (214) 220-3888
Facsimile:   (214) 220-3833

*Attorneys for Defendant Starving Students Inc. d/b/a Starving Students Movers*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this **20th** day of **December**, 20**13** all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5.1(d), and other parties will be served in compliance with the Federal Rules of Civil Procedure.

Rogge Dunn
Joshua J. Iacuone

# DECLARATION OF BRUCE L. ROSS

I, BRUCE L. ROSS, hereby declare as follows:

1.     I am a certified public accountant licensed in the State of California and owner and president of the litigation consulting firm doing business as Bruce L. Ross & Company. I founded the company in 1992. I have been a licensed CPA and litigation consultant since 1975. Prior to starting my own firm, I was the partner in charge of Litigation and Insurance Consulting Services for the southwest region of Laventhol & Horwath. During my thirty years of practice, I consulted or provided expert testimony in over 1,000 litigation and insurance matters. Both federal and state courts have qualified me as an expert in the areas of economic damages, fraud investigations, business valuations and insurance claims. I have also served as special master, arbitrator or referee on a number of matters, and have served on several arbitration and appraisal panels. Specifically, I have been retained in prior federal usury cases. I earned a Bachelor of Arts degree in Accounting and Psychology from Pitzer College, a member of the Claremont Colleges, in 1972.

2.     I make this declaration of my own personal knowledge, am competent to testify to the facts set forth herein and I could and would testify thereto if sworn as a witness.

3.     Bruce L. Ross & Company was retained by Starving Students, Inc. ("SSI") in the above-referenced matter to determine the imputed interest rate in connection with the various so-called "Futures Receivables Sales Agreements" (hereinafter referred to individually as "Agreement" or collectively as "Agreements") with Express Working Capital, LLC ("EWC").

**EXHIBIT**

**A**

4.     The schedules and other exhibits attached to this Declaration are made a part hereof and are incorporated herein by this reference.

5.     This Declaration is based on certain background facts, which are set forth herein, of which I am advised and which I assume for the purpose of this Declaration to be true.

6.     References to "we," "us" or "our" refer to employees of BLR&Co working at my direction. The opinions stated herein are my own.

7.     Attached hereto as Exhibit "A" is an Expert Report prepared by BLR&Co that contains our work and my opinions as of this date.

Executed on October 25, 2013 at Rolling Hills Estates, California.

I declare under penalty of perjury that the foregoing is true and correct.

Bruce L. Ross

# EXPERT REPORT OF BRUCE L. ROSS
## OCTOBER 25, 2013

## INTRODUCTION OF EXPERT

Mr. Bruce L. Ross is the founding principal of the litigation consulting firm Bruce L. Ross & Company ("BLR&Co"). He has a Bachelor of Arts degree in Accounting and Psychology from Pitzer College, a member of the Claremont Colleges. Mr. Ross became licensed as a Certified Public Accountant in the State of California in 1975. Prior to forming Bruce L. Ross & Company, Mr. Ross held positions in public accounting and aerospace and was also an independent litigation consultant.

Mr. Ross has consulted on or provided expert testimony in over 1,000 litigation and insurance matters. He is an expert in the areas of economic damages, fraud investigations, business valuations and insurance claims. He has qualified as an expert witness in both federal and state courts. Mr. Ross has received court appointments as a Special Master and as a referee, in addition to serving on various arbitration and appraisal panels. A copy of Mr. Ross's Resume and Addendum, the Bruce L. Ross & Company rate sheet, a list of Mr. Ross's deposition and trial testimony over the last four years and a list of his publications over the last ten years are attached hereto as "Exhibit 1."

Throughout this report, the first person singular refers to Bruce L. Ross. The terms "we" or "our" refer to the work either performed by Mr. Ross or by his staff under his direction and guidance. The opinions expressed in this report are those of Mr. Ross.

All Exhibits and Schedules attached to this Report are made a part hereof and are incorporated herein by this reference.

## BACKGROUND

We are advised of the following facts and conditions, which we assume to be true:

From the period from 05/02/2011 through 07/11/2013, Starving Students, Inc. ("SSI") entered into a series of so-called "Futures Receivables Sales Agreements" (hereinafter referred to individually as "Agreement" or collectively as "Agreements") with Express Working Capital, LLC ("EWC").[1] Pursuant to each Agreement (there were 10 in total), EWC purchased future credit card receivables from SSI by paying a stated "Purchase Price." SSI was then obligated to repay EWC an "Amount Sold" at a stated "Daily Percentage" from its credit card sales, based on the "Type of Receivables Being Sold." Each Agreement was for a stated amount and a stated daily percentage, but the other terms were similar.

---

[1] BLR 1018-BLR 1107

Expert Report of Bruce L. Ross dated October 25, 2013

After about a year of repayments under the Agreements, SSI changed its credit card processor to EWC's preferred processor. Repayments continued. The repayments were reflected on Statements provided by EWC.[2] After receiving legal advice that these transactions reflected usurious loans and not future receivables sales financing,[3] SSI switched back to its old credit card processor and ceased making payments to EWC. We are advised that appropriate notice thereof was given.[4] In accordance with the Complaint, payments ceased on or about July 25, 2013.[5]

## TASK

BLR&Co was retained by SSI to determine the imputed annual percentage rate ("APR") in connection with the Agreements. We are advised that the parties are in dispute as to the characterization of these transactions. EWC characterizes them as a sale of future receivables. SSI characterizes them as loans.

## METHODOLOGY

To calculate the imputed interest rate, we review the cash flows between EWC and SSI. Each payment of the Purchase Price from EWC to SSI is an inflow to SSI, and each payment by SSI to EWC, which we assume is based on the Daily Percentage, is an outflow from SSI. The imputed interest rate, or APR, is that rate that sets the net present value of all cash inflows and outflows to zero.[6]

For the purpose of this Expert Report, we assume that the position taken by SSI is correct and that the transactions are loans. Therefore, we assume that it would be proper to impute a rate of interest in connection with the transaction. Accordingly, when we analyze the transactions, we view the term "Purchase Price" as used in the Agreement as an advance of principal made by EWC to SSI and the term "Amount Sold" as the total amount of principal and imputed interest to be repaid by SSI to EWC. Two missing contract terms typically found in loans, the interest rate and the time for repayment, can be determined by analyzing the actual inflows and outflows of cash.

As described above, in order to perform these tasks, we reviewed statements issued by EWC showing daily transactions related to the Agreements (inflows and outflows) from

---

[2] See BLR 1108-BLR 1130 and BLR 1143
[3] See Declaration of Ethan Margalith at BLR 1013
[4] Id. at BLR 1015-BLR 1017
[5] See Complaint, paragraph 18, BLR 1004
[6] Debt assets such as loans and bonds exhibit this property; the interest rate sets to zero the difference between the amount loaned and the net present value of the future interest payments and future repayment of principal.

---

5/4/2011 through 7/24/13 (hereinafter referred to as "the Statements.")[7] We did not receive statements for January 2012 and May 2013. The statement we received for April 2013 was incomplete. We requested the missing documents from our client.

In the meantime, until we receive the missing documents, we rely on data from spreadsheets we received from our client.[8] We are advised this data was maintained in the ordinary course of business by SSI. The spreadsheets themselves were created by SSI in order to determine the portion of the payment that should be booked to principal and to interest in SSI's internal books and records; we do not adopt SSI's interest calculation methodology.

To determine the reliability of the data, we tested the internal data against the Statements. Although the Statements and the spreadsheets did not reconcile exactly, we observed no material differences between the documents that would make reliance thereon unreliable for our purposes.

We performed our analysis for each transaction arising from each Agreement. We also performed an analysis for all of the Agreements as a whole, viewing all of the Agreements as if they were all one transaction. In order to determine an imputed rate for each Agreement individually, we utilized the first in, first out (FIFO) method, so that payments received by EWC were applied to the earliest Agreement, until such time as the "Amount Sold" was reached. We then applied payments to the next Agreement, and so on.

We perform the analysis on an individual basis first to determine whether, at the time SSI ceased making payments in July 2013, it was reasonable for SSI to believe that the imputed interest rate was usurious. The underlying assumption in these calculations is that the payments made related to the first five Agreements. We show that these calculations result in imputed interest several times in excess of the legal limit. It would be reasonable for SSI to conclude that the remaining Agreements would have an excessive imputed interest rate as well.

After scheduling the inflows and outflows by day for each Agreement, we ran the XIRR function in Excel, which calculates the internal rate of return on a set of cash flows that is not necessarily periodic. This function produces an Annual Percentage Rate ("APR") similar in nature to the interest rate on a mortgage or a credit card. Since the Agreements provide for repayment based on a certain percentage of daily credit card sales, and transactions do not necessarily occur every day, we determined that this function would be the appropriate way to determine the imputed interest rate in connection with the transactions covered by the Agreements.

Because SSI stopped paying EWC in July 2013, five of the ten Agreements had not been paid back in full at the time payments were ceased. In order to determine an imputed rate of interest for these five Agreements we assumed that, per the Remedies provisions of the various

---

[7] BLR 1108-BLR 1130 and BLR 1143
[8] BLR 1144 - 1154

Agreements, EWC accelerated the amounts due once SSI stopped making payments on or about July 25, 2013.[9]

Our analysis for all the loans as a whole uses a similar approach to the analysis of each Agreement. The difference is that the ten loans are modeled as one financial relationship, similar to a revolving line of credit, in which both advances and payments are made periodically. We again use the XIRR function to impute the interest rate and again assume that EWC accelerated the amounts due once SSI stopped making payments on or about July 25, 2013.

## ANALYSIS

Our calculations are shown on a set of Schedules attached in a group as Exhibit 2. The top right area of each Schedule bears a label. For the rest of this section, we will refer to our Schedules by this label (e.g. "Schedule D-2").

**Schedule A-1** summarizes our calculations for each Agreement for the Agreements taken as a whole. We reproduce our findings here in tabular form.

The first five Agreements are assumed to have been paid back in full using a first-in, first-out (FIFO) method of applying SSI's payments to EWC to the Agreements.

| Agreement ## | Imputed Annual Interest Rate (APR): |
|---|---|
| Agreement 01 | 172% |
| Agreement 02 | 60% |
| Agreement 03 | 117% |
| Agreement 04 | 69% |
| Agreement 05 | 51% |

Agreement 6 would have been partially repaid under a FIFO method, but the entire balance of Agreements 7 - 10 would have been outstanding at July 25, 2013.

| Agreement ## | Imputed Annual Interest Rate (APR): |
|---|---|
| Agreement 06 | 69% |
| Agreement 07 | 83% |
| Agreement 08 | 194% |
| Agreement 09 | 552% |
| Agreement 10 | 205,870% |

The imputed interest rate or APR for all Agreements taken as a whole is **103%**.

Schedule A-2 shows two major assumptions that underlie our calculations. The first is that our analysis assumes EWC is demanding that it be paid in full on or about July 25, 2013. [10]

---

[9] See, e.g., paragraph 14 of the Agreement dated 05/02/11 at BLR 1021.

This assumption affects our calculations for Agreements 06 – 10 as well as our calculation for all Agreements taken as a whole. The second assumption, as stated above, underlying our calculations is that our imputed interest rate is the rate that sets the net present value of the sum of all cash inflows and outflows to zero.

Schedules B-1 through B-7 calculate the imputed interest rate for each Agreement. Each cash inflow (advance to SSI aka "Purchase Price"), amount due (aka "Amount Sold"), and cash outflow (aka "Receipts Collected") is shown in chronological order. We apply payments to the Agreement until the entire amount due is repaid. We then use the XIRR formula to calculate the imputed interest rate for each Agreement.

Schedules B-6 through B-7 contain an additional line for each Agreement, highlighted in red, representing our assumption that EWC is demanding to be paid in full on or about July 25, 2013. This assumption causes the outstanding balance to drop to zero and enables us to compute an imputed interest rate for loans that hand not been fully paid off at July 25, 2013.

Schedule C-1 uses the same format as Schedules B-1 through B-7, but calculates the imputed interest rate for all the Agreements taken as a whole. We again include a last line highlighted in red ($1,605,866.56) to reflect the assumption that EWC is demanding it be paid in full on or about July 25, 2013. This last line should be theoretically equal to the outstanding balance shown on EWC's most recent statement to SSI ($1,611,296.83 – BLR 1143). It is not equal to that amount because we did not have a complete set of EWC statements (see below) and had to rely on information from SSI, which may reflect timing and other differences. We consider these differences to be immaterial.

Schedule D-1 shows our application of the FIFO method to loan repayments. Each column demonstrates which payment or which portion of a payment was applied to each loan. The totals at the bottom match the loan balances at the top, thus showing that the payments were correctly applied to the loan balances.

Schedule D-2 collects the payment information we obtained from EWC Statements and SSI's internal Excel worksheets into one page, organized chronologically.

Schedule D-3 shows the basic financial terms of the ten Agreements. The Statements (Schedule E-3, e.g. line 5) show an invoice date for the amount due that is slightly later than the agreement date. We assume funds were advanced on the agreement date. Using the invoice date would not materially affect our conclusions.

---

[10] We note that we could have projected a future cash flow for the repayment of the unpaid loans for the purpose of our calculation, however this methodology, although more conservative, would have been inconsistent with the Remedies provision of the Agreements. The acceleration clause in the Agreements informed our methodology in this regard.

---

Schedule E-1 reconciles SSI's internal analysis with the EWC Statements provided to us. On the left appears information from the Statements, and on the right, from the Excel analysis. Our reconciliation then occurs in stages from top to bottom.

We first compare transactions for 2011 and show, on line 205, no material differences between the transactions on the Statements and in SSI's internal analyses. We are unable to reconcile internal data for January 2012 against a statement because we did not receive a statement. We therefore rely on SSI's internal data for January 2012 (Schedule E-2). In my opinion, it is reasonable to rely on this data because our reconciliation for 2011 showed no material differences.

February 2012 through May 2012 are reconciled as a group. The number of line items for this time period on the Statements (lines 264-321, left side) is significantly smaller than for the Excel analysis (lines 223-321, side), but the totals reconcile with no material differences (line 322). On the other hand, the Statements for June 2012 through March of 2013 provide daily detail (lines 326-592, left side) compared to sporadic and periodic detail in SSI's worksheets (lines 565-592, right side).

We did not receive a complete Statement for April 2013 and did not receive a statement for May 2013. We assume payments for the remainder of April 2013 would have been equal to the difference between that shown on the statement for April 2013 and that shown in SSI's internal analysis. We rely on SSI's May 2013 analysis because no statement was provided. We reconcile detailed Statement data for June and July 2013 against monthly totals from SSI's internal analysis.

In total, we identified only $3,774.67 in differences between the two data sources. We do not consider this material.

Schedules E-2 and E-3 contain the raw data entry we performed to obtain information from SSI's internal spreadsheets and the Statements.

## CONCLUSION

Assuming the transactions are, in fact, loans and not sales, it is my opinion that the APR or imputed interest rate for each and every Agreement, and for all of the Agreements taken as a whole, exceed the 10% legal interest rate provided for in the Texas Finance Code.[11] In fact, in each case, the imputed interest rate was more than twice the legal rate.

---

[11] BLR 1131

Expert Report of Bruce L. Ross dated October 25, 2013

## ADDITIONAL WORK

Our work on this matter is ongoing and evidence continues to be gathered. We reserve the right to adjust or expand any of our opinions based on information that becomes available after the date of this report. In addition, we may be asked to design explanatory exhibits to assist the trier of fact in understanding my opinion.

Expert Report of Bruce L. Ross dated October 25, 2013

**DOCUMENTS AND INFORMATION RELIED UPON**

1. Complaint (BLR 1000-BLR 1011)

2. Second Declaration of Ethan Margalith (and Attachments) (BLR 1012-BLR 1017)

3. Agreements (BLR 1018-BLR 1107)

4. Express Working Capital Statements (BLR 1108-BLR 1130)

5. Various sections of the Texas Finance Code regarding interest rates and usury (BLR 1131-BLR 1142)

6. SSI Internal Analyses showing payments to EWC (BLR 1144 – 1154)

Expert Report of Bruce L. Ross dated October 25, 2013

## CERTIFICATION

PARTIES SEEKING REDRESS:   Express Working Capital

RE:     Starving Students, Inc.     Case No. 3:13-CV-3045-0

DATE OF DAMAGES:     July 25, 2013

DATE OF REPORT:     October 25, 2013

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analyses, opinions, and conclusions.

- I have no present or prospective interest in any award that may result from the resolution of this matter, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in, or the use of this report.

- This report was prepared in conjunction with Mr. Jason Brancazio and Ms. Randy Ellen Ross.

Bruce L. Ross

Bruce L. Ross

# EXHIBIT 1

# BRUCE L. ROSS
## CERTIFIED PUBLIC ACCOUNTANT

Bruce L. Ross is the founding principal of the litigation consulting firm Bruce L. Ross & Company. He has a Bachelor of Arts degree in Accounting and Psychology from Pitzer College, a member of the Claremont Colleges. Mr. Ross became licensed as a Certified Public Accountant in the State of California in 1975. Prior to forming Bruce L. Ross & Company, Mr. Ross held positions in public accounting and aerospace, as well as being an independent litigation consultant.

Mr. Ross has consulted or provided expert testimony in over 1,000 litigation and insurance matters. He is an expert in the areas of economic damages, fraud investigations, business valuations and insurance claims. He has qualified as an expert witness in both federal and state courts. Mr. Ross has received court appointments as a special master and as a referee, in addition to serving on various arbitration and appraisal panels. Mr. Ross also originated an objective methodology for the calculation of punitive damages.

Mr. Ross has been involved in many areas of litigation, including:

| | |
|---|---|
| • Antitrust | • Health Care |
| • Bad Faith | • Insurance |
| • Bankruptcy | • Intellectual Property |
| • Breach of Contract | • Labor and Employment |
| • Business Valuations | • Landlord/Tenant Disputes |
| • Civil Rights | • Malicious Prosecution |
| • Class Actions | • Marital Dissolution |
| • Construction | • Non-Profit |
| • Criminal | • Personal Injury/Wrongful Death |
| • Defamation | • Probate Litigation |
| • Entertainment/Sports | • Product Liability |
| • Environmental | • Professional Malpractice |
| • Fee Disputes | • Punitive Damages |
| • Financial Institutions | • Real Estate |
| • Fraud Investigations | • Securities |
| • Government | • Special Master/Referee |

The attached addendum describes Mr. Ross' activities on selected matters in some of the above areas.

Mr. Ross has written and taught courses on the computation of economic damages and the investigation of fraud for major accounting firms. He has also been an instructor for the American Institute of Certified Public Accountants. He is highly skilled in the presentation of financial and accounting information in a clear, interesting and persuasive manner.

Mr. Ross is a member in good standing of the American Institute of Certified Public Accountants, the California Society of Certified Public Accountants and the Institute of Business Appraisers, Inc.

# BRUCE L. ROSS, CPA
## Resume Addendum

Mr. Ross has consulted or provided expert testimony in over 1,000 different matters involving many areas of the law. His work involves the calculation or determination of lost profits, out-of-pocket damages, consequential damages, punitive damages, insurance claims, photoplay profits, royalties and the tracing of accounting records to uncover fraudulent activity. Listed below are brief descriptions of selected cases in which Mr. Ross has provided his expertise and assistance. Additional case descriptions may be found at www.blross.com.

## Antitrust

- Counsel for the defense retained Mr. Ross as a consultant in an antitrust action arising out of the relocation of a professional sports team. The engagement involved sophisticated computer modeling and analysis. Mr. Ross was called upon to compare the effective return on signed contracts, to develop seasonal cash flow models and to perform a detailed review of the financial books and records of the plaintiffs. Mr. Ross assisted in the preparation of the damage expert, developed jury books and designed trial exhibits.

- Counsel for the defense retained Mr. Ross as a consultant in a series of large, complex antitrust litigation matters, involving major companies in the computer industry. Mr. Ross evaluated decisions and procedures of opposition management, analyzed damage claims, reviewed pricing issues and performed cost accounting and industry analyses. Mr. Ross also prepared expert and non-expert witnesses, supported document and deposition discovery and designed trial exhibits. This engagement entailed extensive use of a sophisticated computerized litigation data base comprising millions of searchable on-line documents. All matters were won outright by or settled on terms favorable to the defendant.

## Bad Faith

- Mr. Ross surveyed all awards made in Los Angeles, Orange, Riverside and Ventura counties in connection with personal injury lawsuits involving a specific type of injury. This information was used by an insurance carrier to develop a defense against allegations of bad faith.

- A corporation brought a bad faith action in federal court against a group of insurance carriers and insurance syndicates for their failure to pay a loss under a fidelity bond issued to the plaintiff. Mr. Ross was asked by counsel for the plaintiff to opine as to the threshold of materiality to assist the trier of fact in assessing punitive damages. For the insurance carriers, Mr. Ross applied the punitive damage methodology he developed to determine that threshold. The matter was settled shortly after Mr. Ross submitted his report.

- Counsel for the plaintiff retained Mr. Ross in a bad faith litigation matter against an insurance carrier with a complex organizational structure. By analyzing the way in which the carrier operated, Mr. Ross was able to testify in state court as to the appropriate organizational level for the assessment of punitive damages. After Mr. Ross' testimony, the opposing side stipulated to the insurance entity that would be subject to punitive damages.

- An insured sued its insurer and agent for bad faith for failing to cover an aviation accident even though the insurance had lapsed. Bruce L. Ross & Company was retained by counsel for the insurance carrier to analyze the plaintiffs' claims of lost profits. The plaintiff, which operated an interlocking series of companies in a variety of businesses, claimed through an expert that the defendant's failure to honor the policy had lead to losses in the tens of millions of dollars. Mr. Ross developed important industry information and, by making a thorough critique of each element of the plaintiff's damage claim, showed the errors, faulty information and bad methodology upon which the damage claim rested. Mr. Ross participated in the mediation efforts to settle the matter, which ultimately was successful.

- Mr. Ross was retained by counsel representing a plaintiff who contended that an insurer's failure to provide a defense in a legal matter had resulted in profit reductions and ultimately the bankruptcy of the company. Mr. Ross and his team calculated lost profits and loss in business value under several scenarios and were able to demonstrate to accounting representatives of the carrier that the damages where not speculative. With the consent of plaintiff, the carrier then retained Mr. Ross' firm to investigate certain matters in connection with its analysis of the claim. The case was settled on terms satisfactory to all parties.

- Plaintiffs in a class action matter claimed that a major health insurer wrongfully deprived class members of their auto-medpay benefits, the medical benefits provided in an automobile insurance policy. Counsel for plaintiffs retained Mr. Ross to assist in mediation discussions by providing feedback on database searches designed to extract class members from the health insurer's vast databases. To assist with settlement, Mr. Ross provided a declaration estimating the benefit that could be provided by restitution as well as the benefit that would be afforded by an injunction. He based his estimates on an analysis performed by his team of the insurer's claim files and statistical inferences drawn therefrom.

## Bankruptcy

- Bruce L. Ross & Company was retained by counsel representing 16 municipalities, water districts and community redevelopment agencies to assist in recovering their investments in an a county-run investment pool. The County lost billions of dollars through complex financial investments and ultimately declared bankruptcy. Mr. Ross was asked to opine as to whether or not the County was solvent at the time of its bankruptcy and to determine if it was possible to trace the plaintiffs' investments through the investment pool. Mr. Ross performed the necessary analyses and wrote a report regarding his opinions. The matter was settled prior to Mr. Ross' testimony. Mr. Ross and his firm were then asked to participate in additional litigation brought against third parties.

- Mr. Ross was asked to determine the value of collateral held by the debtor both as of the Chapter 11 filing date and as of the beginning of the 90-day preference period and to analyze the preferential treatment of a specific secured creditor. The plaintiff in this matter, the Official Unsecured Creditors Committee, had filed a complaint against the creditor claiming that certain payments were avoidable preferential transfers. Mr. Ross considered the standards for preferential transfers including whether the defendant would have received a greater amount with the transfer than without the transfer and whether the position of the defendant improved or worsened during the 90 days before the filing date. Mr. Ross participated in a mediation that resulted in settlement of the matter.

- A large dot com company filed for bankruptcy protection. Counsel for the debtor retained Bruce L. Ross & Company to provide an opinion as to the company's solvency during the preference period.

- A government securities broker filed for bankruptcy and closed its doors. Retained by counsel representing the trustee in bankruptcy, Mr. Ross and his team went through 700 boxes of material to find over $150 million in preference items. This analysis required a thorough understanding of repos and reverse-repos and significant financial expertise. The bankruptcy estate paid all valid creditors' claims in full.

- Mr. Ross was asked by a creditor's committee involved in a nationwide bankruptcy to investigate a very complex reorganization that had occurred a little more than a year before the bankruptcy. Mr. Ross and his team were requested to provide an opinion as to whether or not sufficient business and accounting information was available to show possible fraudulent transfers. This information was used by counsel and the client to determine whether to file a lawsuit against the owners and other parties.

- A debtor-in-possession owned a securities dealer that was not in bankruptcy. It hired the defendant as President of that subsidiary. After the reorganization plan was rejected by the Court and a trustee was appointed, the trustee found indications of fraud and mismanagement on the part of the President. Mr. Ross was retained by counsel for the trustee to value what the subsidiary should have been worth assuming competent and honest management. Mr. Ross testified in writing and the Court found in favor of the trustee.

- A bankrupt software company sought to recover damages related to training and marketing services not fully delivered by a computer products manufacturer. The software company provided warrants as consideration for the manufacturer's services. Mr. Ross issued a Federal Report highlighting several problems with the valuation methodology used by plaintiff's expert. As a result, plaintiff's expert revised his approach to valuation and lost profits substantially. The matter settled prior to trial.

- A wholesale clothing manufacturer lost its license to a well-known clothing brand. Mr. Ross testified in bankruptcy court regarding the manufacturer's unreimbursed out of pocket expenses and lost profits due to the licensor's reclamation of its brand. As part of the engagement, Mr. Ross's team designed a Microsoft Access database system that facilitated the identification of relevant out-of-pocket expenses.

# Breach of Contract

- A medical records copy service sought damages after its competitor allegedly hacked its website.  BLR&Co. was retained to evaluate a report provided by Plaintiff's expert containing a lost profits calculation. Mr. Ross finalized opinions regarding the reliability of the opposing expert's regression model and computed damages under an alternative set of assumptions.  The case settled prior to trial.

- A city and its redevelopment agency entered into a Memorandum of Understanding with a company pursuant to which the parties would cooperate in the acquisition of certain real property and the building of a waste transfer facility. The company, in derogation of the Memorandum of Understanding, assisted others in acquiring the property and building a waste transfer facility thereon. The city was required to build its own, smaller direct transfer facility at another location. Ross and his team analyzed the rent differential, lost revenues as well as a number of other types of damages resulting from the defendants' breach of contract. The analysis included review of waste disposal requirements and fees within the greater municipal area in which the lawsuit arose.

- Two of three owners of a closely held real estate business sought to dissociate from the "partnership", although the entity had never been formally established. The owners had previously signed an agreement dictating that all distributions from the entities comprising the "partnership" were to be in a certain ratio. Mr. Ross opined regarding the amount of distributions needed to restore the partners' payments to balance. He also provided testimony regarding the value of the services rendered by each of the partners.

- A developer of wind power defaulted on certain loans made to it by its development partner.  The developer pledged collateral on the loans and sought to offset amounts due by the value of the collateral. BLR&Co. was engaged to value the collateral, including an interest in proceeds from the expected sale of tax credits to investors. Mr. Ross assisted counsel in selecting the appropriate standard and premise of value. The case settled before a final opinion of value was reached.

- An automotive products company licensed a patent to a distributor, giving it territorial rights to North America. The patent holder and distributor subsequently disagreed about both contract terms and safety procedures, leading the patent holder to terminate the contract.  The distributor sued to recover lost profits arising as a consequence of business interruptions allegedly resulting from the parties' disputes. BLR&Co. was engaged to provide opinions regarding the report submitted by distributor's expert.  At arbitration, Mr. Ross testified that the report provided by distributor's expert did not have adequate support. Mr. Ross also provided an alternative lost profits model, as well as revisions responsive to the arbitrator's requests.

- Plaintiff dairy cooperative entered into a requirements contract with Defendant, a manufacturer of specialty cheese. In 2003, Defendant produced a batch of bad cheese which had to be recalled. Defendant contended that the bad cheese was the result of tainted milk provided by Plaintiff, and negotiated with Plaintiff for four years to resolve the matter. Upon learning that Plaintiff had no intention of settling, despite alleged knowledge that the milk was tainted, Defendant immediately terminated the contract and found another milk vendor, without giving the six months notice provided for in their contract. Plaintiff sued for  over ten million dollars covering the notice period. Defendant cross-complained for the damages arising from the recall. The BLR&Co. team was retained by counsel for the cheese manufacturer to rebut the damage claim prepared by employees of the dairy cooperative. Working closely with a dairy industry expert, the BLR&Co. team analyzed Plaintiff's damage claim and found a number of areas in which it was inaccurate, unreliable and overstated. Mr. Ross testified at deposition and at trial.

- Mr. Ross was engaged by counsel for the defendant utility in a series of actions brought by a group of subcontractors arising out of a government-ordered home insulation program. The work involved an in-depth analysis of all aspects of the financial and managerial workings of the subcontractors. Mr. Ross and his team also performed a statistical analysis of a large utility database to determine the scope of material discrepancies in the subcontractor program. The case was ultimately settled on terms favorable to the defendant.

- A tire company lost its ability to distribute a well-known brand of tires after it allegedly failed to meet a minimum sales requirement. Mr. Ross analyzed whether the tire company met the minimum sales requirement and calculated the lost profits resulting from the loss of the license. Mr Ross also provided ideas to counsel on how best to rebut a counter-claim that the tire company failed to develop the licensor's business and to use its best efforts to promote the licensor's products.

- Two companies entered into a master agreement for the leasing of computer equipment. This agreement set forth the general terms of their relationship. They then entered into hundreds of separate leases. Neither the master lease agreement nor any of the underlying leases set forth the financing costs to be charged. The lessor, however, represented to the lessee that the financing costs would fall within a specified range. After millions of dollars had been paid, the lessee discovered that the financing costs actually charged were many times higher than the range given. Mr. Ross was retained by counsel for the lessee to provide an opinion as to whether fraud had been committed and whether or not the interest rates charged were unconscionable. In addition, Mr. Ross was asked to determine the effective rates charged and actual yield on 196 separate leases and to calculate the damages sustained by the lessee. Mr. Ross and his team prepared several expert reports and Mr. Ross testified at deposition. The parties settled the matter immediately prior to trial, using Mr. Ross' testimony in their negotiations.

- A savings and loan purchased a portfolio of loans from a non-profit agency that created projects for low-income housing. One loan from the portfolio went bad, resulting in losses to the thrift. The S&L sought recovery for those losses. Mr. Ross and his team were retained by counsel for the defendant. Through a portfolio analysis involving many different facets, Mr. Ross was able to opine at deposition that, despite the losses from the bad loan, the overall portfolio still provided a premium to the S&L that compensated it for the risk of the investment. Mr. Ross further opined that the S&L had received the benefit of its bargain. These opinions assisted counsel for the defense in negotiating a voluntary dismissal of the lawsuit.

- Mr. Ross was retained by counsel for a large apparel manufacturer in a suit brought by a company licensed to sell the manufacturer's brand in a retail setting. After opening two stores, the plaintiffs claimed that actions by the defendant caused them to close both stores and abandon their plan for additional stores. They claimed damages in the tens of millions of dollars. At Mr. Ross' deposition, he provided a critique of the opinion of the expert retained by plaintiffs' counsel. Based on the information developed by Mr. Ross and his team, the Court ruled the opposing expert could not offer his opinion to the jury. Upon losing their expert, plaintiffs settled for nominal sum.

- Bruce L. Ross & Company was retained by counsel representing a major charitable organization in Southern California. The charitable organization had contracted for a yacht to be used for a fund-raising event. After public notice of the event and been given, the provider sold the yacht but was unable to offer a substitute vessel for the event. The charitable organization mitigated its damages by holding a smaller event on land. Mr. Ross calculated and testified to the losses incurred by the charitable organization, and the Court awarded one hundred percent of the damages he testified to at trial.

- A professional with business contacts in Asia provided funding for an internet startup company that had developed internet microscopy software. In exchange, she obtained shares of stock in the company as well as an option to purchase additional shares. She entered into an agreement with the company to become the exclusive agent to develop the market for the product in the People's Republic of China. Thereafter, the company was acquired by a publicly-traded company, in part based on proposals that included employment and merger agreements which it later repudiated. The professional sued, alleging damages for breach of contract. She retained Mr. Ross to calculate damages. Mr. Ross calculated damages assuming that the employment agreement and merger had been consummated, including lost salary, bonus, benefits, stock options and earn out shares. He also calculated damages assuming that the professional had dissented to the merger of the companies.

- A construction subcontractor specializing in California highway development projects lost employees and know-how to an upstart competitor.  The subcontractor claimed lost profits as a result of the competitor's entry into the marketplace.  Using both public and internal company data, Mr. Ross calculated the subcontractor's historical bid success rate, and used it to calculate the subcontractor's lost profits on bids placed after the competitor's entry into the market.

## Business Valuations

- The plaintiff purchased six restaurants from the defendant including the right to use the brand name. During the transaction, two of the restaurants fell out of the deal. With respect to these two restaurants, the parties agreed to license the brand name back to the sellers for a specific period of time. Mr. Ross was retained by counsel for the buyers to investigate the value of the brand name and to calculate lost profits relating to the two restaurants. In addition, Mr. Ross was asked to verify unexpected expenses incurred in connection with some of the restaurants actually purchased. The case settled after Mr. Ross developed his preliminary opinions.

- In an underlying dispute between the owners of a computerized title search company, four large accounting firms opined as to the value of the company at a certain date. A legal malpractice action was then filed by one of the parties. Mr. Ross was retained by counsel representing the law firm to critique each of the valuation opinions previously offered and to provide his own opinions and observations on valuation theory, technical issues and simple arithmetic. This matter was settled on terms favorable to the defendant.

- A senior employee with a ownership interest in a worldwide insurance brokerage was dismissed by the new majority owner of the business. His contract called for a fair market valuation at the end of the year prior to the dismissal. The new owner of the business retained a CPA firm to perform a business valuation. Mr. Ross was retained by counsel for the plaintiff to investigate the propriety of that business valuation. He opined to a weighted average of ten different values he had determined in order to account for the various conflicting facts in the case. This opinion demonstrated that the CPA firm had grossly undervalued the minority interest held by the senior employee. The case was settled after Mr. Ross' deposition for an amount that was within pennies a share of Mr. Ross' opinion.

- A marital dissolution necessitated the valuation of a minority controlling interest in four publicly-held companies that had been taken private in leveraged buyouts. This valuation was complicated by the presence of different classes of stock and the highly leveraged nature of each company. Mr. Ross valued each company, providing the basis for a settlement favorable to his client.

- Two partnerships engaged in the kosher foods business were dissolved after one of the partners was found to be embezzling funds. Mr. Ross was retained by counsel for the plaintiffs and cross-defendants to assist an appraisal panel appointed by the court to value the three entities operated by the partnerships. Mr. Ross assisted both counsel and his client in responding to requests from the panel and developed information that the panel found to be persuasive. Based on the information developed by Mr. Ross and his team, the panel majority found a value that satisfied the plaintiff and cross-defendant.

- Bruce L. Ross & Company was retained by counsel for a motion picture copyright licensor that had been sued for infringing on the copyrights of five films from the Golden Age of Mexican Cinema. Mr. Ross and his team were requested to analyze the value of licenses to distribute home videos of the films as compared to the statutory damages under copyright law. Mr. Ross provided an Appraisal Report applying and reconciling multiple valuation approaches and including an analysis of the home video market. The case settled after expert depositions but prior to trial.

- A staffing company was accused of stealing employees from one of its competitors. Plaintiff's expert calculated damages, including a loss in business value and out-of-pocket expenses. Bruce L. Ross and Company was retained to provide analysis and opinions in rebuttal. The BLR&Co team created a model of Plaintiff's expert's calculations and identified numerous computational and data-handling errors as well as a failure to perform adequate due diligence. Mr. Ross critiqued the Plaintiff's expert's valuation opinion on a number of grounds, including his failure to follow professional standards, the inadequacy of his regression analysis and the impropriety of his market approach. As a result, the Arbitrator awarded only a small fraction of the damages sought by Plaintiff.

## Civil Rights

- Mr. Ross worked for a community organization whose members had suffered substantial losses in the Los Angeles riots. Mr. Ross designed a data base and forms to enable collection of information on over 5,000 claims. Mr. Ross and his team then assisted in the collection of this information from the community.

- A sergeant with the California Highway Patrol sued the state, alleging discrimination on the basis of sexual orientation. His counsel retained Mr. Ross to calculate lost earnings. Mr. Ross researched the sergeant's salary and promotion history as well as the policies of the CHP. A jury found in favor of the plaintiff and awarded him lost earnings consistent with those testified to by Mr. Ross.

- A deaf minor in the custody of the Los Angeles County Department of Probation was denied equal treatment as required under the American for Disabilities Act. The County and its departments contended that it would be burdensome to provide deaf and hearing impaired citizens the kind of services sought by and denied to the minor plaintiff. Mr. Ross modified his punitive damage methodology to calculate the threshold point at which an expenditure by the County and its agencies would be so material as to come to the attention of the appropriate decision-makers. The case was settled on terms satisfactory to the plaintiffs.

■  A comedy club contracted with a television network to air a weekly comedy show. As part of the deal, the network modified the premises of the club, treating the modifications as set construction and, therefore, not obtaining the normal permits. After the show was canceled, the City of Los Angeles ruled that such permits were required, necessitating further modifications to conform the premises to the Americans with Disabilities Act The club sued the television station, seeking reimbursement for the cost of providing accessibility under the ADA and for lost profits resulting from the space rendered unavailable for customers. Mr. Ross performed a capacity analysis and showed that many nights were not impacted by the changes. Settlement was reached shortly thereafter.

## Class Actions

■  Bruce L. Ross was retained by counsel for the plaintiff in a class action brought by claimants who allege that their workers' compensation disability payments were incorrectly calculated by insurer defendants. Mr. Ross and his team are developing database queries and Visual Basic code to identify payments within voluminous claims data that give rise to statutory penalties. These situations can include late payments, skipped payments and payments at an incorrect rate. Work is in process on this matter.

■  Plaintiff class brought suit against an automobile manufacturer and several related businesses claiming that purchasers of certified pre-owned vehicles were promised a factory warranty but, in fact, received a more limited service contract. Mr. Ross and his team assisted counsel in mediation by providing a complex model showing damages from a variety of sources, including the claims denied under the service contract that should have been covered under the warranty. The model contained a page in which key assumptions could be input by counsel to vary the results.

■  The defendant operated a program pursuant to which it would pre-purchase dining credits from restaurants, advancing cash to the restaurant and receiving repayment by retaining a percentage of meals purchased at the restaurant by its members.  The plaintiffs were a class of restaurants who were advanced funds under the program. They characterized the advances as loans and the repayments as usurious interest payments. Counsel for the class retained Bruce L. Ross & Company to determine the amounts actually advanced to and repaid by each plaintiff and whether, assuming the advances were actually characterized as loans, such repayments would be usurious. Mr. Ross submitted federal reports and declarations and testified at trial demonstrating that the plaintiffs repaid the advances at rates far in excess of the legal rate. The trial court agreed.

■  Counsel for an employer retained Bruce L. Ross & Company in connection with a class action lawsuit brought by sales representatives who sold advertising on a commission basis. Some of the class members alleged that the employer failed to compensate them properly for expenses and benefits. Mr. Ross and his team created an employee database and analyzed the information, documenting whether the class members were employees or independent contractors and to what extent they had been compensated.

- Counsel for a large department store chain retained Bruce L. Ross & Company to determine the damages, if any, in connection with a class action filed on behalf of cosmetics counter managers due to improper handling of commissions on returned merchandise and failure to provide meal and rest breaks. The Ross team examined commissions reports, payroll data and time clock data for a number of the chain's stores and determined the amounts that should have been paid for returns commissions, as well as meal break penalties, rest break penalties and waiting time penalties. The matter was referred to arbitration.

- Mr. Ross was retained in a class action matter to determine whether certain categories of employee were properly classified as exempt, and therefore not subject to overtime rules. Mr. Ross and his team prepared a computerized model of possible damages set up in a manner to allow quick changes to key assumptions. Mr. Ross was asked to attend a mediation in this matter, at which significant use was made of the computer model.

- A class representative brought suit against a health insurance carrier complaining that midyear modifications to benefit provisions in her contract caused her to suffer monetary damages. Liability was decided in favor of plaintiff, but due to privacy concerns and an anticipated significant reliance on the insurer's proprietary databases , the defendant was permitted to calculate damages. Mr. Ross was engaged to evaluate defendants' calculation algorithms and provide opinions on the reliability of defendant's calculations. Mr. Ross and his team performed a detailed analysis of the Evidence of Coverage documents to identify midyear modifications not included by defendant in its damage analysis and to determine those that would result in monetary damages to the plaintiff class. Mr. Ross also presented findings resulting from high-level checks of the algorithms in an agreed-upon procedures report. The matter has been settled.

- BLR&Co. was retained by the Defendants in a dispute after sale of a large security company, in which the buyer alleged that the purchase price was overstated because the seller had not properly paid some of its California employees the Uniform Maintenance Allowance and otherwise not included required expenses in its books and records. Mr. Ross determined that Plaintiff's expert improperly calculated damages based on a multiple of EBITDA and prepared an expert report critiquing his opinion. The case  settled prior to trial.

- Mr. Ross acted as the court-appointed monitor to supervise the execution of a settlement agreement between a certified class and a savings and loan. This engagement involved extensive system-testing and examination of the various steps taken by the defendant in following the terms of the settlement.

## Construction

- A construction subcontractor specializing in California highway development projects lost employees and know-how to an upstart competitor.  The subcontractor claimed lost profits as a result of the competitor's entry into the marketplace.  Using both public and internal company data, Mr. Ross calculated the subcontractor's historical bid success rate, and used it to calculate the subcontractor's lost profits on bids placed after the competitor's entry into the market.

- A developer of low-income housing and a construction subcontractor entered into a guaranteed maximum price contract. The subcontractor's performance suffered from cost overruns and substantial delays. Mr. Ross was retained to calculate the economic damages due to the overrun of the guaranteed maximum price and the damages due to the project delay. Mr. Ross opined not only to the value of excess construction expenses, but additionally to excess interest costs related to project financing and lost rental income.

- A national real estate developer proceeded with building a large multi-unit apartment complex in reliance upon a contract with the seller of the property to clean up toxic contamination impacting a portion of the property. The seller failed to perform the cleanup, resulting in the abandonment of approximately one-quarter of the project. Mr. Ross calculated and verified all expenditures made on the project including overhead and interest. He developed a decision matrix to allocate the appropriate portion of those expenses to the unbuilt portion of project. A large, statistically-verified, computerized database was used to perform the calculations flowing out of the decision matrix.

- A roofing company obtained a large contract from a redevelopment agency. Although the contract was approved, the final consent of the agency was withheld for a long period of time. The agreement called for the contractor to be ready to start work on short notice. It was alleged that the buildup of labor and supplies in the expectation of the work starting created a financial hardship on the company, ultimately resulting in its demise. At the request of counsel for the plaintiff, Mr. Ross calculated a delay and disruption claim. At the request of the mediator, he participated in a conference of the engineers and accountants retained by both parties. This group reached a settlement that was higher than plaintiff had expected.

## Criminal

- The defendant in a criminal matter pleaded guilty to a variety of felony charges. In the sentencing process, the government contended that her compensation was excessive, tending to indicate that she received additional payment in exchange for engaging in fraudulent conduct. Counsel for the defendant retained Mr. Ross to perform a compensation analysis to be included in the sentencing brief. He conducted industry research and formed an opinion as to the range of compensation which would be reasonable under the circumstances. This opinion involved the valuation of a different stock options plans and other non-salary compensation. Mr. Ross was able to show that the defendant's total compensation was comparable to other similarly situated employees within the relevant industry.

- Mr. Ross was retained by counsel for a well-known entertainer to investigate the entertainer's business manager. Mr. Ross uncovered evidence of fraudulent activities on the part of the business manager. On the basis of Mr. Ross' work, the district attorney filed criminal charges against the business manager, who pleaded guilty on the eve of trial.

- The public defender retained Bruce L. Ross & Company to review the prosecutor's evidence against a criminal defendant accused of embezzling funds from a public entity. Ross and his team of consultants reviewed the defendant's bank records and found a number of problems with the  prosecutor's analysis.

# Defamation

- Mr. Ross was retained by counsel for a minor patient at a psychiatric hospital. The hospital used the patient's story and picture in an advertising campaign without the consent of the minor's parents. Mr. Ross calculated the increase in revenue received by the hospital as a result of the advertisement. A jury found in favor of the plaintiff and awarded damages in line with Mr. Ross opinion.

- An electronics chain ran advertisements comparing their prices to those of the competition. One advertisement misstated a competitor's price, making it appear that this competitor sold at the highest price of all of the competition. The competitor sued for defamation and offered evidence of over $15 million in damages. Mr. Ross was retained by counsel for the defense to calculate damages and critique the work of the plaintiff's expert. One critical issue was the length of impact of a single newspaper advertisement. After trial, the Court found in favor of the plaintiff but awarded only one dollar in damages.

- An importer of goods from Mexico selling to the Hispanic market in the United States contended that a competitor provided false information to customers in an attempt to undermine the plaintiff's business and gain business for the defendant. At the request of counsel for the plaintiff, Mr. Ross computed lost profits and lost income to the owners. He also observed causation effects in the accounting records. He testified at trial and the jury awarded an amount consistent with his testimony.

# Entertainment/Sports

- Counsel for the defense retained Mr. Ross as a consultant in an antitrust action arising out of the relocation of a professional sports team. The engagement involved sophisticated computer modeling and analysis. Mr. Ross was called upon to compare the effective return on signed contracts, to develop seasonal cash flow models and to perform a detailed review of the financial books and records of the plaintiffs. Mr. Ross assisted in the preparation of the damage expert, developed jury books and designed trial exhibits.

- The plaintiffs approached the defendant television network with a proposal to sell fitness products by means of an infomercial. The plaintiffs alleged that the defendant went directly to their product source and sold the products through different distribution channels, effectively eliminating plaintiffs' profits. Mr. Ross and his team were asked to determine the sales and marginal profit margin on the products actually sold and to calculate both past and future lost profits. The defendant was able to utilize Mr. Ross' opinion in reaching a satisfactory settlement with the plaintiffs.

- An actress told her agent that she would be willing to make a film. In turn, her manager told the production company that the actress had agreed to make the film. When she read the nudity provisions of the contract, the actress refused to sign. The production company made the film using another actress, but sued the first actress, alleging breach of contract. Counsel for the actress retained Mr. Ross to determine what damages, if any, were sustained by the plaintiff. A judge found in favor of the defendant on liability on the grounds that the agent did not have the authority to bind the actress verbally. The Court further found that the plaintiff's damage claim was speculative and could not be use as a basis for damages.

- The plaintiff was the producer and distributor of motion pictures in a niche market. It sued the reproduction company after the videos actually distributed mistakenly contained inappropriate material instead of the plaintiff's religiously-oriented film. Counsel for plaintiff engaged BLR&Co to calculate lost profits and out-of-pocket expenditures. Mr. Ross testified at deposition and trial, and the jury awarded damages in virtually the same amount testified to by Mr. Ross.

- The members of a successful rock and roll band sued their former business manager, a major accounting firm, for violations of the Financial Advisors Act. Mr. Ross developed a damage methodology to calculate the after-tax position the plaintiffs would have been in had they received reasonable investment advice. Prior to Mr. Ross' trial testimony, the court granted a directed verdict in favor of the defendant with respect to most of the plaintiffs' claims. In one evening, Mr. Ross recalculated the damages and created new trial presentation charts. After his testimony, the jury awarded virtually all of the remaining damages permissible under the trial court's rulings.

- Mr. Ross was appointed as a referee by a state court judge to determine the net profits of a motion picture. The team examined all sources of revenue, including domestic and foreign theatrical release, videotape and cable television. They also analyzed production and distribution expenditures to determine which should be included in accordance with the terms of the contract in question. After several days of both percipient and expert testimony, Mr. Ross provided an accounting interpretation of the relevant clauses in various agreements and produced a report indicating the net profits of the photoplay, setting forth a detailed reasoning for each decision.

- An attorney offered investment and tax advice to a screenwriter which resulted in the loss of most of his estate. After the screenwriter's death, counsel for the family retained Mr. Ross as a damage expert in a legal malpractice action. Mr. Ross testified in state court to millions of dollars in damages. The jury verdict was in favor of the plaintiff for the full amount testified to by Mr. Ross.

- Bruce L. Ross & Company was retained by counsel for a motion picture copyright licensor that had been sued for infringing on the copyrights of five films from the Golden Age of Mexican Cinema. Mr. Ross and his team were requested to analyze the value of licenses to distribute home videos of the films as compared to the statutory damages under copyright law. Mr. Ross provided an Appraisal Report applying and reconciling multiple valuation approaches and including an analysis of the home video market. The case settled after expert depositions but prior to trial.

# Environmental

- A class action was filed on behalf of business owners against a major oil company and others for lost profits and out-of-pocket expenditures resulting from an oil spill. Mr. Ross assisted in the certification of the class by defining damage methodologies for each subclass. He opined that this standardized damage methodology could be applied to each individual subclass member. The class was certified and he is awaiting a determination of liability.

- A national real estate developer proceeded with building a large multi-unit apartment complex in reliance upon a contract with the seller of the property to clean up toxic contamination impacting a portion of the property. The seller failed to perform the cleanup, resulting in the abandonment of approximately one-quarter of the project. Mr. Ross calculated and verified all expenditures made on the project including overhead and interest. He developed a decision matrix to allocate the appropriate portion of those expenses to the unbuilt portion of project. A large, statistically-verified, computerized database was used to perform the calculations flowing out of the decision matrix.

- Several oil companies admitted liability with respect to multiple claims arising out of a major oil spill. Mr. Ross was retained by counsel for the defendant oil companies to assess damage claims from hotels, restaurants and fisheries. Using actual past earnings of the various entities, Mr. Ross developed evidence supporting the actual amount of damages suffered, which evidence was used as a basis for settlement negotiations. All claims were ultimately settled.

- Mr. Ross was retained by the defendants in an EPA superfund action to determine the expenditures made by the these defendants in their investigation and response to the contamination at the superfund site. These defendants had filed an action to recoup a portion of the expenditures from the third party defendants and the United States Air Force. In a separate matter, Mr. Ross was retained by first party defendants in an action against third party defendants for reimbursement of expenditures made at a superfund site. After Mr. Ross' deposition, the third party defendants stipulated to his opinion on the amount of expenditures made by the first party defendants at the superfund site.

- The owner of commercial real property sued one of its tenants for damages resulting from the tenant's contamination of the premises. Counsel for the owner retained Mr. Ross to calculate the lost development profits resulting from the contamination and remediation. This calculation involved a thorough understanding of the real estate market in the area of the contamination, the other projects already developed by the plaintiff and the capacity of the plaintiff to develop projects. The case was settled on terms favorable to the plaintiff.

- A museum sued a large utility company for damages resulting from the utility's contamination of the museum site. The museum claimed losses not only in the value of the property but also in connection with its operations both during and following remediation. Mr. Ross reviewed the fund-raising efforts of the museum, its future plans and the impact of possible restrictions to its future usage and developed a full damage model for each element of damages. At the request the Museum's board, Mr. Ross utilized the computer model in settlement meetings with the legal and accounting representatives of the utility. These and other meetings resulted in the successful settlement of the matter.

- Mr. Ross was retained by counsel for a major oil company in connection with insurance claims arising out of three Superfund sites. Mr. Ross determined the out-of-pocket expenditures incurred by the company in connection with the investigation of the sites, remediation of the contamination, legals fees incurred and settlements made.

## Fee Disputes

- Mr. Ross was retained by counsel for an insurance carrier to investigate the fees charged by another litigation consultant. He verified the actual hours spent, conducted interviews with the litigation consultant's personnel and reviewed the work performed. Utilizing the results of this work, the carrier was able to reduce materially the fees it was required to pay and to satisfy itself as to the validity of the payments already made.

- Counsel for a defendant real estate syndicator retained Mr. Ross to analyze fees charged by a law firm. Substantial payments had already been made, but the law firm sued for additional hundreds of thousands of dollars. Mr. Ross had the detailed descriptions of legal work digitized. Using this database, he was able to show that numerous claims made by the plaintiff law firm were not supported in the billings. In part as a result of Mr. Ross' expert testimony, the Court required the defendant to pay only minimal additional amounts.

- Mr. Ross was retained by an insurance carrier to investigate the propriety of legal fees incurred in a Cumis matter. As a result of this investigation, the fees claimed by counsel were reduced substantially.

## Financial Institutions

- A savings and loan purchased a portfolio of loans from a non-profit agency that created projects for low-income housing. One loan from the portfolio went bad, resulting in losses to the thrift. The S&L sought recovery for those losses. Mr. Ross and his team were retained by counsel for the defendant. Through a portfolio analysis involving many different facets, Mr. Ross was able to opine at deposition that, despite the losses from the bad loan, the overall portfolio still provided a premium to the S&L that compensated it for the risk of the investment. Mr. Ross further opined that the S&L had received the benefit of its bargain. These opinions assisted counsel for the defense in negotiating a voluntary dismissal of the lawsuit.

- Mr. Ross acted as the court-appointed monitor to supervise the execution of a settlement agreement between a certified class and a savings and loan. This engagement involved extensive system-testing and examination of the various steps taken by the defendant in following the terms of the settlement.

- Mr. Ross was the designated damage expert on behalf of the Federal Home Loan Bank Board in an action against the officers and directors of a savings and loan seized by federal regulators. Mr. Ross analyzed over 50 loans made by the savings and loan to determine the actual amount lost on each loan. The case was settled on the second day of Mr. Ross' deposition testimony on terms satisfactory to the government.

- Counsel for the Resolution Trust Corporation (RTC) retained Mr. Ross to determine reasonable salary levels for executives at a large savings and loan. This information was used to substantiate a claim that the executives of a specific institution were overpaid.

- A group of Midwest investors made a substantial investment in a failing bank in California. The investment carried an option to allow further investment if desired. The California bank survived and was bought by another institution, creating significant value for the owners of the bank. The Midwest investors sued in federal court alleging that management, with knowledge of the negotiations to sell the bank, provided false information to the investors to deter them from exercising their option. Mr. Ross was retained by counsel for the plaintiffs as a consultant to assist in the development of a damage claim. He and his staff prepared numerous damage scenarios that assisted the plaintiffs in reaching a satisfactory settlement.

## Fraud Investigations

- Bruce L. Ross & Company was retained by counsel for a motion picture company in an arbitration to determine if the defendants had fairly charged for expenses associated with the marketing and distribution in the United States of movies acquired from East Asian sources. Mr. Ross and his team performed an analysis of a number of different specific issues that the underlying client raised and, in addition, identified other issues relevant to the arbitration. In addition to testifying at the arbitration, Mr. Ross, at his suggestion, was allowed by the arbitrator to meet directly with accountant retained by the defendants. This meeting allowed a number of issues to be directly resolved and left a specific set of remaining decisions for the arbitrator to be made. Most of the remaining decisions made by the arbitrator were consistent with Mr. Ross's opinions.

- A senior financial officer of a major public institution was found to be embezzling funds. Mr. Ross was engaged by the institution to determine how the fraud was perpetrated, its monetary extent and to prepare an insurance claim for the losses sustained. Mr. Ross participated in the settlement negotiations, which resulted in a substantial recovery by the institution.

- A father gifted a substantial interest in a large shopping mall to his son and daughter. Many years later, the son discovered that the father had "misappropriated" funds and corporate opportunities in the course of managing the mall. Counsel for the son retained Mr. Ross to perform a fraud investigation. Mr. Ross outlined the tasks to be performed and identified the issues which would need to be addressed in conjunction with the investigation. After a protracted investigation, the parties resolved the matter.

- Mr. Ross was retained by counsel representing a major foreign-based hotel company that became a passive investor in a California hotel property. The active partner was responsible for all activities, including collecting capital contributions and making expenditures. The hotel construction was never completed and the property ultimately underwent foreclosure. Mr. Ross was asked to investigate all capital contributions and to trace monies through an elaborate array of accounts set up by the active partner to determine the amounts improperly taken by the active partner. The Court ruled that Mr. Ross' analyses were correct and awarded damages to the plaintiff.

- Upon the termination of its license agreement with a major credit reporting vendor, a licensor of proprietary technology exercised its right to audit the licensee's books and records. The Bruce L. Ross & Company staff spent several days on-site reviewing documents and working with the licensee's personnel to generate reports. The staff discovered two significant accounting errors.

- A doctor/inventor licensed technology to a major medical device distributor and manufacturer. The medical device company sold thousands of products incorporating the doctor's technology. The doctor exercised his contractual right to audit the company's books and records and Bruce L. Ross & Company was appointed auditor. The company refused to produce some of the information requested and to make much of the data accessible in digital form. Ross and his team spent months digitizing the information, creating a custom Microsoft Access database to assist in the analysis and reconciling the output with royalty reports that had been provided to the doctor. Mr. Ross ultimately testified in a patent infringement action that the company had not made sufficient relevant data available to him to allow him to complete his audit. A jury ordered the company to pay the doctor the entire cost of the audit plus punitive damages, in addition to significant damages for patent infringement.

- A company invested substantial funds in the development of a multi-use real estate project, including light rail, a parking structure, retail and office space, and involving preservation of historic property. There were time delays and budget overruns, which were not disclosed in the contractor's budget forecasts but which, when they became apparent, substantially reduced the project's profits. The investor retained Bruce L. Ross & Company to investigate the contractor to determine why these delays and overruns had occurred. Mr. Ross and his team analyzed the financial records of the project and reported their conclusions to the parties. The information provided enabled the investor to negotiate a resolution with the contractor limiting the losses suffered, without the need for litigation.

- A state agency awarded an advertising company a contract to promote its tobacco education media campaign. The agency and the company agreed to follow a payment procedure whereby the agency would make payment to the company after receiving verification it had paid its vendors. A company vendor sued the agency for sums which it could not collect from the company. Bruce L. Ross & Company verified the vendor's claim, making necessary adjustments to correspond with the books, records and documentation.

- A large, up-scale chain of jewelry stores retained Mr. Ross to investigate a number of transactions involving one of its stores. The transactions involved shipments out of state to avoid California sales tax and multiple charges to credit cards to defraud the issuing bank. Mr. Ross examined the store's transactions over a period of time and made recommendations for improving record-keeping, anti-fraud procedures and compliance with the merchant service agreement with the bank.

- Plaintiff was a security manager working for the Defendant, an aerospace company. Plaintiff was terminated and sued Defendant for wrongful termination. While employed by Defendant, Plaintiff obtained cell phones for certain employees who were working on classified programs. In order to maintain confidentiality, Plaintiff paid for the equipment and the cell phone bills personally and subsequently requested reimbursement by several different means: check requests, petty cash requests and expense reports. The BLR&Co. team reviewed data and documents pertaining to the Plaintiff's expense reimbursement requests and found evidence that the Plaintiff had been "double-dipping," repeatedly requesting and receiving multiple reimbursements for the same expense. The case settled at mediation prior to trial, based in large part upon the findings produced by the BLR&Co. work.

## Government

- A city and its redevelopment agency entered into a Memorandum of Understanding with a company pursuant to which the parties would cooperate in the acquisition of certain real property and the building of a waste transfer facility. The company, in derogation of the Memorandum of Understanding, assisted others in acquiring the property and building a waste transfer facility thereon. The city was required to build its own, smaller direct transfer facility at another location. Ross and his team analyzed the rent differential, lost revenues as well as a number of other types of damages resulting from the defendants' breach of contract. The analysis included review of waste disposal requirements and fees within the greater municipal area in which the lawsuit arose.

- Mr. Ross was engaged by counsel for the defendant utility in a series of actions brought by a group of subcontractors arising out of a government-ordered home insulation program. The work involved an in-depth analysis of all aspects of the financial and managerial workings of the subcontractors. Mr. Ross and his team also performed a statistical analysis of a large utility database to determine the scope of material discrepancies in the subcontractor program. The case was ultimately settled on terms favorable to the defendant.

- A county was in a dispute with a private company, which claimed that it was unable to pay a large settlement. Desiring to settle the dispute, the county requested that Bruce L. Ross & Company perform an investigation into the financial capability of the company to make payments to the county. Mr. Ross and his team analyzed the company's financial condition, within the scope permitted by the parties, and submitted two reports to the county. The county used the work to determine its course of action.

- An experienced real estate developer sued a city and its redevelopment agency after the City Council failed to approve his proposal for a redevelopment project after the developer decided not to hire a consultant recommended by a City Council member. It was later revealed that the mayor and two members of the Council had been involved in a scheme that involved the exchange of their votes for money, sometimes involving the same consultant. Ross was retained by counsel for the developer to calculate lost profits on two phases of the proposed redevelopment project. Based on financial projections and valuations used in connection with the proposal, Ross calculated lost profits with respect to both phases of the project, which included an analysis of projections arising out of two different scenarios.

- A partnership entered into a variety of agreements with a city and its redevelopment agency for the development of a shopping center. In the course of the development, the city foreclosed and portions of the property were sold to third parties. The partnership retained Bruce L. Ross & Company to quantify the damages for the foreclosure, which had been found wrongful by an earlier Court. The damage claim included both loss in value of the property to the partnership, under the assumption that the foreclosure sale never should have occurred, as well as lost profits relating to the operation of the shopping center.

## Health Care

- A minority shareholder brought suit individually and derivatively against the majority owner of two corporations that operate skilled nursing facilities, alleging breach of fiduciary duty. Bruce L. Ross & Company calculated damages, including excess salary paid to the majority shareholder, expenses incurred in the formation of a third company for the purpose of assuming the financial and management functions of two existing corporations, consulting fees and expenses paid to a third party and other self-dealing by the majority shareholder. Ross performed an extensive review of the books and records of the companies, with particular focus on the actual and should-have-been salaries and expenses.

- Plaintiffs in a class action matter claimed that a major health insurer wrongfully deprived class members of their auto-medpay benefits, the medical benefits provided in an automobile insurance policy. Counsel for plaintiffs retained Mr. Ross to assist in mediation discussions by providing feedback on database searches designed to extract class members from the health insurer's vast databases. To assist with settlement, Mr. Ross provided a declaration estimating the benefit that could be provided by restitution as well as the benefit that would be afforded by an injunction. He based his estimates on an analysis performed by his team of the insurer's claim files and statistical inferences drawn therefrom.

- Mr. Ross was retained to analyze whether Medicare fraud had been perpetrated by the defendants and to calculate damages sustained by the US Government and the lost earnings of the plaintiff whistle blower. Mr. Ross issued several federal reports and provided testimony at both deposition and trial. The jury found in favor of the plaintiff and awarded substantial damages.

- Two radiologists contracted to provide radiology services at a hospital. Part of the agreement included a monthly marketing fee payable by the physicians to the hospital. When the doctors failed to make the payments, the hospital terminated the contract and sued for the back marketing fees. The doctors cross-complained for breach of contract and fraud, claiming millions of dollars in losses. Mr. Ross was retained by the hospital as a rebuttal witness. He testified at trial to the errors committed by the damage expert retained by the doctors. The jury awarded all monies sought by the hospital, and only $20,000 to the doctors on their cross-complaint.

- The vendor of pharmaceutical computers sued its OEM supplier, alleging failure of the system to meet agreed-upon specifications and the OEM's failure to provide follow-on service to customers. Mr. Ross projected plaintiff's revenues by defining the market and determining the plaintiff's expected market share. He estimated the expenses required to earn such revenue and determined the out-of-pocket expenses actually incurred by the plaintiff during its attempt to enter the market. Mr. Ross provided an opinion as to lost profits and also addressed questions as to management capabilities and the financial resources of plaintiff. The case was settled after Mr. Ross' deposition.

## Insurance

- Counsel for the plaintiffs retained Mr. Ross to examine the public and internal records of a large insurer to show that, despite strong growth and a top rating from the insurance industry, the carrier did not base its dividends to policyholders on actual experience or charge its policyholders actual expenses. These actions resulted in significant damages to policyholders. Mr. Ross also testified at deposition to the threshold of materiality for the purposes of determining punitive damages. The matter was settled shortly after Mr. Ross' deposition testimony on terms favorable to the plaintiffs.

- Plaintiffs in a class action matter claimed that a major health insurer wrongfully deprived class members of their auto-medpay benefits, the medical benefits provided in an automobile insurance policy. Counsel for plaintiffs retained Mr. Ross to assist in mediation discussions by providing feedback on database searches designed to extract class members from the health insurer's vast databases. To assist with settlement, Mr. Ross provided a declaration estimating the benefit that could be provided by restitution as well as the benefit that would be afforded by an injunction. He based his estimates on an analysis performed by his team of the insurer's claim files and statistical inferences drawn therefrom.

- Bruce L. Ross was retained by counsel for the plaintiff in a class action brought by claimants who allege that their workers' compensation disability payments were incorrectly calculated by insurer defendants. Mr. Ross and his team are developing database queries and Visual Basic code to identify payments within voluminous claims data that give rise to statutory penalties. These situations can include late payments, skipped payments and payments at an incorrect rate. Work is in process on this matter.

- A landlord requested that its tenant, a restaurant, move temporarily while required earthquake repairs were made to the building. The restaurant owners instead terminated their lease and moved the restaurant permanently to another location. The restaurant owners then sued the landlord for lost profits and loss in business value. Mr. Ross found that the restaurant owners were more profitable at the new location than the old. The case was settled just prior to trial on terms very favorable to the defendant.

- The plaintiff, a seller of retail and wholesale products to the local agricultural community, sued its insurance provider for losses sustained as the result of successive natural disasters. Bruce L. Ross & Company calculated both past and future lost profits and performed an analysis of marginal profits as well. The damage claim took into account mitigation efforts as well as an offset for payment of proceeds of business interruption insurance.

- Mr. Ross testified in state court in connection with a dispute between insurance brokers arising out of the transfer of a large volume of insurance business from one to the other. Mr. Ross analyzed the accounting records supporting the transfer and provided an accounting interpretation of various insurance contracts.

- A major insurance company sued an insurance adjuster alleging fraud. After most of the claims were dismissed, the matter went to trial over one small claim. The court found in favor of the adjuster. The insurance company appealed and the trial court's decision was affirmed. The insurance company appealed this ruling to the California Supreme Court, but review was denied. The adjuster then filed suit for malicious prosecution. Mr. Ross was retained by counsel for the adjuster to calculate lost income as well as loss in value of the business. The case was resolved by summary judgment.

## Intellectual Property

- Counsel for plaintiff and cross-defendant in a federal matter retained Mr. Ross when a complaint for violation of intellectual property rights was defended by the filing of an antitrust cross-claim. Mr. Ross was retained to analyze the allegations of lost profits and loss in business value. After extensive research, Mr. Ross opined that no one could form a non-speculative opinion regarding damages for lost profit and loss in business value. Mr. Ross also produced a detailed report in rebuttal to the report submitted by cross-claimant's damage expert. The case was settled on terms favorable to the plaintiff and cross-defendant.

- A textile manufacturer filed a copyright infringement suit against another manufacturer. The court found no infringement and dismissed the action. The defendant in the copyright action then sued for malicious prosecution. Mr. Ross was retained by counsel for the textile manufacturer to critique the damage analysis submitted on behalf of the plaintiff. Mr. Ross was able to establish that the damage claim was unreliable and speculative. The parties settled on terms satisfactory to the defendant.

- Plaintiff was in the business of designing, manufacturing, marketing and distributing women's footwear and related accessories. Defendants, major clothing design and marketing companies, their licensing affiliates, and a manufacturing subcontractor, began marketing women's shoes under a name similar to the one used by Plaintiff. Plaintiff sued for trademark infringement. Defendants counter-claimed, alleging that their trademarks pre-dated those used by Plaintiff. BLR&Co. was retained by counsel for Plaintiff to determine the Defendants' revenues for the purpose of the complaint and the Counter-Defendant's expenses for the purpose of the counter-claim. We also assisted counsel in developing questions and critique points for the opposing expert. The case settled shortly before trial.

- The owner of a registered trademark sued the owner of a music television station alleging infringement. Mr. Ross was retained by counsel for the plaintiff to determine the profits earned by the defendant, lost profits and royalties, the cost of corrective advertising and the threshold level for punitive damages. The engagement involved considerable industry research regarding the cable industry in order to determine a reasonable royalty rate and the level of sales of a bundled product. Mr. Ross submitted a federal report and testified at deposition.

- A clothing manufacturer with brand name recognition but lagging sales entered into an agreement with the defendant company to pay a finder's fee in connection with the development of a relationship with a major discount chain. Over time, the clothing manufacturer evolved from apparel provider to licensor of the brand. In its agreement with the chain, the manufacturer was also obligated to provide design services which were not contemplated under the finder's fee agreement. When it came to paying the finder's fee, the manufacturer claimed that a large portion of the revenue received from the chain was attributable to the design services and not to sales or royalties. Similarly, it claimed that a large percentage of its costs were allocable to the design services. Bruce L. Ross & Company was retained by counsel for the defense to determine the appropriate allocation of the costs and revenues. Mr. Ross testified at arbitration, resulting in an award consistent with his opinion.

- Plaintiff and cross-defendant retained Mr. Ross to perform royalty and lost profit calculations on a large patent infringement case involving the oil industry. He addressed significant cost accounting and transfer pricing issues, providing a thorough analysis of product lines, foreign subsidiaries and overhead allocation methodologies. He investigated the financial and technical performance of both plaintiff and defendant companies, and analyzed and developed computer models for lost profit claims of over $2.5 billion. These computer models provided, among other benefits, guidance to the most significant and sensitive areas of the case. Counsel then was able to allocate resources according to the results of sensitivity analyses.

- Counsel for plaintiff retained Mr. Ross in an action against a state's university system. The plaintiff claimed that he had invented a computerized, portable intensive care bed unit. The university terminated the plaintiff from his position and discarded the ICU engineering model and the related notes and computer files. Mr. Ross calculated the current cost of redeveloping the engineering model and calculated lost royalties assuming the plaintiff would have been able to obtain a patent on the product. The jury found in favor of the plaintiff.

- Mr. Ross was retained by counsel for the defense in a patent action filed by a major distributor of athletic shoes against a third-party distributor and a number of large retailing firms. The case involved the sale of lighted athletic shoes for children. Assuming liability, Mr. Ross calculated amount of lost profits suffered by the plaintiff and the amount of a reasonable royalty on the shoes covered by the patent.

- A patent owner and manufacturer sued a large dental supplier for patent and copyright infringement in connection with the manufacture and distribution of tooth colored materials  used in the making of dental crowns. Counsel for plaintiff retained Bruce L. Ross & Company to calculate the both lost profits and a reasonable royalty. The Ross team analyzed the hypothetical negotiation, considering the economic expectations of both parties and then adjusted the result after considering the other Georgia-Pacific factors.

- An educational institution granted a biotech company certain specified rights to a portfolio of patents, which included the right to make and sell a catalyst covered by one of the patents, but not the right for the company to use the catalyst itself. Thereafter, educational institution developed an improved process for making certain catalysts, which became the subject of a new patent which was not licensed by the company. Another start-up company licensed the new patent. The biotech company sued both the academic institution and the start-up company. They retained Mr. Ross to rebut plaintiff's expert on the issue of damages. Mr. Ross prepared a rebuttal report addressing the issues of disgorgement and lost profits, and established that the opinion proffered by plaintiff's expert failed to meet professional standards.

- A cosmetic company and vitamin company utilized a body-type analysis developed by the doctor and contained in the doctor's books. The companies, which both operated multi-level marketing operations, used both the doctor's name and his work in connection with booking tools sold to their consultants. The doctor filed two separate actions, designating Mr. Ross as a damage expert. Mr. Ross and his team analyzed the sales and financial records of the defendant companies to determine what portion of their revenues were derived from use of the plaintiff's name and work. He also applied his punitive damage analysis to calculate the threshold amount of punitive damages. Both cases were settled after Mr. Ross' testimony at deposition.

■   A national chain of dollar stores sold a knock-off of a patented flashlight. The owner of the patent sued for patent infringement, claiming damages in excess of the revenues actually collected by the infringer. Bruce L. Ross & Company was retained to address the issues of disgorgement as well as reasonable royalties. Ross provided opinions regarding a reasonable royalty, stressing the economic analysis underlying the hypothetical negotiation, adjusting the result of the hypothetical negotiation for the other Georgia-Pacific factors.

## Labor & Employment

■   Counsel for an employer retained Bruce L. Ross & Company in connection with a class action lawsuit brought by sales representatives who sold advertising on a commission basis. Some of the class members alleged that the employer failed to compensate them properly for expenses and benefits. Mr. Ross and his team created an employee database and analyzed the information, documenting whether the class members were employees or independent contractors and to what extent they had been compensated.

■   The defendant in a criminal matter pleaded guilty to a variety of felony charges. In the sentencing process, the government contended that her compensation was excessive, tending to indicate that she received additional payment in exchange for engaging in fraudulent conduct. Counsel for the defendant retained Mr. Ross to perform a compensation analysis to be included in the sentencing brief. He conducted industry research and formed an opinion as to the range of compensation which would be reasonable under the circumstances. This opinion involved the valuation of a different stock options plans and other non-salary compensation. Mr. Ross was able to show that the defendant's total compensation was comparable to other similarly situated employees within the relevant industry.

■   A production driver was arrested and held in jail for possession of an illegal substance. He sued a movie actor and studio alleging that he was asked to pick up the package in the course of his employment. He claimed that the arrest and incarceration impacted his ability to obtain work and caused damage to his related helicopter business. Mr. Ross formulated a model that calculated the plaintiffs lost earnings, clearly showing a lack of causation for the plaintiff's allegations. The case was settled during trial prior to Mr. Ross' testimony.

■   Two senior executives of a major entertainment company left the company in cooperation with the company's president in order to establish their own firm in a related field. They sought legal advice to ensure that their activities were legal. After the start of their new firm, the president of the entertainment company, a part owner of the new company, was accused of fraud. The two executives lost their business and their careers at the entertainment company. Mr. Ross was retained by plaintiffs' counsel in a legal malpractice action. He performed a calculation of the future lost earnings of the two executives, including an analysis of whether companies losing money can properly increase the salaries of their executives. The case was settled in the middle of trial for several million of dollars.

- Counsel for a defendant hospital retained Mr. Ross to analyze the damage claim and calculate potential damages claimed by a nurse who had been terminated. Mr. Ross analyzed the nurse's employment history, both prior and subsequent to termination, performed industry research and investigated job opportunities for like work. He was able to show that the nurse's damage claim was speculative and inaccurate in many respects. The jury found liability, but awarded damages in an amount even less than that opined to by

- Mr. Ross was retained by counsel for a large unified school district in connection with an employee's allegations of wrongful termination, racism and discrimination against the medically handicapped. Mr. Ross calculated the plaintiff's lost earnings and benefits and analyzed records relating the racial classification of other employees working in the same district department. Mr. Ross was able to show that there was no correlation between race and the termination of particular employees.  Mr. Ross also analyzed documentation pertaining the plaintiff's other financial dealings and was able to show a history of questionable transactions.

- At the request of counsel for the plaintiff, Mr. Ross calculated the lost earnings of a terminated aerospace engineer. He analyzed both the plaintiff's past earnings and benefits and his history of promotion. He also determined the expected mitigation earnings and benefits. Mr. Ross testified at both deposition and trial. The jury found in favor of the plaintiff and awarded damages consistent with Mr. Ross' opinion.

- Bruce L. Ross & Company was retained to analyze defendant's exposure to overtime and meal break penalties for a single employee.  Ross and his team estimated potential damages and communicated the results to the client.

- A staffing company was accused of stealing employees from one of its competitors. Plaintiff's expert calculated damages, including a loss in business value and out-of-pocket expenses. Bruce L. Ross and Company was retained to provide analysis and opinions in rebuttal. The BLR&Co team created a model of Plaintiff's expert's calculations and identified numerous computational and data-handling errors as well as a failure to perform adequate due diligence. Mr. Ross critiqued the Plaintiff's expert's valuation opinion on a number of grounds, including his failure to follow professional standards, the inadequacy of his regression analysis and the impropriety of his market approach. As a result, the Arbitrator awarded only a small fraction of the damages sought by Plaintiff.

- An investment banker alleged that he had been wrongfully terminated and denied his share of the profits of his firm.  BLR&Co. was engaged to compute damages through the date of termination and to investigate whether the banker's employer was the alter ego of a larger organization. Mr. Ross testified at deposition regarding damages and the alter ego issue. The case settled prior to trial.

- Nine limousine drivers sued their employer alleging breach of contract, fraud  and a variety of other tortious causes of action. At issue was whether the plaintiffs were employees or independent contractors. Mr. Ross and his team constructed a database of all of the different damages for each of the nine plaintiffs. The case settled immediately prior to trial on terms satisfactory to both parties.

■ The American subsidiary of a foreign manufacturer and supplier of automotive performance products and accessories was sued for failing to promote a female employee and for reassigning her to an undesirable position. Bruce L. Ross & Company was retained by counsel for the defendant to determine whether defendant's decisions were reasonable notwithstanding the gender of the plaintiff. Mr. Ross analyzed the financial condition of the company, the market and the background of the personnel available to the company. The case settled during trial.

■ An executive sued a major aerospace company for wrongful termination as a result of alleged insider trading. Mr. Ross calculated his damages for lost salary and benefits. He also calculated the value of the employee's stock options using the Black-Scholes model. Mr. Ross testified regarding damages at arbitration.

■ A union employee with seniority was laid off by the defendant. Some time later, all of the other employees in his department who had been laid off at the same time were rehired, including the foreman's son who had less seniority. The employee sued and his counsel engaged Mr. Ross to determine damages. Mr. Ross investigated the employee's salary and promotion history, analyzed the union contract and conducted industry research to develop the damage claim. The court awarded damages commensurate with the amount testified to by Mr. Ross.

■ Bruce L. Ross & Company was retained by counsel for a major title insurance company in connection with an action involving the hiring by a competitor of a number of employees from thirteen different business units. Mr. Ross and his team, with the assistance of an outside statistician, analyzed the performance of these units both before and after the "raidings" in comparison to the overall residential real estate market to determine whether there was a correlation between the loss of these employees and the decline in the company's performance. They also developed a model to calculate damages based on the correlation. During the course of the case, the number of units at issue was reduced. Mr. Ross testified both at deposition and at trial. The court awarded damages for contract interference in favor of the title insurance company.

## Landlord/Tenant Disputes

■ A lawyer and owner of a high-end restaurant and magic club became involved in a dispute with his landlord regarding a potential investment in rebuilding the shopping center in which the club was located as well as maintenance of the premises and parking for his customers. He stopped paying rent and then breached his remaining twenty-year lease by moving out. He then sued the landlord, alleging that he had been forced to move and claiming the loss in value of his lease. Mr. Ross demonstrated that the restaurant had been losing money and could expect to lose money throughout the entire remaining term of its lease. He also surveyed other restaurants in Los Angeles and Orange Counties to show the impact of the recession of these properties. The case settled during trial.

- Plaintiffs leased commercial property from defendants under a lease agreement which provided for fifteen months free rent. Shortly after expiration of the fifteen-month period, plaintiffs claimed they could not make the payments. The parties amended the lease to provide for a lower monthly rental, with the difference between the reduced amount and the actual monthly rent to be accumulated for later payment. The tenants sued, and the landlord cross-complained for breach of the lease. Counsel for the defense retained Mr. Ross to provide an opinion of damages. He compiled a database of transactions by the tenants to determine actual disbursements as well as deposits made from payments received under a sublease.

- Counsel representing the owner of a high rise office building retained Mr. Ross to assist in an action filed by one of the building's tenants. This tenant claimed that the building management allowed unauthorized access to his suite which resulted in the loss of computer files and various pieces of furniture. The plaintiff claimed that, as a result of this loss, his planned multilevel worldwide travel business failed. After reviewing all available records, including bank statements and checks, Mr. Ross testified at trial that plaintiff's entire calculation of lost profits and loss in business value was speculative. The jury found conclusively in favor of the defendant.

## Malicious Prosecution

- In an action by a Hollywood studio against a cinematographer which alleged kickbacks paid by a video company, the jury found in favor of the defendants. The defendants then sued the studio for malicious prosecution, contending that, even if the studio had filed the action in good faith, it had received sufficient information exonerating the cinematographer prior to trial. Mr. Ross analyzed the financial records of the cinematographer and the video company and traced cash payments and cash deposits. He was able to show that the documents purportedly exonerating the cinematographer were unsubstantiated and that the timing of checks and deposits to cash made by the video company did not correspond. The matter was settled prior to trial.

- A major insurance company sued an insurance adjuster alleging fraud. After most of the claims were dismissed, the matter went to trial over one small claim. The court found in favor of the adjuster. The insurance company appealed and the trial court's decision was affirmed. The insurance company appealed this ruling to the California Supreme Court, but review was denied. The adjuster then filed suit for malicious prosecution. Mr. Ross was retained by counsel for the adjuster to calculate lost income as well as loss in value of the business. The case was resolved by summary judgment.

- The parties to a farmout agreement relating to foreign oil exploration submitted a dispute to arbitration in California. The arbitration panel found both defendants, parent and subsidiary, liable. Ultimately, the District Court in California found that the parent company was not the alter ego of the subsidiary and, therefore, was not liable under the farmout agreement. Before that decision became final, the plaintiff filed an action in Texas state court seeking enforcement of the overturned California judgment against the parent company and one of its directors. The case was removed to federal court which found in favor of the plaintiffs. The judgment was reversed on appeal and the case dismissed. Mr. Ross and his associates analyzed the books and records of the parent and the individual director and determined the damages suffered as a result of the Texas action. These damages included lost profits, attorneys' fees and litigation expenses as well as the loss to the company of the time required by the director to defend the Texas action. A jury awarded damages commensurate with the BLR&Co. conclusions.

## Marital Dissolution

- A marital dissolution necessitated the valuation of a minority controlling interest in four publicly-held companies that had been taken private in leveraged buyouts. This valuation was complicated by the presence of different classes of stock and the highly leveraged nature of each company. Mr. Ross valued each company, providing the basis for a settlement favorable to his client.

- A writer and producer and his fiancee entered into an antenuptial agreement pursuant to which the fiancee waived her rights to all future earnings from the services of her husband in return for a specific cash payment. The marriage lasted over 25 years, during which time the husband earned hundreds of millions of dollars. Attached to the antenuptial agreement was a statement of the husband's assets and liabilities, which appeared to value the husband's rights in various television and movie projects at zero. Mr. Ross was retained to determine the fair market value of the husband's interests as of the time of the antenuptial agreement. The work included an accounting analysis of complex entertainment agreements. This matter was settled on terms satisfactory to the wife.

- Mr. Ross was retained by counsel for the respondent to analyze petitioner's claim of $8 million in fraudulent conveyances made by the respondent. After his investigation, Mr. Ross testified in court that he had found fraudulent conveyances of $1.1 million. The court ruled that the respondent was required to reimburse the community in the sum of $1.3 million.

- Counsel for the wife in a marital dissolution action sought to reopen the case, alleging fraud on the part of the husband. During the original dissolution proceedings, the court valued the community's minority interest in an investment on the family corporation's books as negligible. Within a year and half, the company went public and the value of the investment stock soared. Mr. Ross analyzed the stock as of the 1985 valuation date and found that the fair market value of the stock at that time was in line with the original value because all of the information available at that time indicated a nominal value. In the reopened case, the court found no damages associated with the value of the investment stock.

- Mr. Ross was retained by counsel representing the senior partner of a mid-sized litigation firm to value the partner's majority interest in the firm. He was asked to comment specifically on the amount of goodwill. The case was settled after Mr. Ross delivered his findings to counsel.

## Non-Profit

- Bruce L. Ross & Company was retained by counsel representing a major charitable organization in Southern California. The charitable organization had contracted for a yacht to be used for a fund-raising event. After public notice of the event and been given, the provider sold the yacht but was unable to offer a substitute vessel for the event. The charitable organization mitigated its damages by holding a smaller event on land. Mr. Ross calculated and testified to the losses incurred by the charitable organization, and the Court awarded one hundred percent of the damages he testified to at trial.

- Mr. Ross worked for a community organization whose members had suffered substantial losses in the Los Angeles riots. Mr. Ross designed a data base and forms to enable collection of information on over 5,000 claims. Mr. Ross and his team then assisted in the collection of this information from the community.

- The board of directors of a Southern California synagogue sought an accounting of its rabbi's discretionary fund. Mr. Ross reviewed the account records and informed the board as to how the money in the fund had been spent. This information enabled the board to take appropriate action which resulted in the rabbi's resignation from his position.

- A charitable foundation donated a substantial amount of money to a church in support of an effort to send bulk food to a foreign country. The church had records reflecting the shipment of food but was unable to show how the foundation's money was spent. The foundation sued. Mr. Ross was able to demonstrate that the accounting records maintained by the Church were not adequate to meet the conditions that had been set forth at the time of the donation. The case was settled prior to testimony by Mr. Ross.

- Two well known and respected institutions were possible recipients of the proceeds of a legal settlement worth tens of millions of dollars. They were in a dispute over their respective participation in the settlement. Mr. Ross and his staff reviewed 30 years of history regarding the giving and participation of selected individuals. Mr. Ross' testified at arbitration, and the panel's findings were consistent with Mr. Ross' opinions.

- A legal malpractice claim resulted from a lawyer's amendment of a charitable remainder trust which destroyed the tax benefits of the trust. The question arose as to whether the remainder of the trust would be sufficient to establish a chair at a University as desired by the decedent. Mr. Ross performed calculations showing that the University would receive far less than the necessary amounts for a chair. He also calculated the amount necessary to return the trust to its anticipated value. Mr. Ross testified at trial and the court awarded the amount necessary to restore the dollar value of the trust.

## Personal Injury/Wrongful Death

- Counsel for a hospital sued by a severely-handicapped minor retained Mr. Ross to calculate the child's lost future earnings and future medical expenses. Because a medical expert had opined that the child only had a few years to live, Mr. Ross applied the standards utilized in a wrongful death calculation. The matter settled prior to testimony of Mr. Ross.

- Mr. Ross was retained by counsel for a psychiatric hospital whose director was suing after being attacked in the hospital parking lot. Mr. Ross analyzed the lost earnings of the director and determined the amount of out-of-pocket costs caused by the incident. The case was settled after Mr. Ross presented his findings to counsel.

- Counsel for defendant retained Mr. Ross to analyze the expected earnings of an attorney in private practice after the attorney had sustained permanent brain damage in an automobile accident. The analysis was complicated by the fact that the attorney also managed and invested his wife's estate. Mr. Ross predicted the future earnings of the legal practice and measured the difference between the investment earnings actually received and those that would have occurred under the attorney's direct management. The case was settled on terms satisfactory to the defendant.

- A real estate investor was injured on the property of defendant and incapacitated for a number of months. He sought damages for both lost wages and a lost investment opportunity.  Mr. Ross and his team evaluated plaintiff's lost investment opportunity claim, demonstrating areas where more evidence was necessary and highlighting points where plaintiffs' assumptions were possibly flawed. This work assisted counsel in settlement negotiations.

- Mr. Ross was retained by counsel for a large national firm whose worker had accidentally killed a 38 year-old real estate developer with a wife and two children. Mr. Ross analyzed both the income from the developer' previous occupation and the results from his first and only housing development. He was able to demonstrate that the developer would have failed to earn profits even at the height of the real estate market in the late 1980s. The matter settled after Mr. Ross' deposition.

## Probate Litigation

- A legal malpractice claim resulted from a lawyer's amendment of a charitable remainder trust which destroyed the tax benefits of the trust. The question arose as to whether the remainder of the trust would be sufficient to establish a chair at a University as desired by the decedent. Mr. Ross performed calculations showing that the University would receive far less than the necessary amounts for a chair. He also calculated the amount necessary to return the trust to its anticipated value. Mr. Ross testified at trial and the court awarded the amount necessary to restore the dollar value of the trust.

■   A husband and wife died within a year of one another. The husband had amassed a substantial estate, mostly in real property, bank accounts, investment accounts and oil and gas leases. Title to the assets were held in a variety of forms. A dispute arose among the heirs of the wife, who died first, and the heirs of the husband, necessitating the characterization of the property as his separate property, her separate property or community property. The BLR&Co team identified and traced all of the monies through the various accounts and investments over a substantial period of time. This work enabled counsel for the estate to determine which of the assets were legitimately subject to the claims of the wife's heirs. The parties were then able to work out a settlement.

■

## Product Liability

■   The vendor of pharmaceutical computers sued its OEM supplier, alleging failure of the system to meet agreed-upon specifications and the OEM's failure to provide follow-on service to customers. Mr. Ross projected plaintiff's revenues by defining the market and determining the plaintiff's expected market share. He estimated the expenses required to earn such revenue and determined the out-of-pocket expenses actually incurred by the plaintiff during its attempt to enter the market. Mr. Ross provided an opinion as to lost profits and also addressed questions as to management capabilities and the financial resources of plaintiff. The case was settled after Mr. Ross' deposition.

■   Mr. Ross was the designated damage expert in a products liability matter between a vendor and its user. The user claimed that the vendor's dye improperly leached resulting in significant product returns and ultimately the loss of a key customer of the user. Mr. Ross investigated information relating to the actual amount of product sold by the user and the probable time frame of the total damages. Mr. Ross was deposed in this matter, which was settled before trial.

## Professional Malpractice

■   At the behest of a major creditor, a bankruptcy trustee filed a legal malpractice case against a law firm that had represented the company prior to its bankruptcy. The trustee claimed that the retainer required by the lawyer led directly to millions of dollars of losses and the bankruptcy of the company. The attorney cross-complained, alleging that the lawsuit cost him his legal practice. Mr. Ross was retained as an expert by counsel for the attorney. He developed and testified to at deposition a methodology showing the income lost by the attorney over the thirteen-year period during which the case was pending and the actual impact of the company's retainer payment. The matter ended during trial with the payment by the creditor of a seven-figure settlement to the attorney.

- The members of a successful rock and roll band sued their former business manager, a major accounting firm, for violations of the Financial Advisors Act. Mr. Ross developed a damage methodology to calculate the after-tax position the plaintiffs would have been in had they received reasonable investment advice. Prior to Mr. Ross' trial testimony, the court granted a directed verdict in favor of the defendant with respect to most of the plaintiffs' claims. In one evening, Mr. Ross recalculated the damages and created new trial presentation charts. After his testimony, the jury awarded virtually all of the remaining damages permissible under the trial court's rulings.

- A major accounting firm that had performed services in connection with the purchase of a California bank was sued for malpractice. Mr. Ross was retained on behalf of the plaintiff to analyze lost profits, out-of-pocket expenditures and both direct and consequential damages.

- A large medical practice sued a major accounting firm for malpractice in the delivery and installation of a computer system. Mr. Ross was retained as the damage expert on behalf of the plaintiff to analyze lost profits as well as additional costs incurred as a result of the system failure. The case settled shortly after Mr. Ross' deposition on terms favorable to the plaintiff.

## Punitive Damages

- A corporation brought a bad faith action in federal court against a group of insurance carriers and insurance syndicates for their failure to pay a loss under a fidelity bond issued to the plaintiff. Mr. Ross was asked by counsel for the plaintiff to opine as to the threshold of materiality to assist the trier of fact in assessing punitive damages. For the insurance carriers, Mr. Ross applied the punitive damage methodology he developed to determine that threshold. The matter was settled shortly after Mr. Ross submitted his report.

- Using a punitive damage methodology he developed, Mr. Ross testified in state court regarding punitive damages. This methodology uses the accounting concept of materiality to provide an objective basis for finding a minimum punitive damage award which would both punish the defendant and deter future culpable action. Mr. Ross applies this methodology to determine the point at which the impact on the company's financial statements becomes so material that it would come to the attention of upper management. No attempt is made to account for the egregiousness of the defendant's conduct. In this matter, the court awarded the plaintiff several times the amount calculated by Mr. Ross.

- Counsel for the plaintiffs retained Mr. Ross to examine the public and internal records of a large insurer to show that, despite strong growth and a top rating from the insurance industry, the carrier did not base its dividends to policyholders on actual experience or charge its policyholders actual expenses. These actions resulted in significant damages to policyholders. Mr. Ross also testified at deposition to the threshold of materiality for the purposes of determining punitive damages. The matter was settled shortly after Mr. Ross' deposition testimony on terms favorable to the plaintiffs.

- Counsel for the plaintiff retained Mr. Ross in a bad faith litigation matter against an insurance carrier with a complex organizational structure. By analyzing the way in which the carrier operated, Mr. Ross was able to testify in state court as to the appropriate organizational level for the assessment of punitive damages. After Mr. Ross' testimony, the opposing side stipulated to the insurance entity that would be subject to punitive damages.

- An older couple sued their real estate agent, alleging that he had conspired with the buyer to defraud them of the equity interest in their Bel Air estate. Mr. Ross was retained by counsel to provide expert testimony regarding loss of equity in real property and out-of-pocket expenditures. The jury found for the plaintiff and awarded damages in line with Mr. Ross' opinion. They also found that punitive damages should be awarded. Mr. Ross then applied his objective punitive damage methodology to determine the threshold of materiality and testified to the jury on the subject. While the jury was deliberating regarding punitive damages, the case settled with Mr. Ross acting in an advisory capacity during the settlement negotiations.

## Real Estate

- In an underlying dispute between the owners of a computerized title search company, four large accounting firms opined as to the value of the company at a certain date. A legal malpractice action was then filed by one of the parties. Mr. Ross was retained by counsel representing the law firm to critique each of the valuation opinions previously offered and to provide his own opinions and observations on valuation theory, technical issues and simple arithmetic. This matter was settled on terms favorable to the defendant.

- Mr. Ross was retained by counsel for a mobile home park owner to calculate the damages suffered by a class of tenants. Mr. Ross determined excess maintenance charges using a unique methodology which estimates this amount without the need for real estate appraisal opinions. He then calculated the loss in value for those homeowners who consummated sales during the damage period. Mr. Ross opined that these two amounts, together with out-of-pocket expenditures, constituted all of the economic losses of the plaintiffs.

- A national real estate developer proceeded with building a large multi-unit apartment complex in reliance upon a contract with the seller of the property to clean up toxic contamination impacting a portion of the property. The seller failed to perform the cleanup, resulting in the abandonment of approximately one-quarter of the project. Mr. Ross calculated and verified all expenditures made on the project including overhead and interest. He developed a decision matrix to allocate the appropriate portion of those expenses to the unbuilt portion of project. A large, statistically-verified, computerized database was used to perform the calculations flowing out of the decision matrix.

- The owner of commercial real property sued one of its tenants for damages resulting from the tenant's contamination of the premises. Counsel for the owner retained Mr. Ross to calculate the lost development profits resulting from the contamination and remediation. This calculation involved a thorough understanding of the real estate market in the area of the contamination, the other projects already developed by the plaintiff and the capacity of the plaintiff to develop projects. The case was settled on terms favorable to the plaintiff.

- A company invested substantial funds in the development of a multi-use real estate project, including light rail, a parking structure, retail and office space, and involving preservation of historic property. There were time delays and budget overruns, which were not disclosed in the contractor's budget forecasts but which, when they became apparent, substantially reduced the project's profits. The investor retained Bruce L. Ross & Company to investigate the contractor to determine why these delays and overruns had occurred. Mr. Ross and his team analyzed the financial records of the project and reported their conclusions to the parties. The information provided enabled the investor to negotiate a resolution with the contractor limiting the losses suffered, without the need for litigation.

- A figure-head general partner was put in charge of a large number of limited partnerships. The partnerships bought developed land from franchise operations and then leased the property back to the franchisees under a long-term lease. Unbeknownst to the general partner, the person actually controlling this process was writing up the value of the land significantly before the limited partnerships acquired it. The limited partners sued the general partner when the scheme was discovered. Mr. Ross was retained by counsel for the general partner to determine the size of the land markup for each partnership and to calculate the total benefits received from the partnerships by both the general partner and the individual actually in control. The matter was settled on terms acceptable to the general partner.

- A landlord requested that its tenant, a restaurant, move temporarily while required earthquake repairs were made to the building. The restaurant owners instead terminated their lease and moved the restaurant permanently to another location. The restaurant owners then sued the landlord for lost profits and loss in business value. Mr. Ross found that the restaurant owners were more profitable at the new location than the old. The case was settled just prior to trial on terms very favorable to the defendant.

- A dispute arose between a real estate developer and an architect arising out of the architect's failure to design a roof for ski condominiums adequate for winter conditions. Mr. Ross was retained by counsel for the architect. He showed that had the developer built additional units as planned, he would have incurred losses because of adverse market conditions, including recession and high interest rates. Therefore, the facts did not support the developer's claim for lost profits resulting from the problems with the roof. The jury ultimately did not award any damages to the developer.

- A seller and listing agent misrepresented the acreage of real property. After the buyer discovered the discrepancy, she sued on the basis that the missing acreage frustrated her efforts to develop the property. Mr. Ross was retained by counsel for the listing agent to compute the showing the losses of the buyer assuming liability. The case settled during trial.

- Mr. Ross was designated as damage expert by defendant in a lender liability action involving a proposed mixed use real estate development. The development included residential, office and retail space. Mr. Ross analyzed the losses suffered by the developer in light of its ability to raise alternative funding. The case was settled after Mr. Ross' deposition but before trial testimony.

- A wholesale real estate mortgage brokerage company sued a competitor for wrongfully hiring a number of its account executives. Counsel for the plaintiff retained Bruce L. Ross & Company to develop a non-speculative damage analysis. Because the account executives had relationships with certain brokers, Mr. Ross and his team analyzed the loans generated by these brokers both before and after the executives' departure.  By comparing the performance of each account executive's brokers before and after his or her departure date, the team developed a model to determine loans lost, lost revenues and lost profits and developed sophisticated queries to obtain information from the company's vast database. The matter settled prior to testimony.

- The buyers of residential real estate found that part of the property they had purchased in fact belonged to the next door neighbor. They sued the seller for rescission. Mr. Ross was retained by counsel for the plaintiffs to calculate the amounts necessary to return them to whole. The jury awarded all of the amounts calculated by Mr. Ross.

- A partnership entered into a variety of agreements with a city and its redevelopment agency for the development of a shopping center. In the course of the development, the city foreclosed and portions of the property were sold to third parties. The partnership retained Bruce L. Ross & Company to quantify the damages for the foreclosure, which had been found wrongful by an earlier Court. The damage claim included both loss in value of the property to the partnership, under the assumption that the foreclosure sale never should have occurred, as well as lost profits relating to the operation of the shopping center.

- Two real estate developers were involved in a number of deals together. They formed a single-purpose entity through which they managed the various projects they developed. They had a falling out, and one of the members continued using the resources of the joint entity to develop projects of his own without reimbursing the entity or the other member. Ultimately, he excluded the other member from the business entirely. The ousted member sued and his counsel retained Bruce L. Ross & Company to calculate damages. Mr. Ross and his team analyzed the joint entity as well as several dozen real estate ventures, both joint and separate, determining net cash flows, profits, shareholder imbalances and management fees owed in order to calculate damages associated with each project and the relationship as a whole. Mr. Ross testified at deposition and at mediation. He also participated in post-settlement resolution of various disputes.

## Securities

- Bruce L. Ross & Company was retained by counsel representing 16 municipalities, water districts and community redevelopment agencies to assist in recovering their investments in an a county-run investment pool. The County lost billions of dollars through complex financial investments and ultimately declared bankruptcy. Mr. Ross was asked to opine as to whether or not the County was solvent at the time of its bankruptcy and to determine if it was possible to trace the plaintiffs' investments through the investment pool. Mr. Ross performed the necessary analyses and wrote a report regarding his opinions. The matter was settled prior to Mr. Ross' testimony. Mr. Ross and his firm were then asked to participate in additional litigation brought against third parties.

■   A debtor-in-possession owned a securities dealer that was not in bankruptcy. It hired the defendant as President of that subsidiary. After the reorganization plan was rejected by the Court and a trustee was appointed, the trustee found indications of fraud and mismanagement on the part of the President. Mr. Ross was retained by counsel for the trustee to value what the subsidiary should have been worth assuming competent and honest management. Mr. Ross testified in writing and the Court found in favor of the trustee.

■   A government securities broker filed for bankruptcy and closed its doors. Retained by counsel representing the trustee in bankruptcy, Mr. Ross and his team went through 700 boxes of material to find over $150 million in preference items. This analysis required a thorough understanding of repos and reverse-repos and significant financial expertise. The bankruptcy estate paid all valid creditors' claims in full.

■   A minority shareholder brought suit individually and derivatively against the majority owner of two corporations that operate skilled nursing facilities, alleging breach of fiduciary duty. Bruce L. Ross & Company calculated damages, including excess salary paid to the majority shareholder, expenses incurred in the formation of a third company for the purpose of assuming the financial and management functions of two existing corporations, consulting fees and expenses paid to a third party and other self-dealing by the majority shareholder. Ross performed an extensive review of the books and records of the companies, with particular focus on the actual and should-have-been salaries and expenses.

■   Mr. Ross was retained by plaintiff, an elderly widow, who claimed that she had been placed into high risk investments. Mr. Ross analyzed numerous investments, mostly real estate limited partnerships, and ascertained the level of risk associated with each one. For those investments where the risk exceeded that noted on the plaintiff's written account application, Mr. Ross calculated her alternative earnings. After testimony by Mr. Ross at arbitration, the plaintiff received a favorable award.

■   Mr. Ross was retained by counsel for a major oil company that was the target of an hostile takeover. He analyzed numerous records from a large brokerage house and was able to demonstrate the illegal parking of shares. After Mr. Ross' findings were presented to counsel, the case settled.

## Special Master/Referee

■   Mr. Ross was appointed as a referee by a state court judge to determine the net profits of a motion picture. The team examined all sources of revenue, including domestic and foreign theatrical release, videotape and cable television. They also analyzed production and distribution expenditures to determine which should be included in accordance with the terms of the contract in question. After several days of both percipient and expert testimony, Mr. Ross provided an accounting interpretation of the relevant clauses in various agreements and produced a report indicating the net profits of the photoplay, setting forth a detailed reasoning for each decision.

- Mr. Ross was appointed as an arbitrator by a state court judge in a dispute between limited partners and a general partner. The partnership was engaged in the development of an office building. Mr. Ross found that the general partner had diverted partnership funds and commingled them with his personal assets and the assets of other limited partnerships under his control. Mr. Ross determined the amount of money that the general partner should return to the limited partnership together with prejudgment interest. Mr. Ross also made a finding that punitive damages should be awarded to the plaintiffs.

- Mr. Ross was appointed by a federal court judge as a special master in a dispute between a record company and one its distributors. He was asked to analyze and calculate the losses, if any, suffered by the distributor in five specific areas. Mr. Ross reviewed documents and took live testimony to arrive at his opinion.

# Bruce L. Ross & Company

# PROFESSIONAL RATES*

| | |
|---|---|
| Bruce L. Ross | $575 per hour |
| Randy Ellen Ross | $375 per hour |
| Managers | $375 per hour |
| Paraprofessionals | $75 per hour |

*Rates are subject to periodic change.

# PUBLICATIONS

From 2000 to the present Mr. Ross has no publications.

**History of Trial, Arbitration and Deposition Testimony**
**for Bruce L. Ross: 2009 - 2013**

| Retained By | Matter |
|---|---|

**Trial Testimony**

| | | |
|---|---|---|
| 1 | Lathrop & Gage LLP | City National vs. Autumn Games, et al. |
| 2 | Raines Feldman LLP | Stork v. Lydian Trust Company, et al. |
| 3 | Shaffer, Gold & Rubaum LLP | Optimal Pets, Inc. v. Nutri-Vet, LLC, et al. |
| 4 | Raines Feldman LLP | PlaySafe, LLC, et al. v. United Medical Devices, LLC, et al. |

**Arbitration Testimony**

| | | |
|---|---|---|
| 1 | Bate, Peterson, Deacon, Zinn & Young LLP | Trost v. Pearson Engineering Corp., et al. |
| 2 | Kull & Hall LLP | Healthcare Partners Medical Group, et al. v. Honored Citizen's Choice Health Plan, Inc. |
| 3 | Musick Peeler & Garrett LLP | Rhee v. Radiology 24-7, et al. |
| 4 | Williams & Connolly LLP | ECC Capital Corporation, et al. v. Latham & Watkins, LLP, et al. |

**Deposition Testimony**

| | | |
|---|---|---|
| 1 | Bate, Peterson, Deacon, Zinn & Young LLP | Trost v. Pearson Engineering Corp., et al. |
| 2 | Dykas, Shaver & Nipper, LLP | Optimal Pets, Inc. v. Nutri-Vet, LLC, et al. |
| 3 | Epstein Becker & Green PC | Blanco Alonzo, et al. v. Maximus, Inc. |
| 4 | Fox Rothschild LLP | Kaneka Corporation v. Sinochem, et al. |
| 5 | Friedman Stroffe & Gerard, P.C. | Toll Brothers, Inc., et al. v. University Park, LLC, et al. |
| 6 | Jeffer Mangels Butler & Mitchell LLP | Ross Family Trust v. 724 Pacific Coast Highway, et al. |
| 7 | Jeffer Mangels Butler & Mitchell LLP | In re the Estate of Elsinore Machris Gilliland |
| 8 | Kull & Hall LLP | Healthcare Partners Medical Group, et al. v. Honored Citizen's Choice Health Plan, Inc. |
| 9 | Lathrop & Gage LLP | City National vs. Autumn Games, et al. |
| 10 | Musick, Peeler & Garrett LLP | Core Industries, Inc, et al. v. Shinn Fu Corporation |
| 11 | Musick Peeler & Garrett LLP | Rhee v. Radiology 24-7, et al. |
| 12 | Quinn Emanuel Urquhart Oliver & Hedges | Poe Investment Company, LLC v. Lennar Stevenson Holdings, LLC et al. |
| 13 | Quinn Emanuel Urquhart & Sullivan, LLP | In re the Estate of Elsinore Machris Gilliland |
| 14 | Raines Feldman LLP | Stork v. Lydian Trust Company, et al. |
| 15 | Raines Feldman LLP | PlaySafe, LLC, et al. v. United Medical Devices, LLC, et al. |
| 16 | Ropers Majeski Kohn Bentley | Seagal, et al. v. Harabedian, et al. |

EXHIBIT 2

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# SUMMARY OF FINDINGS

A-1

| | Agreement | Amount Advanced | Amount Due | Daily % of Receivables | Results of FIFO Payment Application | | Imputed Rate of Interest |
|---|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-3 | D-3 | | |
| 1 | SSM1001 | $ 500,000 | $ 685,000 | 7.00% | Paid in Full | B-1 | **172%** |
| 2 | SSM1002 | 475,000 | 636,500 | 10.00% | Paid in Full | B-2 | **60%** |
| 3 | SSM1003 | 600,000 | 804,000 | 11.25% | Paid in Full | B-3 | **117%** |
| 4 | SSM1004 | 250,000 | 335,000 | 11.25% | Paid in Full | B-4 | **69%** |
| 5 | SSM1005 | 250,000 | 335,000 | 11.25% | Paid in Full | B-5 | **51%** |
| 6 | | | | | | | |
| 7 | SSM1006 | 400,000 | 536,000 | 11.25% | Partially Paid | B-6 | **69%** |
| 8 | SSM1007 | 100,000 | 134,000 | 11.25% | Not Paid | B-7 | **83%** |
| 9 | SSM1008 | 325,000 | 435,500 | 11.25% | Not Paid | B-7 | **194%** |
| 10 | SSM1009 | 200,000 | 268,000 | 11.25% | Not Paid | B-7 | **552%** |
| 11 | SSM1010 | 300,000 | 402,000 | 13.75% | Not Paid | B-7 | **205870%** |
| 12 | | | | | | | |
| 13 | All Agreements as a Whole | | | | Partially Paid | C-1 | **103%** |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

# ASSUMPTIONS AFFECTING MULTIPLE SCHEDULES

**A-2**

1   **Date EWC requires collection**          **7/25/2013**

2                                               B-7,B-6,C-1

3

4   **The Imputed Interest Rate is the rate that sets the net present**

5   **value of the sum of all cash inflows and outflows to zero.**

**STARVING STUDENTS V. EXPRESS WORKING CAPITAL**

# CALCULATION OF IMPUTED INTEREST
### Agreement #SSM1001

B-1

| | Date | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 1 | 5/2/2011 | $ 500,000.00 | $ 685,000.00 | $ - | $ 500,000.00 | $ 685,000.00 |
| 2 | 5/4/2011 | - | - | (1,855.64) | (1,855.64) | 683,144.36 |
| 3 | 5/9/2011 | - | - | (7,958.91) | (7,958.91) | 675,185.45 |
| 4 | 5/10/2011 | - | - | (1,664.01) | (1,664.01) | 673,521.44 |
| 5 | 5/11/2011 | - | - | (2,891.40) | (2,891.40) | 670,630.04 |
| 6 | 5/12/2011 | - | - | (2,481.41) | (2,481.41) | 668,148.63 |
| 7 | 5/13/2011 | - | - | (1,418.59) | (1,418.59) | 666,730.04 |
| 8 | 5/16/2011 | - | - | (8,001.97) | (8,001.97) | 658,728.07 |
| 9 | 5/17/2011 | - | - | (2,934.51) | (2,934.51) | 655,793.56 |
| 10 | 5/18/2011 | - | - | (2,866.25) | (2,866.25) | 652,927.31 |
| 11 | 5/19/2011 | - | - | (3,908.62) | (3,908.62) | 649,018.69 |
| 12 | 5/20/2011 | - | - | (2,222.05) | (2,222.05) | 646,796.64 |
| 13 | 5/23/2011 | - | - | (6,758.94) | (6,758.94) | 640,037.70 |
| 14 | 5/24/2011 | - | - | (2,741.05) | (2,741.05) | 637,296.65 |
| 15 | 5/25/2011 | - | - | (2,900.29) | (2,900.29) | 634,396.36 |
| 16 | 5/26/2011 | - | - | (2,242.93) | (2,242.93) | 632,153.43 |
| 17 | 5/27/2011 | - | - | (2,292.49) | (2,292.49) | 629,860.94 |
| 18 | 5/31/2011 | - | - | (16,327.15) | (16,327.15) | 613,533.79 |
| 19 | 6/1/2011 | - | - | (5,316.20) | (5,316.20) | 608,217.59 |
| 20 | 6/2/2011 | - | - | (3,352.62) | (3,352.62) | 604,864.97 |
| 21 | 6/3/2011 | - | - | (4,980.56) | (4,980.56) | 599,884.41 |
| 22 | 6/6/2011 | - | - | (12,056.43) | (12,056.43) | 587,827.98 |
| 23 | 6/7/2011 | - | - | (2,788.00) | (2,788.00) | 585,039.98 |
| 24 | 6/8/2011 | - | - | (3,357.79) | (3,357.79) | 581,682.19 |
| 25 | 6/9/2011 | - | - | (2,490.37) | (2,490.37) | 579,191.82 |
| 26 | 6/10/2011 | - | - | (2,540.92) | (2,540.92) | 576,650.90 |
| 27 | 6/13/2011 | - | - | (8,844.32) | (8,844.32) | 567,806.58 |
| 28 | 6/14/2011 | - | - | (3,205.42) | (3,205.42) | 564,601.16 |
| 29 | 6/15/2011 | - | - | (2,929.20) | (2,929.20) | 561,671.96 |
| 30 | 6/16/2011 | - | - | (3,997.56) | (3,997.56) | 557,674.40 |
| 31 | 6/17/2011 | - | - | (2,645.04) | (2,645.04) | 555,029.36 |
| 32 | 6/20/2011 | - | - | (12,012.46) | (12,012.46) | 543,016.90 |
| 33 | 6/21/2011 | - | - | (2,718.00) | (2,718.00) | 540,298.90 |

<u>S</u><u>TARVING</u> <u>S</u><u>TUDENTS</u> <u>V</u>. <u>E</u><u>XPRESS</u> <u>W</u><u>ORKING</u> <u>C</u><u>APITAL</u>

# CALCULATION OF IMPUTED INTEREST
### Agreement #SSM1001

B-1

| | Date | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 34 | 6/22/2011 | - | - | (2,772.57) | (2,772.57) | 537,526.33 |
| 35 | 6/23/2011 | - | - | (2,537.82) | (2,537.82) | 534,988.51 |
| 36 | 6/24/2011 | - | - | (2,140.09) | (2,140.09) | 532,848.42 |
| 37 | 6/27/2011 | - | - | (12,554.71) | (12,554.71) | 520,293.71 |
| 38 | 6/28/2011 | - | - | (3,397.88) | (3,397.88) | 516,895.83 |
| 39 | 6/29/2011 | - | - | (3,932.91) | (3,932.91) | 512,962.92 |
| 40 | 6/30/2011 | - | - | (4,369.78) | (4,369.78) | 508,593.14 |
| 41 | 7/1/2011 | - | - | (4,574.28) | (4,574.28) | 504,018.86 |
| 42 | 7/5/2011 | - | - | (22,321.83) | (22,321.83) | 481,697.03 |
| 43 | 7/6/2011 | - | - | (506.42) | (506.42) | 481,190.61 |
| 44 | 7/7/2011 | - | - | (3,512.01) | (3,512.01) | 477,678.60 |
| 45 | 7/8/2011 | - | - | (2,741.80) | (2,741.80) | 474,936.80 |
| 46 | 7/11/2011 | - | - | (10,127.10) | (10,127.10) | 464,809.70 |
| 47 | 7/12/2011 | - | - | (2,062.47) | (2,062.47) | 462,747.23 |
| 48 | 7/13/2011 | - | - | (2,695.03) | (2,695.03) | 460,052.20 |
| 49 | 7/14/2011 | - | - | (1,926.90) | (1,926.90) | 458,125.30 |
| 50 | 7/15/2011 | - | - | (2,095.77) | (2,095.77) | 456,029.53 |
| 51 | 7/18/2011 | - | - | (8,335.66) | (8,335.66) | 447,693.87 |
| 52 | 7/19/2011 | - | - | (2,992.90) | (2,992.90) | 444,700.97 |
| 53 | 7/20/2011 | - | - | (1,750.92) | (1,750.92) | 442,950.05 |
| 54 | 7/21/2011 | - | - | (2,597.75) | (2,597.75) | 440,352.30 |
| 55 | 7/22/2011 | - | - | (2,091.95) | (2,091.95) | 438,260.35 |
| 56 | 7/25/2011 | - | - | (8,253.25) | (8,253.25) | 430,007.10 |
| 57 | 7/26/2011 | - | - | (2,244.50) | (2,244.50) | 427,762.60 |
| 58 | 7/27/2011 | - | - | (2,690.35) | (2,690.35) | 425,072.25 |
| 59 | 7/28/2011 | - | - | (2,195.14) | (2,195.14) | 422,877.11 |
| 60 | 7/29/2011 | - | - | (3,073.19) | (3,073.19) | 419,803.92 |
| 61 | 8/1/2011 | - | - | (12,504.22) | (12,504.22) | 407,299.70 |
| 62 | 8/2/2011 | - | - | (4,975.04) | (4,975.04) | 402,324.66 |
| 63 | 8/3/2011 | - | - | (3,893.91) | (3,893.91) | 398,430.75 |
| 64 | 8/4/2011 | - | - | (3,367.95) | (3,367.95) | 395,062.80 |
| 65 | 8/5/2011 | - | - | (3,630.11) | (3,630.11) | 391,432.69 |
| 66 | 8/8/2011 | - | - | (8,217.93) | (8,217.93) | 383,214.76 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# CALCULATION OF IMPUTED INTEREST
### Agreement #SSM1001

B-1

| | Date | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 67 | 8/9/2011 | - | - | (2,987.96) | (2,987.96) | 380,226.80 |
| 68 | 8/10/2011 | - | - | (2,455.46) | (2,455.46) | 377,771.34 |
| 69 | 8/11/2011 | - | - | (2,168.26) | (2,168.26) | 375,603.08 |
| 70 | 8/12/2011 | - | - | (2,222.53) | (2,222.53) | 373,380.55 |
| 71 | 8/15/2011 | - | - | (8,316.70) | (8,316.70) | 365,063.85 |
| 72 | 8/16/2011 | - | - | (2,291.83) | (2,291.83) | 362,772.02 |
| 73 | 8/17/2011 | - | - | (2,335.21) | (2,335.21) | 360,436.81 |
| 74 | 8/18/2011 | - | - | (3,239.21) | (3,239.21) | 357,197.60 |
| 75 | 8/19/2011 | - | - | (2,634.93) | (2,634.93) | 354,562.67 |
| 76 | 8/22/2011 | - | - | (7,570.21) | (7,570.21) | 346,992.46 |
| 77 | 8/23/2011 | - | - | (2,811.81) | (2,811.81) | 344,180.65 |
| 78 | 8/24/2011 | - | - | (2,874.12) | (2,874.12) | 341,306.53 |
| 79 | 8/25/2011 | - | - | (2,368.89) | (2,368.89) | 338,937.64 |
| 80 | 8/26/2011 | - | - | (1,757.60) | (1,757.60) | 337,180.04 |
| 81 | 8/29/2011 | - | - | (10,066.48) | (10,066.48) | 327,113.56 |
| 82 | 8/30/2011 | - | - | (2,884.88) | (2,884.88) | 324,228.68 |
| 83 | 8/31/2011 | - | - | (2,963.18) | (2,963.18) | 321,265.50 |
| 84 | 9/1/2011 | - | - | (3,572.08) | (3,572.08) | 317,693.42 |
| 85 | 9/2/2011 | - | - | (3,389.31) | (3,389.31) | 314,304.11 |
| 86 | 9/6/2011 | - | - | (14,324.45) | (14,324.45) | 299,979.66 |
| 87 | 9/7/2011 | - | - | (2,722.63) | (2,722.63) | 297,257.03 |
| 88 | 9/8/2011 | - | - | (1,585.74) | (1,585.74) | 295,671.29 |
| 89 | 9/9/2011 | - | - | (1,507.88) | (1,507.88) | 294,163.41 |
| 90 | 9/12/2011 | - | - | (6,904.80) | (6,904.80) | 287,258.61 |
| 91 | 9/13/2011 | - | - | (1,807.04) | (1,807.04) | 285,451.57 |
| 92 | 9/14/2011 | - | - | (1,553.17) | (1,553.17) | 283,898.40 |
| 93 | 9/15/2011 | - | - | (1,485.48) | (1,485.48) | 282,412.92 |
| 94 | 9/16/2011 | - | - | (1,864.79) | (1,864.79) | 280,548.13 |
| 95 | 9/19/2011 | - | - | (7,130.64) | (7,130.64) | 273,417.49 |
| 96 | 9/20/2011 | - | - | (3,473.26) | (3,473.26) | 269,944.23 |
| 97 | 9/21/2011 | - | - | (1,721.87) | (1,721.87) | 268,222.36 |
| 98 | 9/22/2011 | - | - | (1,562.36) | (1,562.36) | 266,660.00 |
| 99 | 9/23/2011 | - | - | (2,346.19) | (2,346.19) | 264,313.81 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# CALCULATION OF IMPUTED INTEREST
### Agreement #SSM1001

B-1

| | Date | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 100 | 9/26/2011 | - | - | (6,411.89) | (6,411.89) | 257,901.92 |
| 101 | 9/27/2011 | - | - | (2,497.98) | (2,497.98) | 255,403.94 |
| 102 | 9/28/2011 | - | - | (2,186.07) | (2,186.07) | 253,217.87 |
| 103 | 9/29/2011 | - | - | (2,106.97) | (2,106.97) | 251,110.90 |
| 104 | 9/30/2011 | - | - | (2,126.51) | (2,126.51) | 248,984.39 |
| 105 | 10/3/2011 | - | - | (17,470.38) | (17,470.38) | 231,514.01 |
| 106 | 10/4/2011 | - | - | (5,811.50) | (5,811.50) | 225,702.51 |
| 107 | 10/5/2011 | - | - | (3,790.88) | (3,790.88) | 221,911.63 |
| 108 | 10/6/2011 | - | - | (4,284.39) | (4,284.39) | 217,627.24 |
| 109 | 10/7/2011 | - | - | (2,902.95) | (2,902.95) | 214,724.29 |
| 110 | 10/11/2011 | - | - | (13,753.94) | (13,753.94) | 200,970.35 |
| 111 | 10/12/2011 | - | - | (2,311.13) | (2,311.13) | 198,659.22 |
| 112 | 10/13/2011 | - | - | (3,050.20) | (3,050.20) | 195,609.02 |
| 113 | 10/14/2011 | - | - | (2,514.23) | (2,514.23) | 193,094.79 |
| 114 | 10/17/2011 | - | - | (10,528.98) | (10,528.98) | 182,565.81 |
| 115 | 10/18/2011 | - | - | (3,436.92) | (3,436.92) | 179,128.89 |
| 116 | 10/19/2011 | - | - | (2,353.46) | (2,353.46) | 176,775.43 |
| 117 | 10/20/2011 | - | - | (2,391.46) | (2,391.46) | 174,383.97 |
| 118 | 10/21/2011 | - | - | (1,978.81) | (1,978.81) | 172,405.16 |
| 119 | 10/24/2011 | - | - | (7,905.09) | (7,905.09) | 164,500.07 |
| 120 | 10/25/2011 | - | - | (2,529.95) | (2,529.95) | 161,970.12 |
| 121 | 10/26/2011 | - | - | (2,395.44) | (2,395.44) | 159,574.68 |
| 122 | 10/27/2011 | - | - | (2,312.66) | (2,312.66) | 157,262.02 |
| 123 | 10/28/2011 | - | - | (3,177.90) | (3,177.90) | 154,084.12 |
| 124 | 10/31/2011 | - | - | (12,616.56) | (12,616.56) | 141,467.56 |
| 125 | 11/1/2011 | - | - | (3,422.87) | (3,422.87) | 138,044.69 |
| 126 | 11/2/2011 | - | - | (2,962.09) | (2,962.09) | 135,082.60 |
| 127 | 11/3/2011 | - | - | (3,300.45) | (3,300.45) | 131,782.15 |
| 128 | 11/4/2011 | - | - | (2,382.49) | (2,382.49) | 129,399.66 |
| 129 | 11/7/2011 | - | - | (8,132.83) | (8,132.83) | 121,266.83 |
| 130 | 11/8/2011 | - | - | (3,355.95) | (3,355.95) | 117,910.88 |
| 131 | 11/9/2011 | - | - | (1,576.98) | (1,576.98) | 116,333.90 |
| 132 | 11/14/2011 | - | - | (7,918.18) | (7,918.18) | 108,415.72 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# CALCULATION OF IMPUTED INTEREST
## Agreement #SSM1001

B-1

| | Date | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 133 | 11/15/2011 | - | - | (939.83) | (939.83) | 107,475.89 |
| 134 | 11/16/2011 | - | - | (1,489.32) | (1,489.32) | 105,986.57 |
| 135 | 11/18/2011 | - | - | (1,419.60) | (1,419.60) | 104,566.97 |
| 136 | 11/21/2011 | - | - | (1,160.41) | (1,160.41) | 103,406.56 |
| 137 | 11/22/2011 | - | - | (1,008.39) | (1,008.39) | 102,398.17 |
| 138 | 11/23/2011 | - | - | (3,638.02) | (3,638.02) | 98,760.15 |
| 139 | 11/25/2011 | - | - | (4,261.02) | (4,261.02) | 94,499.13 |
| 140 | 11/28/2011 | - | - | (2,217.08) | (2,217.08) | 92,282.05 |
| 141 | 11/29/2011 | - | - | (708.72) | (708.72) | 91,573.33 |
| 142 | 11/30/2011 | - | - | (1,722.96) | (1,722.96) | 89,850.37 |
| 143 | 12/1/2011 | - | - | (997.52) | (997.52) | 88,852.85 |
| 144 | 12/2/2011 | - | - | (2,091.86) | (2,091.86) | 86,760.99 |
| 145 | 12/5/2011 | - | - | (5,936.90) | (5,936.90) | 80,824.09 |
| 146 | 12/6/2011 | - | - | (738.33) | (738.33) | 80,085.76 |
| 147 | 12/7/2011 | - | - | (1,074.49) | (1,074.49) | 79,011.27 |
| 148 | 12/8/2011 | - | - | (509.87) | (509.87) | 78,501.40 |
| 149 | 12/9/2011 | - | - | (1,301.06) | (1,301.06) | 77,200.34 |
| 150 | 12/12/2011 | - | - | (3,217.71) | (3,217.71) | 73,982.63 |
| 151 | 12/13/2011 | - | - | (1,108.28) | (1,108.28) | 72,874.35 |
| 152 | 12/14/2011 | - | - | (263.73) | (263.73) | 72,610.62 |
| 153 | 12/15/2011 | - | - | (838.17) | (838.17) | 71,772.45 |
| 154 | 12/16/2011 | - | - | (678.76) | (678.76) | 71,093.69 |
| 155 | 12/19/2011 | - | - | (3,951.94) | (3,951.94) | 67,141.75 |
| 156 | 12/20/2011 | - | - | (894.95) | (894.95) | 66,246.80 |
| 157 | 12/21/2011 | - | - | (1,059.65) | (1,059.65) | 65,187.15 |
| 158 | 12/22/2011 | - | - | (462.08) | (462.08) | 64,725.07 |
| 159 | 12/23/2011 | - | - | (742.63) | (742.63) | 63,982.44 |
| 160 | 12/27/2011 | - | - | (1,587.94) | (1,587.94) | 62,394.50 |
| 161 | 12/28/2011 | - | - | (366.56) | (366.56) | 62,027.94 |
| 162 | 12/29/2011 | - | - | (649.29) | (649.29) | 61,378.65 |
| 163 | 12/30/2011 | - | - | (851.40) | (851.40) | 60,527.25 |
| 164 | 1/3/2012 | - | - | (2,334.45) | (2,334.45) | 58,192.80 |
| 165 | 1/4/2012 | - | - | (223.94) | (223.94) | 57,968.86 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# CALCULATION OF IMPUTED INTEREST
## Agreement #SSM1001

B-1

| | Date | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 166 | 1/5/2012 | - | - | (488.60) | (488.60) | 57,480.26 |
| 167 | 1/6/2012 | - | - | (169.33) | (169.33) | 57,310.93 |
| 168 | 1/9/2012 | - | - | (1,859.61) | (1,859.61) | 55,451.32 |
| 169 | 1/10/2012 | - | - | (321.41) | (321.41) | 55,129.91 |
| 170 | 1/11/2012 | - | - | (553.12) | (553.12) | 54,576.79 |
| 171 | 1/12/2012 | - | - | (347.98) | (347.98) | 54,228.81 |
| 172 | 1/13/2012 | - | - | (678.30) | (678.30) | 53,550.51 |
| 173 | 1/17/2012 | - | - | (3,220.57) | (3,220.57) | 50,329.94 |
| 174 | 1/18/2012 | - | - | (540.88) | (540.88) | 49,789.06 |
| 175 | 1/19/2012 | - | - | (209.83) | (209.83) | 49,579.23 |
| 176 | 1/20/2012 | - | - | (428.49) | (428.49) | 49,150.74 |
| 177 | 1/23/2012 | - | - | (998.55) | (998.55) | 48,152.19 |
| 178 | 1/24/2012 | - | - | (211.67) | (211.67) | 47,940.52 |
| 179 | 1/25/2012 | - | - | (210.90) | (210.90) | 47,729.62 |
| 180 | 1/26/2012 | - | - | (340.63) | (340.63) | 47,388.99 |
| 181 | 1/27/2012 | - | - | (293.05) | (293.05) | 47,095.94 |
| 182 | 1/30/2012 | - | - | (11,129.39) | (11,129.39) | 35,966.55 |
| 183 | 1/31/2012 | - | - | (3,618.93) | (3,618.93) | 32,347.62 |
| 184 | 2/6/2012 | - | - | (9,143.61) | (9,143.61) | 23,204.01 |
| 185 | 2/8/2012 | - | - | (4,665.36) | (4,665.36) | 18,538.65 |
| 186 | 2/9/2012 | - | - | (2,325.14) | (2,325.14) | 16,213.51 |
| 187 | 2/13/2012 | - | - | (2,338.06) | (2,338.06) | 13,875.45 |
| 188 | 2/15/2012 | - | - | (4,904.28) | (4,904.28) | 8,971.17 |
| 189 | 2/17/2012 | - | - | (1,841.14) | (1,841.14) | 7,130.03 |
| 190 | 2/21/2012 | - | - | (6,529.91) | (6,529.91) | 600.12 |
| 191 | 3/2/2012 | - | - | (600.12) | (600.12) | - |
| 192 | | $ 500,000.00 | $ 685,000.00 | $ (685,000.00) | $ (185,000.00) | |
| 193 | | | | | | |
| 194 | | | | Imputed Rate: | 172% | |
| 195 | | | | | A-1 | |

196 [1] EWC Statements show an invoice date for the amount due that is slightly different than the agreement date. We
197 assume the funds were advanced on the agreement date. Using the invoice date would not materially affect our results.

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# CALCULATION OF IMPUTED INTEREST
### Agreement #SSM1002

**B-2**

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 1 | 9/26/2011 | $ 475,000.00 | $ 636,500.00 | $           - | $   475,000.00 | $ 636,500.00 |
| 2 | 3/2/2012 | - | - | (51,743.04) | (51,743.04) | 584,756.96 |
| 3 | 3/5/2012 | - | - | (10,747.23) | (10,747.23) | 574,009.73 |
| 4 | 3/8/2012 | - | - | (2,537.14) | (2,537.14) | 571,472.59 |
| 5 | 3/12/2012 | - | - | (26,062.32) | (26,062.32) | 545,410.27 |
| 6 | 3/15/2012 | - | - | (14,269.87) | (14,269.87) | 531,140.40 |
| 7 | 3/19/2012 | - | - | (2,571.15) | (2,571.15) | 528,569.25 |
| 8 | 3/21/2012 | - | - | (16,425.14) | (16,425.14) | 512,144.11 |
| 9 | 3/26/2012 | - | - | (8,400.36) | (8,400.36) | 503,743.75 |
| 10 | 3/29/2012 | - | - | (16,436.26) | (16,436.26) | 487,307.49 |
| 11 | 4/5/2012 | - | - | (16,431.47) | (16,431.47) | 470,876.02 |
| 12 | 4/9/2012 | - | - | (8,154.72) | (8,154.72) | 462,721.30 |
| 13 | 4/12/2012 | - | - | (2,360.22) | (2,360.22) | 460,361.08 |
| 14 | 4/16/2012 | - | - | (10,652.07) | (10,652.07) | 449,709.01 |
| 15 | 4/17/2012 | - | - | (52,706.07) | (52,706.07) | 397,002.94 |
| 16 | 4/18/2012 | - | - | (3,306.84) | (3,306.84) | 393,696.10 |
| 17 | 4/19/2012 | - | - | (2,568.24) | (2,568.24) | 391,127.86 |
| 18 | 4/20/2012 | - | - | (2,278.27) | (2,278.27) | 388,849.59 |
| 19 | 4/23/2012 | - | - | (3,123.87) | (3,123.87) | 385,725.72 |
| 20 | 4/24/2012 | - | - | (2,710.80) | (2,710.80) | 383,014.92 |
| 21 | 4/25/2012 | - | - | (3,558.94) | (3,558.94) | 379,455.98 |
| 22 | 4/26/2012 | - | - | (4,404.58) | (4,404.58) | 375,051.40 |
| 23 | 4/27/2012 | - | - | (3,762.32) | (3,762.32) | 371,289.08 |
| 24 | 4/30/2012 | - | - | (9,562.42) | (9,562.42) | 361,726.66 |
| 25 | 5/1/2012 | - | - | (4,005.53) | (4,005.53) | 357,721.13 |
| 26 | 5/3/2012 | - | - | (3,693.61) | (3,693.61) | 354,027.52 |
| 27 | 5/4/2012 | - | - | (2,157.92) | (2,157.92) | 351,869.60 |
| 28 | 5/7/2012 | - | - | (11,494.75) | (11,494.75) | 340,374.85 |
| 29 | 5/8/2012 | - | - | (3,139.25) | (3,139.25) | 337,235.60 |
| 30 | 5/9/2012 | - | - | (2,532.46) | (2,532.46) | 334,703.14 |
| 31 | 5/10/2012 | - | - | (2,387.44) | (2,387.44) | 332,315.70 |
| 32 | 5/11/2012 | - | - | (3,579.68) | (3,579.68) | 328,736.02 |
| 33 | 5/14/2012 | - | - | (10,201.12) | (10,201.12) | 318,534.90 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# CALCULATION OF IMPUTED INTEREST
## Agreement #SSM1002

B-2

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 34 | 5/15/2012 | - | - | (3,524.83) | (3,524.83) | 315,010.07 |
| 35 | 5/16/2012 | - | - | (2,186.96) | (2,186.96) | 312,823.11 |
| 36 | 5/17/2012 | - | - | (2,386.28) | (2,386.28) | 310,436.83 |
| 37 | 5/18/2012 | - | - | (7,120.65) | (7,120.65) | 303,316.18 |
| 38 | 5/21/2012 | - | - | (2,846.36) | (2,846.36) | 300,469.82 |
| 39 | 5/22/2012 | - | - | (3,307.89) | (3,307.89) | 297,161.93 |
| 40 | 5/23/2012 | - | - | (2,229.91) | (2,229.91) | 294,932.02 |
| 41 | 5/24/2012 | - | - | (2,537.37) | (2,537.37) | 292,394.65 |
| 42 | 5/25/2012 | - | - | (11,970.22) | (11,970.22) | 280,424.43 |
| 43 | 5/29/2012 | - | - | (11,905.73) | (11,905.73) | 268,518.70 |
| 44 | 5/30/2012 | - | - | (3,373.95) | (3,373.95) | 265,144.75 |
| 45 | 6/1/2012 | - | - | (4,903.74) | (4,903.74) | 260,241.01 |
| 46 | 6/4/2012 | - | - | (10,433.12) | (10,433.12) | 249,807.89 |
| 47 | 6/5/2012 | - | - | (65.95) | (65.95) | 249,741.94 |
| 48 | 6/6/2012 | - | - | (119.99) | (119.99) | 249,621.95 |
| 49 | 6/8/2012 | - | - | (33,009.38) | (33,009.38) | 216,612.57 |
| 50 | 6/11/2012 | - | - | (2,730.93) | (2,730.93) | 213,881.64 |
| 51 | 6/12/2012 | - | - | (16,535.93) | (16,535.93) | 197,345.71 |
| 52 | 6/13/2012 | - | - | (109.57) | (109.57) | 197,236.14 |
| 53 | 6/14/2012 | - | - | (5,451.70) | (5,451.70) | 191,784.44 |
| 54 | 6/15/2012 | - | - | (3,084.51) | (3,084.51) | 188,699.93 |
| 55 | 6/18/2012 | - | - | (3,861.91) | (3,861.91) | 184,838.02 |
| 56 | 6/19/2012 | - | - | (22,775.24) | (22,775.24) | 162,062.78 |
| 57 | 6/20/2012 | - | - | (397.15) | (397.15) | 161,665.63 |
| 58 | 6/21/2012 | - | - | (3,252.62) | (3,252.62) | 158,413.01 |
| 59 | 6/22/2012 | - | - | (7,747.02) | (7,747.02) | 150,665.99 |
| 60 | 6/25/2012 | - | - | (6,499.05) | (6,499.05) | 144,166.94 |
| 61 | 6/26/2012 | - | - | (15,301.91) | (15,301.91) | 128,865.03 |
| 62 | 6/27/2012 | - | - | (6,157.26) | (6,157.26) | 122,707.77 |
| 63 | 6/28/2012 | - | - | (4,547.03) | (4,547.03) | 118,160.74 |
| 64 | 6/29/2012 | - | - | (4,236.48) | (4,236.48) | 113,924.26 |
| 65 | 7/2/2012 | - | - | (26,407.53) | (26,407.53) | 87,516.73 |
| 66 | 7/3/2012 | - | - | (37.99) | (37.99) | 87,478.74 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# CALCULATION OF IMPUTED INTEREST
## Agreement #SSM1002

**B-2**

| | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| Date [1] | D-3 | D-3 | D-1 | | calc. | calc. |
| 67 | 7/5/2012 | - | - | (21,075.02) | (21,075.02) | 66,403.72 |
| 68 | 7/6/2012 | - | - | (10,628.66) | (10,628.66) | 55,775.06 |
| 69 | 7/9/2012 | - | - | (3,949.17) | (3,949.17) | 51,825.89 |
| 70 | 7/10/2012 | - | - | (20,417.03) | (20,417.03) | 31,408.86 |
| 71 | 7/11/2012 | - | - | (3,638.22) | (3,638.22) | 27,770.64 |
| 72 | 7/12/2012 | - | - | (4,299.04) | (4,299.04) | 23,471.60 |
| 73 | 7/13/2012 | - | - | (4,023.56) | (4,023.56) | 19,448.04 |
| 74 | 7/16/2012 | - | - | (3,445.62) | (3,445.62) | 16,002.42 |
| 75 | 7/17/2012 | - | - | (16,002.42) | (16,002.42) | - |
| 76 | | $ 475,000.00 | $ 636,500.00 | $  (636,500.00) | (161,500.00) | |
| 77 | | | | | | |
| 78 | | | | Imputed Rate: | 60% | |
| 79 | | | | | A-1 | |

80  [1] EWC Statements show an invoice date for the amount due that is slightly different than the agreement date. We
81  assume the funds were advanced on the agreement date. Using the invoice date would not materially affect our results.

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

# CALCULATION OF IMPUTED INTEREST
### Agreement #SSM1003

B-3

| | <u>Date [1]</u> | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | <u>Balance</u> |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 1 | 5/22/2012 | $ 600,000.00 | $ 804,000.00 | $ - | $ 600,000.00 | $ 804,000.00 |
| 2 | 7/17/2012 | - | - | (1,107.20) | (1,107.20) | 802,892.80 |
| 3 | 7/18/2012 | - | - | (2,765.35) | (2,765.35) | 800,127.45 |
| 4 | 7/19/2012 | - | - | (4,849.57) | (4,849.57) | 795,277.88 |
| 5 | 7/20/2012 | - | - | (2,816.99) | (2,816.99) | 792,460.89 |
| 6 | 7/23/2012 | - | - | (3,988.89) | (3,988.89) | 788,472.00 |
| 7 | 7/24/2012 | - | - | (15,596.92) | (15,596.92) | 772,875.08 |
| 8 | 7/25/2012 | - | - | (3,382.83) | (3,382.83) | 769,492.25 |
| 9 | 7/26/2012 | - | - | (3,239.22) | (3,239.22) | 766,253.03 |
| 10 | 7/27/2012 | - | - | (5,506.98) | (5,506.98) | 760,746.05 |
| 11 | 7/30/2012 | - | - | (3,860.62) | (3,860.62) | 756,885.43 |
| 12 | 7/31/2012 | - | - | (18,687.94) | (18,687.94) | 738,197.49 |
| 13 | 8/1/2012 | - | - | (6,131.82) | (6,131.82) | 732,065.67 |
| 14 | 8/2/2012 | - | - | (7,413.71) | (7,413.71) | 724,651.96 |
| 15 | 8/3/2012 | - | - | (7,983.21) | (7,983.21) | 716,668.75 |
| 16 | 8/6/2012 | - | - | (8,305.02) | (8,305.02) | 708,363.73 |
| 17 | 8/7/2012 | - | - | (20,802.53) | (20,802.53) | 687,561.20 |
| 18 | 8/8/2012 | - | - | (4,278.92) | (4,278.92) | 683,282.28 |
| 19 | 8/9/2012 | - | - | (3,506.66) | (3,506.66) | 679,775.62 |
| 20 | 8/10/2012 | - | - | (4,168.75) | (4,168.75) | 675,606.87 |
| 21 | 8/13/2012 | - | - | (3,186.70) | (3,186.70) | 672,420.17 |
| 22 | 8/14/2012 | - | - | (15,815.75) | (15,815.75) | 656,604.42 |
| 23 | 8/15/2012 | - | - | (4,611.83) | (4,611.83) | 651,992.59 |
| 24 | 8/16/2012 | - | - | (4,677.05) | (4,677.05) | 647,315.54 |
| 25 | 8/17/2012 | - | - | (464.43) | (464.43) | 646,851.11 |
| 26 | 8/20/2012 | - | - | (9,051.28) | (9,051.28) | 637,799.83 |
| 27 | 8/21/2012 | - | - | (16,633.73) | (16,633.73) | 621,166.10 |
| 28 | 8/22/2012 | - | - | (3,514.57) | (3,514.57) | 617,651.53 |
| 29 | 8/23/2012 | - | - | (5,751.67) | (5,751.67) | 611,899.86 |
| 30 | 8/24/2012 | - | - | (5,395.57) | (5,395.57) | 606,504.29 |
| 31 | 8/27/2012 | - | - | (4,421.38) | (4,421.38) | 602,082.91 |
| 32 | 8/28/2012 | - | - | (18,828.49) | (18,828.49) | 583,254.42 |
| 33 | 8/29/2012 | - | - | (6,331.96) | (6,331.96) | 576,922.46 |

<u>S</u><small>TARVING</small> <u>S</u><small>TUDENTS</small> <u>v.</u> <u>E</u><small>XPRESS</small> <u>W</u><small>ORKING</small> <u>C</u><small>APITAL</small>

# CALCULATION OF IMPUTED INTEREST
### Agreement #SSM1003

**B-3**

| | Date [1] | Advances aka "Purchase Price" D-3 | Amounts Due aka "Amount Sold" D-3 | Net Repayments aka "Receipts Collected" D-1 | Net Cash Flow calc. | Balance calc. |
|---|---|---|---|---|---|---|
| 34 | 8/30/2012 | - | - | (5,429.13) | (5,429.13) | 571,493.33 |
| 35 | 8/31/2012 | - | - | (4,212.90) | (4,212.90) | 567,280.43 |
| 36 | 9/4/2012 | - | - | (5,422.51) | (5,422.51) | 561,857.92 |
| 37 | 9/5/2012 | - | - | (31,444.91) | (31,444.91) | 530,413.01 |
| 38 | 9/6/2012 | - | - | (4,635.20) | (4,635.20) | 525,777.81 |
| 39 | 9/7/2012 | - | - | (2,939.10) | (2,939.10) | 522,838.71 |
| 40 | 9/10/2012 | - | - | (4,351.52) | (4,351.52) | 518,487.19 |
| 41 | 9/11/2012 | - | - | (15,051.00) | (15,051.00) | 503,436.19 |
| 42 | 9/12/2012 | - | - | (3,026.99) | (3,026.99) | 500,409.20 |
| 43 | 9/13/2012 | - | - | (2,778.68) | (2,778.68) | 497,630.52 |
| 44 | 9/14/2012 | - | - | (2,833.20) | (2,833.20) | 494,797.32 |
| 45 | 9/17/2012 | - | - | (4,380.98) | (4,380.98) | 490,416.34 |
| 46 | 9/18/2012 | - | - | (15,393.40) | (15,393.40) | 475,022.94 |
| 47 | 9/19/2012 | - | - | (3,659.66) | (3,659.66) | 471,363.28 |
| 48 | 9/20/2012 | - | - | (2,524.23) | (2,524.23) | 468,839.05 |
| 49 | 9/21/2012 | - | - | (2,025.26) | (2,025.26) | 466,813.79 |
| 50 | 9/24/2012 | - | - | (3,819.17) | (3,819.17) | 462,994.62 |
| 51 | 9/25/2012 | - | - | (14,161.19) | (14,161.19) | 448,833.43 |
| 52 | 9/26/2012 | - | - | (4,683.34) | (4,683.34) | 444,150.09 |
| 53 | 9/27/2012 | - | - | (3,903.71) | (3,903.71) | 440,246.38 |
| 54 | 9/28/2012 | - | - | (3,011.32) | (3,011.32) | 437,235.06 |
| 55 | 10/1/2012 | - | - | (5,340.27) | (5,340.27) | 431,894.79 |
| 56 | 10/2/2012 | - | - | (21,764.41) | (21,764.41) | 410,130.38 |
| 57 | 10/3/2012 | - | - | (5,815.37) | (5,815.37) | 404,315.01 |
| 58 | 10/4/2012 | - | - | (5,605.79) | (5,605.79) | 398,709.22 |
| 59 | 10/5/2012 | - | - | (3,343.39) | (3,343.39) | 395,365.83 |
| 60 | 10/9/2012 | - | - | (3,220.29) | (3,220.29) | 392,145.54 |
| 61 | 10/10/2012 | - | - | (18,568.92) | (18,568.92) | 373,576.62 |
| 62 | 10/11/2012 | - | - | (2,473.01) | (2,473.01) | 371,103.61 |
| 63 | 10/12/2012 | - | - | (3,214.89) | (3,214.89) | 367,888.72 |
| 64 | 10/15/2012 | - | - | (3,288.38) | (3,288.38) | 364,600.34 |
| 65 | 10/16/2012 | - | - | (12,545.77) | (12,545.77) | 352,054.57 |
| 66 | 10/17/2012 | - | - | (4,768.91) | (4,768.91) | 347,285.66 |

S TARVING S TUDENTS V. E XPRESS W ORKING C APITAL

# CALCULATION OF IMPUTED INTEREST
### Agreement #SSM1003

**B-3**

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 67 | 10/18/2012 | - | - | (4,832.92) | (4,832.92) | 342,452.74 |
| 68 | 10/19/2012 | - | - | (2,639.85) | (2,639.85) | 339,812.89 |
| 69 | 10/22/2012 | - | - | (2,930.48) | (2,930.48) | 336,882.41 |
| 70 | 10/23/2012 | - | - | (13,981.48) | (13,981.48) | 322,900.93 |
| 71 | 10/24/2012 | - | - | (3,258.92) | (3,258.92) | 319,642.01 |
| 72 | 10/25/2012 | - | - | (2,766.00) | (2,766.00) | 316,876.01 |
| 73 | 10/26/2012 | - | - | (3,622.03) | (3,622.03) | 313,253.98 |
| 74 | 10/29/2012 | - | - | (3,501.90) | (3,501.90) | 309,752.08 |
| 75 | 10/30/2012 | - | - | (15,397.25) | (15,397.25) | 294,354.83 |
| 76 | 10/31/2012 | - | - | (5,072.32) | (5,072.32) | 289,282.51 |
| 77 | 11/1/2012 | - | - | (4,123.72) | (4,123.72) | 285,158.79 |
| 78 | 11/2/2012 | - | - | (8,875.07) | (8,875.07) | 276,283.72 |
| 79 | 11/6/2012 | - | - | (17,716.36) | (17,716.36) | 258,567.36 |
| 80 | 11/7/2012 | - | - | (4,326.47) | (4,326.47) | 254,240.89 |
| 81 | 11/8/2012 | - | - | (3,939.92) | (3,939.92) | 250,300.97 |
| 82 | 11/9/2012 | - | - | (2,967.34) | (2,967.34) | 247,333.63 |
| 83 | 11/13/2012 | - | - | (2,631.49) | (2,631.49) | 244,702.14 |
| 84 | 11/14/2012 | - | - | (17,162.64) | (17,162.64) | 227,539.50 |
| 85 | 11/15/2012 | - | - | (2,722.26) | (2,722.26) | 224,817.24 |
| 86 | 11/16/2012 | - | - | (3,305.61) | (3,305.61) | 221,511.63 |
| 87 | 11/19/2012 | - | - | (4,100.84) | (4,100.84) | 217,410.79 |
| 88 | 11/20/2012 | - | - | (14,035.80) | (14,035.80) | 203,374.99 |
| 89 | 11/21/2012 | - | - | (5,811.58) | (5,811.58) | 197,563.41 |
| 90 | 11/23/2012 | - | - | (3,438.86) | (3,438.86) | 194,124.55 |
| 91 | 11/27/2012 | - | - | (14,362.36) | (14,362.36) | 179,762.19 |
| 92 | 11/28/2012 | - | - | (5,390.06) | (5,390.06) | 174,372.13 |
| 93 | 11/30/2012 | - | - | (4,047.48) | (4,047.48) | 170,324.65 |
| 94 | 12/3/2012 | - | - | (4,543.51) | (4,543.51) | 165,781.14 |
| 95 | 12/4/2012 | - | - | (19,052.93) | (19,052.93) | 146,728.21 |
| 96 | 12/5/2012 | - | - | (4,127.27) | (4,127.27) | 142,600.94 |
| 97 | 12/6/2012 | - | - | (2,881.58) | (2,881.58) | 139,719.36 |
| 98 | 12/7/2012 | - | - | (3,427.43) | (3,427.43) | 136,291.93 |
| 99 | 12/10/2012 | - | - | (2,443.17) | (2,443.17) | 133,848.76 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# CALCULATION OF IMPUTED INTEREST
### Agreement #SSM1003

B-3

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 100 | 12/11/2012 | - | - | (11,261.93) | (11,261.93) | 122,586.83 |
| 101 | 12/12/2012 | - | - | (2,777.08) | (2,777.08) | 119,809.75 |
| 102 | 12/13/2012 | - | - | (2,519.45) | (2,519.45) | 117,290.30 |
| 103 | 12/14/2012 | - | - | (3,406.06) | (3,406.06) | 113,884.24 |
| 104 | 12/17/2012 | - | - | (2,953.39) | (2,953.39) | 110,930.85 |
| 105 | 12/18/2012 | - | - | (14,351.03) | (14,351.03) | 96,579.82 |
| 106 | 12/19/2012 | - | - | (4,031.05) | (4,031.05) | 92,548.77 |
| 107 | 12/20/2012 | - | - | (3,929.85) | (3,929.85) | 88,618.92 |
| 108 | 12/21/2012 | - | - | (4,007.70) | (4,007.70) | 84,611.22 |
| 109 | 12/24/2012 | - | - | (3,594.28) | (3,594.28) | 81,016.94 |
| 110 | 12/27/2012 | - | - | (15,495.41) | (15,495.41) | 65,521.53 |
| 111 | 12/28/2012 | - | - | (1,921.02) | (1,921.02) | 63,600.51 |
| 112 | 12/31/2012 | - | - | (2,996.77) | (2,996.77) | 60,603.74 |
| 113 | 1/3/2013 | - | - | (19,660.95) | (19,660.95) | 40,942.79 |
| 114 | 1/4/2013 | - | - | (2,547.84) | (2,547.84) | 38,394.95 |
| 115 | 1/7/2013 | - | - | (3,615.67) | (3,615.67) | 34,779.28 |
| 116 | 1/8/2013 | - | - | (11,067.05) | (11,067.05) | 23,712.23 |
| 117 | 1/9/2013 | - | - | (3,635.85) | (3,635.85) | 20,076.38 |
| 118 | 1/10/2013 | - | - | (2,055.94) | (2,055.94) | 18,020.44 |
| 119 | 1/11/2013 | - | - | (1,878.96) | (1,878.96) | 16,141.48 |
| 120 | 1/14/2013 | - | - | (1,557.85) | (1,557.85) | 14,583.63 |
| 121 | 1/15/2013 | - | - | (10,263.36) | (10,263.36) | 4,320.27 |
| 122 | 1/16/2013 | - | - | (2,477.04) | (2,477.04) | 1,843.23 |
| 123 | 1/17/2013 | - | - | (1,843.23) | (1,843.23) | - |
| 124 | | $ 600,000.00 | $ 804,000.00 | $ (804,000.00) | $ (204,000.00) | |
| 125 | | | | | | |
| 126 | | | | Imputed Rate: | 117% | |
| 127 | | | | | A-1 | |

128 [1] EWC Statements show an invoice date for the amount due that is slightly different than the agreement date. We
129 assume the funds were advanced on the agreement date. Using the invoice date would not materially affect our results.

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

# CALCULATION OF IMPUTED INTEREST
### Agreement #SSM1004

B-4

| <u>Date [1]</u> | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|
| | D-3 | D-3 | D-1 | calc. | calc. |
| 1  8/13/2012 | $ 250,000.00 | $ 335,000.00 | $      - | $ 250,000.00 | $ 335,000.00 |
| 2  1/17/2013 | - | - | (754.01) | (754.01) | 334,245.99 |
| 3  1/18/2013 | - | - | (1,747.18) | (1,747.18) | 332,498.81 |
| 4  1/22/2013 | - | - | (2,430.80) | (2,430.80) | 330,068.01 |
| 5  1/23/2013 | - | - | (15,422.45) | (15,422.45) | 314,645.56 |
| 6  1/24/2013 | - | - | (2,347.32) | (2,347.32) | 312,298.24 |
| 7  1/25/2013 | - | - | (1,976.98) | (1,976.98) | 310,321.26 |
| 8  1/28/2013 | - | - | (2,409.23) | (2,409.23) | 307,912.03 |
| 9  1/29/2013 | - | - | (12,263.88) | (12,263.88) | 295,648.15 |
| 10  1/30/2013 | - | - | (8,292.74) | (8,292.74) | 287,355.41 |
| 11  2/1/2013 | - | - | (3,662.55) | (3,662.55) | 283,692.86 |
| 12  2/4/2013 | - | - | (3,682.10) | (3,682.10) | 280,010.76 |
| 13  2/5/2013 | - | - | (15,355.24) | (15,355.24) | 264,655.52 |
| 14  2/6/2013 | - | - | (2,525.77) | (2,525.77) | 262,129.75 |
| 15  2/7/2013 | - | - | (2,337.36) | (2,337.36) | 259,792.39 |
| 16  2/8/2013 | - | - | (1,550.95) | (1,550.95) | 258,241.44 |
| 17  2/11/2013 | - | - | (2,710.83) | (2,710.83) | 255,530.61 |
| 18  2/12/2013 | - | - | (11,065.96) | (11,065.96) | 244,464.65 |
| 19  2/13/2013 | - | - | (2,558.96) | (2,558.96) | 241,905.69 |
| 20  2/14/2013 | - | - | (2,529.42) | (2,529.42) | 239,376.27 |
| 21  2/15/2013 | - | - | (2,760.81) | (2,760.81) | 236,615.46 |
| 22  2/19/2013 | - | - | (1,616.42) | (1,616.42) | 234,999.04 |
| 23  2/20/2013 | - | - | (17,783.85) | (17,783.85) | 217,215.19 |
| 24  2/21/2013 | - | - | (2,218.02) | (2,218.02) | 214,997.17 |
| 25  2/22/2013 | - | - | (1,982.44) | (1,982.44) | 213,014.73 |
| 26  2/25/2013 | - | - | (1,841.11) | (1,841.11) | 211,173.62 |
| 27  2/26/2013 | - | - | (12,558.68) | (12,558.68) | 198,614.94 |
| 28  2/27/2013 | - | - | (3,174.79) | (3,174.79) | 195,440.15 |
| 29  2/28/2013 | - | - | (3,796.31) | (3,796.31) | 191,643.84 |
| 30  3/1/2013 | - | - | (3,633.56) | (3,633.56) | 188,010.28 |
| 31  3/4/2013 | - | - | (4,413.77) | (4,413.77) | 183,596.51 |
| 32  3/5/2013 | - | - | (18,245.54) | (18,245.54) | 165,350.97 |
| 33  3/6/2013 | - | - | (3,890.89) | (3,890.89) | 161,460.08 |
| 34  3/7/2013 | - | - | (3,249.20) | (3,249.20) | 158,210.88 |
| 35  3/8/2013 | - | - | (1,626.55) | (1,626.55) | 156,584.33 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# CALCULATION OF IMPUTED INTEREST
## Agreement #SSM1004

B-4

| | | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | Date [1] | D-3 | D-3 | D-1 | calc. | calc. |
| 36 | 3/11/2013 | - | - | (1,932.70) | (1,932.70) | 154,651.63 |
| 37 | 3/12/2013 | - | - | (12,631.56) | (12,631.56) | 142,020.07 |
| 38 | 3/13/2013 | - | - | (2,733.55) | (2,733.55) | 139,286.52 |
| 39 | 3/14/2013 | - | - | (2,786.23) | (2,786.23) | 136,500.29 |
| 40 | 3/15/2013 | - | - | (2,712.57) | (2,712.57) | 133,787.72 |
| 41 | 3/18/2013 | - | - | (2,479.28) | (2,479.28) | 131,308.44 |
| 42 | 3/19/2013 | - | - | (14,588.88) | (14,588.88) | 116,719.56 |
| 43 | 3/20/2013 | - | - | (6,784.54) | (6,784.54) | 109,935.02 |
| 44 | 3/22/2013 | - | - | (2,362.98) | (2,362.98) | 107,572.04 |
| 45 | 3/25/2013 | - | - | (2,864.90) | (2,864.90) | 104,707.14 |
| 46 | 3/26/2013 | - | - | (15,950.92) | (15,950.92) | 88,756.22 |
| 47 | 3/27/2013 | - | - | (3,829.33) | (3,829.33) | 84,926.89 |
| 48 | 3/28/2013 | - | - | (3,727.11) | (3,727.11) | 81,199.78 |
| 49 | 3/29/2013 | - | - | (4,570.97) | (4,570.97) | 76,628.81 |
| 50 | 4/1/2013 | - | - | (3,265.84) | (3,265.84) | 73,362.97 |
| 51 | 4/2/2013 | - | - | (13,149.20) | (13,149.20) | 60,213.77 |
| 52 | 4/3/2013 | - | - | (12,709.85) | (12,709.85) | 47,503.92 |
| 53 | 4/4/2013 | - | - | (5,131.03) | (5,131.03) | 42,372.89 |
| 54 | 4/5/2013 | - | - | (5,002.34) | (5,002.34) | 37,370.55 |
| 55 | 4/8/2013 | - | - | (3,635.89) | (3,635.89) | 33,734.66 |
| 56 | 4/9/2013 | - | - | (12,847.67) | (12,847.67) | 20,886.99 |
| 57 | 4/10/2013 | - | - | (3,001.06) | (3,001.06) | 17,885.93 |
| 58 | 4/11/2013 | - | - | (2,253.88) | (2,253.88) | 15,632.05 |
| 59 | 4/12/2013 | - | - | (2,414.77) | (2,414.77) | 13,217.28 |
| 60 | 4/15/2013 | - | - | (3,449.66) | (3,449.66) | 9,767.62 |
| 61 | 4/16/2013 | - | - | (9,767.62) | (9,767.62) | - |
| 62 | | $  250,000.00 | $  335,000.00 | $  (335,000.00) | $  (85,000.00) | |
| 63 | | | | | | |
| 64 | | | | Imputed Rate: | 69% | |
| | | | | | A-1 | |

[1] EWC Statements show an invoice date for the amount due that is slightly different than the agreement date. We assume the funds were advanced on the agreement date. Using the invoice date would not materially affect our results.

STARVING STUDENTS v. EXPRESS WORKING CAPITAL

# CALCULATION OF IMPUTED INTEREST
## Agreement #SSM1005

B-5

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 1 | 9/14/2012 | $ 250,000.00 | $ 335,000.00 | $ - | $ 250,000.00 | $ 335,000.00 |
| 2 | 4/16/2013 | - | - | (820.50) | (820.50) | 334,179.50 |
| 3 | 4/17/2013 | - | - | (3,529.65) | (3,529.65) | 330,649.85 |
| 4 | 4/18/2013 | - | - | (3,530.36) | (3,530.36) | 327,119.49 |
| 5 | 4/19/2013 | - | - | (3,225.11) | (3,225.11) | 323,894.38 |
| 6 | 4/22/2013 | - | - | (2,934.60) | (2,934.60) | 320,959.78 |
| 7 | 4/23/2013 | - | - | (12,634.76) | (12,634.76) | 308,325.02 |
| 8 | 4/30/2013 | - | - | (28,630.78) | (28,630.78) | 279,694.24 |
| 9 | 5/31/2013 | - | - | (150,183.95) | (150,183.95) | 129,510.29 |
| 10 | 6/3/2013 | - | - | (6,638.12) | (6,638.12) | 122,872.17 |
| 11 | 6/4/2013 | - | - | (24,141.71) | (24,141.71) | 98,730.46 |
| 12 | 6/5/2013 | - | - | (5,591.32) | (5,591.32) | 93,139.14 |
| 13 | 6/6/2013 | - | - | (5,451.10) | (5,451.10) | 87,688.04 |
| 14 | 6/7/2013 | - | - | (4,972.90) | (4,972.90) | 82,715.14 |
| 15 | 6/10/2013 | - | - | (3,864.04) | (3,864.04) | 78,851.10 |
| 16 | 6/11/2013 | - | - | (15,793.38) | (15,793.38) | 63,057.72 |
| 17 | 6/12/2013 | - | - | (4,028.94) | (4,028.94) | 59,028.78 |
| 18 | 6/13/2013 | - | - | (4,527.51) | (4,527.51) | 54,501.27 |
| 19 | 6/14/2013 | - | - | (3,014.32) | (3,014.32) | 51,486.95 |
| 20 | 6/17/2013 | - | - | (5,865.54) | (5,865.54) | 45,621.41 |
| 21 | 6/18/2013 | - | - | (18,715.03) | (18,715.03) | 26,906.38 |
| 22 | 6/19/2013 | - | - | (5,310.15) | (5,310.15) | 21,596.23 |
| 23 | 6/20/2013 | - | - | (4,711.62) | (4,711.62) | 16,884.61 |
| 24 | 6/21/2013 | - | - | (4,735.84) | (4,735.84) | 12,148.77 |
| 25 | 6/24/2013 | - | - | (4,476.38) | (4,476.38) | 7,672.39 |
| 26 | 6/25/2013 | - | - | (7,672.39) | (7,672.39) | - |
| 27 | | 250,000.00 | 335,000.00 | (335,000.00) | (85,000.00) | |
| 28 | | | | | | |
| 29 | | | | Imputed Rate: | 51% | |
| 30 | | | | | A-1 | |

31  [1] EWC Statements show an invoice date for the amount due that is slightly different than the agreement date. We
32  assume the funds were advanced on the agreement date. Using the invoice date would not materially affect our results.

**STARVING STUDENTS V. EXPRESS WORKING CAPITAL**

# CALCULATION OF IMPUTED INTEREST
### Agreement #SSM1006

**B-6**

| Date [1] | Advances aka "Purchase Price" D-3 | Amounts Due aka "Amount Sold" D-3 | Net Repayments aka "Receipts Collected" D-1 | Net Cash Flow calc. | Balance calc. |
|---|---|---|---|---|---|
| 1 | 12/28/2012 | $ 400,000.00 | $ 536,000.00 | $ - | $ 400,000.00 | $ 536,000.00 |
| 2 | 6/25/2013 | - | - | (13,274.68) | (13,274.68) | 522,725.32 |
| 3 | 6/26/2013 | - | - | (6,495.13) | (6,495.13) | 516,230.19 |
| 4 | 6/27/2013 | - | - | (4,525.20) | (4,525.20) | 511,704.99 |
| 5 | 6/28/2013 | - | - | (5,481.08) | (5,481.08) | 506,223.91 |
| 6 | 7/1/2013 | - | - | (5,540.69) | (5,540.69) | 500,683.22 |
| 7 | 7/2/2013 | - | - | (23,651.27) | (23,651.27) | 477,031.95 |
| 8 | 7/3/2013 | - | - | (9,543.74) | (9,543.74) | 467,488.21 |
| 9 | 7/5/2013 | - | - | (8,545.19) | (8,545.19) | 458,943.02 |
| 10 | 7/8/2013 | - | - | (10,122.07) | (10,122.07) | 448,820.95 |
| 11 | 7/9/2013 | - | - | (15,225.36) | (15,225.36) | 433,595.59 |
| 12 | 7/10/2013 | - | - | (5,717.98) | (5,717.98) | 427,877.61 |
| 13 | 7/11/2013 | - | - | (4,496.18) | (4,496.18) | 423,381.43 |
| 14 | 7/12/2013 | - | - | (5,781.24) | (5,781.24) | 417,600.19 |
| 15 | 7/15/2013 | - | - | (4,067.84) | (4,067.84) | 413,532.35 |
| 16 | 7/16/2013 | - | - | (16,236.60) | (16,236.60) | 397,295.75 |
| 17 | 7/17/2013 | - | - | (6,546.34) | (6,546.34) | 390,749.41 |
| 18 | 7/18/2013 | - | - | (6,634.54) | (6,634.54) | 384,114.87 |
| 19 | 7/19/2013 | - | - | (4,614.13) | (4,614.13) | 379,500.74 |
| 20 | 7/22/2013 | - | - | (5,449.20) | (5,449.20) | 374,051.54 |
| 21 | 7/23/2013 | - | - | (7,664.55) | (7,664.55) | 366,386.99 |
| 22 | 7/24/2013 | - | - | (20.43) | (20.43) | 366,366.56 |
| 23 | 7/25/2013 | - | - | (366,366.56) | (366,366.56) | - |
| 24 | | $ 400,000.00 | $ 536,000.00 | $ (536,000.00) | $ (136,000.00) | |
| 25 | | | | | | |
| 26 | | | | | **Imputed Rate:** | **69%** |
| 27 | | | | | A-1 | |

[1] EWC Statements show an invoice date for the amount due that is slightly different than the agreement date. We
assume the funds were advanced on the agreement date. Using the invoice date would not materially affect our results.

S<small>TARVING</small> S<small>TUDENTS</small> v. E<small>XPRESS</small> W<small>ORKING</small> C<small>APITAL</small>

# CALCULATION OF IMPUTED INTEREST

### Agreements 7 Through 10 - Assumes EWC is Demanding Payment In Full

B-7

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 1 | **Agreement #SSM1007** | | | | | |
| 2 | 1/30/2013 | $ 100,000.00 | $ 134,000.00 | $          - | $  100,000.00 | $ 134,000.00 |
| 3 | 7/25/2013 | | | (134,000.00) | (134,000.00) | - |
| 4 | | $ 100,000.00 | $ 134,000.00 | $ (134,000.00) | $ (34,000.00) | |
| 5 | | | | | | |
| 6 | | | | **Imputed Rate:** | **83%** | |
| 7 | | | | | A-1 | |
| 8 | | | | | | |
| 9 | **Agreement #SSM1008** | | | | | |
| 10 | 4/17/2013 | $ 325,000.00 | $ 435,500.00 | $          - | $  325,000.00 | $ 435,500.00 |
| 11 | 7/25/2013 | | | (435,500.00) | (435,500.00) | - |
| 12 | | $ 325,000.00 | $ 435,500.00 | $ (435,500.00) | $ (110,500.00) | |
| 13 | | | | | | |
| 14 | | | | **Imputed Rate:** | **194%** | |
| 15 | | | | | A-1 | |
| 16 | | | | | | |
| 17 | **Agreement #SSM1009** | | | | | |
| 18 | 5/29/2013 | $ 200,000.00 | $ 268,000.00 | $          - | $  200,000.00 | $ 268,000.00 |
| 19 | 7/25/2013 | | | (268,000.00) | (268,000.00) | - |
| 20 | | $ 200,000.00 | $ 268,000.00 | $ (268,000.00) | $ (68,000.00) | |
| 21 | | | | | | |
| 22 | | | | **Imputed Rate:** | **552%** | |
| 23 | | | | | A-1 | |
| 24 | | | | | | |
| 25 | **Agreement #SSM1010** | | | | | |
| 26 | 7/11/2013 | $ 300,000.00 | $ 402,000.00 | $          - | $  300,000.00 | $ 402,000.00 |
| 27 | 7/25/2013 | | | (402,000.00) | (402,000.00) | - |
| 28 | | $ 300,000.00 | $ 402,000.00 | $ (402,000.00) | $ (102,000.00) | |
| 29 | | | | | | |
| 30 | | | | **Imputed Rate:** | **205870%** | |
| 31 | | | | | A-1 | |

32 [1] EWC Statements show an invoice date for the amount due that is slightly different than the agreement date. We
33 assume the funds were advanced on the agreement date. Using the invoice date would not materially affect our
34 results.

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" D-3 | Amounts Due aka "Amount Sold" D-3 | Net Repayments aka "Receipts Collected" D-1 | Net Cash Flow calc. | Balance calc. |
|---|---|---|---|---|---|---|
| 1 | 5/2/2011 | $ 500,000.00 | $ 685,000.00 | $ - | $ 500,000.00 | $ 685,000.00 |
| 2 | 5/4/2011 | - | - | (1,855.64) | (1,855.64) | 683,144.36 |
| 3 | 5/9/2011 | - | - | (7,958.91) | (7,958.91) | 675,185.45 |
| 4 | 5/10/2011 | - | - | (1,664.01) | (1,664.01) | 673,521.44 |
| 5 | 5/11/2011 | - | - | (2,891.40) | (2,891.40) | 670,630.04 |
| 6 | 5/12/2011 | - | - | (2,481.41) | (2,481.41) | 668,148.63 |
| 7 | 5/13/2011 | - | - | (1,418.59) | (1,418.59) | 666,730.04 |
| 8 | 5/16/2011 | - | - | (8,001.97) | (8,001.97) | 658,728.07 |
| 9 | 5/17/2011 | - | - | (2,934.51) | (2,934.51) | 655,793.56 |
| 10 | 5/18/2011 | - | - | (2,866.25) | (2,866.25) | 652,927.31 |
| 11 | 5/19/2011 | - | - | (3,908.62) | (3,908.62) | 649,018.69 |
| 12 | 5/20/2011 | - | - | (2,222.05) | (2,222.05) | 646,796.64 |
| 13 | 5/23/2011 | - | - | (6,758.94) | (6,758.94) | 640,037.70 |
| 14 | 5/24/2011 | - | - | (2,741.05) | (2,741.05) | 637,296.65 |
| 15 | 5/25/2011 | - | - | (2,900.29) | (2,900.29) | 634,396.36 |
| 16 | 5/26/2011 | - | - | (2,242.93) | (2,242.93) | 632,153.43 |
| 17 | 5/27/2011 | - | - | (2,292.49) | (2,292.49) | 629,860.94 |
| 18 | 5/31/2011 | - | - | (16,327.15) | (16,327.15) | 613,533.79 |
| 19 | 6/1/2011 | - | - | (5,316.20) | (5,316.20) | 608,217.59 |
| 20 | 6/2/2011 | - | - | (3,352.62) | (3,352.62) | 604,864.97 |
| 21 | 6/3/2011 | - | - | (4,980.56) | (4,980.56) | 599,884.41 |
| 22 | 6/6/2011 | - | - | (12,056.43) | (12,056.43) | 587,827.98 |
| 23 | 6/7/2011 | - | - | (2,788.00) | (2,788.00) | 585,039.98 |
| 24 | 6/8/2011 | - | - | (3,357.79) | (3,357.79) | 581,682.19 |
| 25 | 6/9/2011 | - | - | (2,490.37) | (2,490.37) | 579,191.82 |
| 26 | 6/10/2011 | - | - | (2,540.92) | (2,540.92) | 576,650.90 |
| 27 | 6/13/2011 | - | - | (8,844.32) | (8,844.32) | 567,806.58 |
| 28 | 6/14/2011 | - | - | (3,205.42) | (3,205.42) | 564,601.16 |
| 29 | 6/15/2011 | - | - | (2,929.20) | (2,929.20) | 561,671.96 |
| 30 | 6/16/2011 | - | - | (3,997.56) | (3,997.56) | 557,674.40 |
| 31 | 6/17/2011 | - | - | (2,645.04) | (2,645.04) | 555,029.36 |
| 32 | 6/20/2011 | - | - | (12,012.46) | (12,012.46) | 543,016.90 |
| 33 | 6/21/2011 | - | - | (2,718.00) | (2,718.00) | 540,298.90 |
| 34 | 6/22/2011 | - | - | (2,772.57) | (2,772.57) | 537,526.33 |
| 35 | 6/23/2011 | - | - | (2,537.82) | (2,537.82) | 534,988.51 |
| 36 | 6/24/2011 | - | - | (2,140.09) | (2,140.09) | 532,848.42 |
| 37 | 6/27/2011 | - | - | (12,554.71) | (12,554.71) | 520,293.71 |
| 38 | 6/28/2011 | - | - | (3,397.88) | (3,397.88) | 516,895.83 |
| 39 | 6/29/2011 | - | - | (3,932.91) | (3,932.91) | 512,962.92 |
| 40 | 6/30/2011 | - | - | (4,369.78) | (4,369.78) | 508,593.14 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 41 | 7/1/2011 | - | - | (4,574.28) | (4,574.28) | 504,018.86 |
| 42 | 7/5/2011 | - | - | (22,321.83) | (22,321.83) | 481,697.03 |
| 43 | 7/6/2011 | - | - | (506.42) | (506.42) | 481,190.61 |
| 44 | 7/7/2011 | - | - | (3,512.01) | (3,512.01) | 477,678.60 |
| 45 | 7/8/2011 | - | - | (2,741.80) | (2,741.80) | 474,936.80 |
| 46 | 7/11/2011 | - | - | (10,127.10) | (10,127.10) | 464,809.70 |
| 47 | 7/12/2011 | - | - | (2,062.47) | (2,062.47) | 462,747.23 |
| 48 | 7/13/2011 | - | - | (2,695.03) | (2,695.03) | 460,052.20 |
| 49 | 7/14/2011 | - | - | (1,926.90) | (1,926.90) | 458,125.30 |
| 50 | 7/15/2011 | - | - | (2,095.77) | (2,095.77) | 456,029.53 |
| 51 | 7/18/2011 | - | - | (8,335.66) | (8,335.66) | 447,693.87 |
| 52 | 7/19/2011 | - | - | (2,992.90) | (2,992.90) | 444,700.97 |
| 53 | 7/20/2011 | - | - | (1,750.92) | (1,750.92) | 442,950.05 |
| 54 | 7/21/2011 | - | - | (2,597.75) | (2,597.75) | 440,352.30 |
| 55 | 7/22/2011 | - | - | (2,091.95) | (2,091.95) | 438,260.35 |
| 56 | 7/25/2011 | - | - | (8,253.25) | (8,253.25) | 430,007.10 |
| 57 | 7/26/2011 | - | - | (2,244.50) | (2,244.50) | 427,762.60 |
| 58 | 7/27/2011 | - | - | (2,690.35) | (2,690.35) | 425,072.25 |
| 59 | 7/28/2011 | - | - | (2,195.14) | (2,195.14) | 422,877.11 |
| 60 | 7/29/2011 | - | - | (3,073.19) | (3,073.19) | 419,803.92 |
| 61 | 8/1/2011 | - | - | (12,504.22) | (12,504.22) | 407,299.70 |
| 62 | 8/2/2011 | - | - | (4,975.04) | (4,975.04) | 402,324.66 |
| 63 | 8/3/2011 | - | - | (3,893.91) | (3,893.91) | 398,430.75 |
| 64 | 8/4/2011 | - | - | (3,367.95) | (3,367.95) | 395,062.80 |
| 65 | 8/5/2011 | - | - | (3,630.11) | (3,630.11) | 391,432.69 |
| 66 | 8/8/2011 | - | - | (8,217.93) | (8,217.93) | 383,214.76 |
| 67 | 8/9/2011 | - | - | (2,987.96) | (2,987.96) | 380,226.80 |
| 68 | 8/10/2011 | - | - | (2,455.46) | (2,455.46) | 377,771.34 |
| 69 | 8/11/2011 | - | - | (2,168.26) | (2,168.26) | 375,603.08 |
| 70 | 8/12/2011 | - | - | (2,222.53) | (2,222.53) | 373,380.55 |
| 71 | 8/15/2011 | - | - | (8,316.70) | (8,316.70) | 365,063.85 |
| 72 | 8/16/2011 | - | - | (2,291.83) | (2,291.83) | 362,772.02 |
| 73 | 8/17/2011 | - | - | (2,335.21) | (2,335.21) | 360,436.81 |
| 74 | 8/18/2011 | - | - | (3,239.21) | (3,239.21) | 357,197.60 |
| 75 | 8/19/2011 | - | - | (2,634.93) | (2,634.93) | 354,562.67 |
| 76 | 8/22/2011 | - | - | (7,570.21) | (7,570.21) | 346,992.46 |
| 77 | 8/23/2011 | - | - | (2,811.81) | (2,811.81) | 344,180.65 |
| 78 | 8/24/2011 | - | - | (2,874.12) | (2,874.12) | 341,306.53 |
| 79 | 8/25/2011 | - | - | (2,368.89) | (2,368.89) | 338,937.64 |
| 80 | 8/26/2011 | - | - | (1,757.60) | (1,757.60) | 337,180.04 |

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 81 | 8/29/2011 | - | - | (10,066.48) | (10,066.48) | 327,113.56 |
| 82 | 8/30/2011 | - | - | (2,884.88) | (2,884.88) | 324,228.68 |
| 83 | 8/31/2011 | - | - | (2,963.18) | (2,963.18) | 321,265.50 |
| 84 | 9/1/2011 | - | - | (3,572.08) | (3,572.08) | 317,693.42 |
| 85 | 9/2/2011 | - | - | (3,389.31) | (3,389.31) | 314,304.11 |
| 86 | 9/6/2011 | - | - | (14,324.45) | (14,324.45) | 299,979.66 |
| 87 | 9/7/2011 | - | - | (2,722.63) | (2,722.63) | 297,257.03 |
| 88 | 9/8/2011 | - | - | (1,585.74) | (1,585.74) | 295,671.29 |
| 89 | 9/9/2011 | - | - | (1,507.88) | (1,507.88) | 294,163.41 |
| 90 | 9/12/2011 | - | - | (6,904.80) | (6,904.80) | 287,258.61 |
| 91 | 9/13/2011 | - | - | (1,807.04) | (1,807.04) | 285,451.57 |
| 92 | 9/14/2011 | - | - | (1,553.17) | (1,553.17) | 283,898.40 |
| 93 | 9/15/2011 | - | - | (1,485.48) | (1,485.48) | 282,412.92 |
| 94 | 9/16/2011 | - | - | (1,864.79) | (1,864.79) | 280,548.13 |
| 95 | 9/19/2011 | - | - | (7,130.64) | (7,130.64) | 273,417.49 |
| 96 | 9/20/2011 | - | - | (3,473.26) | (3,473.26) | 269,944.23 |
| 97 | 9/21/2011 | - | - | (1,721.87) | (1,721.87) | 268,222.36 |
| 98 | 9/22/2011 | - | - | (1,562.36) | (1,562.36) | 266,660.00 |
| 99 | 9/23/2011 | - | - | (2,346.19) | (2,346.19) | 264,313.81 |
| 100 | 9/26/2011 | 475,000.00 | 636,500.00 | (6,411.89) | 468,588.11 | 894,401.92 |
| 101 | 9/27/2011 | - | - | (2,497.98) | (2,497.98) | 891,903.94 |
| 102 | 9/28/2011 | - | - | (2,186.07) | (2,186.07) | 889,717.87 |
| 103 | 9/29/2011 | - | - | (2,106.97) | (2,106.97) | 887,610.90 |
| 104 | 9/30/2011 | - | - | (2,126.51) | (2,126.51) | 885,484.39 |
| 105 | 10/3/2011 | - | - | (17,470.38) | (17,470.38) | 868,014.01 |
| 106 | 10/4/2011 | - | - | (5,811.50) | (5,811.50) | 862,202.51 |
| 107 | 10/5/2011 | - | - | (3,790.88) | (3,790.88) | 858,411.63 |
| 108 | 10/6/2011 | - | - | (4,284.39) | (4,284.39) | 854,127.24 |
| 109 | 10/7/2011 | - | - | (2,902.95) | (2,902.95) | 851,224.29 |
| 110 | 10/11/2011 | - | - | (13,753.94) | (13,753.94) | 837,470.35 |
| 111 | 10/12/2011 | - | - | (2,311.13) | (2,311.13) | 835,159.22 |
| 112 | 10/13/2011 | - | - | (3,050.20) | (3,050.20) | 832,109.02 |
| 113 | 10/14/2011 | - | - | (2,514.23) | (2,514.23) | 829,594.79 |
| 114 | 10/17/2011 | - | - | (10,528.98) | (10,528.98) | 819,065.81 |
| 115 | 10/18/2011 | - | - | (3,436.92) | (3,436.92) | 815,628.89 |
| 116 | 10/19/2011 | - | - | (2,353.46) | (2,353.46) | 813,275.43 |
| 117 | 10/20/2011 | - | - | (2,391.46) | (2,391.46) | 810,883.97 |
| 118 | 10/21/2011 | - | - | (1,978.81) | (1,978.81) | 808,905.16 |
| 119 | 10/24/2011 | - | - | (7,905.09) | (7,905.09) | 801,000.07 |
| 120 | 10/25/2011 | - | - | (2,529.95) | (2,529.95) | 798,470.12 |

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 121 | 10/26/2011 | - | - | (2,395.44) | (2,395.44) | 796,074.68 |
| 122 | 10/27/2011 | - | - | (2,312.66) | (2,312.66) | 793,762.02 |
| 123 | 10/28/2011 | - | - | (3,177.90) | (3,177.90) | 790,584.12 |
| 124 | 10/31/2011 | - | - | (12,616.56) | (12,616.56) | 777,967.56 |
| 125 | 11/1/2011 | - | - | (3,422.87) | (3,422.87) | 774,544.69 |
| 126 | 11/2/2011 | - | - | (2,962.09) | (2,962.09) | 771,582.60 |
| 127 | 11/3/2011 | - | - | (3,300.45) | (3,300.45) | 768,282.15 |
| 128 | 11/4/2011 | - | - | (2,382.49) | (2,382.49) | 765,899.66 |
| 129 | 11/7/2011 | - | - | (8,132.83) | (8,132.83) | 757,766.83 |
| 130 | 11/8/2011 | - | - | (3,355.95) | (3,355.95) | 754,410.88 |
| 131 | 11/9/2011 | - | - | (1,576.98) | (1,576.98) | 752,833.90 |
| 132 | 11/14/2011 | - | - | (7,918.18) | (7,918.18) | 744,915.72 |
| 133 | 11/15/2011 | - | - | (939.83) | (939.83) | 743,975.89 |
| 134 | 11/16/2011 | - | - | (1,489.32) | (1,489.32) | 742,486.57 |
| 135 | 11/18/2011 | - | - | (1,419.60) | (1,419.60) | 741,066.97 |
| 136 | 11/21/2011 | - | - | (1,160.41) | (1,160.41) | 739,906.56 |
| 137 | 11/22/2011 | - | - | (1,008.39) | (1,008.39) | 738,898.17 |
| 138 | 11/23/2011 | - | - | (3,638.02) | (3,638.02) | 735,260.15 |
| 139 | 11/25/2011 | - | - | (4,261.02) | (4,261.02) | 730,999.13 |
| 140 | 11/28/2011 | - | - | (2,217.08) | (2,217.08) | 728,782.05 |
| 141 | 11/29/2011 | - | - | (708.72) | (708.72) | 728,073.33 |
| 142 | 11/30/2011 | - | - | (1,722.96) | (1,722.96) | 726,350.37 |
| 143 | 12/1/2011 | - | - | (997.52) | (997.52) | 725,352.85 |
| 144 | 12/2/2011 | - | - | (2,091.86) | (2,091.86) | 723,260.99 |
| 145 | 12/5/2011 | - | - | (5,936.90) | (5,936.90) | 717,324.09 |
| 146 | 12/6/2011 | - | - | (738.33) | (738.33) | 716,585.76 |
| 147 | 12/7/2011 | - | - | (1,074.49) | (1,074.49) | 715,511.27 |
| 148 | 12/8/2011 | - | - | (509.87) | (509.87) | 715,001.40 |
| 149 | 12/9/2011 | - | - | (1,301.06) | (1,301.06) | 713,700.34 |
| 150 | 12/12/2011 | - | - | (3,217.71) | (3,217.71) | 710,482.63 |
| 151 | 12/13/2011 | - | - | (1,108.28) | (1,108.28) | 709,374.35 |
| 152 | 12/14/2011 | - | - | (263.73) | (263.73) | 709,110.62 |
| 153 | 12/15/2011 | - | - | (838.17) | (838.17) | 708,272.45 |
| 154 | 12/16/2011 | - | - | (678.76) | (678.76) | 707,593.69 |
| 155 | 12/19/2011 | - | - | (3,951.94) | (3,951.94) | 703,641.75 |
| 156 | 12/20/2011 | - | - | (894.95) | (894.95) | 702,746.80 |
| 157 | 12/21/2011 | - | - | (1,059.65) | (1,059.65) | 701,687.15 |
| 158 | 12/22/2011 | - | - | (462.08) | (462.08) | 701,225.07 |
| 159 | 12/23/2011 | - | - | (742.63) | (742.63) | 700,482.44 |
| 160 | 12/27/2011 | - | - | (1,587.94) | (1,587.94) | 698,894.50 |

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|
| | D-3 | D-3 | D-1 | calc. | calc. |
| 161 12/28/2011 | - | - | (366.56) | (366.56) | 698,527.94 |
| 162 12/29/2011 | - | - | (649.29) | (649.29) | 697,878.65 |
| 163 12/30/2011 | - | - | (851.40) | (851.40) | 697,027.25 |
| 164 1/3/2012 | - | - | (2,334.45) | (2,334.45) | 694,692.80 |
| 165 1/4/2012 | - | - | (223.94) | (223.94) | 694,468.86 |
| 166 1/5/2012 | - | - | (488.60) | (488.60) | 693,980.26 |
| 167 1/6/2012 | - | - | (169.33) | (169.33) | 693,810.93 |
| 168 1/9/2012 | - | - | (1,859.61) | (1,859.61) | 691,951.32 |
| 169 1/10/2012 | - | - | (321.41) | (321.41) | 691,629.91 |
| 170 1/11/2012 | - | - | (553.12) | (553.12) | 691,076.79 |
| 171 1/12/2012 | - | - | (347.98) | (347.98) | 690,728.81 |
| 172 1/13/2012 | - | - | (678.30) | (678.30) | 690,050.51 |
| 173 1/17/2012 | - | - | (3,220.57) | (3,220.57) | 686,829.94 |
| 174 1/18/2012 | - | - | (540.88) | (540.88) | 686,289.06 |
| 175 1/19/2012 | - | - | (209.83) | (209.83) | 686,079.23 |
| 176 1/20/2012 | - | - | (428.49) | (428.49) | 685,650.74 |
| 177 1/23/2012 | - | - | (998.55) | (998.55) | 684,652.19 |
| 178 1/24/2012 | - | - | (211.67) | (211.67) | 684,440.52 |
| 179 1/25/2012 | - | - | (210.90) | (210.90) | 684,229.62 |
| 180 1/26/2012 | - | - | (340.63) | (340.63) | 683,888.99 |
| 181 1/27/2012 | - | - | (293.05) | (293.05) | 683,595.94 |
| 182 1/30/2012 | - | - | (11,129.39) | (11,129.39) | 672,466.55 |
| 183 1/31/2012 | - | - | (3,618.93) | (3,618.93) | 668,847.62 |
| 184 2/6/2012 | - | - | (9,143.61) | (9,143.61) | 659,704.01 |
| 185 2/8/2012 | - | - | (4,665.36) | (4,665.36) | 655,038.65 |
| 186 2/9/2012 | - | - | (2,325.14) | (2,325.14) | 652,713.51 |
| 187 2/13/2012 | - | - | (2,338.06) | (2,338.06) | 650,375.45 |
| 188 2/15/2012 | - | - | (4,904.28) | (4,904.28) | 645,471.17 |
| 189 2/17/2012 | - | - | (1,841.14) | (1,841.14) | 643,630.03 |
| 190 2/21/2012 | - | - | (6,529.91) | (6,529.91) | 637,100.12 |
| 191 3/2/2012 | - | - | (52,343.16) | (52,343.16) | 584,756.96 |
| 192 3/5/2012 | - | - | (10,747.23) | (10,747.23) | 574,009.73 |
| 193 3/8/2012 | - | - | (2,537.14) | (2,537.14) | 571,472.59 |
| 194 3/12/2012 | - | - | (26,062.32) | (26,062.32) | 545,410.27 |
| 195 3/15/2012 | - | - | (14,269.87) | (14,269.87) | 531,140.40 |
| 196 3/19/2012 | - | - | (2,571.15) | (2,571.15) | 528,569.25 |
| 197 3/21/2012 | - | - | (16,425.14) | (16,425.14) | 512,144.11 |
| 198 3/26/2012 | - | - | (8,400.36) | (8,400.36) | 503,743.75 |
| 199 3/29/2012 | - | - | (16,436.26) | (16,436.26) | 487,307.49 |
| 200 4/5/2012 | - | - | (16,431.47) | (16,431.47) | 470,876.02 |

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 201 | 4/9/2012 | - | - | (8,154.72) | (8,154.72) | 462,721.30 |
| 202 | 4/12/2012 | - | - | (2,360.22) | (2,360.22) | 460,361.08 |
| 203 | 4/16/2012 | - | - | (10,652.07) | (10,652.07) | 449,709.01 |
| 204 | 4/17/2012 | - | - | (52,706.07) | (52,706.07) | 397,002.94 |
| 205 | 4/18/2012 | - | - | (3,306.84) | (3,306.84) | 393,696.10 |
| 206 | 4/19/2012 | - | - | (2,568.24) | (2,568.24) | 391,127.86 |
| 207 | 4/20/2012 | - | - | (2,278.27) | (2,278.27) | 388,849.59 |
| 208 | 4/23/2012 | - | - | (3,123.87) | (3,123.87) | 385,725.72 |
| 209 | 4/24/2012 | - | - | (2,710.80) | (2,710.80) | 383,014.92 |
| 210 | 4/25/2012 | - | - | (3,558.94) | (3,558.94) | 379,455.98 |
| 211 | 4/26/2012 | - | - | (4,404.58) | (4,404.58) | 375,051.40 |
| 212 | 4/27/2012 | - | - | (3,762.32) | (3,762.32) | 371,289.08 |
| 213 | 4/30/2012 | - | - | (9,562.42) | (9,562.42) | 361,726.66 |
| 214 | 5/1/2012 | - | - | (4,005.53) | (4,005.53) | 357,721.13 |
| 215 | 5/3/2012 | - | - | (3,693.61) | (3,693.61) | 354,027.52 |
| 216 | 5/4/2012 | - | - | (2,157.92) | (2,157.92) | 351,869.60 |
| 217 | 5/7/2012 | - | - | (11,494.75) | (11,494.75) | 340,374.85 |
| 218 | 5/8/2012 | - | - | (3,139.25) | (3,139.25) | 337,235.60 |
| 219 | 5/9/2012 | - | - | (2,532.46) | (2,532.46) | 334,703.14 |
| 220 | 5/10/2012 | - | - | (2,387.44) | (2,387.44) | 332,315.70 |
| 221 | 5/11/2012 | - | - | (3,579.68) | (3,579.68) | 328,736.02 |
| 222 | 5/14/2012 | - | - | (10,201.12) | (10,201.12) | 318,534.90 |
| 223 | 5/15/2012 | - | - | (3,524.83) | (3,524.83) | 315,010.07 |
| 224 | 5/16/2012 | - | - | (2,186.96) | (2,186.96) | 312,823.11 |
| 225 | 5/17/2012 | - | - | (2,386.28) | (2,386.28) | 310,436.83 |
| 226 | 5/18/2012 | - | - | (7,120.65) | (7,120.65) | 303,316.18 |
| 227 | 5/21/2012 | - | - | (2,846.36) | (2,846.36) | 300,469.82 |
| 228 | 5/22/2012 | 600,000.00 | 804,000.00 | (3,307.89) | 596,692.11 | 1,101,161.93 |
| 229 | 5/23/2012 | - | - | (2,229.91) | (2,229.91) | 1,098,932.02 |
| 230 | 5/24/2012 | - | - | (2,537.37) | (2,537.37) | 1,096,394.65 |
| 231 | 5/25/2012 | - | - | (11,970.22) | (11,970.22) | 1,084,424.43 |
| 232 | 5/29/2012 | - | - | (11,905.73) | (11,905.73) | 1,072,518.70 |
| 233 | 5/30/2012 | - | - | (3,373.95) | (3,373.95) | 1,069,144.75 |
| 234 | 6/1/2012 | - | - | (4,903.74) | (4,903.74) | 1,064,241.01 |
| 235 | 6/4/2012 | - | - | (10,433.12) | (10,433.12) | 1,053,807.89 |
| 236 | 6/5/2012 | - | - | (65.95) | (65.95) | 1,053,741.94 |
| 237 | 6/6/2012 | - | - | (119.99) | (119.99) | 1,053,621.95 |
| 238 | 6/8/2012 | - | - | (33,009.38) | (33,009.38) | 1,020,612.57 |
| 239 | 6/11/2012 | - | - | (2,730.93) | (2,730.93) | 1,017,881.64 |
| 240 | 6/12/2012 | - | - | (16,535.93) | (16,535.93) | 1,001,345.71 |

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 241 | 6/13/2012 | - | - | (109.57) | (109.57) | 1,001,236.14 |
| 242 | 6/14/2012 | - | - | (5,451.70) | (5,451.70) | 995,784.44 |
| 243 | 6/15/2012 | - | - | (3,084.51) | (3,084.51) | 992,699.93 |
| 244 | 6/18/2012 | - | - | (3,861.91) | (3,861.91) | 988,838.02 |
| 245 | 6/19/2012 | - | - | (22,775.24) | (22,775.24) | 966,062.78 |
| 246 | 6/20/2012 | - | - | (397.15) | (397.15) | 965,665.63 |
| 247 | 6/21/2012 | - | - | (3,252.62) | (3,252.62) | 962,413.01 |
| 248 | 6/22/2012 | - | - | (7,747.02) | (7,747.02) | 954,665.99 |
| 249 | 6/25/2012 | - | - | (6,499.05) | (6,499.05) | 948,166.94 |
| 250 | 6/26/2012 | - | - | (15,301.91) | (15,301.91) | 932,865.03 |
| 251 | 6/27/2012 | - | - | (6,157.26) | (6,157.26) | 926,707.77 |
| 252 | 6/28/2012 | - | - | (4,547.03) | (4,547.03) | 922,160.74 |
| 253 | 6/29/2012 | - | - | (4,236.48) | (4,236.48) | 917,924.26 |
| 254 | 7/2/2012 | - | - | (26,407.53) | (26,407.53) | 891,516.73 |
| 255 | 7/3/2012 | - | - | (37.99) | (37.99) | 891,478.74 |
| 256 | 7/5/2012 | - | - | (21,075.02) | (21,075.02) | 870,403.72 |
| 257 | 7/6/2012 | - | - | (10,628.66) | (10,628.66) | 859,775.06 |
| 258 | 7/9/2012 | - | - | (3,949.17) | (3,949.17) | 855,825.89 |
| 259 | 7/10/2012 | - | - | (20,417.03) | (20,417.03) | 835,408.86 |
| 260 | 7/11/2012 | - | - | (3,638.22) | (3,638.22) | 831,770.64 |
| 261 | 7/12/2012 | - | - | (4,299.04) | (4,299.04) | 827,471.60 |
| 262 | 7/13/2012 | - | - | (4,023.56) | (4,023.56) | 823,448.04 |
| 263 | 7/16/2012 | - | - | (3,445.62) | (3,445.62) | 820,002.42 |
| 264 | 7/17/2012 | - | - | (17,109.62) | (17,109.62) | 802,892.80 |
| 265 | 7/18/2012 | - | - | (2,765.35) | (2,765.35) | 800,127.45 |
| 266 | 7/19/2012 | - | - | (4,849.57) | (4,849.57) | 795,277.88 |
| 267 | 7/20/2012 | - | - | (2,816.99) | (2,816.99) | 792,460.89 |
| 268 | 7/23/2012 | - | - | (3,988.89) | (3,988.89) | 788,472.00 |
| 269 | 7/24/2012 | - | - | (15,596.92) | (15,596.92) | 772,875.08 |
| 270 | 7/25/2012 | - | - | (3,382.83) | (3,382.83) | 769,492.25 |
| 271 | 7/26/2012 | - | - | (3,239.22) | (3,239.22) | 766,253.03 |
| 272 | 7/27/2012 | - | - | (5,506.98) | (5,506.98) | 760,746.05 |
| 273 | 7/30/2012 | - | - | (3,860.62) | (3,860.62) | 756,885.43 |
| 274 | 7/31/2012 | - | - | (18,687.94) | (18,687.94) | 738,197.49 |
| 275 | 8/1/2012 | - | - | (6,131.82) | (6,131.82) | 732,065.67 |
| 276 | 8/2/2012 | - | - | (7,413.71) | (7,413.71) | 724,651.96 |
| 277 | 8/3/2012 | - | - | (7,983.21) | (7,983.21) | 716,668.75 |
| 278 | 8/6/2012 | - | - | (8,305.02) | (8,305.02) | 708,363.73 |
| 279 | 8/7/2012 | - | - | (20,802.53) | (20,802.53) | 687,561.20 |
| 280 | 8/8/2012 | - | - | (4,278.92) | (4,278.92) | 683,282.28 |

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" D-3 | Amounts Due aka "Amount Sold" D-3 | Net Repayments aka "Receipts Collected" D-1 | Net Cash Flow calc. | Balance calc. |
|---|---|---|---|---|---|---|
| 281 | 8/9/2012 | - | - | (3,506.66) | (3,506.66) | 679,775.62 |
| 282 | 8/10/2012 | - | - | (4,168.75) | (4,168.75) | 675,606.87 |
| 283 | 8/13/2012 | 250,000.00 | 335,000.00 | (3,186.70) | 246,813.30 | 1,007,420.17 |
| 284 | 8/14/2012 | - | - | (15,815.75) | (15,815.75) | 991,604.42 |
| 285 | 8/15/2012 | - | - | (4,611.83) | (4,611.83) | 986,992.59 |
| 286 | 8/16/2012 | - | - | (4,677.05) | (4,677.05) | 982,315.54 |
| 287 | 8/17/2012 | - | - | (464.43) | (464.43) | 981,851.11 |
| 288 | 8/20/2012 | - | - | (9,051.28) | (9,051.28) | 972,799.83 |
| 289 | 8/21/2012 | - | - | (16,633.73) | (16,633.73) | 956,166.10 |
| 290 | 8/22/2012 | - | - | (3,514.57) | (3,514.57) | 952,651.53 |
| 291 | 8/23/2012 | - | - | (5,751.67) | (5,751.67) | 946,899.86 |
| 292 | 8/24/2012 | - | - | (5,395.57) | (5,395.57) | 941,504.29 |
| 293 | 8/27/2012 | - | - | (4,421.38) | (4,421.38) | 937,082.91 |
| 294 | 8/28/2012 | - | - | (18,828.49) | (18,828.49) | 918,254.42 |
| 295 | 8/29/2012 | - | - | (6,331.96) | (6,331.96) | 911,922.46 |
| 296 | 8/30/2012 | - | - | (5,429.13) | (5,429.13) | 906,493.33 |
| 297 | 8/31/2012 | - | - | (4,212.90) | (4,212.90) | 902,280.43 |
| 298 | 9/4/2012 | - | - | (5,422.51) | (5,422.51) | 896,857.92 |
| 299 | 9/5/2012 | - | - | (31,444.91) | (31,444.91) | 865,413.01 |
| 300 | 9/6/2012 | - | - | (4,635.20) | (4,635.20) | 860,777.81 |
| 301 | 9/7/2012 | - | - | (2,939.10) | (2,939.10) | 857,838.71 |
| 302 | 9/10/2012 | - | - | (4,351.52) | (4,351.52) | 853,487.19 |
| 303 | 9/11/2012 | - | - | (15,051.00) | (15,051.00) | 838,436.19 |
| 304 | 9/12/2012 | - | - | (3,026.99) | (3,026.99) | 835,409.20 |
| 305 | 9/13/2012 | - | - | (2,778.68) | (2,778.68) | 832,630.52 |
| 306 | 9/14/2012 | 250,000.00 | 335,000.00 | (2,833.20) | 247,166.80 | 1,164,797.32 |
| 307 | 9/17/2012 | - | - | (4,380.98) | (4,380.98) | 1,160,416.34 |
| 308 | 9/18/2012 | - | - | (15,393.40) | (15,393.40) | 1,145,022.94 |
| 309 | 9/19/2012 | - | - | (3,659.66) | (3,659.66) | 1,141,363.28 |
| 310 | 9/20/2012 | - | - | (2,524.23) | (2,524.23) | 1,138,839.05 |
| 311 | 9/21/2012 | - | - | (2,025.26) | (2,025.26) | 1,136,813.79 |
| 312 | 9/24/2012 | - | - | (3,819.17) | (3,819.17) | 1,132,994.62 |
| 313 | 9/25/2012 | - | - | (14,161.19) | (14,161.19) | 1,118,833.43 |
| 314 | 9/26/2012 | - | - | (4,683.34) | (4,683.34) | 1,114,150.09 |
| 315 | 9/27/2012 | - | - | (3,903.71) | (3,903.71) | 1,110,246.38 |
| 316 | 9/28/2012 | - | - | (3,011.32) | (3,011.32) | 1,107,235.06 |
| 317 | 10/1/2012 | - | - | (5,340.27) | (5,340.27) | 1,101,894.79 |
| 318 | 10/2/2012 | - | - | (21,764.41) | (21,764.41) | 1,080,130.38 |
| 319 | 10/3/2012 | - | - | (5,815.37) | (5,815.37) | 1,074,315.01 |
| 320 | 10/4/2012 | - | - | (5,605.79) | (5,605.79) | 1,068,709.22 |

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 321 | 10/5/2012 | - | - | (3,343.39) | (3,343.39) | 1,065,365.83 |
| 322 | 10/9/2012 | - | - | (3,220.29) | (3,220.29) | 1,062,145.54 |
| 323 | 10/10/2012 | - | - | (18,568.92) | (18,568.92) | 1,043,576.62 |
| 324 | 10/11/2012 | - | - | (2,473.01) | (2,473.01) | 1,041,103.61 |
| 325 | 10/12/2012 | - | - | (3,214.89) | (3,214.89) | 1,037,888.72 |
| 326 | 10/15/2012 | - | - | (3,288.38) | (3,288.38) | 1,034,600.34 |
| 327 | 10/16/2012 | - | - | (12,545.77) | (12,545.77) | 1,022,054.57 |
| 328 | 10/17/2012 | - | - | (4,768.91) | (4,768.91) | 1,017,285.66 |
| 329 | 10/18/2012 | - | - | (4,832.92) | (4,832.92) | 1,012,452.74 |
| 330 | 10/19/2012 | - | - | (2,639.85) | (2,639.85) | 1,009,812.89 |
| 331 | 10/22/2012 | - | - | (2,930.48) | (2,930.48) | 1,006,882.41 |
| 332 | 10/23/2012 | - | - | (13,981.48) | (13,981.48) | 992,900.93 |
| 333 | 10/24/2012 | - | - | (3,258.92) | (3,258.92) | 989,642.01 |
| 334 | 10/25/2012 | - | - | (2,766.00) | (2,766.00) | 986,876.01 |
| 335 | 10/26/2012 | - | - | (3,622.03) | (3,622.03) | 983,253.98 |
| 336 | 10/29/2012 | - | - | (3,501.90) | (3,501.90) | 979,752.08 |
| 337 | 10/30/2012 | - | - | (15,397.25) | (15,397.25) | 964,354.83 |
| 338 | 10/31/2012 | - | - | (5,072.32) | (5,072.32) | 959,282.51 |
| 339 | 11/1/2012 | - | - | (4,123.72) | (4,123.72) | 955,158.79 |
| 340 | 11/2/2012 | - | - | (8,875.07) | (8,875.07) | 946,283.72 |
| 341 | 11/6/2012 | - | - | (17,716.36) | (17,716.36) | 928,567.36 |
| 342 | 11/7/2012 | - | - | (4,326.47) | (4,326.47) | 924,240.89 |
| 343 | 11/8/2012 | - | - | (3,939.92) | (3,939.92) | 920,300.97 |
| 344 | 11/9/2012 | - | - | (2,967.34) | (2,967.34) | 917,333.63 |
| 345 | 11/13/2012 | - | - | (2,631.49) | (2,631.49) | 914,702.14 |
| 346 | 11/14/2012 | - | - | (17,162.64) | (17,162.64) | 897,539.50 |
| 347 | 11/15/2012 | - | - | (2,722.26) | (2,722.26) | 894,817.24 |
| 348 | 11/16/2012 | - | - | (3,305.61) | (3,305.61) | 891,511.63 |
| 349 | 11/19/2012 | - | - | (4,100.84) | (4,100.84) | 887,410.79 |
| 350 | 11/20/2012 | - | - | (14,035.80) | (14,035.80) | 873,374.99 |
| 351 | 11/21/2012 | - | - | (5,811.58) | (5,811.58) | 867,563.41 |
| 352 | 11/23/2012 | - | - | (3,438.86) | (3,438.86) | 864,124.55 |
| 353 | 11/27/2012 | - | - | (14,362.36) | (14,362.36) | 849,762.19 |
| 354 | 11/28/2012 | - | - | (5,390.06) | (5,390.06) | 844,372.13 |
| 355 | 11/30/2012 | - | - | (4,047.48) | (4,047.48) | 840,324.65 |
| 356 | 12/3/2012 | - | - | (4,543.51) | (4,543.51) | 835,781.14 |
| 357 | 12/4/2012 | - | - | (19,052.93) | (19,052.93) | 816,728.21 |
| 358 | 12/5/2012 | - | - | (4,127.27) | (4,127.27) | 812,600.94 |
| 359 | 12/6/2012 | - | - | (2,881.58) | (2,881.58) | 809,719.36 |
| 360 | 12/7/2012 | - | - | (3,427.43) | (3,427.43) | 806,291.93 |

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 361 | 12/10/2012 | - | - | (2,443.17) | (2,443.17) | 803,848.76 |
| 362 | 12/11/2012 | - | - | (11,261.93) | (11,261.93) | 792,586.83 |
| 363 | 12/12/2012 | - | - | (2,777.08) | (2,777.08) | 789,809.75 |
| 364 | 12/13/2012 | - | - | (2,519.45) | (2,519.45) | 787,290.30 |
| 365 | 12/14/2012 | - | - | (3,406.06) | (3,406.06) | 783,884.24 |
| 366 | 12/17/2012 | - | - | (2,953.39) | (2,953.39) | 780,930.85 |
| 367 | 12/18/2012 | - | - | (14,351.03) | (14,351.03) | 766,579.82 |
| 368 | 12/19/2012 | - | - | (4,031.05) | (4,031.05) | 762,548.77 |
| 369 | 12/20/2012 | - | - | (3,929.85) | (3,929.85) | 758,618.92 |
| 370 | 12/21/2012 | - | - | (4,007.70) | (4,007.70) | 754,611.22 |
| 371 | 12/24/2012 | - | - | (3,594.28) | (3,594.28) | 751,016.94 |
| 372 | 12/27/2012 | - | - | (15,495.41) | (15,495.41) | 735,521.53 |
| 373 | 12/28/2012 | 400,000.00 | 536,000.00 | (1,921.02) | 398,078.98 | 1,269,600.51 |
| 374 | 12/31/2012 | - | - | (2,996.77) | (2,996.77) | 1,266,603.74 |
| 375 | 1/3/2013 | - | - | (19,660.95) | (19,660.95) | 1,246,942.79 |
| 376 | 1/4/2013 | - | - | (2,547.84) | (2,547.84) | 1,244,394.95 |
| 377 | 1/7/2013 | - | - | (3,615.67) | (3,615.67) | 1,240,779.28 |
| 378 | 1/8/2013 | - | - | (11,067.05) | (11,067.05) | 1,229,712.23 |
| 379 | 1/9/2013 | - | - | (3,635.85) | (3,635.85) | 1,226,076.38 |
| 380 | 1/10/2013 | - | - | (2,055.94) | (2,055.94) | 1,224,020.44 |
| 381 | 1/11/2013 | - | - | (1,878.96) | (1,878.96) | 1,222,141.48 |
| 382 | 1/14/2013 | - | - | (1,557.85) | (1,557.85) | 1,220,583.63 |
| 383 | 1/15/2013 | - | - | (10,263.36) | (10,263.36) | 1,210,320.27 |
| 384 | 1/16/2013 | - | - | (2,477.04) | (2,477.04) | 1,207,843.23 |
| 385 | 1/17/2013 | - | - | (2,597.24) | (2,597.24) | 1,205,245.99 |
| 386 | 1/18/2013 | - | - | (1,747.18) | (1,747.18) | 1,203,498.81 |
| 387 | 1/22/2013 | - | - | (2,430.80) | (2,430.80) | 1,201,068.01 |
| 388 | 1/23/2013 | - | - | (15,422.45) | (15,422.45) | 1,185,645.56 |
| 389 | 1/24/2013 | - | - | (2,347.32) | (2,347.32) | 1,183,298.24 |
| 390 | 1/25/2013 | - | - | (1,976.98) | (1,976.98) | 1,181,321.26 |
| 391 | 1/28/2013 | - | - | (2,409.23) | (2,409.23) | 1,178,912.03 |
| 392 | 1/29/2013 | - | - | (12,263.88) | (12,263.88) | 1,166,648.15 |
| 393 | 1/30/2013 | 100,000.00 | 134,000.00 | (8,292.74) | 91,707.26 | 1,292,355.41 |
| 394 | 2/1/2013 | - | - | (3,662.55) | (3,662.55) | 1,288,692.86 |
| 395 | 2/4/2013 | - | - | (3,682.10) | (3,682.10) | 1,285,010.76 |
| 396 | 2/5/2013 | - | - | (15,355.24) | (15,355.24) | 1,269,655.52 |
| 397 | 2/6/2013 | - | - | (2,525.77) | (2,525.77) | 1,267,129.75 |
| 398 | 2/7/2013 | - | - | (2,337.36) | (2,337.36) | 1,264,792.39 |
| 399 | 2/8/2013 | - | - | (1,550.95) | (1,550.95) | 1,263,241.44 |
| 400 | 2/11/2013 | - | - | (2,710.83) | (2,710.83) | 1,260,530.61 |

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 401 | 2/12/2013 | - | - | (11,065.96) | (11,065.96) | 1,249,464.65 |
| 402 | 2/13/2013 | - | - | (2,558.96) | (2,558.96) | 1,246,905.69 |
| 403 | 2/14/2013 | - | - | (2,529.42) | (2,529.42) | 1,244,376.27 |
| 404 | 2/15/2013 | - | - | (2,760.81) | (2,760.81) | 1,241,615.46 |
| 405 | 2/19/2013 | - | - | (1,616.42) | (1,616.42) | 1,239,999.04 |
| 406 | 2/20/2013 | - | - | (17,783.85) | (17,783.85) | 1,222,215.19 |
| 407 | 2/21/2013 | - | - | (2,218.02) | (2,218.02) | 1,219,997.17 |
| 408 | 2/22/2013 | - | - | (1,982.44) | (1,982.44) | 1,218,014.73 |
| 409 | 2/25/2013 | - | - | (1,841.11) | (1,841.11) | 1,216,173.62 |
| 410 | 2/26/2013 | - | - | (12,558.68) | (12,558.68) | 1,203,614.94 |
| 411 | 2/27/2013 | - | - | (3,174.79) | (3,174.79) | 1,200,440.15 |
| 412 | 2/28/2013 | - | - | (3,796.31) | (3,796.31) | 1,196,643.84 |
| 413 | 3/1/2013 | - | - | (3,633.56) | (3,633.56) | 1,193,010.28 |
| 414 | 3/4/2013 | - | - | (4,413.77) | (4,413.77) | 1,188,596.51 |
| 415 | 3/5/2013 | - | - | (18,245.54) | (18,245.54) | 1,170,350.97 |
| 416 | 3/6/2013 | - | - | (3,890.89) | (3,890.89) | 1,166,460.08 |
| 417 | 3/7/2013 | - | - | (3,249.20) | (3,249.20) | 1,163,210.88 |
| 418 | 3/8/2013 | - | - | (1,626.55) | (1,626.55) | 1,161,584.33 |
| 419 | 3/11/2013 | - | - | (1,932.70) | (1,932.70) | 1,159,651.63 |
| 420 | 3/12/2013 | - | - | (12,631.56) | (12,631.56) | 1,147,020.07 |
| 421 | 3/13/2013 | - | - | (2,733.55) | (2,733.55) | 1,144,286.52 |
| 422 | 3/14/2013 | - | - | (2,786.23) | (2,786.23) | 1,141,500.29 |
| 423 | 3/15/2013 | - | - | (2,712.57) | (2,712.57) | 1,138,787.72 |
| 424 | 3/18/2013 | - | - | (2,479.28) | (2,479.28) | 1,136,308.44 |
| 425 | 3/19/2013 | - | - | (14,588.88) | (14,588.88) | 1,121,719.56 |
| 426 | 3/20/2013 | - | - | (6,784.54) | (6,784.54) | 1,114,935.02 |
| 427 | 3/22/2013 | - | - | (2,362.98) | (2,362.98) | 1,112,572.04 |
| 428 | 3/25/2013 | - | - | (2,864.90) | (2,864.90) | 1,109,707.14 |
| 429 | 3/26/2013 | - | - | (15,950.92) | (15,950.92) | 1,093,756.22 |
| 430 | 3/27/2013 | - | - | (3,829.33) | (3,829.33) | 1,089,926.89 |
| 431 | 3/28/2013 | - | - | (3,727.11) | (3,727.11) | 1,086,199.78 |
| 432 | 3/29/2013 | - | - | (4,570.97) | (4,570.97) | 1,081,628.81 |
| 433 | 4/1/2013 | - | - | (3,265.84) | (3,265.84) | 1,078,362.97 |
| 434 | 4/2/2013 | - | - | (13,149.20) | (13,149.20) | 1,065,213.77 |
| 435 | 4/3/2013 | - | - | (12,709.85) | (12,709.85) | 1,052,503.92 |
| 436 | 4/4/2013 | - | - | (5,131.03) | (5,131.03) | 1,047,372.89 |
| 437 | 4/5/2013 | - | - | (5,002.34) | (5,002.34) | 1,042,370.55 |
| 438 | 4/8/2013 | - | - | (3,635.89) | (3,635.89) | 1,038,734.66 |
| 439 | 4/9/2013 | - | - | (12,847.67) | (12,847.67) | 1,025,886.99 |
| 440 | 4/10/2013 | - | - | (3,001.06) | (3,001.06) | 1,022,885.93 |

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 441 | 4/11/2013 | - | - | (2,253.88) | (2,253.88) | 1,020,632.05 |
| 442 | 4/12/2013 | - | - | (2,414.77) | (2,414.77) | 1,018,217.28 |
| 443 | 4/15/2013 | - | - | (3,449.66) | (3,449.66) | 1,014,767.62 |
| 444 | 4/16/2013 | - | - | (10,588.12) | (10,588.12) | 1,004,179.50 |
| 445 | 4/17/2013 | 325,000.00 | 435,500.00 | (3,529.65) | 321,470.35 | 1,436,149.85 |
| 446 | 4/18/2013 | - | - | (3,530.36) | (3,530.36) | 1,432,619.49 |
| 447 | 4/19/2013 | - | - | (3,225.11) | (3,225.11) | 1,429,394.38 |
| 448 | 4/22/2013 | - | - | (2,934.60) | (2,934.60) | 1,426,459.78 |
| 449 | 4/23/2013 | - | - | (12,634.76) | (12,634.76) | 1,413,825.02 |
| 450 | 4/30/2013 | - | - | (28,630.78) | (28,630.78) | 1,385,194.24 |
| 451 | 5/29/2013 | 200,000.00 | 268,000.00 | - | 200,000.00 | 1,653,194.24 |
| 452 | 5/31/2013 | - | - | (150,183.95) | (150,183.95) | 1,503,010.29 |
| 453 | 6/3/2013 | - | - | (6,638.12) | (6,638.12) | 1,496,372.17 |
| 454 | 6/4/2013 | - | - | (24,141.71) | (24,141.71) | 1,472,230.46 |
| 455 | 6/5/2013 | - | - | (5,591.32) | (5,591.32) | 1,466,639.14 |
| 456 | 6/6/2013 | - | - | (5,451.10) | (5,451.10) | 1,461,188.04 |
| 457 | 6/7/2013 | - | - | (4,972.90) | (4,972.90) | 1,456,215.14 |
| 458 | 6/10/2013 | - | - | (3,864.04) | (3,864.04) | 1,452,351.10 |
| 459 | 6/11/2013 | - | - | (15,793.38) | (15,793.38) | 1,436,557.72 |
| 460 | 6/12/2013 | - | - | (4,028.94) | (4,028.94) | 1,432,528.78 |
| 461 | 6/13/2013 | - | - | (4,527.51) | (4,527.51) | 1,428,001.27 |
| 462 | 6/14/2013 | - | - | (3,014.32) | (3,014.32) | 1,424,986.95 |
| 463 | 6/17/2013 | - | - | (5,865.54) | (5,865.54) | 1,419,121.41 |
| 464 | 6/18/2013 | - | - | (18,715.03) | (18,715.03) | 1,400,406.38 |
| 465 | 6/19/2013 | - | - | (5,310.15) | (5,310.15) | 1,395,096.23 |
| 466 | 6/20/2013 | - | - | (4,711.62) | (4,711.62) | 1,390,384.61 |
| 467 | 6/21/2013 | - | - | (4,735.84) | (4,735.84) | 1,385,648.77 |
| 468 | 6/24/2013 | - | - | (4,476.38) | (4,476.38) | 1,381,172.39 |
| 469 | 6/25/2013 | - | - | (20,947.07) | (20,947.07) | 1,360,225.32 |
| 470 | 6/26/2013 | - | - | (6,495.13) | (6,495.13) | 1,353,730.19 |
| 471 | 6/27/2013 | - | - | (4,525.20) | (4,525.20) | 1,349,204.99 |
| 472 | 6/28/2013 | - | - | (5,481.08) | (5,481.08) | 1,343,723.91 |
| 473 | 7/1/2013 | - | - | (5,540.69) | (5,540.69) | 1,338,183.22 |
| 474 | 7/2/2013 | - | - | (23,651.27) | (23,651.27) | 1,314,531.95 |
| 475 | 7/3/2013 | - | - | (9,543.74) | (9,543.74) | 1,304,988.21 |
| 476 | 7/5/2013 | - | - | (8,545.19) | (8,545.19) | 1,296,443.02 |
| 477 | 7/8/2013 | - | - | (10,122.07) | (10,122.07) | 1,286,320.95 |
| 478 | 7/9/2013 | - | - | (15,225.36) | (15,225.36) | 1,271,095.59 |
| 479 | 7/10/2013 | - | - | (5,717.98) | (5,717.98) | 1,265,377.61 |
| 480 | 7/11/2013 | 300,000.00 | 402,000.00 | (4,496.18) | 295,503.82 | 1,662,881.43 |

# CALCULATION OF IMPUTED INTEREST

## All Agreements as a Whole

C-1

| | Date [1] | Advances aka "Purchase Price" | Amounts Due aka "Amount Sold" | Net Repayments aka "Receipts Collected" | Net Cash Flow | Balance |
|---|---|---|---|---|---|---|
| | | D-3 | D-3 | D-1 | calc. | calc. |
| 481 | 7/12/2013 | - | - | (5,781.24) | (5,781.24) | 1,657,100.19 |
| 482 | 7/15/2013 | - | - | (4,067.84) | (4,067.84) | 1,653,032.35 |
| 483 | 7/16/2013 | - | - | (16,236.60) | (16,236.60) | 1,636,795.75 |
| 484 | 7/17/2013 | - | - | (6,546.34) | (6,546.34) | 1,630,249.41 |
| 485 | 7/18/2013 | - | - | (6,634.54) | (6,634.54) | 1,623,614.87 |
| 486 | 7/19/2013 | - | - | (4,614.13) | (4,614.13) | 1,619,000.74 |
| 487 | 7/22/2013 | - | - | (5,449.20) | (5,449.20) | 1,613,551.54 |
| 488 | 7/23/2013 | - | - | (7,664.55) | (7,664.55) | 1,605,886.99 |
| 489 | 7/24/2013 | - | - | (20.43) | (20.43) | 1,605,866.56 |
| 490 | 7/25/2013 | | | (1,605,866.56) | (1,605,866.56) | - |
| 491 | | $3,400,000.00 | $4,571,000.00 | $ (4,571,000.00) | $(1,171,000.00) | |
| 492 | | | | | | |
| 493 | | | | **Imputed Rate:** | **103%** | |
| 494 | | | | | A-1 | |

495  [1] EWC Statements show an invoice date for the amount due that is slightly different than the agreement date. We
496  assume the funds were advanced on the agreement date. Using the invoice date would not materially affect our results.

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

## APPLICATION OF PAYMENTS TO LOANS

D-1

| | | Agreement Dated: | | | | | |
|---|---|---|---|---|---|---|---|
| Payment Date | Total Payments On Indicated Date | 05/02/11 | 09/26/11 | 05/22/12 | 08/13/12 | 09/14/12 | 12/28/12 |
| | | D-3 | D-3 | D-3 | D-3 | D-3 | D-3 |
| | Loan Balance: | $ 685,000.00 | $ 636,500.00 | $ 804,000.00 | $ 335,000.00 | $ 335,000.00 | $  536,000.00 |
| | | D-2 | | | | | |
| 1  05/04/11 | (1,855.64) | (1,855.64) | - | - | - | - | - |
| 2  05/09/11 | (7,958.91) | (7,958.91) | - | - | - | - | - |
| 3  05/10/11 | (1,664.01) | (1,664.01) | - | - | - | - | - |
| 4  05/11/11 | (2,891.40) | (2,891.40) | - | - | - | - | - |
| 5  05/12/11 | (2,481.41) | (2,481.41) | - | - | - | - | - |
| 6  05/13/11 | (1,418.59) | (1,418.59) | - | - | - | - | - |
| 7  05/16/11 | (8,001.97) | (8,001.97) | - | - | - | - | - |
| 8  05/17/11 | (2,934.51) | (2,934.51) | - | - | - | - | - |
| 9  05/18/11 | (2,866.25) | (2,866.25) | - | - | - | - | - |
| 10  05/19/11 | (3,908.62) | (3,908.62) | - | - | - | - | - |
| 11  05/20/11 | (2,222.05) | (2,222.05) | - | - | - | - | - |
| 12  05/23/11 | (6,758.94) | (6,758.94) | - | - | - | - | - |
| 13  05/24/11 | (2,741.05) | (2,741.05) | - | - | - | - | - |
| 14  05/25/11 | (2,900.29) | (2,900.29) | - | - | - | - | - |
| 15  05/26/11 | (2,242.93) | (2,242.93) | - | - | - | - | - |
| 16  05/27/11 | (2,292.49) | (2,292.49) | - | - | - | - | - |
| 17  05/31/11 | (16,327.15) | (16,327.15) | - | - | - | - | - |
| 18  06/01/11 | (5,316.20) | (5,316.20) | - | - | - | - | - |
| 19  06/02/11 | (3,352.62) | (3,352.62) | - | - | - | - | - |
| 20  06/03/11 | (4,980.56) | (4,980.56) | - | - | - | - | - |
| 21  06/06/11 | (12,056.43) | (12,056.43) | - | - | - | - | - |
| 22  06/07/11 | (2,788.00) | (2,788.00) | - | - | - | - | - |
| 23  06/08/11 | (3,357.79) | (3,357.79) | - | - | - | - | - |
| 24  06/09/11 | (2,490.37) | (2,490.37) | - | - | - | - | - |
| 25  06/10/11 | (2,540.92) | (2,540.92) | - | - | - | - | - |
| 26  06/13/11 | (8,844.32) | (8,844.32) | - | - | - | - | - |
| 27  06/14/11 | (3,205.42) | (3,205.42) | - | - | - | - | - |
| 28  06/15/11 | (2,929.20) | (2,929.20) | - | - | - | - | - |
| 29  06/16/11 | (3,997.56) | (3,997.56) | - | - | - | - | - |
| 30  06/17/11 | (2,645.04) | (2,645.04) | - | - | - | - | - |
| 31  06/20/11 | (12,012.46) | (12,012.46) | - | - | - | - | - |
| 32  06/21/11 | (2,718.00) | (2,718.00) | - | - | - | - | - |
| 33  06/22/11 | (2,772.57) | (2,772.57) | - | - | - | - | - |
| 34  06/23/11 | (2,537.82) | (2,537.82) | - | - | - | - | - |
| 35  06/24/11 | (2,140.09) | (2,140.09) | - | - | - | - | - |
| 36  06/27/11 | (12,554.71) | (12,554.71) | - | - | - | - | - |
| 37  06/28/11 | (3,397.88) | (3,397.88) | - | - | - | - | - |
| 38  06/29/11 | (3,932.91) | (3,932.91) | - | - | - | - | - |
| 39  06/30/11 | (4,369.78) | (4,369.78) | - | - | - | - | - |
| 40  07/01/11 | (4,574.28) | (4,574.28) | - | - | - | - | - |
| 41  07/05/11 | (22,321.83) | (22,321.83) | - | - | - | - | - |
| 42  07/06/11 | (506.42) | (506.42) | - | - | - | - | - |
| 43  07/07/11 | (3,512.01) | (3,512.01) | - | - | - | - | - |
| 44  07/08/11 | (2,741.80) | (2,741.80) | - | - | - | - | - |
| 45  07/11/11 | (10,127.10) | (10,127.10) | - | - | - | - | - |
| 46  07/12/11 | (2,062.47) | (2,062.47) | - | - | - | - | - |
| 47  07/13/11 | (2,695.03) | (2,695.03) | - | - | - | - | - |
| 48  07/14/11 | (1,926.90) | (1,926.90) | - | - | - | - | - |
| 49  07/15/11 | (2,095.77) | (2,095.77) | - | - | - | - | - |

STARVING STUDENTS v. EXPRESS WORKING CAPITAL

## APPLICATION OF PAYMENTS TO LOANS

D-1

| | Payment Date | Total Payments On Indicated Date | Agreement Dated: | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | 05/02/11 | 09/26/11 | 05/22/12 | 08/13/12 | 09/14/12 | 12/28/12 |
| 50 | 07/18/11 | (8,335.66) | (8,335.66) | - | - | - | - | - |
| 51 | 07/19/11 | (2,992.90) | (2,992.90) | - | - | - | - | - |
| 52 | 07/20/11 | (1,750.92) | (1,750.92) | - | - | - | - | - |
| 53 | 07/21/11 | (2,597.75) | (2,597.75) | - | - | - | - | - |
| 54 | 07/22/11 | (2,091.95) | (2,091.95) | - | - | - | - | - |
| 55 | 07/25/11 | (8,253.25) | (8,253.25) | - | - | - | - | - |
| 56 | 07/26/11 | (2,244.50) | (2,244.50) | - | - | - | - | - |
| 57 | 07/27/11 | (2,690.35) | (2,690.35) | - | - | - | - | - |
| 58 | 07/28/11 | (2,195.14) | (2,195.14) | - | - | - | - | - |
| 59 | 07/29/11 | (3,073.19) | (3,073.19) | - | - | - | - | - |
| 60 | 08/01/11 | (12,504.22) | (12,504.22) | - | - | - | - | - |
| 61 | 08/02/11 | (4,975.04) | (4,975.04) | - | - | - | - | - |
| 62 | 08/03/11 | (3,893.91) | (3,893.91) | - | - | - | - | - |
| 63 | 08/04/11 | (3,367.95) | (3,367.95) | - | - | - | - | - |
| 64 | 08/05/11 | (3,630.11) | (3,630.11) | - | - | - | - | - |
| 65 | 08/08/11 | (8,217.93) | (8,217.93) | - | - | - | - | - |
| 66 | 08/09/11 | (2,987.96) | (2,987.96) | - | - | - | - | - |
| 67 | 08/10/11 | (2,455.46) | (2,455.46) | - | - | - | - | - |
| 68 | 08/11/11 | (2,168.26) | (2,168.26) | - | - | - | - | - |
| 69 | 08/12/11 | (2,222.53) | (2,222.53) | - | - | - | - | - |
| 70 | 08/15/11 | (8,316.70) | (8,316.70) | - | - | - | - | - |
| 71 | 08/16/11 | (2,291.83) | (2,291.83) | - | - | - | - | - |
| 72 | 08/17/11 | (2,335.21) | (2,335.21) | - | - | - | - | - |
| 73 | 08/18/11 | (3,239.21) | (3,239.21) | - | - | - | - | - |
| 74 | 08/19/11 | (2,634.93) | (2,634.93) | - | - | - | - | - |
| 75 | 08/22/11 | (7,570.21) | (7,570.21) | - | - | - | - | - |
| 76 | 08/23/11 | (2,811.81) | (2,811.81) | - | - | - | - | - |
| 77 | 08/24/11 | (2,874.12) | (2,874.12) | - | - | - | - | - |
| 78 | 08/25/11 | (2,368.89) | (2,368.89) | - | - | - | - | - |
| 79 | 08/26/11 | (1,757.60) | (1,757.60) | - | - | - | - | - |
| 80 | 08/29/11 | (10,066.48) | (10,066.48) | - | - | - | - | - |
| 81 | 08/30/11 | (2,884.88) | (2,884.88) | - | - | - | - | - |
| 82 | 08/31/11 | (2,963.18) | (2,963.18) | - | - | - | - | - |
| 83 | 09/01/11 | (3,572.08) | (3,572.08) | - | - | - | - | - |
| 84 | 09/02/11 | (3,389.31) | (3,389.31) | - | - | - | - | - |
| 85 | 09/06/11 | (14,324.45) | (14,324.45) | - | - | - | - | - |
| 86 | 09/07/11 | (2,722.63) | (2,722.63) | - | - | - | - | - |
| 87 | 09/08/11 | (1,585.74) | (1,585.74) | - | - | - | - | - |
| 88 | 09/09/11 | (1,507.88) | (1,507.88) | - | - | - | - | - |
| 89 | 09/12/11 | (6,904.80) | (6,904.80) | - | - | - | - | - |
| 90 | 09/13/11 | (1,807.04) | (1,807.04) | - | - | - | - | - |
| 91 | 09/14/11 | (1,553.17) | (1,553.17) | - | - | - | - | - |
| 92 | 09/15/11 | (1,485.48) | (1,485.48) | - | - | - | - | - |
| 93 | 09/16/11 | (1,864.79) | (1,864.79) | - | - | - | - | - |
| 94 | 09/19/11 | (7,130.64) | (7,130.64) | - | - | - | - | - |
| 95 | 09/20/11 | (3,473.26) | (3,473.26) | - | - | - | - | - |
| 96 | 09/21/11 | (1,721.87) | (1,721.87) | - | - | - | - | - |
| 97 | 09/22/11 | (1,562.36) | (1,562.36) | - | - | - | - | - |
| 98 | 09/23/11 | (2,346.19) | (2,346.19) | - | - | - | - | - |
| 99 | 09/26/11 | (6,411.89) | (6,411.89) | - | - | - | - | - |
| 100 | 09/27/11 | (2,497.98) | (2,497.98) | - | - | - | - | - |
| 101 | 09/28/11 | (2,186.07) | (2,186.07) | - | - | - | - | - |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

## APPLICATION OF PAYMENTS TO LOANS

D-1

| | Payment Date | Total Payments On Indicated Date | 05/02/11 | 09/26/11 | 05/22/12 | 08/13/12 | 09/14/12 | 12/28/12 |
|---|---|---|---|---|---|---|---|---|
| | | | | Agreement Dated: | | | | |
| 102 | 09/29/11 | (2,106.97) | (2,106.97) | - | - | - | - | - |
| 103 | 09/30/11 | (2,126.51) | (2,126.51) | - | - | - | - | - |
| 104 | 10/03/11 | (17,470.38) | (17,470.38) | - | - | - | - | - |
| 105 | 10/04/11 | (5,811.50) | (5,811.50) | - | - | - | - | - |
| 106 | 10/05/11 | (3,790.88) | (3,790.88) | - | - | - | - | - |
| 107 | 10/06/11 | (4,284.39) | (4,284.39) | - | - | - | - | - |
| 108 | 10/07/11 | (2,902.95) | (2,902.95) | - | - | - | - | - |
| 109 | 10/11/11 | (13,753.94) | (13,753.94) | - | - | - | - | - |
| 110 | 10/12/11 | (2,311.13) | (2,311.13) | - | - | - | - | - |
| 111 | 10/13/11 | (3,050.20) | (3,050.20) | - | - | - | - | - |
| 112 | 10/14/11 | (2,514.23) | (2,514.23) | - | - | - | - | - |
| 113 | 10/17/11 | (10,528.98) | (10,528.98) | - | - | - | - | - |
| 114 | 10/18/11 | (3,436.92) | (3,436.92) | - | - | - | - | - |
| 115 | 10/19/11 | (2,353.46) | (2,353.46) | - | - | - | - | - |
| 116 | 10/20/11 | (2,391.46) | (2,391.46) | - | - | - | - | - |
| 117 | 10/21/11 | (1,978.81) | (1,978.81) | - | - | - | - | - |
| 118 | 10/24/11 | (7,905.09) | (7,905.09) | - | - | - | - | - |
| 119 | 10/25/11 | (2,529.95) | (2,529.95) | - | - | - | - | - |
| 120 | 10/26/11 | (2,395.44) | (2,395.44) | - | - | - | - | - |
| 121 | 10/27/11 | (2,312.66) | (2,312.66) | - | - | - | - | - |
| 122 | 10/28/11 | (3,177.90) | (3,177.90) | - | - | - | - | - |
| 123 | 10/31/11 | (12,616.56) | (12,616.56) | - | - | - | - | - |
| 124 | 11/01/11 | (3,422.87) | (3,422.87) | - | - | - | - | - |
| 125 | 11/02/11 | (2,962.09) | (2,962.09) | - | - | - | - | - |
| 126 | 11/03/11 | (3,300.45) | (3,300.45) | - | - | - | - | - |
| 127 | 11/04/11 | (2,382.49) | (2,382.49) | - | - | - | - | - |
| 128 | 11/07/11 | (8,132.83) | (8,132.83) | - | - | - | - | - |
| 129 | 11/08/11 | (3,355.95) | (3,355.95) | - | - | - | - | - |
| 130 | 11/09/11 | (1,576.98) | (1,576.98) | - | - | - | - | - |
| 131 | 11/14/11 | (7,918.18) | (7,918.18) | - | - | - | - | - |
| 132 | 11/15/11 | (939.83) | (939.83) | - | - | - | - | - |
| 133 | 11/16/11 | (1,489.32) | (1,489.32) | - | - | - | - | - |
| 134 | 11/18/11 | (1,419.60) | (1,419.60) | - | - | - | - | - |
| 135 | 11/21/11 | (1,160.41) | (1,160.41) | - | - | - | - | - |
| 136 | 11/22/11 | (1,008.39) | (1,008.39) | - | - | - | - | - |
| 137 | 11/23/11 | (3,638.02) | (3,638.02) | - | - | - | - | - |
| 138 | 11/25/11 | (4,261.02) | (4,261.02) | - | - | - | - | - |
| 139 | 11/28/11 | (2,217.08) | (2,217.08) | - | - | - | - | - |
| 140 | 11/29/11 | (708.72) | (708.72) | - | - | - | - | - |
| 141 | 11/30/11 | (1,722.96) | (1,722.96) | - | - | - | - | - |
| 142 | 12/01/11 | (997.52) | (997.52) | - | - | - | - | - |
| 143 | 12/02/11 | (2,091.86) | (2,091.86) | - | - | - | - | - |
| 144 | 12/05/11 | (5,936.90) | (5,936.90) | - | - | - | - | - |
| 145 | 12/06/11 | (738.33) | (738.33) | - | - | - | - | - |
| 146 | 12/07/11 | (1,074.49) | (1,074.49) | - | - | - | - | - |
| 147 | 12/08/11 | (509.87) | (509.87) | - | - | - | - | - |
| 148 | 12/09/11 | (1,301.06) | (1,301.06) | - | - | - | - | - |
| 149 | 12/12/11 | (3,217.71) | (3,217.71) | - | - | - | - | - |
| 150 | 12/13/11 | (1,108.28) | (1,108.28) | - | - | - | - | - |
| 151 | 12/14/11 | (263.73) | (263.73) | - | - | - | - | - |
| 152 | 12/15/11 | (838.17) | (838.17) | - | - | - | - | - |
| 153 | 12/16/11 | (678.76) | (678.76) | - | - | - | - | - |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

## APPLICATION OF PAYMENTS TO LOANS

D-1

| | Payment Date | Total Payments On Indicated Date | Agreement Dated: 05/02/11 | 09/26/11 | 05/22/12 | 08/13/12 | 09/14/12 | 12/28/12 |
|---|---|---|---|---|---|---|---|---|
| 154 | 12/19/11 | (3,951.94) | (3,951.94) | - | - | - | - | - |
| 155 | 12/20/11 | (894.95) | (894.95) | - | - | - | - | - |
| 156 | 12/21/11 | (1,059.65) | (1,059.65) | - | - | - | - | - |
| 157 | 12/22/11 | (462.08) | (462.08) | - | - | - | - | - |
| 158 | 12/23/11 | (742.63) | (742.63) | - | - | - | - | - |
| 159 | 12/27/11 | (1,587.94) | (1,587.94) | - | - | - | - | - |
| 160 | 12/28/11 | (366.56) | (366.56) | - | - | - | - | - |
| 161 | 12/29/11 | (649.29) | (649.29) | - | - | - | - | - |
| 162 | 12/30/11 | (851.40) | (851.40) | - | - | - | - | - |
| 163 | 01/03/12 | (2,334.45) | (2,334.45) | - | - | - | - | - |
| 164 | 01/04/12 | (223.94) | (223.94) | - | - | - | - | - |
| 165 | 01/05/12 | (488.60) | (488.60) | - | - | - | - | - |
| 166 | 01/06/12 | (169.33) | (169.33) | - | - | - | - | - |
| 167 | 01/09/12 | (1,859.61) | (1,859.61) | - | - | - | - | - |
| 168 | 01/10/12 | (321.41) | (321.41) | - | - | - | - | - |
| 169 | 01/11/12 | (553.12) | (553.12) | - | - | - | - | - |
| 170 | 01/12/12 | (347.98) | (347.98) | - | - | - | - | - |
| 171 | 01/13/12 | (678.30) | (678.30) | - | - | - | - | - |
| 172 | 01/17/12 | (3,220.57) | (3,220.57) | - | - | - | - | - |
| 173 | 01/18/12 | (540.88) | (540.88) | - | - | - | - | - |
| 174 | 01/19/12 | (209.83) | (209.83) | - | - | - | - | - |
| 175 | 01/20/12 | (428.49) | (428.49) | - | - | - | - | - |
| 176 | 01/23/12 | (998.55) | (998.55) | - | - | - | - | - |
| 177 | 01/24/12 | (211.67) | (211.67) | - | - | - | - | - |
| 178 | 01/25/12 | (210.90) | (210.90) | - | - | - | - | - |
| 179 | 01/26/12 | (340.63) | (340.63) | - | - | - | - | - |
| 180 | 01/27/12 | (293.05) | (293.05) | - | - | - | - | - |
| 181 | 01/30/12 | (11,129.39) | (11,129.39) | - | - | - | - | - |
| 182 | 01/31/12 | (3,618.93) | (3,618.93) | - | - | - | - | - |
| 183 | 02/06/12 | (9,143.61) | (9,143.61) | - | - | - | - | - |
| 184 | 02/08/12 | (4,665.36) | (4,665.36) | - | - | - | - | - |
| 185 | 02/09/12 | (2,325.14) | (2,325.14) | - | - | - | - | - |
| 186 | 02/13/12 | (2,338.06) | (2,338.06) | - | - | - | - | - |
| 187 | 02/15/12 | (4,904.28) | (4,904.28) | - | - | - | - | - |
| 188 | 02/17/12 | (1,841.14) | (1,841.14) | - | - | - | - | - |
| 189 | 02/21/12 | (6,529.91) | (6,529.91) | - | - | - | - | - |
| 190 | 03/02/12 | (52,343.16) | (600.12) | (51,743.04) | - | - | - | - |
| 191 | 03/05/12 | (10,747.23) | - | (10,747.23) | - | - | - | - |
| 192 | 03/08/12 | (2,537.14) | - | (2,537.14) | - | - | - | - |
| 193 | 03/12/12 | (26,062.32) | - | (26,062.32) | - | - | - | - |
| 194 | 03/15/12 | (14,269.87) | - | (14,269.87) | - | - | - | - |
| 195 | 03/19/12 | (2,571.15) | - | (2,571.15) | - | - | - | - |
| 196 | 03/21/12 | (16,425.14) | - | (16,425.14) | - | - | - | - |
| 197 | 03/26/12 | (8,400.36) | - | (8,400.36) | - | - | - | - |
| 198 | 03/29/12 | (16,436.26) | - | (16,436.26) | - | - | - | - |
| 199 | 04/05/12 | (16,431.47) | - | (16,431.47) | - | - | - | - |
| 200 | 04/09/12 | (8,154.72) | - | (8,154.72) | - | - | - | - |
| 201 | 04/12/12 | (2,360.22) | - | (2,360.22) | - | - | - | - |
| 202 | 04/16/12 | (10,652.07) | - | (10,652.07) | - | - | - | - |
| 203 | 04/17/12 | (52,706.07) | - | (52,706.07) | - | - | - | - |
| 204 | 04/18/12 | (3,306.84) | - | (3,306.84) | - | - | - | - |
| 205 | 04/19/12 | (2,568.24) | - | (2,568.24) | - | - | - | - |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

## APPLICATION OF PAYMENTS TO LOANS

D-1

| | Payment Date | Total Payments On Indicated Date | Agreement Dated: | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | 05/02/11 | 09/26/11 | 05/22/12 | 08/13/12 | 09/14/12 | 12/28/12 |
| 206 | 04/20/12 | (2,278.27) | - | (2,278.27) | - | - | - | - |
| 207 | 04/23/12 | (3,123.87) | - | (3,123.87) | - | - | - | - |
| 208 | 04/24/12 | (2,710.80) | - | (2,710.80) | - | - | - | - |
| 209 | 04/25/12 | (3,558.94) | - | (3,558.94) | - | - | - | - |
| 210 | 04/26/12 | (4,404.58) | - | (4,404.58) | - | - | - | - |
| 211 | 04/27/12 | (3,762.32) | - | (3,762.32) | - | - | - | - |
| 212 | 04/30/12 | (9,562.42) | - | (9,562.42) | - | - | - | - |
| 213 | 05/01/12 | (4,005.53) | - | (4,005.53) | - | - | - | - |
| 214 | 05/03/12 | (3,693.61) | - | (3,693.61) | - | - | - | - |
| 215 | 05/04/12 | (2,157.92) | - | (2,157.92) | - | - | - | - |
| 216 | 05/07/12 | (11,494.75) | - | (11,494.75) | - | - | - | - |
| 217 | 05/08/12 | (3,139.25) | - | (3,139.25) | - | - | - | - |
| 218 | 05/09/12 | (2,532.46) | - | (2,532.46) | - | - | - | - |
| 219 | 05/10/12 | (2,387.44) | - | (2,387.44) | - | - | - | - |
| 220 | 05/11/12 | (3,579.68) | - | (3,579.68) | - | - | - | - |
| 221 | 05/14/12 | (10,201.12) | - | (10,201.12) | - | - | - | - |
| 222 | 05/15/12 | (3,524.83) | - | (3,524.83) | - | - | - | - |
| 223 | 05/16/12 | (2,186.96) | - | (2,186.96) | - | - | - | - |
| 224 | 05/17/12 | (2,386.28) | - | (2,386.28) | - | - | - | - |
| 225 | 05/18/12 | (7,120.65) | - | (7,120.65) | - | - | - | - |
| 226 | 05/21/12 | (2,846.36) | - | (2,846.36) | - | - | - | - |
| 227 | 05/22/12 | (3,307.89) | - | (3,307.89) | - | - | - | - |
| 228 | 05/23/12 | (2,229.91) | - | (2,229.91) | - | - | - | - |
| 229 | 05/24/12 | (2,537.37) | - | (2,537.37) | - | - | - | - |
| 230 | 05/25/12 | (11,970.22) | - | (11,970.22) | - | - | - | - |
| 231 | 05/29/12 | (11,905.73) | - | (11,905.73) | - | - | - | - |
| 232 | 05/30/12 | (3,373.95) | - | (3,373.95) | - | - | - | - |
| 233 | 06/01/12 | (4,903.74) | - | (4,903.74) | - | - | - | - |
| 234 | 06/04/12 | (10,433.12) | - | (10,433.12) | - | - | - | - |
| 235 | 06/05/12 | (65.95) | - | (65.95) | - | - | - | - |
| 236 | 06/06/12 | (119.99) | - | (119.99) | - | - | - | - |
| 237 | 06/08/12 | (33,009.38) | - | (33,009.38) | - | - | - | - |
| 238 | 06/11/12 | (2,730.93) | - | (2,730.93) | - | - | - | - |
| 239 | 06/12/12 | (16,535.93) | - | (16,535.93) | - | - | - | - |
| 240 | 06/13/12 | (109.57) | - | (109.57) | - | - | - | - |
| 241 | 06/14/12 | (5,451.70) | - | (5,451.70) | - | - | - | - |
| 242 | 06/15/12 | (3,084.51) | - | (3,084.51) | - | - | - | - |
| 243 | 06/18/12 | (3,861.91) | - | (3,861.91) | - | - | - | - |
| 244 | 06/19/12 | (22,775.24) | - | (22,775.24) | - | - | - | - |
| 245 | 06/20/12 | (397.15) | - | (397.15) | - | - | - | - |
| 246 | 06/21/12 | (3,252.62) | - | (3,252.62) | - | - | - | - |
| 247 | 06/22/12 | (7,747.02) | - | (7,747.02) | - | - | - | - |
| 248 | 06/25/12 | (6,499.05) | - | (6,499.05) | - | - | - | - |
| 249 | 06/26/12 | (15,301.91) | - | (15,301.91) | - | - | - | - |
| 250 | 06/27/12 | (6,157.26) | - | (6,157.26) | - | - | - | - |
| 251 | 06/28/12 | (4,547.03) | - | (4,547.03) | - | - | - | - |
| 252 | 06/29/12 | (4,236.48) | - | (4,236.48) | - | - | - | - |
| 253 | 07/02/12 | (26,407.53) | - | (26,407.53) | - | - | - | - |
| 254 | 07/03/12 | (37.99) | - | (37.99) | - | - | - | - |
| 255 | 07/05/12 | (21,075.02) | - | (21,075.02) | - | - | - | - |
| 256 | 07/06/12 | (10,628.66) | - | (10,628.66) | - | - | - | - |
| 257 | 07/09/12 | (3,949.17) | - | (3,949.17) | - | - | - | - |

## APPLICATION OF PAYMENTS TO LOANS

D-1

| | Payment Date | Total Payments On Indicated Date | Agreement Dated: | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | 05/02/11 | 09/26/11 | 05/22/12 | 08/13/12 | 09/14/12 | 12/28/12 |
| 258 | 07/10/12 | (20,417.03) | - | (20,417.03) | - | - | - | - |
| 259 | 07/11/12 | (3,638.22) | - | (3,638.22) | - | - | - | - |
| 260 | 07/12/12 | (4,299.04) | - | (4,299.04) | - | - | - | - |
| 261 | 07/13/12 | (4,023.56) | - | (4,023.56) | - | - | - | - |
| 262 | 07/16/12 | (3,445.62) | - | (3,445.62) | - | - | - | - |
| 263 | 07/17/12 | (17,109.62) | - | (16,002.42) | (1,107.20) | - | - | - |
| 264 | 07/18/12 | (2,765.35) | - | - | (2,765.35) | - | - | - |
| 265 | 07/19/12 | (4,849.57) | - | - | (4,849.57) | - | - | - |
| 266 | 07/20/12 | (2,816.99) | - | - | (2,816.99) | - | - | - |
| 267 | 07/23/12 | (3,988.89) | - | - | (3,988.89) | - | - | - |
| 268 | 07/24/12 | (15,596.92) | - | - | (15,596.92) | - | - | - |
| 269 | 07/25/12 | (3,382.83) | - | - | (3,382.83) | - | - | - |
| 270 | 07/26/12 | (3,239.22) | - | - | (3,239.22) | - | - | - |
| 271 | 07/27/12 | (5,506.98) | - | - | (5,506.98) | - | - | - |
| 272 | 07/30/12 | (3,860.62) | - | - | (3,860.62) | - | - | - |
| 273 | 07/31/12 | (18,687.94) | - | - | (18,687.94) | - | - | - |
| 274 | 08/01/12 | (6,131.82) | - | - | (6,131.82) | - | - | - |
| 275 | 08/02/12 | (7,413.71) | - | - | (7,413.71) | - | - | - |
| 276 | 08/03/12 | (7,983.21) | - | - | (7,983.21) | - | - | - |
| 277 | 08/06/12 | (8,305.02) | - | - | (8,305.02) | - | - | - |
| 278 | 08/07/12 | (20,802.53) | - | - | (20,802.53) | - | - | - |
| 279 | 08/08/12 | (4,278.92) | - | - | (4,278.92) | - | - | - |
| 280 | 08/09/12 | (3,506.66) | - | - | (3,506.66) | - | - | - |
| 281 | 08/10/12 | (4,168.75) | - | - | (4,168.75) | - | - | - |
| 282 | 08/13/12 | (3,186.70) | - | - | (3,186.70) | - | - | - |
| 283 | 08/14/12 | (15,815.75) | - | - | (15,815.75) | - | - | - |
| 284 | 08/15/12 | (4,611.83) | - | - | (4,611.83) | - | - | - |
| 285 | 08/16/12 | (4,677.05) | - | - | (4,677.05) | - | - | - |
| 286 | 08/17/12 | (464.43) | - | - | (464.43) | - | - | - |
| 287 | 08/20/12 | (9,051.28) | - | - | (9,051.28) | - | - | - |
| 288 | 08/21/12 | (16,633.73) | - | - | (16,633.73) | - | - | - |
| 289 | 08/22/12 | (3,514.57) | - | - | (3,514.57) | - | - | - |
| 290 | 08/23/12 | (5,751.67) | - | - | (5,751.67) | - | - | - |
| 291 | 08/24/12 | (5,395.57) | - | - | (5,395.57) | - | - | - |
| 292 | 08/27/12 | (4,421.38) | - | - | (4,421.38) | - | - | - |
| 293 | 08/28/12 | (18,828.49) | - | - | (18,828.49) | - | - | - |
| 294 | 08/29/12 | (6,331.96) | - | - | (6,331.96) | - | - | - |
| 295 | 08/30/12 | (5,429.13) | - | - | (5,429.13) | - | - | - |
| 296 | 08/31/12 | (4,212.90) | - | - | (4,212.90) | - | - | - |
| 297 | 09/04/12 | (5,422.51) | - | - | (5,422.51) | - | - | - |
| 298 | 09/05/12 | (31,444.91) | - | - | (31,444.91) | - | - | - |
| 299 | 09/06/12 | (4,635.20) | - | - | (4,635.20) | - | - | - |
| 300 | 09/07/12 | (2,939.10) | - | - | (2,939.10) | - | - | - |
| 301 | 09/10/12 | (4,351.52) | - | - | (4,351.52) | - | - | - |
| 302 | 09/11/12 | (15,051.00) | - | - | (15,051.00) | - | - | - |
| 303 | 09/12/12 | (3,026.99) | - | - | (3,026.99) | - | - | - |
| 304 | 09/13/12 | (2,778.68) | - | - | (2,778.68) | - | - | - |
| 305 | 09/14/12 | (2,833.20) | - | - | (2,833.20) | - | - | - |
| 306 | 09/17/12 | (4,380.98) | - | - | (4,380.98) | - | - | - |
| 307 | 09/18/12 | (15,393.40) | - | - | (15,393.40) | - | - | - |
| 308 | 09/19/12 | (3,659.66) | - | - | (3,659.66) | - | - | - |
| 309 | 09/20/12 | (2,524.23) | - | - | (2,524.23) | - | - | - |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

## APPLICATION OF PAYMENTS TO LOANS

D-1

| | Payment Date | Total Payments On Indicated Date | Agreement Dated: | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | 05/02/11 | 09/26/11 | 05/22/12 | 08/13/12 | 09/14/12 | 12/28/12 |
| 310 | 09/21/12 | (2,025.26) | - | - | (2,025.26) | - | - | - |
| 311 | 09/24/12 | (3,819.17) | - | - | (3,819.17) | - | - | - |
| 312 | 09/25/12 | (14,161.19) | - | - | (14,161.19) | - | - | - |
| 313 | 09/26/12 | (4,683.34) | - | - | (4,683.34) | - | - | - |
| 314 | 09/27/12 | (3,903.71) | - | - | (3,903.71) | - | - | - |
| 315 | 09/28/12 | (3,011.32) | - | - | (3,011.32) | - | - | - |
| 316 | 10/01/12 | (5,340.27) | - | - | (5,340.27) | - | - | - |
| 317 | 10/02/12 | (21,764.41) | - | - | (21,764.41) | - | - | - |
| 318 | 10/03/12 | (5,815.37) | - | - | (5,815.37) | - | - | - |
| 319 | 10/04/12 | (5,605.79) | - | - | (5,605.79) | - | - | - |
| 320 | 10/05/12 | (3,343.39) | - | - | (3,343.39) | - | - | - |
| 321 | 10/09/12 | (3,220.29) | - | - | (3,220.29) | - | - | - |
| 322 | 10/10/12 | (18,568.92) | - | - | (18,568.92) | - | - | - |
| 323 | 10/11/12 | (2,473.01) | - | - | (2,473.01) | - | - | - |
| 324 | 10/12/12 | (3,214.89) | - | - | (3,214.89) | - | - | - |
| 325 | 10/15/12 | (3,288.38) | - | - | (3,288.38) | - | - | - |
| 326 | 10/16/12 | (12,545.77) | - | - | (12,545.77) | - | - | - |
| 327 | 10/17/12 | (4,768.91) | - | - | (4,768.91) | - | - | - |
| 328 | 10/18/12 | (4,832.92) | - | - | (4,832.92) | - | - | - |
| 329 | 10/19/12 | (2,639.85) | - | - | (2,639.85) | - | - | - |
| 330 | 10/22/12 | (2,930.48) | - | - | (2,930.48) | - | - | - |
| 331 | 10/23/12 | (13,981.48) | - | - | (13,981.48) | - | - | - |
| 332 | 10/24/12 | (3,258.92) | - | - | (3,258.92) | - | - | - |
| 333 | 10/25/12 | (2,766.00) | - | - | (2,766.00) | - | - | - |
| 334 | 10/26/12 | (3,622.03) | - | - | (3,622.03) | - | - | - |
| 335 | 10/29/12 | (3,501.90) | - | - | (3,501.90) | - | - | - |
| 336 | 10/30/12 | (15,397.25) | - | - | (15,397.25) | - | - | - |
| 337 | 10/31/12 | (5,072.32) | - | - | (5,072.32) | - | - | - |
| 338 | 11/01/12 | (4,123.72) | - | - | (4,123.72) | - | - | - |
| 339 | 11/02/12 | (8,875.07) | - | - | (8,875.07) | - | - | - |
| 340 | 11/06/12 | (17,716.36) | - | - | (17,716.36) | - | - | - |
| 341 | 11/07/12 | (4,326.47) | - | - | (4,326.47) | - | - | - |
| 342 | 11/08/12 | (3,939.92) | - | - | (3,939.92) | - | - | - |
| 343 | 11/09/12 | (2,967.34) | - | - | (2,967.34) | - | - | - |
| 344 | 11/13/12 | (2,631.49) | - | - | (2,631.49) | - | - | - |
| 345 | 11/14/12 | (17,162.64) | - | - | (17,162.64) | - | - | - |
| 346 | 11/15/12 | (2,722.26) | - | - | (2,722.26) | - | - | - |
| 347 | 11/16/12 | (3,305.61) | - | - | (3,305.61) | - | - | - |
| 348 | 11/19/12 | (4,100.84) | - | - | (4,100.84) | - | - | - |
| 349 | 11/20/12 | (14,035.80) | - | - | (14,035.80) | - | - | - |
| 350 | 11/21/12 | (5,811.58) | - | - | (5,811.58) | - | - | - |
| 351 | 11/23/12 | (3,438.86) | - | - | (3,438.86) | - | - | - |
| 352 | 11/27/12 | (14,362.36) | - | - | (14,362.36) | - | - | - |
| 353 | 11/28/12 | (5,390.06) | - | - | (5,390.06) | - | - | - |
| 354 | 11/30/12 | (4,047.48) | - | - | (4,047.48) | - | - | - |
| 355 | 12/03/12 | (4,543.51) | - | - | (4,543.51) | - | - | - |
| 356 | 12/04/12 | (19,052.93) | - | - | (19,052.93) | - | - | - |
| 357 | 12/05/12 | (4,127.27) | - | - | (4,127.27) | - | - | - |
| 358 | 12/06/12 | (2,881.58) | - | - | (2,881.58) | - | - | - |
| 359 | 12/07/12 | (3,427.43) | - | - | (3,427.43) | - | - | - |
| 360 | 12/10/12 | (2,443.17) | - | - | (2,443.17) | - | - | - |
| 361 | 12/11/12 | (11,261.93) | - | - | (11,261.93) | - | - | - |

Starving Students v. Express Working Capital

## APPLICATION OF PAYMENTS TO LOANS

D-1

| | Payment Date | Total Payments On Indicated Date | Agreement Dated: | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | 05/02/11 | 09/26/11 | 05/22/12 | 08/13/12 | 09/14/12 | 12/28/12 |
| 362 | 12/12/12 | (2,777.08) | - | - | (2,777.08) | - | - | - |
| 363 | 12/13/12 | (2,519.45) | - | - | (2,519.45) | - | - | - |
| 364 | 12/14/12 | (3,406.06) | - | - | (3,406.06) | - | - | - |
| 365 | 12/17/12 | (2,953.39) | - | - | (2,953.39) | - | - | - |
| 366 | 12/18/12 | (14,351.03) | - | - | (14,351.03) | - | - | - |
| 367 | 12/19/12 | (4,031.05) | - | - | (4,031.05) | - | - | - |
| 368 | 12/20/12 | (3,929.85) | - | - | (3,929.85) | - | - | - |
| 369 | 12/21/12 | (4,007.70) | - | - | (4,007.70) | - | - | - |
| 370 | 12/24/12 | (3,594.28) | - | - | (3,594.28) | - | - | - |
| 371 | 12/27/12 | (15,495.41) | - | - | (15,495.41) | - | - | - |
| 372 | 12/28/12 | (1,921.02) | - | - | (1,921.02) | - | - | - |
| 373 | 12/31/12 | (2,996.77) | - | - | (2,996.77) | - | - | - |
| 374 | 01/03/13 | (19,660.95) | - | - | (19,660.95) | - | - | - |
| 375 | 01/04/13 | (2,547.84) | - | - | (2,547.84) | - | - | - |
| 376 | 01/07/13 | (3,615.67) | - | - | (3,615.67) | - | - | - |
| 377 | 01/08/13 | (11,067.05) | - | - | (11,067.05) | - | - | - |
| 378 | 01/09/13 | (3,635.85) | - | - | (3,635.85) | - | - | - |
| 379 | 01/10/13 | (2,055.94) | - | - | (2,055.94) | - | - | - |
| 380 | 01/11/13 | (1,878.96) | - | - | (1,878.96) | - | - | - |
| 381 | 01/14/13 | (1,557.85) | - | - | (1,557.85) | - | - | - |
| 382 | 01/15/13 | (10,263.36) | - | - | (10,263.36) | - | - | - |
| 383 | 01/16/13 | (2,477.04) | - | - | (2,477.04) | - | - | - |
| 384 | 01/17/13 | (2,597.24) | - | - | (1,843.23) | (754.01) | - | - |
| 385 | 01/18/13 | (1,747.18) | - | - | - | (1,747.18) | - | - |
| 386 | 01/22/13 | (2,430.80) | - | - | - | (2,430.80) | - | - |
| 387 | 01/23/13 | (15,422.45) | - | - | - | (15,422.45) | - | - |
| 388 | 01/24/13 | (2,347.32) | - | - | - | (2,347.32) | - | - |
| 389 | 01/25/13 | (1,976.98) | - | - | - | (1,976.98) | - | - |
| 390 | 01/28/13 | (2,409.23) | - | - | - | (2,409.23) | - | - |
| 391 | 01/29/13 | (12,263.88) | - | - | - | (12,263.88) | - | - |
| 392 | 01/30/13 | (8,292.74) | - | - | - | (8,292.74) | - | - |
| 393 | 02/01/13 | (3,662.55) | - | - | - | (3,662.55) | - | - |
| 394 | 02/04/13 | (3,682.10) | - | - | - | (3,682.10) | - | - |
| 395 | 02/05/13 | (15,355.24) | - | - | - | (15,355.24) | - | - |
| 396 | 02/06/13 | (2,525.77) | - | - | - | (2,525.77) | - | - |
| 397 | 02/07/13 | (2,337.36) | - | - | - | (2,337.36) | - | - |
| 398 | 02/08/13 | (1,550.95) | - | - | - | (1,550.95) | - | - |
| 399 | 02/11/13 | (2,710.83) | - | - | - | (2,710.83) | - | - |
| 400 | 02/12/13 | (11,065.96) | - | - | - | (11,065.96) | - | - |
| 401 | 02/13/13 | (2,558.96) | - | - | - | (2,558.96) | - | - |
| 402 | 02/14/13 | (2,529.42) | - | - | - | (2,529.42) | - | - |
| 403 | 02/15/13 | (2,760.81) | - | - | - | (2,760.81) | - | - |
| 404 | 02/19/13 | (1,616.42) | - | - | - | (1,616.42) | - | - |
| 405 | 02/20/13 | (17,783.85) | - | - | - | (17,783.85) | - | - |
| 406 | 02/21/13 | (2,218.02) | - | - | - | (2,218.02) | - | - |
| 407 | 02/22/13 | (1,982.44) | - | - | - | (1,982.44) | - | - |
| 408 | 02/25/13 | (1,841.11) | - | - | - | (1,841.11) | - | - |
| 409 | 02/26/13 | (12,558.68) | - | - | - | (12,558.68) | - | - |
| 410 | 02/27/13 | (3,174.79) | - | - | - | (3,174.79) | - | - |
| 411 | 02/28/13 | (3,796.31) | - | - | - | (3,796.31) | - | - |
| 412 | 03/01/13 | (3,633.56) | - | - | - | (3,633.56) | - | - |
| 413 | 03/04/13 | (4,413.77) | - | - | - | (4,413.77) | - | - |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

## APPLICATION OF PAYMENTS TO LOANS

D-1

| | Payment Date | Total Payments On Indicated Date | Agreement Dated: | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | 05/02/11 | 09/26/11 | 05/22/12 | 08/13/12 | 09/14/12 | 12/28/12 |
| 414 | 03/05/13 | (18,245.54) | - | - | - | (18,245.54) | - | - |
| 415 | 03/06/13 | (3,890.89) | - | - | - | (3,890.89) | - | - |
| 416 | 03/07/13 | (3,249.20) | - | - | - | (3,249.20) | - | - |
| 417 | 03/08/13 | (1,626.55) | - | - | - | (1,626.55) | - | - |
| 418 | 03/11/13 | (1,932.70) | - | - | - | (1,932.70) | - | - |
| 419 | 03/12/13 | (12,631.56) | - | - | - | (12,631.56) | - | - |
| 420 | 03/13/13 | (2,733.55) | - | - | - | (2,733.55) | - | - |
| 421 | 03/14/13 | (2,786.23) | - | - | - | (2,786.23) | - | - |
| 422 | 03/15/13 | (2,712.57) | - | - | - | (2,712.57) | - | - |
| 423 | 03/18/13 | (2,479.28) | - | - | - | (2,479.28) | - | - |
| 424 | 03/19/13 | (14,588.88) | - | - | - | (14,588.88) | - | - |
| 425 | 03/20/13 | (6,784.54) | - | - | - | (6,784.54) | - | - |
| 426 | 03/22/13 | (2,362.98) | - | - | - | (2,362.98) | - | - |
| 427 | 03/25/13 | (2,864.90) | - | - | - | (2,864.90) | - | - |
| 428 | 03/26/13 | (15,950.92) | - | - | - | (15,950.92) | - | - |
| 429 | 03/27/13 | (3,829.33) | - | - | - | (3,829.33) | - | - |
| 430 | 03/28/13 | (3,727.11) | - | - | - | (3,727.11) | - | - |
| 431 | 03/29/13 | (4,570.97) | - | - | - | (4,570.97) | - | - |
| 432 | 04/01/13 | (3,265.84) | - | - | - | (3,265.84) | - | - |
| 433 | 04/02/13 | (13,149.20) | - | - | - | (13,149.20) | - | - |
| 434 | 04/03/13 | (12,709.85) | - | - | - | (12,709.85) | - | - |
| 435 | 04/04/13 | (5,131.03) | - | - | - | (5,131.03) | - | - |
| 436 | 04/05/13 | (5,002.34) | - | - | - | (5,002.34) | - | - |
| 437 | 04/08/13 | (3,635.89) | - | - | - | (3,635.89) | - | - |
| 438 | 04/09/13 | (12,847.67) | - | - | - | (12,847.67) | - | - |
| 439 | 04/10/13 | (3,001.06) | - | - | - | (3,001.06) | - | - |
| 440 | 04/11/13 | (2,253.88) | - | - | - | (2,253.88) | - | - |
| 441 | 04/12/13 | (2,414.77) | - | - | - | (2,414.77) | - | - |
| 442 | 04/15/13 | (3,449.66) | - | - | - | (3,449.66) | - | - |
| 443 | 04/16/13 | (10,588.12) | - | - | - | (9,767.62) | (820.50) | - |
| 444 | 04/17/13 | (3,529.65) | - | - | - | - | (3,529.65) | - |
| 445 | 04/18/13 | (3,530.36) | - | - | - | - | (3,530.36) | - |
| 446 | 04/19/13 | (3,225.11) | - | - | - | - | (3,225.11) | - |
| 447 | 04/22/13 | (2,934.60) | - | - | - | - | (2,934.60) | - |
| 448 | 04/23/13 | (12,634.76) | - | - | - | - | (12,634.76) | - |
| 449 | 04/30/13 | (28,630.78) | - | - | - | - | (28,630.78) | - |
| 450 | 05/31/13 | (150,183.95) | - | - | - | - | (150,183.95) | - |
| 451 | 06/03/13 | (6,638.12) | - | - | - | - | (6,638.12) | - |
| 452 | 06/04/13 | (24,141.71) | - | - | - | - | (24,141.71) | - |
| 453 | 06/05/13 | (5,591.32) | - | - | - | - | (5,591.32) | - |
| 454 | 06/06/13 | (5,451.10) | - | - | - | - | (5,451.10) | - |
| 455 | 06/07/13 | (4,972.90) | - | - | - | - | (4,972.90) | - |
| 456 | 06/10/13 | (3,864.04) | - | - | - | - | (3,864.04) | - |
| 457 | 06/11/13 | (15,793.38) | - | - | - | - | (15,793.38) | - |
| 458 | 06/12/13 | (4,028.94) | - | - | - | - | (4,028.94) | - |
| 459 | 06/13/13 | (4,527.51) | - | - | - | - | (4,527.51) | - |
| 460 | 06/14/13 | (3,014.32) | - | - | - | - | (3,014.32) | - |
| 461 | 06/17/13 | (5,865.54) | - | - | - | - | (5,865.54) | - |
| 462 | 06/18/13 | (18,715.03) | - | - | - | - | (18,715.03) | - |
| 463 | 06/19/13 | (5,310.15) | - | - | - | - | (5,310.15) | - |
| 464 | 06/20/13 | (4,711.62) | - | - | - | - | (4,711.62) | - |
| 465 | 06/21/13 | (4,735.84) | - | - | - | - | (4,735.84) | - |

Starving Students v. Express Working Capital

## APPLICATION OF PAYMENTS TO LOANS

D-1

| | Payment Date | Total Payments On Indicated Date | Agreement Dated: | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | 05/02/11 | 09/26/11 | 05/22/12 | 08/13/12 | 09/14/12 | 12/28/12 |
| 466 | 06/24/13 | (4,476.38) | - | - | - | - | (4,476.38) | - |
| 467 | 06/25/13 | (20,947.07) | - | - | - | - | (7,672.39) | (13,274.68) |
| 468 | 06/26/13 | (6,495.13) | - | - | - | - | - | (6,495.13) |
| 469 | 06/27/13 | (4,525.20) | - | - | - | - | - | (4,525.20) |
| 470 | 06/28/13 | (5,481.08) | - | - | - | - | - | (5,481.08) |
| 471 | 07/01/13 | (5,540.69) | - | - | - | - | - | (5,540.69) |
| 472 | 07/02/13 | (23,651.27) | - | - | - | - | - | (23,651.27) |
| 473 | 07/03/13 | (9,543.74) | - | - | - | - | - | (9,543.74) |
| 474 | 07/05/13 | (8,545.19) | - | - | - | - | - | (8,545.19) |
| 475 | 07/08/13 | (10,122.07) | - | - | - | - | - | (10,122.07) |
| 476 | 07/09/13 | (15,225.36) | - | - | - | - | - | (15,225.36) |
| 477 | 07/10/13 | (5,717.98) | - | - | - | - | - | (5,717.98) |
| 478 | 07/11/13 | (4,496.18) | - | - | - | - | - | (4,496.18) |
| 479 | 07/12/13 | (5,781.24) | - | - | - | - | - | (5,781.24) |
| 480 | 07/15/13 | (4,067.84) | - | - | - | - | - | (4,067.84) |
| 481 | 07/16/13 | (16,236.60) | - | - | - | - | - | (16,236.60) |
| 482 | 07/17/13 | (6,546.34) | - | - | - | - | - | (6,546.34) |
| 483 | 07/18/13 | (6,634.54) | - | - | - | - | - | (6,634.54) |
| 484 | 07/19/13 | (4,614.13) | - | - | - | - | - | (4,614.13) |
| 485 | 07/22/13 | (5,449.20) | - | - | - | - | - | (5,449.20) |
| 486 | 07/23/13 | (7,664.55) | - | - | - | - | - | (7,664.55) |
| 487 | 07/24/13 | (20.43) | - | - | - | - | - | (20.43) |
| 488 | | $ (2,965,133.44) | $(685,000.00) | $(636,500.00) | $(804,000.00) | $(335,000.00) | $(335,000.00) | $ (169,633.44) |
| | | | B-1 | B-2 | B-3 | B-4 | B-5 | B-6 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

# PAYMENTS BY STARVING STUDENTS TO EWC

## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|---|
| 1 | EWC Statement | E-1 | 05/04/11 | $ | (1,855.64) | C-1 |
| 2 | EWC Statement | E-1 | 05/09/11 | | (2,109.39) | C-1 |
| 3 | EWC Statement | E-1 | 05/09/11 | | (5,849.52) | C-1 |
| 4 | EWC Statement | E-1 | 05/10/11 | | (1,664.01) | C-1 |
| 5 | EWC Statement | E-1 | 05/11/11 | | (2,891.40) | C-1 |
| 6 | EWC Statement | E-1 | 05/12/11 | | (2,481.41) | C-1 |
| 7 | EWC Statement | E-1 | 05/13/11 | | (1,418.59) | C-1 |
| 8 | EWC Statement | E-1 | 05/16/11 | | (1,927.20) | C-1 |
| 9 | EWC Statement | E-1 | 05/16/11 | | (6,074.77) | C-1 |
| 10 | EWC Statement | E-1 | 05/17/11 | | (2,934.51) | C-1 |
| 11 | EWC Statement | E-1 | 05/18/11 | | (2,866.25) | C-1 |
| 12 | EWC Statement | E-1 | 05/19/11 | | (2,054.78) | C-1 |
| 13 | EWC Statement | E-1 | 05/19/11 | | (1,853.84) | C-1 |
| 14 | EWC Statement | E-1 | 05/20/11 | | (2,222.05) | C-1 |
| 15 | EWC Statement | E-1 | 05/23/11 | | (6,758.94) | C-1 |
| 16 | EWC Statement | E-1 | 05/24/11 | | (2,741.05) | C-1 |
| 17 | EWC Statement | E-1 | 05/25/11 | | (2,900.29) | C-1 |
| 18 | EWC Statement | E-1 | 05/26/11 | | (2,242.93) | C-1 |
| 19 | EWC Statement | E-1 | 05/27/11 | | (2,292.49) | C-1 |
| 20 | EWC Statement | E-1 | 05/31/11 | | (9,004.57) | C-1 |
| 21 | EWC Statement | E-1 | 05/31/11 | | (4,235.13) | C-1 |
| 22 | EWC Statement | E-1 | 05/31/11 | | (3,087.45) | C-1 |
| 23 | EWC Statement | E-1 | 06/01/11 | | (5,316.20) | C-1 |
| 24 | EWC Statement | E-1 | 06/02/11 | | (3,352.62) | C-1 |
| 25 | EWC Statement | E-1 | 06/03/11 | | (4,980.56) | C-1 |
| 26 | EWC Statement | E-1 | 06/06/11 | | (3,918.61) | C-1 |
| 27 | EWC Statement | E-1 | 06/06/11 | | (8,137.82) | C-1 |
| 28 | EWC Statement | E-1 | 06/07/11 | | (2,788.00) | C-1 |
| 29 | EWC Statement | E-1 | 06/08/11 | | (3,357.79) | C-1 |
| 30 | EWC Statement | E-1 | 06/09/11 | | (2,490.37) | C-1 |
| 31 | EWC Statement | E-1 | 06/10/11 | | (2,540.92) | C-1 |
| 32 | EWC Statement | E-1 | 06/13/11 | | (2,431.21) | C-1 |
| 33 | EWC Statement | E-1 | 06/13/11 | | (6,413.11) | C-1 |
| 34 | EWC Statement | E-1 | 06/14/11 | | (3,205.42) | C-1 |
| 35 | EWC Statement | E-1 | 06/15/11 | | (2,929.20) | C-1 |
| 36 | EWC Statement | E-1 | 06/16/11 | | (3,997.56) | C-1 |

STARVING STUDENTS v. EXPRESS WORKING CAPITAL

# PAYMENTS BY STARVING STUDENTS TO EWC

## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 37 | EWC Statement | E-1 | 06/17/11 | (2,645.04) | C-1 |
| 38 | EWC Statement | E-1 | 06/20/11 | (3,796.63) | C-1 |
| 39 | EWC Statement | E-1 | 06/20/11 | (8,215.83) | C-1 |
| 40 | EWC Statement | E-1 | 06/21/11 | (2,718.00) | C-1 |
| 41 | EWC Statement | E-1 | 06/22/11 | (2,772.57) | C-1 |
| 42 | EWC Statement | E-1 | 06/23/11 | (2,537.82) | C-1 |
| 43 | EWC Statement | E-1 | 06/24/11 | (2,140.09) | C-1 |
| 44 | EWC Statement | E-1 | 06/27/11 | (8,637.86) | C-1 |
| 45 | EWC Statement | E-1 | 06/27/11 | (3,916.85) | C-1 |
| 46 | EWC Statement | E-1 | 06/28/11 | (3,397.88) | C-1 |
| 47 | EWC Statement | E-1 | 06/29/11 | (3,932.91) | C-1 |
| 48 | EWC Statement | E-1 | 06/30/11 | (4,369.78) | C-1 |
| 49 | EWC Statement | E-1 | 07/01/11 | (4,574.28) | C-1 |
| 50 | EWC Statement | E-1 | 07/05/11 | (4,944.28) | C-1 |
| 51 | EWC Statement | E-1 | 07/05/11 | (12,972.79) | C-1 |
| 52 | EWC Statement | E-1 | 07/05/11 | (4,404.76) | C-1 |
| 53 | EWC Statement | E-1 | 07/06/11 | (506.42) | C-1 |
| 54 | EWC Statement | E-1 | 07/07/11 | (3,512.01) | C-1 |
| 55 | EWC Statement | E-1 | 07/08/11 | (2,741.80) | C-1 |
| 56 | EWC Statement | E-1 | 07/11/11 | (3,055.36) | C-1 |
| 57 | EWC Statement | E-1 | 07/11/11 | (7,071.74) | C-1 |
| 58 | EWC Statement | E-1 | 07/12/11 | (2,062.47) | C-1 |
| 59 | EWC Statement | E-1 | 07/13/11 | (2,695.03) | C-1 |
| 60 | EWC Statement | E-1 | 07/14/11 | (1,926.90) | C-1 |
| 61 | EWC Statement | E-1 | 07/15/11 | (2,095.77) | C-1 |
| 62 | EWC Statement | E-1 | 07/18/11 | (7,179.24) | C-1 |
| 63 | EWC Statement | E-1 | 07/18/11 | 1,154.40 | C-1 |
| 64 | EWC Statement | E-1 | 07/18/11 | (2,310.82) | C-1 |
| 65 | EWC Statement | E-1 | 07/19/11 | (2,992.90) | C-1 |
| 66 | EWC Statement | E-1 | 07/20/11 | (1,750.92) | C-1 |
| 67 | EWC Statement | E-1 | 07/21/11 | (2,597.75) | C-1 |
| 68 | EWC Statement | E-1 | 07/22/11 | (2,091.95) | C-1 |
| 69 | EWC Statement | E-1 | 07/25/11 | (2,155.42) | C-1 |
| 70 | EWC Statement | E-1 | 07/25/11 | (6,097.83) | C-1 |
| 71 | EWC Statement | E-1 | 07/26/11 | (2,244.50) | C-1 |
| 72 | EWC Statement | E-1 | 07/27/11 | (2,690.35) | C-1 |

<u>STARVING STUDENTS v. EXPRESS WORKING CAPITAL</u>

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 73 | EWC Statement | E-1 | 07/28/11 | (2,195.14) | C-1 |
| 74 | EWC Statement | E-1 | 07/29/11 | (3,073.19) | C-1 |
| 75 | EWC Statement | E-1 | 08/01/11 | (3,096.48) | C-1 |
| 76 | EWC Statement | E-1 | 08/01/11 | (9,407.74) | C-1 |
| 77 | EWC Statement | E-1 | 08/02/11 | (4,975.04) | C-1 |
| 78 | EWC Statement | E-1 | 08/03/11 | (3,893.91) | C-1 |
| 79 | EWC Statement | E-1 | 08/04/11 | (3,367.95) | C-1 |
| 80 | EWC Statement | E-1 | 08/05/11 | (3,630.11) | C-1 |
| 81 | EWC Statement | E-1 | 08/08/11 | (2,468.07) | C-1 |
| 82 | EWC Statement | E-1 | 08/08/11 | (5,749.86) | C-1 |
| 83 | EWC Statement | E-1 | 08/09/11 | (2,987.96) | C-1 |
| 84 | EWC Statement | E-1 | 08/10/11 | (2,455.46) | C-1 |
| 85 | EWC Statement | E-1 | 08/11/11 | (2,168.26) | C-1 |
| 86 | EWC Statement | E-1 | 08/12/11 | (2,222.53) | C-1 |
| 87 | EWC Statement | E-1 | 08/15/11 | (5,252.66) | C-1 |
| 88 | EWC Statement | E-1 | 08/15/11 | (3,064.04) | C-1 |
| 89 | EWC Statement | E-1 | 08/16/11 | (2,291.83) | C-1 |
| 90 | EWC Statement | E-1 | 08/17/11 | (2,335.21) | C-1 |
| 91 | EWC Statement | E-1 | 08/18/11 | (3,239.21) | C-1 |
| 92 | EWC Statement | E-1 | 08/19/11 | (2,634.93) | C-1 |
| 93 | EWC Statement | E-1 | 08/22/11 | (5,110.91) | C-1 |
| 94 | EWC Statement | E-1 | 08/22/11 | (2,459.30) | C-1 |
| 95 | EWC Statement | E-1 | 08/23/11 | (2,811.81) | C-1 |
| 96 | EWC Statement | E-1 | 08/24/11 | (2,874.12) | C-1 |
| 97 | EWC Statement | E-1 | 08/25/11 | (2,368.89) | C-1 |
| 98 | EWC Statement | E-1 | 08/26/11 | (1,757.60) | C-1 |
| 99 | EWC Statement | E-1 | 08/29/11 | 284.23 | C-1 |
| 100 | EWC Statement | E-1 | 08/29/11 | (2,511.58) | C-1 |
| 101 | EWC Statement | E-1 | 08/29/11 | (7,839.13) | C-1 |
| 102 | EWC Statement | E-1 | 08/30/11 | (2,884.88) | C-1 |
| 103 | EWC Statement | E-1 | 08/31/11 | (2,963.18) | C-1 |
| 104 | EWC Statement | E-1 | 09/01/11 | (3,572.08) | C-1 |
| 105 | EWC Statement | E-1 | 09/02/11 | (3,389.31) | C-1 |
| 106 | EWC Statement | E-1 | 09/06/11 | (4,081.32) | C-1 |
| 107 | EWC Statement | E-1 | 09/06/11 | (7,701.44) | C-1 |
| 108 | EWC Statement | E-1 | 09/06/11 | (2,541.69) | C-1 |

STARVING STUDENTS v. EXPRESS WORKING CAPITAL

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 109 | EWC Statement | E-1 | 09/07/11 | (2,722.63) | C-1 |
| 110 | EWC Statement | E-1 | 09/08/11 | (1,585.74) | C-1 |
| 111 | EWC Statement | E-1 | 09/09/11 | (1,507.88) | C-1 |
| 112 | EWC Statement | E-1 | 09/12/11 | (5,076.98) | C-1 |
| 113 | EWC Statement | E-1 | 09/12/11 | (1,827.82) | C-1 |
| 114 | EWC Statement | E-1 | 09/13/11 | (1,807.04) | C-1 |
| 115 | EWC Statement | E-1 | 09/14/11 | (1,553.17) | C-1 |
| 116 | EWC Statement | E-1 | 09/15/11 | (1,485.48) | C-1 |
| 117 | EWC Statement | E-1 | 09/16/11 | (1,864.79) | C-1 |
| 118 | EWC Statement | E-1 | 09/19/11 | (2,424.98) | C-1 |
| 119 | EWC Statement | E-1 | 09/19/11 | (4,705.66) | C-1 |
| 120 | EWC Statement | E-1 | 09/20/11 | (3,473.26) | C-1 |
| 121 | EWC Statement | E-1 | 09/21/11 | (1,721.87) | C-1 |
| 122 | EWC Statement | E-1 | 09/22/11 | (1,562.36) | C-1 |
| 123 | EWC Statement | E-1 | 09/23/11 | (2,346.19) | C-1 |
| 124 | EWC Statement | E-1 | 09/26/11 | (4,579.97) | C-1 |
| 125 | EWC Statement | E-1 | 09/26/11 | (1,831.92) | C-1 |
| 126 | EWC Statement | E-1 | 09/27/11 | (2,497.98) | C-1 |
| 127 | EWC Statement | E-1 | 09/28/11 | (2,186.07) | C-1 |
| 128 | EWC Statement | E-1 | 09/29/11 | (2,106.97) | C-1 |
| 129 | EWC Statement | E-1 | 09/30/11 | (2,126.51) | C-1 |
| 130 | EWC Statement | E-1 | 10/03/11 | (12,705.76) | C-1 |
| 131 | EWC Statement | E-1 | 10/03/11 | (4,764.62) | C-1 |
| 132 | EWC Statement | E-1 | 10/04/11 | (5,811.50) | C-1 |
| 133 | EWC Statement | E-1 | 10/05/11 | (3,790.88) | C-1 |
| 134 | EWC Statement | E-1 | 10/06/11 | (4,284.39) | C-1 |
| 135 | EWC Statement | E-1 | 10/07/11 | (2,902.95) | C-1 |
| 136 | EWC Statement | E-1 | 10/11/11 | (7,789.87) | C-1 |
| 137 | EWC Statement | E-1 | 10/11/11 | (3,268.12) | C-1 |
| 138 | EWC Statement | E-1 | 10/11/11 | (2,695.95) | C-1 |
| 139 | EWC Statement | E-1 | 10/12/11 | (2,311.13) | C-1 |
| 140 | EWC Statement | E-1 | 10/13/11 | (3,050.20) | C-1 |
| 141 | EWC Statement | E-1 | 10/14/11 | (2,514.23) | C-1 |
| 142 | EWC Statement | E-1 | 10/17/11 | (7,710.02) | C-1 |
| 143 | EWC Statement | E-1 | 10/17/11 | (2,818.96) | C-1 |
| 144 | EWC Statement | E-1 | 10/18/11 | (3,436.92) | C-1 |

<u>STARVING STUDENTS v. EXPRESS WORKING CAPITAL</u>

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 145 | EWC Statement | E-1 | 10/19/11 | (2,353.46) | C-1 |
| 146 | EWC Statement | E-1 | 10/20/11 | (2,391.46) | C-1 |
| 147 | EWC Statement | E-1 | 10/21/11 | (1,978.81) | C-1 |
| 148 | EWC Statement | E-1 | 10/24/11 | (2,580.65) | C-1 |
| 149 | EWC Statement | E-1 | 10/24/11 | (5,324.44) | C-1 |
| 150 | EWC Statement | E-1 | 10/25/11 | (2,529.95) | C-1 |
| 151 | EWC Statement | E-1 | 10/26/11 | (2,395.44) | C-1 |
| 152 | EWC Statement | E-1 | 10/27/11 | (2,312.66) | C-1 |
| 153 | EWC Statement | E-1 | 10/28/11 | (3,177.90) | C-1 |
| 154 | EWC Statement | E-1 | 10/31/11 | (2,969.66) | C-1 |
| 155 | EWC Statement | E-1 | 10/31/11 | (9,646.90) | C-1 |
| 156 | EWC Statement | E-1 | 11/01/11 | (3,422.87) | C-1 |
| 157 | EWC Statement | E-1 | 11/02/11 | (2,962.09) | C-1 |
| 158 | EWC Statement | E-1 | 11/03/11 | (3,300.45) | C-1 |
| 159 | EWC Statement | E-1 | 11/04/11 | (2,382.49) | C-1 |
| 160 | EWC Statement | E-1 | 11/07/11 | (5,905.08) | C-1 |
| 161 | EWC Statement | E-1 | 11/07/11 | (2,227.75) | C-1 |
| 162 | EWC Statement | E-1 | 11/08/11 | (3,355.95) | C-1 |
| 163 | EWC Statement | E-1 | 11/09/11 | (1,576.98) | C-1 |
| 164 | EWC Statement | E-1 | 11/14/11 | (2,035.13) | C-1 |
| 165 | EWC Statement | E-1 | 11/14/11 | (4,369.73) | C-1 |
| 166 | EWC Statement | E-1 | 11/14/11 | (1,513.32) | C-1 |
| 167 | EWC Statement | E-1 | 11/15/11 | (939.83) | C-1 |
| 168 | EWC Statement | E-1 | 11/16/11 | (1,489.32) | C-1 |
| 169 | EWC Statement | E-1 | 11/18/11 | (1,419.60) | C-1 |
| 170 | EWC Statement | E-1 | 11/21/11 | (1,160.41) | C-1 |
| 171 | EWC Statement | E-1 | 11/22/11 | (1,008.39) | C-1 |
| 172 | EWC Statement | E-1 | 11/23/11 | (1,440.44) | C-1 |
| 173 | EWC Statement | E-1 | 11/23/11 | (2,197.58) | C-1 |
| 174 | EWC Statement | E-1 | 11/25/11 | (2,640.75) | C-1 |
| 175 | EWC Statement | E-1 | 11/25/11 | (1,620.27) | C-1 |
| 176 | EWC Statement | E-1 | 11/28/11 | (2,217.08) | C-1 |
| 177 | EWC Statement | E-1 | 11/29/11 | (708.72) | C-1 |
| 178 | EWC Statement | E-1 | 11/30/11 | (1,722.96) | C-1 |
| 179 | EWC Statement | E-1 | 12/01/11 | (997.52) | C-1 |
| 180 | EWC Statement | E-1 | 12/02/11 | (2,091.86) | C-1 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 181 | EWC Statement | E-1 | 12/05/11 | (1,488.55) | C-1 |
| 182 | EWC Statement | E-1 | 12/05/11 | (4,448.35) | C-1 |
| 183 | EWC Statement | E-1 | 12/06/11 | (738.33) | C-1 |
| 184 | EWC Statement | E-1 | 12/07/11 | (1,074.49) | C-1 |
| 185 | EWC Statement | E-1 | 12/08/11 | (509.87) | C-1 |
| 186 | EWC Statement | E-1 | 12/09/11 | (1,301.06) | C-1 |
| 187 | EWC Statement | E-1 | 12/12/11 | (2,490.10) | C-1 |
| 188 | EWC Statement | E-1 | 12/12/11 | (727.61) | C-1 |
| 189 | EWC Statement | E-1 | 12/13/11 | (1,108.28) | C-1 |
| 190 | EWC Statement | E-1 | 12/14/11 | (263.73) | C-1 |
| 191 | EWC Statement | E-1 | 12/15/11 | (838.17) | C-1 |
| 192 | EWC Statement | E-1 | 12/16/11 | (678.76) | C-1 |
| 193 | EWC Statement | E-1 | 12/19/11 | (1,178.18) | C-1 |
| 194 | EWC Statement | E-1 | 12/19/11 | (2,773.76) | C-1 |
| 195 | EWC Statement | E-1 | 12/20/11 | (894.95) | C-1 |
| 196 | EWC Statement | E-1 | 12/21/11 | (1,059.65) | C-1 |
| 197 | EWC Statement | E-1 | 12/22/11 | (462.08) | C-1 |
| 198 | EWC Statement | E-1 | 12/23/11 | (742.63) | C-1 |
| 199 | EWC Statement | E-1 | 12/27/11 | (700.54) | C-1 |
| 200 | EWC Statement | E-1 | 12/27/11 | (128.09) | C-1 |
| 201 | EWC Statement | E-1 | 12/27/11 | (759.31) | C-1 |
| 202 | EWC Statement | E-1 | 12/28/11 | (366.56) | C-1 |
| 203 | EWC Statement | E-1 | 12/29/11 | (649.29) | C-1 |
| 204 | EWC Statement | E-1 | 12/30/11 | (851.40) | C-1 |
| 205 | Starving Students' Internal Analysis | E-2 | 01/03/12 | (864.48) | C-1 |
| 206 | Starving Students' Internal Analysis | E-2 | 01/03/12 | (527.22) | C-1 |
| 207 | Starving Students' Internal Analysis | E-2 | 01/03/12 | (942.75) | C-1 |
| 208 | Starving Students' Internal Analysis | E-2 | 01/04/12 | (223.94) | C-1 |
| 209 | Starving Students' Internal Analysis | E-2 | 01/05/12 | (488.60) | C-1 |
| 210 | Starving Students' Internal Analysis | E-2 | 01/06/12 | (169.33) | C-1 |
| 211 | Starving Students' Internal Analysis | E-2 | 01/09/12 | (519.74) | C-1 |
| 212 | Starving Students' Internal Analysis | E-2 | 01/09/12 | (1,339.87) | C-1 |
| 213 | Starving Students' Internal Analysis | E-2 | 01/10/12 | (321.41) | C-1 |
| 214 | Starving Students' Internal Analysis | E-2 | 01/11/12 | (553.12) | C-1 |
| 215 | Starving Students' Internal Analysis | E-2 | 01/12/12 | (347.98) | C-1 |
| 216 | Starving Students' Internal Analysis | E-2 | 01/13/12 | (678.30) | C-1 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 217 | Starving Students' Internal Analysis | E-2 | 01/17/12 | (1,581.76) | C-1 |
| 218 | Starving Students' Internal Analysis | E-2 | 01/17/12 | (1,381.19) | C-1 |
| 219 | Starving Students' Internal Analysis | E-2 | 01/17/12 | (257.62) | C-1 |
| 220 | Starving Students' Internal Analysis | E-2 | 01/18/12 | (540.88) | C-1 |
| 221 | Starving Students' Internal Analysis | E-2 | 01/19/12 | (209.83) | C-1 |
| 222 | Starving Students' Internal Analysis | E-2 | 01/20/12 | (428.49) | C-1 |
| 223 | Starving Students' Internal Analysis | E-2 | 01/23/12 | (305.61) | C-1 |
| 224 | Starving Students' Internal Analysis | E-2 | 01/23/12 | (692.94) | C-1 |
| 225 | Starving Students' Internal Analysis | E-2 | 01/24/12 | (211.67) | C-1 |
| 226 | Starving Students' Internal Analysis | E-2 | 01/25/12 | (210.90) | C-1 |
| 227 | Starving Students' Internal Analysis | E-2 | 01/26/12 | (340.63) | C-1 |
| 228 | Starving Students' Internal Analysis | E-2 | 01/27/12 | (293.05) | C-1 |
| 229 | Starving Students' Internal Analysis | E-2 | 01/30/12 | (2,538.83) | C-1 |
| 230 | Starving Students' Internal Analysis | E-2 | 01/30/12 | (8,590.56) | C-1 |
| 231 | Starving Students' Internal Analysis | E-2 | 01/31/12 | (3,618.93) | C-1 |
| 232 | EWC Statement | E-1 | 02/06/12 | (9,143.61) | C-1 |
| 233 | EWC Statement | E-1 | 02/08/12 | (4,665.36) | C-1 |
| 234 | EWC Statement | E-1 | 02/09/12 | (2,325.14) | C-1 |
| 235 | EWC Statement | E-1 | 02/13/12 | (2,338.06) | C-1 |
| 236 | EWC Statement | E-1 | 02/15/12 | (4,904.28) | C-1 |
| 237 | EWC Statement | E-1 | 02/17/12 | (1,841.14) | C-1 |
| 238 | EWC Statement | E-1 | 02/21/12 | (6,529.91) | C-1 |
| 239 | EWC Statement | E-1 | 03/02/12 | (52,343.16) | C-1 |
| 240 | EWC Statement | E-1 | 03/05/12 | (10,747.23) | C-1 |
| 241 | EWC Statement | E-1 | 03/08/12 | (2,537.14) | C-1 |
| 242 | EWC Statement | E-1 | 03/12/12 | (26,062.32) | C-1 |
| 243 | EWC Statement | E-1 | 03/15/12 | (14,269.87) | C-1 |
| 244 | EWC Statement | E-1 | 03/19/12 | (2,571.15) | C-1 |
| 245 | EWC Statement | E-1 | 03/21/12 | (16,425.14) | C-1 |
| 246 | EWC Statement | E-1 | 03/26/12 | (8,400.36) | C-1 |
| 247 | EWC Statement | E-1 | 03/29/12 | (16,436.26) | C-1 |
| 248 | EWC Statement | E-1 | 04/05/12 | (16,431.47) | C-1 |
| 249 | EWC Statement | E-1 | 04/09/12 | (8,154.72) | C-1 |
| 250 | EWC Statement | E-1 | 04/12/12 | (2,360.22) | C-1 |
| 251 | EWC Statement | E-1 | 04/16/12 | (2,592.56) | C-1 |
| 252 | EWC Statement | E-1 | 04/16/12 | (8,059.51) | C-1 |

**STARVING STUDENTS V. EXPRESS WORKING CAPITAL**

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 253 | EWC Statement | E-1 | 04/17/12 | (49,473.96) | C-1 |
| 254 | EWC Statement | E-1 | 04/17/12 | (3,232.11) | C-1 |
| 255 | EWC Statement | E-1 | 04/18/12 | (3,306.84) | C-1 |
| 256 | EWC Statement | E-1 | 04/19/12 | (2,568.24) | C-1 |
| 257 | EWC Statement | E-1 | 04/20/12 | (2,278.27) | C-1 |
| 258 | EWC Statement | E-1 | 04/23/12 | (3,123.87) | C-1 |
| 259 | EWC Statement | E-1 | 04/24/12 | (2,710.80) | C-1 |
| 260 | EWC Statement | E-1 | 04/25/12 | (3,558.94) | C-1 |
| 261 | EWC Statement | E-1 | 04/26/12 | (2,486.38) | C-1 |
| 262 | EWC Statement | E-1 | 04/26/12 | (1,918.20) | C-1 |
| 263 | EWC Statement | E-1 | 04/27/12 | (3,762.32) | C-1 |
| 264 | EWC Statement | E-1 | 04/30/12 | (4,056.39) | C-1 |
| 265 | EWC Statement | E-1 | 04/30/12 | (5,506.03) | C-1 |
| 266 | EWC Statement | E-1 | 05/01/12 | (4,005.53) | C-1 |
| 267 | EWC Statement | E-1 | 05/03/12 | (3,693.61) | C-1 |
| 268 | EWC Statement | E-1 | 05/04/12 | (2,157.92) | C-1 |
| 269 | EWC Statement | E-1 | 05/07/12 | (8,097.86) | C-1 |
| 270 | EWC Statement | E-1 | 05/07/12 | (3,396.89) | C-1 |
| 271 | EWC Statement | E-1 | 05/08/12 | (3,139.25) | C-1 |
| 272 | EWC Statement | E-1 | 05/09/12 | (2,532.46) | C-1 |
| 273 | EWC Statement | E-1 | 05/10/12 | (2,387.44) | C-1 |
| 274 | EWC Statement | E-1 | 05/11/12 | (3,579.68) | C-1 |
| 275 | EWC Statement | E-1 | 05/14/12 | (6,877.90) | C-1 |
| 276 | EWC Statement | E-1 | 05/14/12 | (3,323.22) | C-1 |
| 277 | EWC Statement | E-1 | 05/15/12 | (3,524.83) | C-1 |
| 278 | EWC Statement | E-1 | 05/16/12 | (2,186.96) | C-1 |
| 279 | EWC Statement | E-1 | 05/17/12 | (2,386.28) | C-1 |
| 280 | EWC Statement | E-1 | 05/18/12 | (7,120.65) | C-1 |
| 281 | EWC Statement | E-1 | 05/21/12 | (2,846.36) | C-1 |
| 282 | EWC Statement | E-1 | 05/22/12 | (3,307.89) | C-1 |
| 283 | EWC Statement | E-1 | 05/23/12 | (2,229.91) | C-1 |
| 284 | EWC Statement | E-1 | 05/24/12 | (2,537.37) | C-1 |
| 285 | EWC Statement | E-1 | 05/25/12 | (11,970.22) | C-1 |
| 286 | EWC Statement | E-1 | 05/29/12 | (3,228.48) | C-1 |
| 287 | EWC Statement | E-1 | 05/29/12 | (5,973.58) | C-1 |
| 288 | EWC Statement | E-1 | 05/29/12 | (2,703.67) | C-1 |

**STARVING STUDENTS V. EXPRESS WORKING CAPITAL**

# PAYMENTS BY STARVING STUDENTS TO EWC
### Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 289 | EWC Statement | E-1 | 05/30/12 | (3,373.95) | C-1 |
| 290 | EWC Statement | E-1 | 06/01/12 | (4,903.74) | C-1 |
| 291 | EWC Statement | E-1 | 06/04/12 | (3,044.42) | C-1 |
| 292 | EWC Statement | E-1 | 06/04/12 | (7,388.70) | C-1 |
| 293 | EWC Statement | E-1 | 06/05/12 | (65.95) | C-1 |
| 294 | EWC Statement | E-1 | 06/06/12 | (119.99) | C-1 |
| 295 | EWC Statement | E-1 | 06/08/12 | (3,725.13) | C-1 |
| 296 | EWC Statement | E-1 | 06/08/12 | (26.77) | C-1 |
| 297 | EWC Statement | E-1 | 06/08/12 | (29,257.48) | C-1 |
| 298 | EWC Statement | E-1 | 06/11/12 | (2,730.93) | C-1 |
| 299 | EWC Statement | E-1 | 06/12/12 | (3,324.60) | C-1 |
| 300 | EWC Statement | E-1 | 06/12/12 | (13,211.33) | C-1 |
| 301 | EWC Statement | E-1 | 06/13/12 | (109.57) | C-1 |
| 302 | EWC Statement | E-1 | 06/14/12 | (5,420.77) | C-1 |
| 303 | EWC Statement | E-1 | 06/14/12 | (30.93) | C-1 |
| 304 | EWC Statement | E-1 | 06/15/12 | (3,084.51) | C-1 |
| 305 | EWC Statement | E-1 | 06/18/12 | (3,845.53) | C-1 |
| 306 | EWC Statement | E-1 | 06/18/12 | (16.38) | C-1 |
| 307 | EWC Statement | E-1 | 06/19/12 | (19,867.91) | C-1 |
| 308 | EWC Statement | E-1 | 06/19/12 | (2,907.33) | C-1 |
| 309 | EWC Statement | E-1 | 06/20/12 | (397.15) | C-1 |
| 310 | EWC Statement | E-1 | 06/21/12 | (3,252.62) | C-1 |
| 311 | EWC Statement | E-1 | 06/22/12 | (7,747.02) | C-1 |
| 312 | EWC Statement | E-1 | 06/25/12 | (6,499.05) | C-1 |
| 313 | EWC Statement | E-1 | 06/26/12 | (3,916.46) | C-1 |
| 314 | EWC Statement | E-1 | 06/26/12 | (11,385.45) | C-1 |
| 315 | EWC Statement | E-1 | 06/27/12 | (6,157.26) | C-1 |
| 316 | EWC Statement | E-1 | 06/28/12 | (4,547.03) | C-1 |
| 317 | EWC Statement | E-1 | 06/29/12 | (4,236.48) | C-1 |
| 318 | EWC Statement | E-1 | 07/02/12 | (6,139.46) | C-1 |
| 319 | EWC Statement | E-1 | 07/02/12 | (62.44) | C-1 |
| 320 | EWC Statement | E-1 | 07/02/12 | (9,170.76) | C-1 |
| 321 | EWC Statement | E-1 | 07/02/12 | (11,034.87) | C-1 |
| 322 | EWC Statement | E-1 | 07/03/12 | (37.99) | C-1 |
| 323 | EWC Statement | E-1 | 07/05/12 | (20,883.36) | C-1 |
| 324 | EWC Statement | E-1 | 07/05/12 | (191.66) | C-1 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 325 | EWC Statement | E-1 | 07/06/12 | (50.00) | C-1 |
| 326 | EWC Statement | E-1 | 07/06/12 | (7,203.51) | C-1 |
| 327 | EWC Statement | E-1 | 07/06/12 | (3,375.15) | C-1 |
| 328 | EWC Statement | E-1 | 07/09/12 | (3,949.17) | C-1 |
| 329 | EWC Statement | E-1 | 07/10/12 | (5,606.86) | C-1 |
| 330 | EWC Statement | E-1 | 07/10/12 | (14,810.17) | C-1 |
| 331 | EWC Statement | E-1 | 07/11/12 | (3,638.22) | C-1 |
| 332 | EWC Statement | E-1 | 07/12/12 | (4,299.04) | C-1 |
| 333 | EWC Statement | E-1 | 07/13/12 | (4,023.56) | C-1 |
| 334 | EWC Statement | E-1 | 07/16/12 | (3,445.62) | C-1 |
| 335 | EWC Statement | E-1 | 07/17/12 | (5,403.35) | C-1 |
| 336 | EWC Statement | E-1 | 07/17/12 | (11,706.27) | C-1 |
| 337 | EWC Statement | E-1 | 07/18/12 | (2,765.35) | C-1 |
| 338 | EWC Statement | E-1 | 07/19/12 | (4,849.57) | C-1 |
| 339 | EWC Statement | E-1 | 07/20/12 | (2,816.99) | C-1 |
| 340 | EWC Statement | E-1 | 07/23/12 | (3,988.89) | C-1 |
| 341 | EWC Statement | E-1 | 07/24/12 | (9,895.57) | C-1 |
| 342 | EWC Statement | E-1 | 07/24/12 | (5,701.35) | C-1 |
| 343 | EWC Statement | E-1 | 07/25/12 | (3,382.83) | C-1 |
| 344 | EWC Statement | E-1 | 07/26/12 | (3,239.22) | C-1 |
| 345 | EWC Statement | E-1 | 07/27/12 | (5,506.98) | C-1 |
| 346 | EWC Statement | E-1 | 07/30/12 | (3,860.62) | C-1 |
| 347 | EWC Statement | E-1 | 07/31/12 | (5,163.25) | C-1 |
| 348 | EWC Statement | E-1 | 07/31/12 | (13,524.69) | C-1 |
| 349 | EWC Statement | E-1 | 08/01/12 | (6,131.82) | C-1 |
| 350 | EWC Statement | E-1 | 08/02/12 | (7,413.71) | C-1 |
| 351 | EWC Statement | E-1 | 08/03/12 | (7,983.21) | C-1 |
| 352 | EWC Statement | E-1 | 08/06/12 | (8,305.02) | C-1 |
| 353 | EWC Statement | E-1 | 08/07/12 | (6,543.63) | C-1 |
| 354 | EWC Statement | E-1 | 08/07/12 | (14,258.90) | C-1 |
| 355 | EWC Statement | E-1 | 08/08/12 | (4,278.92) | C-1 |
| 356 | EWC Statement | E-1 | 08/09/12 | (3,506.66) | C-1 |
| 357 | EWC Statement | E-1 | 08/10/12 | (4,168.75) | C-1 |
| 358 | EWC Statement | E-1 | 08/13/12 | (3,186.70) | C-1 |
| 359 | EWC Statement | E-1 | 08/14/12 | (10,931.65) | C-1 |
| 360 | EWC Statement | E-1 | 08/14/12 | (4,884.10) | C-1 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# PAYMENTS BY STARVING STUDENTS TO EWC

## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 361 | EWC Statement | E-1 | 08/15/12 | (4,611.83) | C-1 |
| 362 | EWC Statement | E-1 | 08/16/12 | (4,677.05) | C-1 |
| 363 | EWC Statement | E-1 | 08/17/12 | (464.43) | C-1 |
| 364 | EWC Statement | E-1 | 08/20/12 | (9,051.28) | C-1 |
| 365 | EWC Statement | E-1 | 08/21/12 | (5,375.77) | C-1 |
| 366 | EWC Statement | E-1 | 08/21/12 | (11,257.96) | C-1 |
| 367 | EWC Statement | E-1 | 08/22/12 | (3,514.57) | C-1 |
| 368 | EWC Statement | E-1 | 08/23/12 | (5,751.67) | C-1 |
| 369 | EWC Statement | E-1 | 08/24/12 | (5,395.57) | C-1 |
| 370 | EWC Statement | E-1 | 08/27/12 | (4,421.38) | C-1 |
| 371 | EWC Statement | E-1 | 08/28/12 | (5,105.53) | C-1 |
| 372 | EWC Statement | E-1 | 08/28/12 | (13,722.96) | C-1 |
| 373 | EWC Statement | E-1 | 08/29/12 | (6,331.96) | C-1 |
| 374 | EWC Statement | E-1 | 08/30/12 | (5,429.13) | C-1 |
| 375 | EWC Statement | E-1 | 08/31/12 | (4,212.90) | C-1 |
| 376 | EWC Statement | E-1 | 09/04/12 | (5,422.51) | C-1 |
| 377 | EWC Statement | E-1 | 09/05/12 | (18,277.65) | C-1 |
| 378 | EWC Statement | E-1 | 09/05/12 | (8,500.71) | C-1 |
| 379 | EWC Statement | E-1 | 09/05/12 | (4,666.55) | C-1 |
| 380 | EWC Statement | E-1 | 09/06/12 | (4,635.20) | C-1 |
| 381 | EWC Statement | E-1 | 09/07/12 | (2,939.10) | C-1 |
| 382 | EWC Statement | E-1 | 09/10/12 | (4,351.52) | C-1 |
| 383 | EWC Statement | E-1 | 09/11/12 | (3,817.45) | C-1 |
| 384 | EWC Statement | E-1 | 09/11/12 | (11,233.55) | C-1 |
| 385 | EWC Statement | E-1 | 09/12/12 | (3,026.99) | C-1 |
| 386 | EWC Statement | E-1 | 09/13/12 | (2,778.68) | C-1 |
| 387 | EWC Statement | E-1 | 09/14/12 | (2,833.20) | C-1 |
| 388 | EWC Statement | E-1 | 09/17/12 | (4,380.98) | C-1 |
| 389 | EWC Statement | E-1 | 09/18/12 | (4,353.33) | C-1 |
| 390 | EWC Statement | E-1 | 09/18/12 | (11,040.07) | C-1 |
| 391 | EWC Statement | E-1 | 09/19/12 | (3,659.66) | C-1 |
| 392 | EWC Statement | E-1 | 09/20/12 | (2,524.23) | C-1 |
| 393 | EWC Statement | E-1 | 09/21/12 | (2,025.26) | C-1 |
| 394 | EWC Statement | E-1 | 09/24/12 | (3,819.17) | C-1 |
| 395 | EWC Statement | E-1 | 09/25/12 | (3,493.54) | C-1 |
| 396 | EWC Statement | E-1 | 09/25/12 | (10,667.65) | C-1 |

<u>**STARVING STUDENTS V. EXPRESS WORKING CAPITAL**</u>

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 397 | EWC Statement | E-1 | 09/26/12 | (4,683.34) | C-1 |
| 398 | EWC Statement | E-1 | 09/27/12 | (3,903.71) | C-1 |
| 399 | EWC Statement | E-1 | 09/28/12 | (3,011.32) | C-1 |
| 400 | EWC Statement | E-1 | 10/01/12 | (5,340.27) | C-1 |
| 401 | EWC Statement | E-1 | 10/02/12 | (5,447.73) | C-1 |
| 402 | EWC Statement | E-1 | 10/02/12 | (16,316.68) | C-1 |
| 403 | EWC Statement | E-1 | 10/03/12 | (5,815.37) | C-1 |
| 404 | EWC Statement | E-1 | 10/04/12 | (5,605.79) | C-1 |
| 405 | EWC Statement | E-1 | 10/05/12 | (3,343.39) | C-1 |
| 406 | EWC Statement | E-1 | 10/09/12 | (3,220.29) | C-1 |
| 407 | EWC Statement | E-1 | 10/10/12 | (11,072.03) | C-1 |
| 408 | EWC Statement | E-1 | 10/10/12 | (4,469.76) | C-1 |
| 409 | EWC Statement | E-1 | 10/10/12 | (3,027.13) | C-1 |
| 410 | EWC Statement | E-1 | 10/11/12 | (2,473.01) | C-1 |
| 411 | EWC Statement | E-1 | 10/12/12 | (3,214.89) | C-1 |
| 412 | EWC Statement | E-1 | 10/15/12 | (3,288.38) | C-1 |
| 413 | EWC Statement | E-1 | 10/16/12 | (9,284.40) | C-1 |
| 414 | EWC Statement | E-1 | 10/16/12 | (3,261.37) | C-1 |
| 415 | EWC Statement | E-1 | 10/17/12 | (4,768.91) | C-1 |
| 416 | EWC Statement | E-1 | 10/18/12 | (4,832.92) | C-1 |
| 417 | EWC Statement | E-1 | 10/19/12 | (2,639.85) | C-1 |
| 418 | EWC Statement | E-1 | 10/22/12 | (2,930.48) | C-1 |
| 419 | EWC Statement | E-1 | 10/23/12 | (9,361.70) | C-1 |
| 420 | EWC Statement | E-1 | 10/23/12 | (4,619.78) | C-1 |
| 421 | EWC Statement | E-1 | 10/24/12 | (3,258.92) | C-1 |
| 422 | EWC Statement | E-1 | 10/25/12 | (2,766.00) | C-1 |
| 423 | EWC Statement | E-1 | 10/26/12 | (3,622.03) | C-1 |
| 424 | EWC Statement | E-1 | 10/29/12 | (3,501.90) | C-1 |
| 425 | EWC Statement | E-1 | 10/30/12 | (3,730.20) | C-1 |
| 426 | EWC Statement | E-1 | 10/30/12 | 188.06 | C-1 |
| 427 | EWC Statement | E-1 | 10/30/12 | (11,855.11) | C-1 |
| 428 | EWC Statement | E-1 | 10/31/12 | (5,072.32) | C-1 |
| 429 | EWC Statement | E-1 | 11/01/12 | (4,123.72) | C-1 |
| 430 | EWC Statement | E-1 | 11/02/12 | (5,366.07) | C-1 |
| 431 | EWC Statement | E-1 | 11/02/12 | (3,509.00) | C-1 |
| 432 | EWC Statement | E-1 | 11/06/12 | (4,560.86) | C-1 |

**S**TARVING **S**TUDENTS **v. E**XPRESS **W**ORKING **C**APITAL

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 433 | EWC Statement | E-1 | 11/06/12 | (13,155.50) | C-1 |
| 434 | EWC Statement | E-1 | 11/07/12 | (4,326.47) | C-1 |
| 435 | EWC Statement | E-1 | 11/08/12 | (3,939.92) | C-1 |
| 436 | EWC Statement | E-1 | 11/09/12 | (2,967.34) | C-1 |
| 437 | EWC Statement | E-1 | 11/13/12 | (2,631.49) | C-1 |
| 438 | EWC Statement | E-1 | 11/14/12 | (11,022.01) | C-1 |
| 439 | EWC Statement | E-1 | 11/14/12 | (3,310.98) | C-1 |
| 440 | EWC Statement | E-1 | 11/14/12 | (2,829.65) | C-1 |
| 441 | EWC Statement | E-1 | 11/15/12 | (2,722.26) | C-1 |
| 442 | EWC Statement | E-1 | 11/16/12 | (3,305.61) | C-1 |
| 443 | EWC Statement | E-1 | 11/19/12 | (4,100.84) | C-1 |
| 444 | EWC Statement | E-1 | 11/20/12 | (4,025.04) | C-1 |
| 445 | EWC Statement | E-1 | 11/20/12 | (10,010.76) | C-1 |
| 446 | EWC Statement | E-1 | 11/21/12 | (5,811.58) | C-1 |
| 447 | EWC Statement | E-1 | 11/23/12 | (3,438.86) | C-1 |
| 448 | EWC Statement | E-1 | 11/27/12 | (7,215.14) | C-1 |
| 449 | EWC Statement | E-1 | 11/27/12 | (509.42) | C-1 |
| 450 | EWC Statement | E-1 | 11/27/12 | (2,747.15) | C-1 |
| 451 | EWC Statement | E-1 | 11/27/12 | (3,890.65) | C-1 |
| 452 | EWC Statement | E-1 | 11/28/12 | (2,329.98) | C-1 |
| 453 | EWC Statement | E-1 | 11/28/12 | (3,060.08) | C-1 |
| 454 | EWC Statement | E-1 | 11/30/12 | (4,047.48) | C-1 |
| 455 | EWC Statement | E-1 | 12/03/12 | (4,543.51) | C-1 |
| 456 | EWC Statement | E-1 | 12/04/12 | (14,020.71) | C-1 |
| 457 | EWC Statement | E-1 | 12/04/12 | (5,032.22) | C-1 |
| 458 | EWC Statement | E-1 | 12/05/12 | (4,127.27) | C-1 |
| 459 | EWC Statement | E-1 | 12/06/12 | (2,881.58) | C-1 |
| 460 | EWC Statement | E-1 | 12/07/12 | (3,427.43) | C-1 |
| 461 | EWC Statement | E-1 | 12/10/12 | (2,443.17) | C-1 |
| 462 | EWC Statement | E-1 | 12/11/12 | (7,601.75) | C-1 |
| 463 | EWC Statement | E-1 | 12/11/12 | (3,660.18) | C-1 |
| 464 | EWC Statement | E-1 | 12/12/12 | (2,777.08) | C-1 |
| 465 | EWC Statement | E-1 | 12/13/12 | (2,519.45) | C-1 |
| 466 | EWC Statement | E-1 | 12/14/12 | (3,406.06) | C-1 |
| 467 | EWC Statement | E-1 | 12/17/12 | (2,953.39) | C-1 |
| 468 | EWC Statement | E-1 | 12/18/12 | (10,602.52) | C-1 |

<u>STARVING STUDENTS v. EXPRESS WORKING CAPITAL</u>

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 469 | EWC Statement | E-1 | 12/18/12 | (3,748.51) | C-1 |
| 470 | EWC Statement | E-1 | 12/19/12 | (4,031.05) | C-1 |
| 471 | EWC Statement | E-1 | 12/20/12 | (3,929.85) | C-1 |
| 472 | EWC Statement | E-1 | 12/21/12 | (4,007.70) | C-1 |
| 473 | EWC Statement | E-1 | 12/24/12 | (3,594.28) | C-1 |
| 474 | EWC Statement | E-1 | 12/27/12 | (3,532.43) | C-1 |
| 475 | EWC Statement | E-1 | 12/27/12 | (874.95) | C-1 |
| 476 | EWC Statement | E-1 | 12/27/12 | (8,077.54) | C-1 |
| 477 | EWC Statement | E-1 | 12/27/12 | (3,010.49) | C-1 |
| 478 | EWC Statement | E-1 | 12/28/12 | (1,921.02) | C-1 |
| 479 | EWC Statement | E-1 | 12/31/12 | (2,996.77) | C-1 |
| 480 | EWC Statement | E-1 | 01/03/13 | (9,598.92) | C-1 |
| 481 | EWC Statement | E-1 | 01/03/13 | (3,797.19) | C-1 |
| 482 | EWC Statement | E-1 | 01/03/13 | (1,058.63) | C-1 |
| 483 | EWC Statement | E-1 | 01/03/13 | (5,206.21) | C-1 |
| 484 | EWC Statement | E-1 | 01/04/13 | (2,547.84) | C-1 |
| 485 | EWC Statement | E-1 | 01/07/13 | (3,615.67) | C-1 |
| 486 | EWC Statement | E-1 | 01/08/13 | (7,535.84) | C-1 |
| 487 | EWC Statement | E-1 | 01/08/13 | (3,531.21) | C-1 |
| 488 | EWC Statement | E-1 | 01/09/13 | (3,635.85) | C-1 |
| 489 | EWC Statement | E-1 | 01/10/13 | (2,055.94) | C-1 |
| 490 | EWC Statement | E-1 | 01/11/13 | (1,878.96) | C-1 |
| 491 | EWC Statement | E-1 | 01/14/13 | (1,557.85) | C-1 |
| 492 | EWC Statement | E-1 | 01/15/13 | (2,571.71) | C-1 |
| 493 | EWC Statement | E-1 | 01/15/13 | (7,691.65) | C-1 |
| 494 | EWC Statement | E-1 | 01/16/13 | (2,477.04) | C-1 |
| 495 | EWC Statement | E-1 | 01/17/13 | (2,597.24) | C-1 |
| 496 | EWC Statement | E-1 | 01/18/13 | (1,747.18) | C-1 |
| 497 | EWC Statement | E-1 | 01/22/13 | (2,430.80) | C-1 |
| 498 | EWC Statement | E-1 | 01/23/13 | (9,186.72) | C-1 |
| 499 | EWC Statement | E-1 | 01/23/13 | (2,649.54) | C-1 |
| 500 | EWC Statement | E-1 | 01/23/13 | (3,586.19) | C-1 |
| 501 | EWC Statement | E-1 | 01/24/13 | (2,347.32) | C-1 |
| 502 | EWC Statement | E-1 | 01/25/13 | (1,976.98) | C-1 |
| 503 | EWC Statement | E-1 | 01/28/13 | (2,409.23) | C-1 |
| 504 | EWC Statement | E-1 | 01/29/13 | (3,331.45) | C-1 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date<br>Assumed by BLR&Co. | Assumed Payment to<br>EWC or Fortis | |
|---|---|---|---|---|---|
| 505 | EWC Statement | E-1 | 01/29/13 | (8,932.43) | C-1 |
| 506 | EWC Statement | E-1 | 01/30/13 | (4,103.57) | C-1 |
| 507 | EWC Statement | E-1 | 01/30/13 | (4,189.17) | C-1 |
| 508 | EWC Statement | E-1 | 02/01/13 | (3,662.55) | C-1 |
| 509 | EWC Statement | E-1 | 02/04/13 | (3,682.10) | C-1 |
| 510 | EWC Statement | E-1 | 02/05/13 | (5,063.52) | C-1 |
| 511 | EWC Statement | E-1 | 02/05/13 | (10,291.72) | C-1 |
| 512 | EWC Statement | E-1 | 02/06/13 | (2,525.77) | C-1 |
| 513 | EWC Statement | E-1 | 02/07/13 | (2,337.36) | C-1 |
| 514 | EWC Statement | E-1 | 02/08/13 | (1,550.95) | C-1 |
| 515 | EWC Statement | E-1 | 02/11/13 | (2,710.83) | C-1 |
| 516 | EWC Statement | E-1 | 02/12/13 | (8,080.40) | C-1 |
| 517 | EWC Statement | E-1 | 02/12/13 | (2,985.56) | C-1 |
| 518 | EWC Statement | E-1 | 02/13/13 | (2,558.96) | C-1 |
| 519 | EWC Statement | E-1 | 02/14/13 | (2,529.42) | C-1 |
| 520 | EWC Statement | E-1 | 02/15/13 | (2,760.81) | C-1 |
| 521 | EWC Statement | E-1 | 02/19/13 | (1,616.42) | C-1 |
| 522 | EWC Statement | E-1 | 02/20/13 | (10,044.44) | C-1 |
| 523 | EWC Statement | E-1 | 02/20/13 | (3,327.20) | C-1 |
| 524 | EWC Statement | E-1 | 02/20/13 | (4,412.21) | C-1 |
| 525 | EWC Statement | E-1 | 02/21/13 | (2,218.02) | C-1 |
| 526 | EWC Statement | E-1 | 02/22/13 | (1,982.44) | C-1 |
| 527 | EWC Statement | E-1 | 02/25/13 | (1,841.11) | C-1 |
| 528 | EWC Statement | E-1 | 02/26/13 | (3,371.59) | C-1 |
| 529 | EWC Statement | E-1 | 02/26/13 | (9,187.09) | C-1 |
| 530 | EWC Statement | E-1 | 02/27/13 | (3,174.79) | C-1 |
| 531 | EWC Statement | E-1 | 02/28/13 | (3,796.31) | C-1 |
| 532 | EWC Statement | E-1 | 03/01/13 | (3,633.56) | C-1 |
| 533 | EWC Statement | E-1 | 03/04/13 | (4,413.77) | C-1 |
| 534 | EWC Statement | E-1 | 03/05/13 | (6,955.97) | C-1 |
| 535 | EWC Statement | E-1 | 03/05/13 | (11,289.57) | C-1 |
| 536 | EWC Statement | E-1 | 03/06/13 | (3,890.89) | C-1 |
| 537 | EWC Statement | E-1 | 03/07/13 | (3,249.20) | C-1 |
| 538 | EWC Statement | E-1 | 03/08/13 | (1,626.55) | C-1 |
| 539 | EWC Statement | E-1 | 03/11/13 | (1,932.70) | C-1 |
| 540 | EWC Statement | E-1 | 03/12/13 | (2,483.74) | C-1 |

STARVING STUDENTS v. EXPRESS WORKING CAPITAL

# PAYMENTS BY STARVING STUDENTS TO EWC

## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 541 | EWC Statement | E-1 | 03/12/13 | (10,147.82) | C-1 |
| 542 | EWC Statement | E-1 | 03/13/13 | (2,733.55) | C-1 |
| 543 | EWC Statement | E-1 | 03/14/13 | (2,786.23) | C-1 |
| 544 | EWC Statement | E-1 | 03/15/13 | (2,712.57) | C-1 |
| 545 | EWC Statement | E-1 | 03/18/13 | (2,479.28) | C-1 |
| 546 | EWC Statement | E-1 | 03/19/13 | (3,629.49) | C-1 |
| 547 | EWC Statement | E-1 | 03/19/13 | (10,959.39) | C-1 |
| 548 | EWC Statement | E-1 | 03/20/13 | (3,539.15) | C-1 |
| 549 | EWC Statement | E-1 | 03/20/13 | (3,245.39) | C-1 |
| 550 | EWC Statement | E-1 | 03/22/13 | (2,362.98) | C-1 |
| 551 | EWC Statement | E-1 | 03/25/13 | (2,864.90) | C-1 |
| 552 | EWC Statement | E-1 | 03/26/13 | (11,970.00) | C-1 |
| 553 | EWC Statement | E-1 | 03/26/13 | (3,980.92) | C-1 |
| 554 | EWC Statement | E-1 | 03/27/13 | (3,829.33) | C-1 |
| 555 | EWC Statement | E-1 | 03/28/13 | (3,727.11) | C-1 |
| 556 | EWC Statement | E-1 | 03/29/13 | (4,570.97) | C-1 |
| 557 | EWC Statement | E-1 | 04/01/13 | (3,265.84) | C-1 |
| 558 | EWC Statement | E-1 | 04/02/13 | (6,711.11) | C-1 |
| 559 | EWC Statement | E-1 | 04/02/13 | (6,438.09) | C-1 |
| 560 | EWC Statement | E-1 | 04/03/13 | (12,709.85) | C-1 |
| 561 | EWC Statement | E-1 | 04/04/13 | (5,131.03) | C-1 |
| 562 | EWC Statement | E-1 | 04/05/13 | (5,002.34) | C-1 |
| 563 | EWC Statement | E-1 | 04/08/13 | (3,635.89) | C-1 |
| 564 | EWC Statement | E-1 | 04/09/13 | (3,393.97) | C-1 |
| 565 | EWC Statement | E-1 | 04/09/13 | (9,453.70) | C-1 |
| 566 | EWC Statement | E-1 | 04/10/13 | (3,001.06) | C-1 |
| 567 | EWC Statement | E-1 | 04/11/13 | (2,253.88) | C-1 |
| 568 | EWC Statement | E-1 | 04/12/13 | (2,414.77) | C-1 |
| 569 | EWC Statement | E-1 | 04/15/13 | (3,449.66) | C-1 |
| 570 | EWC Statement | E-1 | 04/16/13 | (7,792.39) | C-1 |
| 571 | EWC Statement | E-1 | 04/16/13 | (2,795.73) | C-1 |
| 572 | EWC Statement | E-1 | 04/17/13 | (3,529.65) | C-1 |
| 573 | EWC Statement | E-1 | 04/18/13 | (3,530.36) | C-1 |
| 574 | EWC Statement | E-1 | 04/19/13 | (3,225.11) | C-1 |
| 575 | EWC Statement | E-1 | 04/22/13 | (2,934.60) | C-1 |
| 576 | EWC Statement | E-1 | 04/23/13 | (2,820.19) | C-1 |

<u>**STARVING STUDENTS V. EXPRESS WORKING CAPITAL**</u>

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 577 | EWC Statement | E-1 | 04/23/13 | (9,814.57) | C-1 |
| 578 | Difference between Partial EWC Statement and Starving Students' Internal Analysis for April 2013 | E-1 | 04/30/13 | (28,630.78) | C-1 |
| 579 | Starving Students' Internal Analysis | E-1 | 05/31/13 | (150,183.95) | C-1 |
| 580 | EWC Statement | E-1 | 06/03/13 | (6,638.12) | C-1 |
| 581 | EWC Statement | E-1 | 06/04/13 | (16,737.02) | C-1 |
| 582 | EWC Statement | E-1 | 06/04/13 | (7,404.69) | C-1 |
| 583 | EWC Statement | E-1 | 06/05/13 | (5,591.32) | C-1 |
| 584 | EWC Statement | E-1 | 06/06/13 | (5,451.10) | C-1 |
| 585 | EWC Statement | E-1 | 06/07/13 | (4,972.90) | C-1 |
| 586 | EWC Statement | E-1 | 06/10/13 | (3,864.04) | C-1 |
| 587 | EWC Statement | E-1 | 06/11/13 | (11,394.36) | C-1 |
| 588 | EWC Statement | E-1 | 06/11/13 | (4,399.02) | C-1 |
| 589 | EWC Statement | E-1 | 06/12/13 | (4,028.94) | C-1 |
| 590 | EWC Statement | E-1 | 06/13/13 | (4,527.51) | C-1 |
| 591 | EWC Statement | E-1 | 06/14/13 | (3,014.32) | C-1 |
| 592 | EWC Statement | E-1 | 06/17/13 | (5,865.54) | C-1 |
| 593 | EWC Statement | E-1 | 06/18/13 | (3,616.08) | C-1 |
| 594 | EWC Statement | E-1 | 06/18/13 | (15,098.95) | C-1 |
| 595 | EWC Statement | E-1 | 06/19/13 | (5,310.15) | C-1 |
| 596 | EWC Statement | E-1 | 06/20/13 | (4,711.62) | C-1 |
| 597 | EWC Statement | E-1 | 06/21/13 | (4,735.84) | C-1 |
| 598 | EWC Statement | E-1 | 06/24/13 | (4,476.38) | C-1 |
| 599 | EWC Statement | E-1 | 06/25/13 | (7,142.34) | C-1 |
| 600 | EWC Statement | E-1 | 06/25/13 | (13,804.73) | C-1 |
| 601 | EWC Statement | E-1 | 06/26/13 | (6,495.13) | C-1 |
| 602 | EWC Statement | E-1 | 06/27/13 | (4,525.20) | C-1 |
| 603 | EWC Statement | E-1 | 06/28/13 | (5,481.08) | C-1 |
| 604 | EWC Statement | E-1 | 07/01/13 | (5,540.69) | C-1 |
| 605 | EWC Statement | E-1 | 07/02/13 | (8,804.44) | C-1 |
| 606 | EWC Statement | E-1 | 07/02/13 | (14,846.83) | C-1 |
| 607 | EWC Statement | E-1 | 07/03/13 | (9,543.74) | C-1 |
| 608 | EWC Statement | E-1 | 07/05/13 | (8,545.19) | C-1 |
| 609 | EWC Statement | E-1 | 07/08/13 | (2,263.22) | C-1 |
| 610 | EWC Statement | E-1 | 07/08/13 | (7,858.85) | C-1 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# PAYMENTS BY STARVING STUDENTS TO EWC
## Summary of All Payments From All Sources

D-2

| | Source | | Payment Date Assumed by BLR&Co. | Assumed Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| 611 | EWC Statement | E-1 | 07/09/13 | (4,213.01) | C-1 |
| 612 | EWC Statement | E-1 | 07/09/13 | (11,012.35) | C-1 |
| 613 | EWC Statement | E-1 | 07/10/13 | (5,717.98) | C-1 |
| 614 | EWC Statement | E-1 | 07/11/13 | (4,496.18) | C-1 |
| 615 | EWC Statement | E-1 | 07/12/13 | (5,781.24) | C-1 |
| 616 | EWC Statement | E-1 | 07/15/13 | (4,067.84) | C-1 |
| 617 | EWC Statement | E-1 | 07/16/13 | (11,068.94) | C-1 |
| 618 | EWC Statement | E-1 | 07/16/13 | (5,167.66) | C-1 |
| 619 | EWC Statement | E-1 | 07/17/13 | (6,546.34) | C-1 |
| 620 | EWC Statement | E-1 | 07/18/13 | (6,634.54) | C-1 |
| 621 | EWC Statement | E-1 | 07/19/13 | (4,614.13) | C-1 |
| 622 | EWC Statement | E-1 | 07/22/13 | (5,449.20) | C-1 |
| 623 | EWC Statement | E-1 | 07/23/13 | (1,331.01) | C-1 |
| 624 | EWC Statement | E-1 | 07/23/13 | (6,333.54) | C-1 |
| 625 | EWC Statement | E-1 | 07/24/13 | (20.43) | C-1 |
| 626 | **Total** | | | **$ (2,965,133.44)** | |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# SUMMARY OF AGREEMENTS
## Basic Financial Terms of Agreements

D-3

| | Agreement # | Date | "Purchaser" Lender | "Merchant" Borrower | "Purchase Price" Loan Amount | "Receivables Sold" Repayment Amount | Daily % |
|---|---|---|---|---|---|---|---|
| | | | BLR 1018 - BLR 1107 | | | BLR 1018 - BLR 1107 | |
| 1 | SSM1001 | 5/2/2011 | Express Working Capital | Starving Students. Inc | $ 500,000.00 | $ 685,000.00 | 7.00% |
| 2 | SSM1002 | 9/26/2011 | Express Working Capital | Starving Students. Inc | 475,000.00 | 636,500.00 | 10.00% |
| 3 | SSM1003 | 5/22/2012 | Express Working Capital | Starving Students. Inc | 600,000.00 | 804,000.00 | 11.25% |
| 4 | SSM1004 | 8/13/2012 | Express Working Capital | Starving Students. Inc | 250,000.00 | 335,000.00 | 11.25% |
| 5 | SSM1005 | 9/14/2012 | Express Working Capital | Starving Students. Inc | 250,000.00 | 335,000.00 | 11.25% |
| 6 | SSM1006 | 12/28/2012 | Express Working Capital | Starving Students. Inc | 400,000.00 | 536,000.00 | 11.25% |
| 7 | SSM1007 | 1/30/2013 | Express Working Capital | Starving Students. Inc | 100,000.00 | 134,000.00 | 11.25% |
| 8 | SSM1008 | 4/17/2013 | Express Working Capital | Starving Students. Inc | 325,000.00 | 435,500.00 | 11.25% |
| 9 | SSM1009 | 5/29/2013 | Express Working Capital | Starving Students. Inc | 200,000.00 | 268,000.00 | 11.25% |
| 10 | SSM1010 | 7/11/2013 | Express Working Capital | Starving Students. Inc | 300,000.00 | 402,000.00 | 13.75% |
| 11 | | | | | | | |
| 12 | | | | | $ 3,400,000.00 | $ 4,571,000.00 | |

<u>Starving Students v. Express Working Capital</u>

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | PAYMENT DATA FROM STATEMENTS | | | Reconciliation With Starving Students' Internal Analyses: | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | Difference From Statement Amount |
| Date | Description | | Payment Amount | Internal Payment Date | Date Difference | Internal Payment Amount | |
| | | E-3 | E-3 | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |
| 1 | 05/04/2011 PMT | | $ (1,855.64) D-2 | 5/6/2011 | Y | $ 1,855.64 | - |
| 2 | 05/09/2011 PMT#898. | | (2,109.39) D-2 | 5/9/2011 | N | 2,109.39 | - |
| 3 | 05/09/2011 PMT#898. | | (5,849.52) D-2 | 5/9/2011 | N | 5,849.52 | - |
| 4 | 05/10/2011 PMT | | (1,664.01) D-2 | 5/10/2011 | N | 1,664.01 | - |
| 5 | 05/11/2011 PMT | | (2,891.40) D-2 | 5/11/2011 | N | 2,891.40 | - |
| 6 | 05/12/2011 PMT | | (2,481.41) D-2 | 5/12/2011 | N | 2,481.41 | - |
| 7 | 05/13/2011 PMT | | (1,418.59) D-2 | 5/13/2011 | N | 1,418.59 | - |
| 8 | 05/16/2011 PMT | | (1,927.20) D-2 | 5/16/2011 | N | 1,927.20 | - |
| 9 | 05/16/2011 PMT | | (6,074.77) D-2 | 5/16/2011 | N | 6,074.77 | - |
| 10 | 05/17/2011 PMT | | (2,934.51) D-2 | 5/17/2011 | N | 2,934.51 | - |
| 11 | 05/18/2011 PMT | | (2,866.25) D-2 | 5/18/2011 | N | 2,866.25 | - |
| 12 | 05/19/2011 PMT | | (2,054.78) D-2 | 5/19/2011 | N | 2,054.78 | - |
| 13 | 05/19/2011 PMT | | (1,853.84) D-2 | 5/20/2011 | Y | 1,853.84 | - |
| 14 | 05/20/2011 PMT | | (2,222.05) D-2 | 5/23/2011 | Y | 2,222.05 | - |
| 15 | 05/23/2011 PMT #1136. | | (6,758.94) D-2 | 5/23/2011 | N | 6,758.94 | - |
| 16 | 05/24/2011 PMT | | (2,741.05) D-2 | 5/24/2011 | N | 2,741.05 | - |
| 17 | 05/25/2011 PMT | | (2,900.29) D-2 | 5/25/2011 | N | 2,900.29 | - |
| 18 | 05/26/2011 PMT | | (2,242.93) D-2 | 5/26/2011 | N | 2,242.93 | - |
| 19 | 05/27/2011 PMT | | (2,292.49) D-2 | 5/27/2011 | N | 2,292.49 | - |
| 20 | 05/31/2011 PMT | | (9,004.57) D-2 | 5/31/2011 | N | 9,004.57 | - |
| 21 | 05/31/2011 PMT | | (4,235.13) D-2 | 5/31/2011 | N | 4,235.13 | - |
| 22 | 05/31/2011 PMT | | (3,087.45) D-2 | 5/31/2011 | N | 3,087.45 | - |
| 23 | 06/01/2011 PMT | | (5,316.20) D-2 | 6/1/2011 | N | 5,316.20 | - |
| 24 | 06/02/2011 PMT | | (3,352.62) D-2 | 6/2/2011 | N | 3,352.62 | - |
| 25 | 06/03/2011 PMT | | (4,980.56) D-2 | 6/3/2011 | N | 4,980.56 | - |
| 26 | 06/06/2011 PMT | | (3,918.61) D-2 | 6/6/2011 | N | 3,918.61 | - |
| 27 | 06/06/2011 PMT | | (8,137.82) D-2 | 6/6/2011 | N | 8,137.82 | - |
| 28 | 06/07/2011 PMT | | (2,788.00) D-2 | 6/7/2011 | N | 2,788.00 | - |
| 29 | 06/08/2011 PMT | | (3,357.79) D-2 | 6/8/2011 | N | 3,357.79 | - |
| 30 | 06/09/2011 PMT | | (2,490.37) D-2 | 6/9/2011 | N | 2,490.37 | - |
| 31 | 06/10/2011 PMT | | (2,540.92) D-2 | 6/10/2011 | N | 2,540.92 | - |
| 32 | 06/13/2011 PMT | | (2,431.21) D-2 | 6/13/2011 | N | 2,431.21 | - |
| 33 | 06/13/2011 PMT | | (6,413.11) D-2 | 6/13/2011 | N | 6,413.11 | - |
| 34 | 06/14/2011 PMT | | (3,205.42) D-2 | 6/14/2011 | N | 3,205.42 | - |
| 35 | 06/15/2011 PMT | | (2,929.20) D-2 | 6/15/2011 | N | 2,929.20 | - |
| 36 | 06/16/2011 PMT | | (3,997.56) D-2 | 6/16/2011 | N | 2,843.12 | (1,154.44) |
| 37 | 06/17/2011 PMT | | (2,645.04) D-2 | 6/17/2011 | N | 2,645.04 | - |
| 38 | 06/20/2011 PMT | | (3,796.63) D-2 | 6/20/2011 | N | 3,796.63 | - |
| 39 | 06/20/2011 PMT | | (8,215.83) D-2 | 6/20/2011 | N | 8,215.83 | - |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | PAYMENT DATA FROM STATEMENTS | | | Reconciliation With Starving Students' Internal Analyses: | | |
|---|---|---|---|---|---|---|
| | | | | | | Difference From Statement Amount |
| | Date | Description | Payment Amount | Internal Payment Date | Date Difference | Internal Payment Amount | |
| | E-3 | E-3 | E-3 | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |
| 40 | 06/21/2011 PMT | | (2,718.00) D-2 | 6/21/2011 | N | 2,718.00 | - |
| 41 | 06/22/2011 PMT | | (2,772.57) D-2 | 6/22/2011 | N | 2,772.57 | - |
| 42 | 06/23/2011 PMT | | (2,537.82) D-2 | 6/23/2011 | N | 2,537.82 | - |
| 43 | 06/24/2011 PMT | | (2,140.09) D-2 | 6/24/2011 | N | 2,140.09 | - |
| 44 | 06/27/2011 PMT | | (8,637.86) D-2 | 6/27/2011 | N | 8,637.86 | - |
| 45 | 06/27/2011 PMT | | (3,916.85) D-2 | 6/27/2011 | N | 3,916.85 | - |
| 46 | 06/28/2011 PMT | | (3,397.88) D-2 | 6/28/2011 | N | 3,397.88 | - |
| 47 | 06/29/2011 PMT | | (3,932.91) D-2 | 6/29/2011 | N | 3,932.91 | - |
| 48 | 06/30/2011 PMT | | (4,369.78) D-2 | 6/30/2011 | N | 4,369.78 | - |
| 49 | 07/01/2011 PMT | | (4,574.28) D-2 | 7/1/2011 | N | 4,574.28 | - |
| 50 | 07/05/2011 PMT | | (4,944.28) D-2 | 7/5/2011 | N | 4,944.28 | - |
| 51 | 07/05/2011 PMT | | (12,972.79) D-2 | 7/5/2011 | N | 12,972.79 | - |
| 52 | 07/05/2011 PMT | | (4,404.76) D-2 | 7/5/2011 | N | 4,404.76 | - |
| 53 | 07/06/2011 PMT | | (506.42) D-2 | 7/6/2011 | N | 506.42 | - |
| 54 | 07/07/2011 PMT | | (3,512.01) D-2 | 7/7/2011 | N | 3,512.01 | - |
| 55 | 07/08/2011 PMT | | (2,741.80) D-2 | 7/8/2011 | N | 2,741.80 | - |
| 56 | 07/11/2011 PMT | | (3,055.36) D-2 | 7/11/2011 | N | 3,055.36 | - |
| 57 | 07/11/2011 PMT | | (7,071.74) D-2 | 7/11/2011 | N | 7,071.74 | - |
| 58 | 07/12/2011 PMT | | (2,062.47) D-2 | 7/12/2011 | N | 2,062.47 | - |
| 59 | 07/13/2011 PMT | | (2,695.03) D-2 | 7/13/2011 | N | 2,695.03 | - |
| 60 | 07/14/2011 PMT | | (1,926.90) D-2 | 7/14/2011 | N | 1,926.90 | - |
| 61 | 07/15/2011 PMT | | (2,095.77) D-2 | 7/15/2011 | N | 2,095.77 | - |
| 62 | 07/18/2011 PMT | | (7,179.24) D-2 | 7/18/2011 | N | 7,179.24 | - |
| 63 | 07/18/2011 CHK #2888. Refund Overpayment (error) | | 1,154.40 D-2 | | Y | | 1,154.40 |
| 64 | 07/18/2011 PMT | | (2,310.82) D-2 | 7/18/2011 | N | 2,310.82 | - |
| 65 | 07/19/2011 PMT | | (2,992.90) D-2 | 7/19/2011 | N | 2,992.90 | - |
| 66 | 07/20/2011 PMT | | (1,750.92) D-2 | 7/20/2011 | N | 1,750.92 | - |
| 67 | 07/21/2011 PMT | | (2,597.75) D-2 | 7/21/2011 | N | 2,597.75 | - |
| 68 | 07/22/2011 PMT | | (2,091.95) D-2 | 7/22/2011 | N | 2,091.95 | - |
| 69 | 07/25/2011 PMT | | (2,155.42) D-2 | 7/25/2011 | N | 2,155.42 | - |
| 70 | 07/25/2011 PMT | | (6,097.83) D-2 | 7/25/2011 | N | 6,097.83 | - |
| 71 | 07/26/2011 PMT | | (2,244.50) D-2 | 7/26/2011 | N | 2,244.50 | - |
| 72 | 07/27/2011 PMT | | (2,690.35) D-2 | 7/27/2011 | N | 2,690.35 | - |
| 73 | 07/28/2011 PMT | | (2,195.14) D-2 | 7/28/2011 | N | 2,195.14 | - |
| 74 | 07/29/2011 PMT | | (3,073.19) D-2 | 7/29/2011 | N | 3,073.19 | - |
| 75 | 08/01/2011 PMT | | (3,096.48) D-2 | 8/1/2011 | N | 3,096.48 | - |
| 76 | 08/01/2011 PMT | | (9,407.74) D-2 | 8/1/2011 | N | 9,407.74 | - |
| 77 | 08/02/2011 PMT | | (4,975.04) D-2 | 8/2/2011 | N | 4,975.04 | - |
| 78 | 08/03/2011 PMT | | (3,893.91) D-2 | 8/3/2011 | N | 3,893.91 | - |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | | PAYMENT DATA FROM STATEMENTS | | Reconciliation With Starving Students' Internal Analyses: | | | |
|---|---|---|---|---|---|---|---|
| | Date | Description | Payment Amount | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
| | | E-3 | E-3 | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |
| 79 | 08/04/2011 | PMT | (3,367.95) D-2 | 8/4/2011 | N | 3,367.95 | - |
| 80 | 08/05/2011 | PMT | (3,630.11) D-2 | 8/5/2011 | N | 3,630.11 | - |
| 81 | 08/08/2011 | PMT | (2,468.07) D-2 | 8/8/2011 | N | 2,468.07 | - |
| 82 | 08/08/2011 | PMT | (5,749.86) D-2 | 8/8/2011 | N | 5,749.86 | - |
| 83 | 08/09/2011 | PMT | (2,987.96) D-2 | 8/9/2011 | N | 2,987.96 | - |
| 84 | 08/10/2011 | PMT | (2,455.46) D-2 | 8/10/2011 | N | 2,455.46 | - |
| 85 | 08/11/2011 | PMT | (2,168.26) D-2 | 8/11/2011 | N | 2,168.26 | - |
| 86 | 08/12/2011 | PMT | (2,222.53) D-2 | 8/12/2011 | N | 2,222.53 | - |
| 87 | 08/15/2011 | PMT | (5,252.66) D-2 | 8/15/2011 | N | 5,252.66 | - |
| 88 | 08/15/2011 | PMT | (3,064.04) D-2 | 8/15/2011 | N | 3,064.04 | - |
| 89 | 08/16/2011 | PMT | (2,291.83) D-2 | 8/16/2011 | N | 2,291.83 | - |
| 90 | 08/17/2011 | PMT | (2,335.21) D-2 | 8/17/2011 | N | 2,050.98 | (284.23) |
| 91 | 08/18/2011 | PMT | (3,239.21) D-2 | 8/18/2011 | N | 3,239.21 | - |
| 92 | 08/19/2011 | PMT | (2,634.93) D-2 | 8/19/2011 | N | 2,634.93 | - |
| 93 | 08/22/2011 | PMT | (5,110.91) D-2 | 8/22/2011 | N | 5,110.91 | - |
| 94 | 08/22/2011 | PMT | (2,459.30) D-2 | 8/22/2011 | N | 2,459.30 | - |
| 95 | 08/23/2011 | PMT | (2,811.81) D-2 | 8/23/2011 | N | 2,811.81 | - |
| 96 | 08/24/2011 | PMT | (2,874.12) D-2 | 8/24/2011 | N | 2,874.12 | - |
| 97 | 08/25/2011 | PMT | (2,368.89) D-2 | 8/25/2011 | N | 2,368.89 | - |
| 98 | 08/26/2011 | PMT | (1,757.60) D-2 | 8/26/2011 | N | 1,757.60 | - |
| 99 | 08/29/2011 | CHK # 2971. Refund of error | 284.23 | | Y | | 284.23 |
| 100 | 08/29/2011 | PMT | (2,511.58) D-2 | 8/29/2011 | N | 2,511.58 | - |
| 101 | 08/29/2011 | PMT | (7,839.13) D-2 | 8/29/2011 | N | 7,839.13 | - |
| 102 | 08/30/2011 | PMT | (2,884.88) D-2 | 8/30/2011 | N | 2,884.88 | - |
| 103 | 08/31/2011 | PMT | (2,963.18) D-2 | 8/31/2011 | N | 2,963.18 | - |
| 104 | 09/01/2011 | DEP | (3,572.08) D-2 | 9/1/2011 | N | 3,572.08 | - |
| 105 | 09/02/2011 | PMT | (3,389.31) D-2 | 9/2/2011 | N | 3,389.31 | - |
| 106 | 09/06/2011 | PMT | (4,081.32) D-2 | 9/6/2011 | N | 4,081.32 | - |
| 107 | 09/06/2011 | PMT | (7,701.44) D-2 | 9/6/2011 | N | 7,701.44 | - |
| 108 | 09/06/2011 | PMT | (2,541.69) D-2 | 9/6/2011 | N | 2,541.69 | - |
| 109 | 09/07/2011 | PMT | (2,722.63) D-2 | 9/7/2011 | N | 2,722.63 | - |
| 110 | 09/08/2011 | PMT | (1,585.74) D-2 | 9/8/2011 | N | 1,585.74 | - |
| 111 | 09/09/2011 | PMT | (1,507.88) D-2 | 9/9/2011 | N | 1,507.88 | - |
| 112 | 09/12/2011 | PMT | (5,076.98) D-2 | 9/12/2011 | N | 5,076.98 | - |
| 113 | 09/12/2011 | PMT | (1,827.82) D-2 | 9/12/2011 | N | 1,827.82 | - |
| 114 | 09/13/2011 | PMT | (1,807.04) D-2 | 9/13/2011 | N | 1,807.04 | - |
| 115 | 09/14/2011 | PMT | (1,553.17) D-2 | 9/14/2011 | N | 1,553.17 | - |
| 116 | 09/15/2011 | PMT | (1,485.48) D-2 | 9/15/2011 | N | 1,485.48 | - |
| 117 | 09/16/2011 | PMT | (1,864.79) D-2 | 9/16/2011 | N | 1,864.79 | - |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

**RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES**

E-1

| | | | PAYMENT DATA FROM STATEMENTS | | | Reconciliation With Starving Students' Internal Analyses: | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Date | Description | | Payment Amount | | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
| | E-3 | | E-3 | E-3 | | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |
| 118 | 09/19/2011 | PMT | | (2,424.98) D-2 | | 9/19/2011 | N | 2,424.98 | - |
| 119 | 09/19/2011 | PMT | | (4,705.66) D-2 | | 9/19/2011 | N | 4,705.66 | - |
| 120 | 09/20/2011 | PMT | | (3,473.26) D-2 | | 9/20/2011 | N | 3,473.26 | - |
| 121 | 09/21/2011 | PMT | | (1,721.87) D-2 | | 9/21/2011 | N | 1,721.87 | - |
| 122 | 09/22/2011 | PMT | | (1,562.36) D-2 | | 9/22/2011 | N | 1,562.36 | - |
| 123 | 09/23/2011 | PMT | | (2,346.19) D-2 | | 9/23/2011 | N | 2,346.19 | - |
| 124 | 09/26/2011 | PMT | | (4,579.97) D-2 | | 9/26/2011 | N | 4,579.97 | - |
| 125 | 09/26/2011 | PMT | | (1,831.92) D-2 | | 9/26/2011 | N | 1,831.92 | - |
| 126 | 09/27/2011 | PMT | | (2,497.98) D-2 | | 9/27/2011 | N | 2,497.98 | - |
| 127 | 09/28/2011 | PMT | | (2,186.07) D-2 | | 9/28/2011 | N | 2,186.07 | - |
| 128 | 09/29/2011 | PMT | | (2,106.97) D-2 | | 9/29/2011 | N | 2,106.97 | - |
| 129 | 09/30/2011 | PMT | | (2,126.51) D-2 | | 9/30/2011 | N | 2,126.51 | - |
| 130 | 10/03/2011 | PMT | | (12,705.76) D-2 | | 10/3/2011 | N | 12,705.76 | - |
| 131 | 10/03/2011 | PMT | | (4,764.62) D-2 | | 10/3/2011 | N | 4,764.62 | - |
| 132 | 10/04/2011 | PMT | | (5,811.50) D-2 | | 10/4/2011 | N | 5,811.50 | - |
| 133 | 10/05/2011 | PMT | | (3,790.88) D-2 | | 10/5/2011 | N | 3,790.88 | - |
| 134 | 10/06/2011 | PMT | | (4,284.39) D-2 | | 10/6/2011 | N | 4,284.39 | - |
| 135 | 10/07/2011 | PMT | | (2,902.95) D-2 | | 10/7/2011 | N | 2,902.95 | - |
| 136 | 10/11/2011 | PMT | | (7,789.87) D-2 | | 10/11/2011 | N | 7,789.87 | - |
| 137 | 10/11/2011 | PMT | | (3,268.12) D-2 | | 10/11/2011 | N | 3,268.12 | - |
| 138 | 10/11/2011 | PMT | | (2,695.95) D-2 | | 10/11/2011 | N | 2,695.95 | - |
| 139 | 10/12/2011 | PMT | | (2,311.13) D-2 | | 10/12/2011 | N | 2,311.13 | - |
| 140 | 10/13/2011 | PMT | | (3,050.20) D-2 | | 10/13/2011 | N | 3,050.20 | - |
| 141 | 10/14/2011 | PMT | | (2,514.23) D-2 | | 10/14/2011 | N | 2,514.23 | - |
| 142 | 10/17/2011 | PMT | | (7,710.02) D-2 | | 10/17/2011 | N | 7,710.02 | - |
| 143 | 10/17/2011 | PMT | | (2,818.96) D-2 | | 10/17/2011 | N | 2,818.96 | - |
| 144 | 10/18/2011 | PMT | | (3,436.92) D-2 | | 10/18/2011 | N | 3,436.92 | - |
| 145 | 10/19/2011 | PMT | | (2,353.46) D-2 | | 10/19/2011 | N | 2,353.46 | - |
| 146 | 10/20/2011 | PMT | | (2,391.46) D-2 | | 10/20/2011 | N | 2,391.46 | - |
| 147 | 10/21/2011 | PMT | | (1,978.81) D-2 | | 10/21/2011 | N | 1,978.81 | - |
| 148 | 10/24/2011 | PMT | | (2,580.65) D-2 | | 10/24/2011 | N | 2,580.65 | - |
| 149 | 10/24/2011 | PMT | | (5,324.44) D-2 | | 10/24/2011 | N | 5,324.44 | - |
| 150 | 10/25/2011 | PMT | | (2,529.95) D-2 | | 10/25/2011 | N | 2,529.95 | - |
| 151 | 10/26/2011 | PMT | | (2,395.44) D-2 | | 10/26/2011 | N | 2,395.44 | - |
| 152 | 10/27/2011 | PMT | | (2,312.66) D-2 | | 10/27/2011 | N | 2,312.66 | - |
| 153 | 10/28/2011 | PMT | | (3,177.90) D-2 | | 10/28/2011 | N | 3,177.90 | - |
| 154 | 10/31/2011 | PMT | | (2,969.66) D-2 | | 10/31/2011 | N | 2,969.66 | - |
| 155 | 10/31/2011 | PMT | | (9,646.90) D-2 | | 10/31/2011 | N | 9,646.90 | - |
| 156 | 11/01/2011 | PMT | | (3,422.87) D-2 | | 11/1/2011 | N | 3,672.87 | 250.00 |

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | | PAYMENT DATA FROM STATEMENTS | | | Reconciliation With Starving Students' Internal Analyses: | | | |
|---|---|---|---|---|---|---|---|---|
| | Date | Description | | Payment Amount | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
| | | E-3 | E-3 | E-3 | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |
| 157 | 11/02/2011 | PMT | | (2,962.09) D-2 | 11/2/2011 | N | 2,712.09 | (250.00) |
| 158 | 11/03/2011 | PMT | | (3,300.45) D-2 | 11/3/2011 | N | 3,300.45 | - |
| 159 | 11/04/2011 | PMT | | (2,382.49) D-2 | 11/4/2011 | N | 2,382.49 | - |
| 160 | 11/07/2011 | PMT | | (5,905.08) D-2 | 11/7/2011 | N | 5,905.08 | - |
| 161 | 11/07/2011 | PMT | | (2,227.75) D-2 | 11/7/2011 | N | 2,227.75 | - |
| 162 | 11/08/2011 | PMT | | (3,355.95) D-2 | 11/8/2011 | N | 3,355.95 | - |
| 163 | 11/09/2011 | PMT | | (1,576.98) D-2 | 11/9/2011 | N | 1,576.98 | - |
| 164 | 11/14/2011 | PMT | | (2,035.13) D-2 | 11/14/2011 | N | 2,035.13 | - |
| 165 | 11/14/2011 | PMT | | (4,369.73) D-2 | 11/14/2011 | N | 4,369.73 | - |
| 166 | 11/14/2011 | PMT | | (1,513.32) D-2 | 11/11/2011 | Y | 1,513.32 | - |
| 167 | 11/15/2011 | PMT | | (939.83) D-2 | 11/15/2011 | N | 939.83 | - |
| 168 | 11/16/2011 | PMT | | (1,489.32) D-2 | 11/16/2011 | N | 1,489.32 | - |
| 169 | 11/18/2011 | PMT | | (1,419.60) D-2 | 11/18/2011 | N | 1,419.60 | - |
| 170 | 11/21/2011 | PMT | | (1,160.41) D-2 | 11/21/2011 | N | 1,160.41 | - |
| 171 | 11/22/2011 | PMT | | (1,008.39) D-2 | 11/22/2011 | N | 1,008.39 | - |
| 172 | 11/23/2011 | PMT | | (1,440.44) D-2 | 11/23/2011 | N | 1,440.44 | - |
| 173 | 11/23/2011 | PMT | | (2,197.58) D-2 | | Y | 2,197.58 | see [1] below - |
| 174 | 11/25/2011 | PMT | | (2,640.75) D-2 | 11/25/2011 | N | 2,640.75 | - |
| 175 | 11/25/2011 | PMT | | (1,620.27) D-2 | 11/25/2011 | N | 1,620.27 | - |
| 176 | 11/28/2011 | PMT | | (2,217.08) D-2 | 11/28/2011 | N | 2,217.08 | - |
| 177 | 11/29/2011 | PMT | | (708.72) D-2 | 11/29/2011 | N | 708.72 | - |
| 178 | 11/30/2011 | PMT | | (1,722.96) D-2 | 11/30/2011 | N | 1,722.96 | - |
| 179 | 12/01/2011 | PMT | | (997.52) D-2 | 12/1/2011 | N | 997.52 | - |
| 180 | 12/02/2011 | PMT | | (2,091.86) D-2 | 12/2/2011 | N | 2,091.86 | - |
| 181 | 12/05/2011 | PMT | | (1,488.55) D-2 | 12/5/2011 | N | 1,488.55 | - |
| 182 | 12/05/2011 | PMT | | (4,448.35) D-2 | 12/5/2011 | N | 4,448.35 | - |
| 183 | 12/06/2011 | PMT | | (738.33) D-2 | 12/6/2011 | N | 738.33 | - |
| 184 | 12/07/2011 | PMT | | (1,074.49) D-2 | 12/7/2011 | N | 1,074.49 | - |
| 185 | 12/08/2011 | PMT | | (509.87) D-2 | 12/8/2011 | N | 509.87 | - |
| 186 | 12/09/2011 | PMT | | (1,301.06) D-2 | 12/9/2011 | N | 1,301.06 | - |
| 187 | 12/12/2011 | PMT | | (2,490.10) D-2 | 12/12/2011 | N | 2,490.10 | - |
| 188 | 12/12/2011 | PMT | | (727.61) D-2 | 12/12/2011 | N | 727.61 | - |
| 189 | 12/13/2011 | PMT | | (1,108.28) D-2 | 12/13/2011 | N | 1,108.28 | - |
| 190 | 12/14/2011 | PMT | | (263.73) D-2 | 12/14/2011 | N | 263.73 | - |
| 191 | 12/15/2011 | PMT | | (838.17) D-2 | 12/15/2011 | N | 838.17 | - |
| 192 | 12/16/2011 | PMT | | (678.76) D-2 | 12/16/2011 | N | 678.76 | - |
| 193 | 12/19/2011 | PMT | | (1,178.18) D-2 | 12/19/2011 | N | 1,178.18 | - |
| 194 | 12/19/2011 | PMT | | (2,773.76) D-2 | 12/19/2011 | N | 2,773.76 | - |
| 195 | 12/20/2011 | PMT | | (894.95) D-2 | 12/20/2011 | N | 894.95 | - |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

**E-1**

| | PAYMENT DATA FROM STATEMENTS | | | | Reconciliation With Starving Students' Internal Analyses: | | | |
|---|---|---|---|---|---|---|---|---|
| **Date** | **Description** | | **Payment Amount** | | **Internal Payment Date** | **Date Difference** | **Internal Payment Amount** | **Difference From Statement Amount** |
| | E-3 | E-3 | E-3 | | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |
| 196 | 12/21/2011 PMT | | (1,059.65) D-2 | | 12/21/2011 | N | 1,059.65 | - |
| 197 | 12/22/2011 PMT | | (462.08) D-2 | | 12/22/2011 | N | 462.08 | - |
| 198 | 12/23/2011 PMT | | (742.63) D-2 | | 12/23/2011 | N | 742.63 | - |
| 199 | 12/27/2011 PMT | | (700.54) D-2 | | 12/27/2011 | N | 700.54 | - |
| 200 | 12/27/2011 PMT | | (128.09) D-2 | | 12/27/2011 | N | 128.09 | - |
| 201 | 12/27/2011 PMT | | (759.31) D-2 | | 12/27/2011 | N | 759.31 | - |
| 202 | 12/28/2011 PMT | | (366.56) D-2 | | 12/28/2011 | N | 366.56 | - |
| 203 | 12/29/2011 PMT | | (649.29) D-2 | | 12/29/2011 | N | 649.29 | - |
| 204 | 12/30/2011 PMT | | (851.40) D-2 | | 12/30/2011 | N | 851.40 | - |
| 205 | | | | | 11/22/2011 | | 3,558.69 | 3,558.69 |
| 206 | | | $ (624,472.75) | | | | $ 628,031.40  Total: | $ 3,558.65 |

Internal transaction on 11/22/2011 not identified on statements. Immaterial.

[1] Two internal spreadsheet transactions summing to amount on statement:
| | |
|---|---|
| 11/10/2011 | 1,008.47 |
| 11/17/2011 | 1,189.11 |
| | 2,197.58 |

**RESULT: 2011 RECONCILED WITH IMMATERIAL DIFFERENCES**

### 2012 RECONCILIATION

**JANUARY 2012 STATEMENT MISSING**

**INTERNAL SPREADSHEET HAS MANY MORE TRANSACTIONS, BUT TOTALS FOR FEB-MAY RECONCILE WITH IMMATERIAL DIFFERENCES**

| | | | |
|---|---|---|---|
| 02/06/2012 | n/a | $ 4,073.23 | see total |
| 02/06/2012 | n/a | 9,143.61 | see total |
| 02/07/2012 | n/a | 2,244.81 | see total |
| 02/08/2012 | n/a | 4,665.36 | see total |
| 02/09/2012 | n/a | 2,325.14 | see total |
| 02/10/2012 | n/a | 1,456.34 | see total |
| 02/13/2012 | n/a | 55.92 | see total |
| 02/13/2012 | n/a | 2,338.06 | see total |
| 02/14/2012 | n/a | 302.83 | see total |
| 02/15/2012 | n/a | 4,904.28 | see total |
| 02/16/2012 | n/a | 6,774.93 | see total |

**RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES**

E-1

| | PAYMENT DATA FROM STATEMENTS | | | Reconciliation With Starving Students' Internal Analyses: | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | Difference From Statement Amount |
| Date | Description | | Payment Amount | Internal Payment Date | Date Difference | Internal Payment Amount | |
| | E-3 | E-3 | E-3 | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |
| 235 | | | | 02/17/2012 | n/a | 1,841.14 | see total |
| 236 | | | | 02/20/2012 | n/a | 4,427.47 | see total |
| 237 | | | | 02/20/2012 | n/a | 6,529.91 | see total |
| 238 | | | | 02/21/2012 | n/a | 3,630.65 | see total |
| 239 | | | | 02/22/2012 | n/a | 3,458.57 | see total |
| 240 | | | | 02/23/2012 | n/a | 2,332.76 | see total |
| 241 | | | | 02/24/2012 | n/a | 2,429.54 | see total |
| 242 | | | | 02/27/2012 | n/a | 5,770.99 | see total |
| 243 | | | | 02/27/2012 | n/a | 8,162.50 | see total |
| 244 | | | | 02/28/2012 | n/a | 4,927.74 | see total |
| 245 | | | | 02/29/2012 | n/a | 3,197.12 | see total |
| 246 | | | | 03/01/2012 | n/a | 4,003.97 | see total |
| 247 | | | | 03/02/2012 | n/a | 5,114.09 | see total |
| 248 | | | | 03/05/2012 | n/a | 5,402.02 | see total |
| 249 | | | | 03/05/2012 | n/a | 10,747.23 | see total |
| 250 | | | | 03/06/2012 | n/a | 3,753.76 | see total |
| 251 | | | | 03/07/2012 | n/a | 2,476.78 | see total |
| 252 | | | | 03/08/2012 | n/a | 2,537.29 | see total |
| 253 | | | | 03/09/2012 | n/a | 1,902.95 | see total |
| 254 | | | | 03/12/2012 | n/a | 10,295.26 | see total |
| 255 | | | | 03/15/2012 | n/a | 1,721.38 | see total |
| 256 | | | | 03/15/2012 | n/a | 1,739.92 | see total |
| 257 | | | | 03/16/2012 | n/a | 2,088.56 | see total |
| 258 | | | | 03/19/2012 | n/a | 2,571.15 | see total |
| 259 | | | | 03/19/2012 | n/a | 9,838.87 | see total |
| 260 | | | | 03/20/2012 | n/a | 3,038.91 | see total |
| 261 | | | | 03/21/2012 | n/a | 2,504.86 | see total |
| 262 | | | | 03/22/2012 | n/a | 2,552.19 | see total |
| 263 | | | | 03/23/2012 | n/a | 1,740.24 | see total |
| 264 | 02/06/2012 PMT | | $   (9,143.61) D-2 | 03/26/2012 | n/a | 2,965.87 | see total |
| 265 | 02/08/2012 PMT | | (4,665.36) D-2 | 03/26/2012 | n/a | 8,400.36 | see total |
| 266 | 02/09/2012 PMT | | (2,325.14) D-2 | 03/27/2012 | n/a | 3,083.01 | see total |
| 267 | 02/13/2012 PMT | | (2,338.06) D-2 | 03/28/2012 | n/a | 3,585.30 | see total |
| 268 | 02/15/2012 PMT | | (4,904.28) D-2 | 03/29/2012 | n/a | 2,930.09 | see total |
| 269 | 02/17/2012 PMT | | (1,841.14) D-2 | 03/30/2012 | n/a | 3,478.52 | see total |
| 270 | 02/21/2012 PMT | | (6,529.91) D-2 | 04/02/2012 | n/a | 3,957.11 | see total |
| 271 | 03/02/2012 PMT | | (52,343.16) D-2 | 04/02/2012 | n/a | 5,731.66 | see total |
| 272 | 03/05/2012 PMT | | (10,747.23) D-2 | 04/03/2012 | n/a | 13,163.03 | see total |
| 273 | 03/08/2012 PMT | | (2,537.14) D-2 | 04/04/2012 | n/a | 5,484.85 | see total |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | | PAYMENT DATA FROM STATEMENTS | | | Reconciliation With Starving Students' Internal Analyses: | | | |
|---|---|---|---|---|---|---|---|---|
| | Date | Description | Payment Amount | | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
| | E-3 | | E-3 | E-3 | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |
| 274 | 03/12/2012 | PMT | (26,062.32) D-2 | | 04/05/2012 | n/a | 2,567.87 | see total |
| 275 | 03/15/2012 | PMT | (14,269.87) D-2 | | 04/06/2012 | n/a | 4,177.04 | see total |
| 276 | 03/19/2012 | PMT | (2,571.15) D-2 | | 04/09/2012 | n/a | 3,080.67 | see total |
| 277 | 03/21/2012 | PMT | (16,425.14) D-2 | | 04/09/2012 | n/a | 8,154.72 | see total |
| 278 | 03/26/2012 | PMT | (8,400.36) D-2 | | 04/10/2012 | n/a | 2,724.64 | see total |
| 279 | 03/29/2012 | PMT | (16,436.26) D-2 | | 04/11/2012 | n/a | 2,177.68 | see total |
| 280 | 04/05/2012 | PMT | (16,431.47) D-2 | | 04/12/2012 | n/a | 2,360.22 | see total |
| 281 | 04/09/2012 | PMT | (8,154.72) D-2 | | 04/13/2012 | n/a | 1,918.20 | see total |
| 282 | 04/12/2012 | PMT | (2,360.22) D-2 | | 04/16/2012 | n/a | 2,592.56 | see total |
| 283 | 04/16/2012 | PMT | (2,592.56) D-2 | | 04/16/2012 | n/a | 8,059.51 | see total |
| 284 | 04/16/2012 | PMT | (8,059.51) D-2 | | 04/17/2012 | n/a | 3,232.11 | see total |
| 285 | 04/17/2012 | DEP | (49,473.96) D-2 | | 04/18/2012 | n/a | 3,306.84 | see total |
| 286 | 04/17/2012 | PMT | (3,232.11) D-2 | | 04/19/2012 | n/a | 2,568.24 | see total |
| 287 | 04/18/2012 | PMT | (3,306.84) D-2 | | 04/20/2012 | n/a | 2,278.27 | see total |
| 288 | 04/19/2012 | PMT | (2,568.24) D-2 | | 04/23/2012 | n/a | 3,123.87 | see total |
| 289 | 04/20/2012 | PMT | (2,278.27) D-2 | | 04/23/2012 | n/a | 7,954.85 | see total |
| 290 | 04/23/2012 | PMT | (3,123.87) D-2 | | 04/24/2012 | n/a | 2,710.80 | see total |
| 291 | 04/24/2012 | PMT | (2,710.80) D-2 | | 04/25/2012 | n/a | 3,558.94 | see total |
| 292 | 04/25/2012 | PMT | (3,558.94) D-2 | | 04/26/2012 | n/a | 2,486.38 | see total |
| 293 | 04/26/2012 | PMT | (2,486.38) D-2 | | 04/27/2012 | n/a | 3,762.45 | see total |
| 294 | 04/26/2012 | PMT | (1,918.20) D-2 | | 04/30/2012 | n/a | 4,056.39 | see total |
| 295 | 04/27/2012 | PMT | (3,762.32) D-2 | | 04/30/2012 | n/a | 11,904.76 | see total |
| 296 | 04/30/2012 | PMT | (4,056.39) D-2 | | 05/01/2012 | n/a | 5,351.35 | see total |
| 297 | 04/30/2012 | PMT | (5,506.03) D-2 | | 05/02/2012 | n/a | 6,279.63 | see total |
| 298 | 05/01/2012 | PMT | (4,005.53) D-2 | | 05/03/2012 | n/a | 4,355.53 | see total |
| 299 | 05/03/2012 | PMT | (3,693.61) D-2 | | 05/04/2012 | n/a | 3,554.35 | see total |
| 300 | 05/04/2012 | PMT | (2,157.92) D-2 | | 05/07/2012 | n/a | 2,157.92 | see total |
| 301 | 05/07/2012 | PMT | (8,097.86) D-2 | | 05/07/2012 | n/a | 8,097.86 | see total |
| 302 | 05/07/2012 | PMT | (3,396.89) D-2 | | 05/08/2012 | n/a | 3,123.81 | see total |
| 303 | 05/08/2012 | PMT | (3,139.25) D-2 | | 05/09/2012 | n/a | 3,139.25 | see total |
| 304 | 05/09/2012 | PMT | (2,532.46) D-2 | | 05/10/2012 | n/a | 1,948.48 | see total |
| 305 | 05/10/2012 | PMT | (2,387.44) D-2 | | 05/11/2012 | n/a | 2,387.44 | see total |
| 306 | 05/11/2012 | PMT | (3,579.68) D-2 | | 05/14/2012 | n/a | 3,579.68 | see total |
| 307 | 05/14/2012 | PMT | (6,877.90) D-2 | | 05/14/2012 | n/a | 7,252.90 | see total |
| 308 | 05/14/2012 | PMT | (3,323.22) D-2 | | 05/15/2012 | n/a | 3,323.22 | see total |
| 309 | 05/15/2012 | PMT | (3,524.83) D-2 | | 05/16/2012 | n/a | 2,319.76 | see total |
| 310 | 05/16/2012 | PMT | (2,186.96) D-2 | | 05/17/2012 | n/a | 3,824.83 | see total |
| 311 | 05/17/2012 | PMT | (2,386.28) D-2 | | 05/18/2012 | n/a | 1,728.41 | see total |
| 312 | 05/18/2012 | PMT | (7,120.65) D-2 | | 05/21/2012 | n/a | 7,120.65 | see total |

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | PAYMENT DATA FROM STATEMENTS | | | Reconciliation With Starving Students' Internal Analyses: | | | |
|---|---|---|---|---|---|---|---|
| | | | | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
| | Date | Description | Payment Amount | | | | |
| | E-3 | | E-3 | | | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | |
| 313 | 05/21/2012 PMT | | (2,846.36) D-2 | 05/21/2012 | n/a | 2,540.48 | see total |
| 314 | 05/22/2012 PMT | | (3,307.89) D-2 | 05/22/2012 | n/a | 2,846.36 | see total |
| 315 | 05/23/2012 PMT | | (2,229.91) D-2 | 05/23/2012 | n/a | 3,307.89 | see total |
| 316 | 05/24/2012 PMT | | (2,537.37) D-2 | 05/24/2012 | n/a | 2,229.91 | see total |
| 317 | 05/25/2012 PMT | | (11,970.22) D-2 | 05/25/2012 | n/a | 2,537.37 | see total |
| 318 | 05/29/2012 PMT | | (3,228.48) D-2 | 05/29/2012 | n/a | 11,970.22 | see total |
| 319 | 05/29/2012 PMT | | (5,973.58) D-2 | 05/29/2012 | n/a | 3,228.48 | see total |
| 320 | 05/29/2012 PMT | | (2,703.67) D-2 | 05/29/2012 | n/a | 5,973.58 | see total |
| 321 | 05/30/2012 PMT | | (3,373.95) D-2 | 05/30/2012 | n/a | 2,703.67 | see total |
| 322 | | | $ (403,702.87) | | | $ 407,442.17 | $ 3,739.30 |
| 323 | | | | | | | |
| 324 | | | | | | | |
| 325 | | | | | | | |
| 326 | 06/01/2012 PMT | | (4,903.74) D-2 | | | | |
| 327 | 06/04/2012 PMT | | (3,044.42) D-2 | | | | |
| 328 | 06/04/2012 PMT | | (7,388.70) D-2 | | | | |
| 329 | 06/05/2012 PMT | | (65.95) D-2 | | | | |
| 330 | 06/06/2012 PMT | | (119.99) D-2 | | | | |
| 331 | 06/08/2012 PMT #004. | | (3,725.13) D-2 | | | | |
| 332 | 06/08/2012 PMT | | (26.77) D-2 | | | | |
| 333 | 06/08/2012 PMT | | (29,257.48) D-2 | | | | |
| 334 | 06/11/2012 PMT #111. | | (2,730.93) D-2 | | | | |
| 335 | 06/12/2012 PMT | | (3,324.60) D-2 | | | | |
| 336 | 06/12/2012 PMT | | (13,211.33) D-2 | | | | |
| 337 | 06/13/2012 PMT | | (109.57) D-2 | | | | |
| 338 | 06/14/2012 PMT | | (5,420.77) D-2 | | | | |
| 339 | 06/14/2012 PMT | | (30.93) D-2 | | | | |
| 340 | 06/15/2012 PMT | | (3,084.51) D-2 | | | | |
| 341 | 06/18/2012 PMT | | (3,845.53) D-2 | | | | |
| 342 | 06/18/2012 PMT | | (16.38) D-2 | | | | |
| 343 | 06/19/2012 PMT | | (19,867.91) D-2 | | | | |
| 344 | 06/19/2012 PMT | | (2,907.33) D-2 | | | | |
| 345 | 06/20/2012 PMT | | (397.15) D-2 | | | | |
| 346 | 06/21/2012 PMT | | (3,252.62) D-2 | | | | |
| 347 | 06/22/2012 PMT | | (7,747.02) D-2 | | | | |
| 348 | 06/25/2012 PMT | | (6,499.05) D-2 | | | | |
| 349 | 06/26/2012 PMT | | (3,916.46) D-2 | | | | |
| 350 | 06/26/2012 PMT | | (11,385.45) D-2 | | | | |
| 351 | 06/27/2012 PMT | | (6,157.26) D-2 | | | | |

**JUNE 2012 AND BEYOND = START OF FORTIS PROCESSING**
**SEE RECONCILIATION IN TOTAL BELOW NEAR 3/31/13**

<u>Starving Students v. Express Working Capital</u>

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | PAYMENT DATA FROM STATEMENTS | | | | Reconciliation With Starving Students' Internal Analyses: | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | Difference From |
| | | | | Internal Payment Date | Date Difference | Internal Payment Amount | Statement Amount |
| | Date | Description | | Payment Amount | | | |
| | E-3 | | E-3 | E-3 | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | |
| 352 | 06/28/2012 | PMT | | (4,547.03) D-2 | | | |
| 353 | 06/29/2012 | PMT | | (4,236.48) D-2 | | | |
| 354 | 07/02/2012 | PMT | | (6,139.46) D-2 | | | |
| 355 | 07/02/2012 | PMT | | (62.44) D-2 | | | |
| 356 | 07/02/2012 | PMT | | (9,170.76) D-2 | | | |
| 357 | 07/02/2012 | PMT | | (11,034.87) D-2 | | | |
| 358 | 07/03/2012 | PMT | | (37.99) D-2 | | | |
| 359 | 07/05/2012 | PMT | | (20,883.36) D-2 | | | |
| 360 | 07/05/2012 | PMT | | (191.66) D-2 | | | |
| 361 | 07/06/2012 | PMT | | (50.00) D-2 | | | |
| 362 | 07/06/2012 | PMT | | (7,203.51) D-2 | | | |
| 363 | 07/06/2012 | PMT | | (3,375.15) D-2 | | | |
| 364 | 07/09/2012 | PMT | | (3,949.17) D-2 | | | |
| 365 | 07/10/2012 | PMT | | (5,606.86) D-2 | | | |
| 366 | 07/10/2012 | PMT | | (14,810.17) D-2 | | | |
| 367 | 07/11/2012 | PMT | | (3,638.22) D-2 | | | |
| 368 | 07/12/2012 | PMT | | (4,299.04) D-2 | | | |
| 369 | 07/13/2012 | PMT | | (4,023.56) D-2 | | | |
| 370 | 07/16/2012 | PMT | | (3,445.62) D-2 | | | |
| 371 | 07/17/2012 | PMT | | (5,403.35) D-2 | | | |
| 372 | 07/17/2012 | PMT | | (11,706.27) D-2 | | | |
| 373 | 07/18/2012 | PMT | | (2,765.35) D-2 | | | |
| 374 | 07/19/2012 | PMT | | (4,849.57) D-2 | | | |
| 375 | 07/20/2012 | PMT | | (2,816.99) D-2 | | | |
| 376 | 07/23/2012 | PMT | | (3,988.89) D-2 | | | |
| 377 | 07/24/2012 | PMT | | (9,895.57) D-2 | | | |
| 378 | 07/24/2012 | PMT | | (5,701.35) D-2 | | | |
| 379 | 07/25/2012 | PMT | | (3,382.83) D-2 | | | |
| 380 | 07/26/2012 | PMT | | (3,239.22) D-2 | | | |
| 381 | 07/27/2012 | PMT | | (5,506.98) D-2 | | | |
| 382 | 07/30/2012 | PMT | | (3,860.62) D-2 | | | |
| 383 | 07/31/2012 | PMT | | (5,163.25) D-2 | | | |
| 384 | 07/31/2012 | PMT | | (13,524.69) D-2 | | | |
| 385 | 08/01/2012 | PMT | | (6,131.82) D-2 | | | |
| 386 | 08/02/2012 | PMT | | (7,413.71) D-2 | | | |
| 387 | 08/03/2012 | PMT | | (7,983.21) D-2 | | | |
| 388 | 08/06/2012 | PMT | | (8,305.02) D-2 | | | |
| 389 | 08/07/2012 | PMT | | (6,543.63) D-2 | | | |
| 390 | 08/07/2012 | PMT | | (14,258.90) D-2 | | | |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

### PAYMENT DATA FROM STATEMENTS

Reconciliation With Starving Students' Internal Analyses:

| | Date | Description | Payment Amount | | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
|---|---|---|---|---|---|---|---|---|
| | | | E-3 | | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |
| | E-3 | | E-3 | | | | | |
| 391 | 08/08/2012 | PMT | (4,278.92) | D-2 | | | | |
| 392 | 08/09/2012 | PMT | (3,506.66) | D-2 | | | | |
| 393 | 08/10/2012 | PMT | (4,168.75) | D-2 | | | | |
| 394 | 08/13/2012 | PMT | (3,186.70) | D-2 | | | | |
| 395 | 08/14/2012 | PMT | (10,931.65) | D-2 | | | | |
| 396 | 08/14/2012 | PMT | (4,884.10) | D-2 | | | | |
| 397 | 08/15/2012 | PMT | (4,611.83) | D-2 | | | | |
| 398 | 08/16/2012 | PMT | (4,677.05) | D-2 | | | | |
| 399 | 08/17/2012 | PMT | (464.43) | D-2 | | | | |
| 400 | 08/20/2012 | PMT | (9,051.28) | D-2 | | | | |
| 401 | 08/21/2012 | PMT | (5,375.77) | D-2 | | | | |
| 402 | 08/21/2012 | PMT | (11,257.96) | D-2 | | | | |
| 403 | 08/22/2012 | PMT | (3,514.57) | D-2 | | | | |
| 404 | 08/23/2012 | PMT | (5,751.67) | D-2 | | | | |
| 405 | 08/24/2012 | PMT | (5,395.57) | D-2 | | | | |
| 406 | 08/27/2012 | PMT | (4,421.38) | D-2 | | | | |
| 407 | 08/28/2012 | PMT | (5,105.53) | D-2 | | | | |
| 408 | 08/28/2012 | PMT | (13,722.96) | D-2 | | | | |
| 409 | 08/29/2012 | PMT | (6,331.96) | D-2 | | | | |
| 410 | 08/30/2012 | PMT | (5,429.13) | D-2 | | | | |
| 411 | 08/31/2012 | PMT | (4,212.90) | D-2 | | | | |
| 412 | 09/04/2012 | PMT | (5,422.51) | D-2 | | | | |
| 413 | 09/05/2012 | PMT | (18,277.65) | D-2 | | | | |
| 414 | 09/05/2012 | PMT | (8,500.71) | D-2 | | | | |
| 415 | 09/05/2012 | PMT | (4,666.55) | D-2 | | | | |
| 416 | 09/06/2012 | PMT | (4,635.20) | D-2 | | | | |
| 417 | 09/07/2012 | PMT | (2,939.10) | D-2 | | | | |
| 418 | 09/10/2012 | PMT | (4,351.52) | D-2 | | | | |
| 419 | 09/11/2012 | PMT | (3,817.45) | D-2 | | | | |
| 420 | 09/11/2012 | PMT | (11,233.55) | D-2 | | | | |
| 421 | 09/12/2012 | PMT | (3,026.99) | D-2 | | | | |
| 422 | 09/13/2012 | PMT | (2,778.68) | D-2 | | | | |
| 423 | 09/14/2012 | PMT | (2,833.20) | D-2 | | | | |
| 424 | 09/17/2012 | PMT | (4,380.98) | D-2 | | | | |
| 425 | 09/18/2012 | PMT | (4,353.33) | D-2 | | | | |
| 426 | 09/18/2012 | PMT | (11,040.07) | D-2 | | | | |
| 427 | 09/19/2012 | PMT | (3,659.66) | D-2 | | | | |
| 428 | 09/20/2012 | PMT | (2,524.23) | D-2 | | | | |
| 429 | 09/21/2012 | PMT | (2,025.26) | D-2 | | | | |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | PAYMENT DATA FROM STATEMENTS | | | Reconciliation With Starving Students' Internal Analyses: | | | |
|---|---|---|---|---|---|---|---|
| | | | | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
| | Date | Description | Payment Amount | | | | |
| | E-3 | | E-3 | E-3 | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | |
| 430 | 09/24/2012 | PMT | (3,819.17) D-2 | | | | |
| 431 | 09/25/2012 | PMT | (3,493.54) D-2 | | | | |
| 432 | 09/25/2012 | PMT | (10,667.65) D-2 | | | | |
| 433 | 09/26/2012 | PMT | (4,683.34) D-2 | | | | |
| 434 | 09/27/2012 | PMT | (3,903.71) D-2 | | | | |
| 435 | 09/28/2012 | PMT | (3,011.32) D-2 | | | | |
| 436 | 10/01/2012 | PMT | (5,340.27) D-2 | | | | |
| 437 | 10/02/2012 | PMT | (5,447.73) D-2 | | | | |
| 438 | 10/02/2012 | PMT | (16,316.68) D-2 | | | | |
| 439 | 10/03/2012 | PMT | (5,815.37) D-2 | | | | |
| 440 | 10/04/2012 | PMT | (5,605.79) D-2 | | | | |
| 441 | 10/05/2012 | PMT | (3,343.39) D-2 | | | | |
| 442 | 10/09/2012 | PMT | (3,220.29) D-2 | | | | |
| 443 | 10/10/2012 | PMT | (11,072.03) D-2 | | | | |
| 444 | 10/10/2012 | PMT | (4,469.76) D-2 | | | | |
| 445 | 10/10/2012 | PMT | (3,027.13) D-2 | | | | |
| 446 | 10/11/2012 | PMT | (2,473.01) D-2 | | | | |
| 447 | 10/12/2012 | PMT | (3,214.89) D-2 | | | | |
| 448 | 10/15/2012 | PMT | (3,288.38) D-2 | | | | |
| 449 | 10/16/2012 | PMT | (9,284.40) D-2 | | | | |
| 450 | 10/16/2012 | PMT | (3,261.37) D-2 | | | | |
| 451 | 10/17/2012 | PMT | (4,768.91) D-2 | | | | |
| 452 | 10/18/2012 | PMT | (4,832.92) D-2 | | | | |
| 453 | 10/19/2012 | PMT | (2,639.85) D-2 | | | | |
| 454 | 10/22/2012 | PMT | (2,930.48) D-2 | | | | |
| 455 | 10/23/2012 | PMT | (9,361.70) D-2 | | | | |
| 456 | 10/23/2012 | PMT | (4,619.78) D-2 | | | | |
| 457 | 10/24/2012 | PMT | (3,258.92) D-2 | | | | |
| 458 | 10/25/2012 | PMT | (2,766.00) D-2 | | | | |
| 459 | 10/26/2012 | PMT | (3,622.03) D-2 | | | | |
| 460 | 10/29/2012 | PMT | (3,501.90) D-2 | | | | |
| 461 | 10/30/2012 | PMT | (3,730.20) D-2 | | | | |
| 462 | 10/30/2012 | GENJRNL #103113. to adjust starving students and red parrot | 188.06 D-2 | | | | |
| 463 | 10/30/2012 | PMT #114.04. | (11,855.11) D-2 | | | | |
| 464 | 10/31/2012 | PMT | (5,072.32) D-2 | | | | |
| 465 | 11/01/2012 | PMT | (4,123.72) D-2 | | | | |
| 466 | 11/02/2012 | PMT | (5,366.07) D-2 | | | | |
| 467 | 11/02/2012 | PMT | (3,509.00) D-2 | | | | |

<u>Starving Students v. Express Working Capital</u>

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | PAYMENT DATA FROM STATEMENTS | | | Reconciliation With Starving Students' Internal Analyses: | | |
|---|---|---|---|---|---|---|
| | | | | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
| | Date | Description | Payment Amount | | | |
| | E-3 | | E-3 | E-3 | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | |
| 468 | 11/06/2012 | PMT | (4,560.86) D-2 | | | |
| 469 | 11/06/2012 | PMT | (13,155.50) D-2 | | | |
| 470 | 11/07/2012 | PMT | (4,326.47) D-2 | | | |
| 471 | 11/08/2012 | PMT | (3,939.92) D-2 | | | |
| 472 | 11/09/2012 | PMT | (2,967.34) D-2 | | | |
| 473 | 11/13/2012 | PMT | (2,631.49) D-2 | | | |
| 474 | 11/14/2012 | PMT | (11,022.01) D-2 | | | |
| 475 | 11/14/2012 | PMT | (3,310.98) D-2 | | | |
| 476 | 11/14/2012 | PMT | (2,829.65) D-2 | | | |
| 477 | 11/15/2012 | PMT | (2,722.26) D-2 | | | |
| 478 | 11/16/2012 | PMT | (3,305.61) D-2 | | | |
| 479 | 11/19/2012 | PMT | (4,100.84) D-2 | | | |
| 480 | 11/20/2012 | PMT | (4,025.04) D-2 | | | |
| 481 | 11/20/2012 | PMT | (10,010.76) D-2 | | | |
| 482 | 11/21/2012 | PMT | (5,811.58) D-2 | | | |
| 483 | 11/23/2012 | PMT | (3,438.86) D-2 | | | |
| 484 | 11/27/2012 | PMT | (7,215.14) D-2 | | | |
| 485 | 11/27/2012 | PMT | (509.42) D-2 | | | |
| 486 | 11/27/2012 | PMT | (2,747.15) D-2 | | | |
| 487 | 11/27/2012 | PMT | (3,890.65) D-2 | | | |
| 488 | 11/28/2012 | PMT | (2,329.98) D-2 | | | |
| 489 | 11/28/2012 | PMT | (3,060.08) D-2 | | | |
| 490 | 11/30/2012 | PMT | (4,047.48) D-2 | | | |
| 491 | 12/03/2012 | PMT | (4,543.51) D-2 | | | |
| 492 | 12/04/2012 | PMT | (14,020.71) D-2 | | | |
| 493 | 12/04/2012 | PMT | (5,032.22) D-2 | | | |
| 494 | 12/05/2012 | PMT | (4,127.27) D-2 | | | |
| 495 | 12/06/2012 | PMT | (2,881.58) D-2 | | | |
| 496 | 12/07/2012 | PMT | (3,427.43) D-2 | | | |
| 497 | 12/10/2012 | PMT | (2,443.17) D-2 | | | |
| 498 | 12/11/2012 | PMT | (7,601.75) D-2 | | | |
| 499 | 12/11/2012 | PMT | (3,660.18) D-2 | | | |
| 500 | 12/12/2012 | PMT | (2,777.08) D-2 | | | |
| 501 | 12/13/2012 | PMT | (2,519.45) D-2 | | | |
| 502 | 12/14/2012 | PMT | (3,406.06) D-2 | | | |
| 503 | 12/17/2012 | PMT | (2,953.39) D-2 | | | |
| 504 | 12/18/2012 | PMT | (10,602.52) D-2 | | | |
| 505 | 12/18/2012 | PMT | (3,748.51) D-2 | | | |
| 506 | 12/19/2012 | PMT | (4,031.05) D-2 | | | |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | PAYMENT DATA FROM STATEMENTS | | | Reconciliation With Starving Students' Internal Analyses: | | | |
|---|---|---|---|---|---|---|---|
| | | | | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
| | Date | Description | Payment Amount | | | | |
| | E-3 | | E-3 | E-3 | | | |
| | | | | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |
| 507 | 12/20/2012 PMT | | (3,929.85) D-2 | | | | |
| 508 | 12/21/2012 PMT | | (4,007.70) D-2 | | | | |
| 509 | 12/24/2012 PMT | | (3,594.28) D-2 | | | | |
| 510 | 12/27/2012 PMT | | (3,532.43) D-2 | | | | |
| 511 | 12/27/2012 PMT | | (874.95) D-2 | | | | |
| 512 | 12/27/2012 PMT | | (8,077.54) D-2 | | | | |
| 513 | 12/27/2012 PMT | | (3,010.49) D-2 | | | | |
| 514 | 12/28/2012 PMT | | (1,921.02) D-2 | | | | |
| 515 | 12/31/2012 PMT | | (2,996.77) D-2 | | | | |
| 516 | 01/03/2013 PMT | | (9,598.92) D-2 | | | | |
| 517 | 01/03/2013 PMT | | (3,797.19) D-2 | | | | |
| 518 | 01/03/2013 PMT | | (1,058.63) D-2 | | | | |
| 519 | 01/03/2013 PMT #111. | | (5,206.21) D-2 | | | | |
| 520 | 01/04/2013 PMT#I11. | | (2,547.84) D-2 | | | | |
| 521 | 01/07/2013 PMT | | (3,615.67) D-2 | | | | |
| 522 | 01/08/2013 PMT | | (7,535.84) D-2 | | | | |
| 523 | 01/08/2013 PMT | | (3,531.21) D-2 | | | | |
| 524 | 01/09/2013 PMT | | (3,635.85) D-2 | | | | |
| 525 | 01/10/2013 PMT | | (2,055.94) D-2 | | | | |
| 526 | 01/11/2013 PMT #111. | | (1,878.96) D-2 | | | | |
| 527 | 01/14/2013 PMT #111. | | (1,557.85) D-2 | | | | |
| 528 | 01/15/2013 PMT#I11. | | (2,571.71) D-2 | | | | |
| 529 | 01/15/2013 PMT#202. | | (7,691.65) D-2 | | | | |
| 530 | 01/16/2013 PMT | | (2,477.04) D-2 | | | | |
| 531 | 01/17/2013 PMT | | (2,597.24) D-2 | | | | |
| 532 | 01/18/2013 PMT | | (1,747.18) D-2 | | | | |
| 533 | 01/22/2013 PMT #111. | | (2,430.80) D-2 | | | | |
| 534 | 01/23/2013 PMT | | (9,186.72) D-2 | | | | |
| 535 | 01/23/2013 PMT #111. | | (2,649.54) D-2 | | | | |
| 536 | 01/23/2013 PMT #111. | | (3,586.19) D-2 | | | | |
| 537 | 01/24/2013 PMT | | (2,347.32) D-2 | | | | |
| 538 | 01/25/2013 PMT | | (1,976.98) D-2 | | | | |
| 539 | 01/28/2013 PMT | | (2,409.23) D-2 | | | | |
| 540 | 01/29/2013 PMT | | (3,331.45) D-2 | | | | |
| 541 | 01/29/2013 PMT | | (8,932.43) D-2 | | | | |
| 542 | 01/30/2013 PMT | | (4,103.57) D-2 | | | | |
| 543 | 01/30/2013 PMT | | (4,189.17) D-2 | | | | |
| 544 | 02/01/2013 PMT | | (3,662.55) D-2 | | | | |
| 545 | 02/04/2013 PMT#I11. | | (3,682.10) D-2 | | | | |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

## PAYMENT DATA FROM STATEMENTS

| | Date | Description | Payment Amount | |
|---|---|---|---|---|
| | E-3 | | E-3 | E-3 |
| 546 | 02/05/2013 | PMT #111. | (5,063.52) | D-2 |
| 547 | 02/05/2013 | PMT | (10,291.72) | D-2 |
| 548 | 02/06/2013 | PMT | (2,525.77) | D-2 |
| 549 | 02/07/2013 | PMT | (2,337.36) | D-2 |
| 550 | 02/08/2013 | PMT | (1,550.95) | D-2 |
| 551 | 02/11/2013 | PMT | (2,710.83) | D-2 |
| 552 | 02/12/2013 | PMT #111. | (8,080.40) | D-2 |
| 553 | 02/12/2013 | PMT | (2,985.56) | D-2 |
| 554 | 02/13/2013 | PMT | (2,558.96) | D-2 |
| 555 | 02/14/2013 | PMT | (2,529.42) | D-2 |
| 556 | 02/15/2013 | PMT #111. | (2,760.81) | D-2 |
| 557 | 02/19/2013 | PMT | (1,616.42) | D-2 |
| 558 | 02/20/2013 | PMT | (10,044.44) | D-2 |
| 559 | 02/20/2013 | PMT | (3,327.20) | D-2 |
| 560 | 02/20/2013 | PMT | (4,412.21) | D-2 |
| 561 | 02/21/2013 | PMT | (2,218.02) | D-2 |
| 562 | 02/22/2013 | PMT | (1,982.44) | D-2 |
| 563 | 02/25/2013 | PMT #111. | (1,841.11) | D-2 |
| 564 | 02/26/2013 | PMT | (3,371.59) | D-2 |
| 565 | 02/26/2013 | PMT | (9,187.09) | D-2 |
| 566 | 02/27/2013 | PMT | (3,174.79) | D-2 |
| 567 | 02/28/2013 | PMT | (3,796.31) | D-2 |
| 568 | 03/01/2013 | PMT | (3,633.56) | D-2 |
| 569 | 03/04/2013 | PMT | (4,413.77) | D-2 |
| 570 | 03/05/2013 | PMT #111. | (6,955.97) | D-2 |
| 571 | 03/05/2013 | PMT | (11,289.57) | D-2 |
| 572 | 03/06/2013 | PMT | (3,890.89) | D-2 |
| 573 | 03/07/2013 | PMT #111. | (3,249.20) | D-2 |
| 574 | 03/08/2013 | PMT | (1,626.55) | D-2 |
| 575 | 03/11/2013 | PMT #111. | (1,932.70) | D-2 |
| 576 | 03/12/2013 | PMT | (2,483.74) | D-2 |
| 577 | 03/12/2013 | PMT | (10,147.82) | D-2 |
| 578 | 03/13/2013 | PMT | (2,733.55) | D-2 |
| 579 | 03/14/2013 | PMT | (2,786.23) | D-2 |
| 580 | 03/15/2013 | PMT | (2,712.57) | D-2 |
| 581 | 03/18/2013 | PMT | (2,479.28) | D-2 |
| 582 | 03/19/2013 | PMT #111. | (3,629.49) | D-2 |
| 583 | 03/19/2013 | PMT | (10,959.39) | D-2 |
| 584 | 03/20/2013 | PMT | (3,539.15) | D-2 |

## Reconciliation With Starving Students' Internal Analyses:

| Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
|---|---|---|---|
| BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |

### RECONCILIATION WITH INTERNAL FORTIS REPORT: 5/31/12 to 3/31/13
(from left)

| From | To | Date Diff | Internal Sum | Statement Sum | Amount Diff |
|---|---|---|---|---|---|
| 05/31/2012 | 06/21/2012 | n/a | $ 69,826.12 | $ 106,731.74 | $ 36,905.62 |
| 06/22/2012 | 06/30/2012 | n/a | 56,587.77 | 44,488.75 | (12,099.02) |
| 07/01/2012 | 07/05/2012 | n/a | 35,411.19 | 47,520.54 | 12,109.35 |
| 07/06/2012 | 07/12/2012 | n/a | 35,823.47 | 42,932.12 | 7,108.65 |
| 07/13/2012 | 07/19/2012 | n/a | 31,500.42 | 32,193.72 | 693.30 |
| 07/20/2012 | 07/24/2012 | n/a | 23,089.17 | 22,402.80 | (686.37) |
| 07/25/2012 | 07/31/2012 | n/a | 41,601.07 | 34,677.59 | (6,923.48) |
| 08/01/2012 | 08/05/2012 | n/a | 37,090.76 | 21,528.74 | (15,562.02) |
| 08/06/2012 | 08/12/2012 | n/a | 30,956.45 | 41,061.88 | 10,105.43 |
| 08/13/2012 | 08/20/2012 | n/a | 67,635.95 | 37,807.04 | (29,828.91) |
| 08/21/2012 | 08/31/2012 | n/a | 64,294.32 | 70,519.40 | 6,225.08 |
| 09/01/2012 | 09/30/2012 | n/a | 143,226.73 | 130,045.37 | (13,181.36) |
| 10/01/2012 | 10/11/2012 | n/a | 45,530.04 | 66,131.45 | 20,601.41 |
| 10/12/2012 | 10/31/2012 | n/a | 84,807.62 | 81,821.10 | (2,986.52) |
| 11/01/2012 | 11/05/2012 | n/a | 25,551.83 | 12,998.79 | (12,553.04) |
| 11/06/2012 | 11/08/2012 | n/a | 9,538.75 | 25,982.75 | 16,444.00 |
| 11/09/2012 | 11/18/2012 | n/a | 41,175.01 | 28,789.34 | (12,385.67) |
| 11/19/2012 | 11/29/2012 | n/a | 37,593.85 | 47,139.50 | 9,545.65 |
| 11/30/2012 | 11/30/2012 | n/a | 5,032.22 | 4,047.48 | (984.74) |
| 12/01/2012 | 12/09/2012 | n/a | 38,162.09 | 34,032.72 | (4,129.37) |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | Date | Description | | Payment Amount | | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
|---|---|---|---|---|---|---|---|---|---|
| | E-3 | | E-3 | E-3 | | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | | |
| 585 | 03/20/2013 | PMT #111. | | (3,245.39) D-2 | 12/10/2012 | 12/10/2012 | n/a | 2,777.08 | 2,443.17 | (333.91) |
| 586 | 03/22/2013 | PMT | | (2,362.98) D-2 | 12/11/2012 | 12/16/2012 | n/a | 23,229.93 | 19,964.52 | (3,265.41) |
| 587 | 03/25/2013 | PMT | | (2,864.90) D-2 | 12/17/2012 | 12/26/2012 | n/a | 32,443.98 | 32,867.30 | 423.32 |
| 588 | 03/26/2013 | PMT | | (11,970.00) D-2 | 12/27/2012 | 12/31/2012 | n/a | 21,599.09 | 20,413.20 | (1,185.89) |
| 589 | 03/26/2013 | PMT | | (3,980.92) D-2 | 01/01/2013 | 01/31/2013 | n/a | 92,499.29 | 108,248.33 | 15,749.04 |
| 590 | 03/27/2013 | PMT #111. | | (3,829.33) D-2 | 02/01/2013 | 02/28/2013 | n/a | 98,845.22 | 95,711.57 | (3,133.65) |
| 591 | 03/28/2013 | PMT | | (3,727.11) D-2 | 03/01/2013 | 03/31/2013 | n/a | 123,392.54 | 115,015.03 | (8,377.51) |
| 592 | 03/29/2013 | PMT | | (4,570.97) D-2 | | | | $1,319,221.96 | $ 1,327,515.94 | $ 8,293.98 |
| 593 | | | | $ (1,327,515.94) | | | | | | |
| 594 | | | | | | | | | | |
| 595 | | | | | | | | | | |
| 596 | 04/01/2013 | PMT | | (3,265.84) D-2 | | | | | | |
| 597 | 04/02/2013 | PMT | | (6,711.11) D-2 | | | | | | |
| 598 | 04/02/2013 | PMT | | (6,438.09) D-2 | | | | | | |
| 599 | 04/03/2013 | PMT | | (12,709.85) D-2 | | | | | | |
| 600 | 04/04/2013 | PMT | | (5,131.03) D-2 | | | | | | |
| 601 | 04/05/2013 | PMT | | (5,002.34) D-2 | | | | | | |
| 602 | 04/08/2013 | PMT | | (3,635.89) D-2 | | | | | | |
| 603 | 04/09/2013 | PMT | | (3,393.97) D-2 | | | | | | |
| 604 | 04/09/2013 | PMT #111. | | (9,453.70) D-2 | | | | | | |
| 605 | 04/10/2013 | PMT | | (3,001.06) D-2 | | | | | | |
| 606 | 04/11/2013 | PMT | | (2,253.88) D-2 | | | | | | |
| 607 | 04/12/2013 | PMT | | (2,414.77) D-2 | | | | | | |
| 608 | 04/15/2013 | PMT | | (3,449.66) D-2 | | | | | | |
| 609 | 04/16/2013 | PMT | | (7,792.39) D-2 | | | | | | |
| 610 | 04/16/2013 | PMT | | (2,795.72) D-2 | | | | | | |
| 611 | 04/17/2013 | PMT | | (3,529.65) D-2 | | | | | | |
| 612 | 04/18/2013 | PMT | | (3,530.36) D-2 | | | | | | |
| 613 | 04/19/2013 | PMT | | (3,225.11) D-2 | | | | | | Assumed |
| 614 | 04/22/2013 | PMT | | (2,934.60) D-2 | | | | | | Remainder |
| 615 | 04/23/2013 | PMT | | (2,820.19) D-2 | | | | | | of April |
| 616 | 04/23/2013 | PMT | | (9,814.57) D-2 | | | | Actual (from left) | | 2013 |
| 617 | **STATEMENT THROUGH 4/23/13** | | | $ (103,303.79) | 04/01/2013 | 04/30/2013 | | $ 131,934.57 | $ 103,303.79 | $ 28,630.78 |
| 618 | | | | | | | | | | |
| 619 | | | | | | | | | | |
| 620 | **MAY 2013 STATEMENT MISSING** | | | | 05/01/2013 | 05/31/2013 | | 150,183.95 | missing | n/a |
| 621 | | | | | | | | | | |
| 622 | 06/03/2013 | PMT | | (6,638.12) D-2 | | | | | | |
| 623 | 06/04/2013 | PMT | | (16,737.02) D-2 | | | | | | |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | PAYMENT DATA FROM STATEMENTS | | | | Reconciliation With Starving Students' Internal Analyses: | | |
|---|---|---|---|---|---|---|---|
| | | | | | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
| | Date | Description | Payment Amount | | | | | |
| | E-3 | | E-3 | E-3 | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | |
| 624 | 06/04/2013 PMT | | (7,404.69) D-2 | | | | |
| 625 | 06/05/2013 PMT | | (5,591.32) D-2 | | | | |
| 626 | 06/06/2013 PMT#111. | | (5,451.10) D-2 | | | | |
| 627 | 06/07/2013 PMT | | (4,972.90) D-2 | | | | |
| 628 | 06/10/2013 PMT | | (3,864.04) D-2 | | | | |
| 629 | 06/11/2013 PMT | | (11,394.36) D-2 | | | | |
| 630 | 06/11/2013 PMT | | (4,399.02) D-2 | | | | |
| 631 | 06/12/2013 PMT | | (4,028.94) D-2 | | | | |
| 632 | 06/13/2013 PMT | | (4,527.51) D-2 | | | | |
| 633 | 06/14/2013 PMT | | (3,014.32) D-2 | | | | |
| 634 | 06/17/2013 PMT | | (5,865.54) D-2 | | | | |
| 635 | 06/18/2013 PMT | | (3,616.08) D-2 | | | | |
| 636 | 06/18/2013 PMT | | (15,098.95) D-2 | | | | |
| 637 | 06/19/2013 PMT #111. | | (5,310.15) D-2 | | | | |
| 638 | 06/20/2013 PMT | | (4,711.62) D-2 | | | | |
| 639 | 06/21/2013 PMT#111. | | (4,735.84) D-2 | | | | |
| 640 | 06/24/2013 PMT#111. 11 | | (4,476.38) D-2 | | | | |
| 641 | 06/25/2013 PMT | | (7,142.34) D-2 | | | | |
| 642 | 06/25/2013 PMT | | (13,804.73) D-2 | | | | |
| 643 | 06/26/2013 PMT #111. | | (6,495.13) D-2 | | | | |
| 644 | 06/27/2013 PMT | | (4,525.20) D-2 | | | | |
| 645 | 06/28/2013 PMT | | (5,481.08) D-2 | | | Actual (from left) | |
| 646 | | | $    (159,286.38) | 06/01/2013 | 06/30/2013 | $  176,661.09 | $  159,286.38 | $  17,374.71 |
| 647 | | | | | | | |
| 648 | 07/01/2013 PMT | | (5,540.69) D-2 | | | | |
| 649 | 07/02/2013 PMT | | (8,804.44) D-2 | | | | |
| 650 | 07/02/2013 PMT | | (14,846.83) D-2 | | | | |
| 651 | 07/03/2013 PMT | | (9,543.74) D-2 | | | | |
| 652 | 07/05/2013 PMT | | (8,545.19) D-2 | | | | |
| 653 | 07/08/2013 PMT | | (2,263.22) D-2 | | | | |
| 654 | 07/08/2013 PMT | | (7,858.85) D-2 | | | | |
| 655 | 07/09/2013 PMT | | (4,213.01) D-2 | | | | |
| 656 | 07/09/2013 PMT | | (11,012.35) D-2 | | | | |
| 657 | 07/10/2013 PMT | | (5,717.98) D-2 | | | | |
| 658 | 07/11/2013 PMT#111. | | (4,496.18) D-2 | | | | |
| 659 | 07/12/2013 PMT#111. | | (5,781.24) D-2 | | | | |
| 660 | 07/15/2013 PMT#111. | | (4,067.84) D-2 | | | | |
| 661 | 07/16/2013 PMT | | (11,068.94) D-2 | | | | |
| 662 | 07/16/2013 PMT#111. | | (5,167.66) D-2 | | | | |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

## RECONCILIATION OF EXPRESS WORKING CAPITAL STATEMENTS WITH SSI INTERNAL ANALYSES

E-1

| | PAYMENT DATA FROM STATEMENTS | | | Reconciliation With Starving Students' Internal Analyses: | | | |
|---|---|---|---|---|---|---|---|
| Date | Description | | Payment Amount | Internal Payment Date | Date Difference | Internal Payment Amount | Difference From Statement Amount |
| | E-3 | E-3 | E-3 | | BLR 1144 - 1152 (2011 - May 2011); BLR 1153 - BLR 1154 (Jun 2012 forward) | | |
| 663 07/17/2013 | PMT | | (6,546.34) D-2 | | | | |
| 664 07/18/2013 | PMT | | (6,634.54) D-2 | | | | |
| 665 07/19/2013 | PMT#111. | | (4,614.13) D-2 | | | | |
| 666 07/22/2013 | PMT#111. | | (5,449.20) D-2 | | | | |
| 667 07/23/2013 | PMT | | (1,331.01) D-2 | | | | |
| 668 07/23/2013 | PMT#111. | | (6,333.54) D-2 | | | | |
| 669 07/24/2013 | PMT | | (20.43) D-2 | | | | Actual (from left) |
| 670 | | | (139,857.35) | 07/01/2013 | 07/22/2013 | $ 110,665.39   $ 139,857.35 | $ (29,191.96) |
| | | | | | Total Differences Identified | $ | 3,774.67 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

# DATA FROM STARVING STUDENTS' EXCEL SPREADSHEET

**E-2**

| | Batch Date | Date Deposited | Payment Date Assumed by BLR&Co. | Calculated Payment to EWC or Fortis | |
|---|---|---|---|---|---|
| | BLR 1148 - 49 | BLR 1148 - 49 | BLR 1148 - 49 | BLR 1148 - 49 | |
| 1 | 12/29/11 | 01/03/12 | 01/03/12 | $ 864.48 | D-2 |
| 2 | 12/30-31/2011 | 01/03/12 | 01/03/12 | 527.22 | D-2 |
| 3 | 01/01/12 | 01/03/12 | 01/03/12 | 942.75 | D-2 |
| 4 | 01/02/12 | 01/04/12 | 01/04/12 | 223.94 | D-2 |
| 5 | 01/03/12 | 01/05/12 | 01/05/12 | 488.60 | D-2 |
| 6 | 01/04/12 | 01/06/12 | 01/06/12 | 169.33 | D-2 |
| 7 | 01/05/12 | 01/09/12 | 01/09/12 | 519.74 | D-2 |
| 8 | 01/06-07/2012 | 01/09/12 | 01/09/12 | 1,339.87 | D-2 |
| 9 | 01/08/12 | 01/10/12 | 01/10/12 | 321.41 | D-2 |
| 10 | 01/09/12 | 01/11/12 | 01/11/12 | 553.12 | D-2 |
| 11 | 01/10/12 | 01/12/12 | 01/12/12 | 347.98 | D-2 |
| 12 | 01/11/12 | 01/13/12 | 01/13/12 | 678.30 | D-2 |
| 13 | 01/12/12 | 01/17/12 | 01/17/12 | 1,581.76 | D-2 |
| 14 | 01/13-14/2012 | 01/17/12 | 01/17/12 | 1,381.19 | D-2 |
| 15 | 01/15/12 | 01/17/12 | 01/17/12 | 257.62 | D-2 |
| 16 | 01/16/12 | 01/18/12 | 01/18/12 | 540.88 | D-2 |
| 17 | 01/17/12 | 01/19/12 | 01/19/12 | 209.83 | D-2 |
| 18 | 01/18/12 | 01/20/12 | 01/20/12 | 428.49 | D-2 |
| 19 | 01/19/12 | 01/23/12 | 01/23/12 | 305.61 | D-2 |
| 20 | 01/20-21/2012 | 01/23/12 | 01/23/12 | 692.94 | D-2 |
| 21 | 01/22/12 | 01/24/12 | 01/24/12 | 211.67 | D-2 |
| 22 | 01/23/12 | 01/25/12 | 01/25/12 | 210.90 | D-2 |
| 23 | 01/24/12 | 01/26/12 | 01/26/12 | 340.63 | D-2 |
| 24 | 01/25/12 | 01/27/12 | 01/27/12 | 293.05 | D-2 |
| 25 | 01/26/12 | 01/30/12 | 01/30/12 | 2,538.83 | D-2 |
| 26 | 01/27-28/2012 | 01/30/12 | 01/30/12 | 8,590.56 | D-2 |
| 27 | 01/29/12 | 01/31/12 | 01/31/12 | 3,618.93 | D-2 |
| | | | | $ 28,179.63 | |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

## EXPRESS WORKING CAPITAL STATEMENTS - RAW DATA ENTRY

**E-3**

| | Bates | Statement Date | Payment Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 1 | BLR 1108 | 12/31/2011 | 12/31/2010 | Balance forward | $ | $ - |
| 2 | BLR 1108 | 12/31/2011 | 05/04/2011 | PMT | $ (1,855.64) E-1 | (1,855.64) |
| 3 | BLR 1108 | 12/31/2011 | 05/09/2011 | PMT#898. | (2,109.39) E-1 | (3,965.03) |
| 4 | BLR 1108 | 12/31/2011 | 05/09/2011 | PMT#898. | (5,849.52) E-1 | (9,814.55) |
| 5 | BLR 1108 | 12/31/2011 | 05/09/2011 | INV#1039. | 685,000.00 | 675,185.45 |
| 6 | BLR 1108 | 12/31/2011 | 05/10/2011 | PMT | (1,664.01) E-1 | 673,521.44 |
| 7 | BLR 1108 | 12/31/2011 | 05/11/2011 | PMT | (2,891.40) E-1 | 670,630.04 |
| 8 | BLR 1108 | 12/31/2011 | 05/12/2011 | PMT | (2,481.41) E-1 | 668,148.63 |
| 9 | BLR 1108 | 12/31/2011 | 05/13/2011 | PMT | (1,418.59) E-1 | 666,730.04 |
| 10 | BLR 1108 | 12/31/2011 | 05/16/2011 | PMT | (1,927.20) E-1 | 664,802.84 |
| 11 | BLR 1108 | 12/31/2011 | 05/16/2011 | PMT | (6,074.77) E-1 | 658,728.07 |
| 12 | BLR 1108 | 12/31/2011 | 05/17/2011 | PMT | (2,934.51) E-1 | 655,793.56 |
| 13 | BLR 1108 | 12/31/2011 | 05/18/2011 | PMT | (2,866.25) E-1 | 652,927.31 |
| 14 | BLR 1108 | 12/31/2011 | 05/19/2011 | PMT | (2,054.78) E-1 | 650,872.53 |
| 15 | BLR 1108 | 12/31/2011 | 05/19/2011 | PMT | (1,853.84) E-1 | 649,018.69 |
| 16 | BLR 1108 | 12/31/2011 | 05/20/2011 | PMT | (2,222.05) E-1 | 646,796.64 |
| 17 | BLR 1108 | 12/31/2011 | 05/23/2011 | PMT #1136. | (6,758.94) E-1 | 640,037.70 |
| 18 | BLR 1108 | 12/31/2011 | 05/24/2011 | PMT | (2,741.05) E-1 | 637,296.65 |
| 19 | BLR 1108 | 12/31/2011 | 05/25/2011 | PMT | (2,900.29) E-1 | 634,396.36 |
| 20 | BLR 1108 | 12/31/2011 | 05/26/2011 | PMT | (2,242.93) E-1 | 632,153.43 |
| 21 | BLR 1108 | 12/31/2011 | 05/27/2011 | PMT | (2,292.49) E-1 | 629,860.94 |
| 22 | BLR 1108 | 12/31/2011 | 05/31/2011 | PMT | (9,004.57) E-1 | 620,856.37 |
| 23 | BLR 1108 | 12/31/2011 | 05/31/2011 | PMT | (4,235.13) E-1 | 616,621.24 |
| 24 | BLR 1108 | 12/31/2011 | 05/31/2011 | PMT | (3,087.45) E-1 | 613,533.79 |
| 25 | BLR 1108 | 12/31/2011 | 06/01/2011 | PMT | (5,316.20) E-1 | 608,217.59 |
| 26 | BLR 1108 | 12/31/2011 | 06/02/2011 | PMT | (3,352.62) E-1 | 604,864.97 |
| 27 | BLR 1108 | 12/31/2011 | 06/03/2011 | PMT | (4,980.56) E-1 | 599,884.41 |
| 28 | BLR 1108 | 12/31/2011 | 06/06/2011 | PMT | (3,918.61) E-1 | 595,965.80 |
| 29 | BLR 1108 | 12/31/2011 | 06/06/2011 | PMT | (8,137.82) E-1 | 587,827.98 |
| 30 | BLR 1108 | 12/31/2011 | 06/07/2011 | PMT | (2,788.00) E-1 | 585,039.98 |
| 31 | BLR 1108 | 12/31/2011 | 06/08/2011 | PMT | (3,357.79) E-1 | 581,682.19 |
| 32 | BLR 1108 | 12/31/2011 | 06/09/2011 | PMT | (2,490.37) E-1 | 579,191.82 |
| 33 | BLR 1108 | 12/31/2011 | 06/10/2011 | PMT | (2,540.92) E-1 | 576,650.90 |
| 34 | BLR 1108 | 12/31/2011 | 06/13/2011 | PMT | (2,431.21) E-1 | 574,219.69 |
| 35 | BLR 1108 | 12/31/2011 | 06/13/2011 | PMT | (6,413.11) E-1 | 567,806.58 |
| 36 | BLR 1109 | 12/31/2011 | 06/14/2011 | PMT | (3,205.42) E-1 | 564,601.16 |
| 37 | BLR 1109 | 12/31/2011 | 06/15/2011 | PMT | (2,929.20) E-1 | 561,671.96 |
| 38 | BLR 1109 | 12/31/2011 | 06/16/2011 | PMT | (3,997.56) E-1 | 557,674.40 |
| 39 | BLR 1109 | 12/31/2011 | 06/17/2011 | PMT | (2,645.04) E-1 | 555,029.36 |
| 40 | BLR 1109 | 12/31/2011 | 06/20/2011 | PMT | (3,796.63) E-1 | 551,232.73 |
| 41 | BLR 1109 | 12/31/2011 | 06/20/2011 | PMT | (8,215.83) E-1 | 543,016.90 |
| 42 | BLR 1109 | 12/31/2011 | 06/21/2011 | PMT | (2,718.00) E-1 | 540,298.90 |
| 43 | BLR 1109 | 12/31/2011 | 06/22/2011 | PMT | (2,772.57) E-1 | 537,526.33 |
| 44 | BLR 1109 | 12/31/2011 | 06/23/2011 | PMT | (2,537.82) E-1 | 534,988.51 |
| 45 | BLR 1109 | 12/31/2011 | 06/24/2011 | PMT | (2,140.09) E-1 | 532,848.42 |
| 46 | BLR 1109 | 12/31/2011 | 06/27/2011 | PMT | (8,637.86) E-1 | 524,210.56 |
| 47 | BLR 1109 | 12/31/2011 | 06/27/2011 | PMT | (3,916.85) E-1 | 520,293.71 |
| 48 | BLR 1109 | 12/31/2011 | 06/28/2011 | PMT | (3,397.88) E-1 | 516,895.83 |
| 49 | BLR 1109 | 12/31/2011 | 06/29/2011 | PMT | (3,932.91) E-1 | 512,962.92 |
| 50 | BLR 1109 | 12/31/2011 | 06/30/2011 | PMT | (4,369.78) E-1 | 508,593.14 |
| 51 | BLR 1109 | 12/31/2011 | 07/01/2011 | PMT | (4,574.28) E-1 | 504,018.86 |
| 52 | BLR 1109 | 12/31/2011 | 07/05/2011 | PMT | (4,944.28) E-1 | 499,074.58 |
| 53 | BLR 1109 | 12/31/2011 | 07/05/2011 | PMT | (12,972.79) E-1 | 486,101.79 |
| 54 | BLR 1109 | 12/31/2011 | 07/05/2011 | PMT | (4,404.76) E-1 | 481,697.03 |
| 55 | BLR 1109 | 12/31/2011 | 07/06/2011 | PMT | (506.42) E-1 | 481,190.61 |
| 56 | BLR 1109 | 12/31/2011 | 07/07/2011 | PMT | (3,512.01) E-1 | 477,678.60 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

## EXPRESS WORKING CAPITAL STATEMENTS - RAW DATA ENTRY

E-3

| | Bates | Statement Date | Payment Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 57 | BLR 1109 | 12/31/2011 | 07/08/2011 | PMT | (2,741.80) E-1 | 474,936.80 |
| 58 | BLR 1109 | 12/31/2011 | 07/11/2011 | PMT | (3,055.36) E-1 | 471,881.44 |
| 59 | BLR 1109 | 12/31/2011 | 07/11/2011 | PMT | (7,071.74) E-1 | 464,809.70 |
| 60 | BLR 1109 | 12/31/2011 | 07/12/2011 | PMT | (2,062.47) E-1 | 462,747.23 |
| 61 | BLR 1109 | 12/31/2011 | 07/13/2011 | PMT | (2,695.03) E-1 | 460,052.20 |
| 62 | BLR 1109 | 12/31/2011 | 07/14/2011 | PMT | (1,926.90) E-1 | 458,125.30 |
| 63 | BLR 1109 | 12/31/2011 | 07/15/2011 | PMT | (2,095.77) E-1 | 456,029.53 |
| 64 | BLR 1109 | 12/31/2011 | 07/18/2011 | PMT | (7,179.24) E-1 | 448,850.29 |
| 65 | BLR 1109 | 12/31/2011 | 07/18/2011 | CHK #2888. Refund Overpayment (error) | 1,154.40 | 450,004.69 |
| 66 | BLR 1109 | 12/31/2011 | 07/18/2011 | PMT | (2,310.82) E-1 | 447,693.87 |
| 67 | BLR 1109 | 12/31/2011 | 07/19/2011 | PMT | (2,992.90) E-1 | 444,700.97 |
| 68 | BLR 1109 | 12/31/2011 | 07/20/2011 | PMT | (1,750.92) E-1 | 442,950.05 |
| 69 | BLR 1109 | 12/31/2011 | 07/21/2011 | PMT | (2,597.75) E-1 | 440,352.30 |
| 70 | BLR 1110 | 12/31/2011 | 07/22/2011 | PMT | (2,091.95) E-1 | 438,260.35 |
| 71 | BLR 1110 | 12/31/2011 | 07/25/2011 | PMT | (2,155.42) E-1 | 436,104.93 |
| 72 | BLR 1110 | 12/31/2011 | 07/25/2011 | PMT | (6,097.83) E-1 | 430,007.10 |
| 73 | BLR 1110 | 12/31/2011 | 07/26/2011 | PMT | (2,244.50) E-1 | 427,762.60 |
| 74 | BLR 1110 | 12/31/2011 | 07/27/2011 | PMT | (2,690.35) E-1 | 425,072.25 |
| 75 | BLR 1110 | 12/31/2011 | 07/28/2011 | PMT | (2,195.14) E-1 | 422,877.11 |
| 76 | BLR 1110 | 12/31/2011 | 07/29/2011 | PMT | (3,073.19) E-1 | 419,803.92 |
| 77 | BLR 1110 | 12/31/2011 | 08/01/2011 | PMT | (3,096.48) E-1 | 416,707.44 |
| 78 | BLR 1110 | 12/31/2011 | 08/01/2011 | PMT | (9,407.74) E-1 | 407,299.70 |
| 79 | BLR 1110 | 12/31/2011 | 08/02/2011 | PMT | (4,975.04) E-1 | 402,324.66 |
| 80 | BLR 1110 | 12/31/2011 | 08/03/2011 | PMT | (3,893.91) E-1 | 398,430.75 |
| 81 | BLR 1110 | 12/31/2011 | 08/04/2011 | PMT | (3,367.95) E-1 | 395,062.80 |
| 82 | BLR 1110 | 12/31/2011 | 08/05/2011 | PMT | (3,630.11) E-1 | 391,432.69 |
| 83 | BLR 1110 | 12/31/2011 | 08/08/2011 | PMT | (2,468.07) E-1 | 388,964.62 |
| 84 | BLR 1110 | 12/31/2011 | 08/08/2011 | PMT | (5,749.86) E-1 | 383,214.76 |
| 85 | BLR 1110 | 12/31/2011 | 08/09/2011 | PMT | (2,987.96) E-1 | 380,226.80 |
| 86 | BLR 1110 | 12/31/2011 | 08/10/2011 | PMT | (2,455.46) E-1 | 377,771.34 |
| 87 | BLR 1110 | 12/31/2011 | 08/11/2011 | PMT | (2,168.26) E-1 | 375,603.08 |
| 88 | BLR 1110 | 12/31/2011 | 08/12/2011 | PMT | (2,222.53) E-1 | 373,380.55 |
| 89 | BLR 1110 | 12/31/2011 | 08/15/2011 | PMT | (5,252.66) E-1 | 368,127.89 |
| 90 | BLR 1110 | 12/31/2011 | 08/15/2011 | PMT | (3,064.04) E-1 | 365,063.85 |
| 91 | BLR 1110 | 12/31/2011 | 08/16/2011 | PMT | (2,291.83) E-1 | 362,772.02 |
| 92 | BLR 1110 | 12/31/2011 | 08/17/2011 | PMT | (2,335.21) E-1 | 360,436.81 |
| 93 | BLR 1110 | 12/31/2011 | 08/18/2011 | PMT | (3,239.21) E-1 | 357,197.60 |
| 94 | BLR 1110 | 12/31/2011 | 08/19/2011 | PMT | (2,634.93) E-1 | 354,562.67 |
| 95 | BLR 1110 | 12/31/2011 | 08/22/2011 | PMT | (5,110.91) E-1 | 349,451.76 |
| 96 | BLR 1110 | 12/31/2011 | 08/22/2011 | PMT | (2,459.30) E-1 | 346,992.46 |
| 97 | BLR 1110 | 12/31/2011 | 08/23/2011 | PMT | (2,811.81) E-1 | 344,180.65 |
| 98 | BLR 1110 | 12/31/2011 | 08/24/2011 | PMT | (2,874.12) E-1 | 341,306.53 |
| 99 | BLR 1110 | 12/31/2011 | 08/25/2011 | PMT | (2,368.89) E-1 | 338,937.64 |
| 100 | BLR 1110 | 12/31/2011 | 08/26/2011 | PMT | (1,757.60) E-1 | 337,180.04 |
| 101 | BLR 1110 | 12/31/2011 | 08/29/2011 | CHK # 2971. Refund of error | 284.23 | 337,464.27 |
| 102 | BLR 1110 | 12/31/2011 | 08/29/2011 | PMT | (2,511.58) E-1 | 334,952.69 |
| 103 | BLR 1110 | 12/31/2011 | 08/29/2011 | PMT | (7,839.13) E-1 | 327,113.56 |
| 104 | BLR 1110 | 12/31/2011 | 08/30/2011 | PMT | (2,884.88) E-1 | 324,228.68 |
| 105 | BLR 1111 | 12/31/2011 | 08/31/2011 | PMT | (2,963.18) E-1 | 321,265.50 |
| 106 | BLR 1111 | 12/31/2011 | 09/01/2011 | DEP | (3,572.08) E-1 | 317,693.42 |
| 107 | BLR 1111 | 12/31/2011 | 09/02/2011 | PMT | (3,389.31) E-1 | 314,304.11 |
| 108 | BLR 1111 | 12/31/2011 | 09/06/2011 | PMT | (4,081.32) E-1 | 310,222.79 |
| 109 | BLR 1111 | 12/31/2011 | 09/06/2011 | PMT | (7,701.44) E-1 | 302,521.35 |
| 110 | BLR 1111 | 12/31/2011 | 09/06/2011 | PMT | (2,541.69) E-1 | 299,979.66 |
| 111 | BLR 1111 | 12/31/2011 | 09/07/2011 | PMT | (2,722.63) E-1 | 297,257.03 |
| 112 | BLR 1111 | 12/31/2011 | 09/08/2011 | PMT | (1,585.74) E-1 | 295,671.29 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

## EXPRESS WORKING CAPITAL STATEMENTS - RAW DATA ENTRY

E-3

| | Bates | Statement Date | Payment Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 113 | BLR 1111 | 12/31/2011 | 09/09/2011 | PMT | (1,507.88) E-1 | 294,163.41 |
| 114 | BLR 1111 | 12/31/2011 | 09/12/2011 | PMT | (5,076.98) E-1 | 289,086.43 |
| 115 | BLR 1111 | 12/31/2011 | 09/12/2011 | PMT | (1,827.82) E-1 | 287,258.61 |
| 116 | BLR 1111 | 12/31/2011 | 09/13/2011 | PMT | (1,807.04) E-1 | 285,451.57 |
| 117 | BLR 1111 | 12/31/2011 | 09/14/2011 | PMT | (1,553.17) E-1 | 283,898.40 |
| 118 | BLR 1111 | 12/31/2011 | 09/15/2011 | PMT | (1,485.48) E-1 | 282,412.92 |
| 119 | BLR 1111 | 12/31/2011 | 09/16/2011 | PMT | (1,864.79) E-1 | 280,548.13 |
| 120 | BLR 1111 | 12/31/2011 | 09/19/2011 | PMT | (2,424.98) E-1 | 278,123.15 |
| 121 | BLR 1111 | 12/31/2011 | 09/19/2011 | PMT | (4,705.66) E-1 | 273,417.49 |
| 122 | BLR 1111 | 12/31/2011 | 09/20/2011 | PMT | (3,473.26) E-1 | 269,944.23 |
| 123 | BLR 1111 | 12/31/2011 | 09/21/2011 | PMT | (1,721.87) E-1 | 268,222.36 |
| 124 | BLR 1111 | 12/31/2011 | 09/22/2011 | PMT | (1,562.36) E-1 | 266,660.00 |
| 125 | BLR 1111 | 12/31/2011 | 09/23/2011 | PMT | (2,346.19) E-1 | 264,313.81 |
| 126 | BLR 1111 | 12/31/2011 | 09/26/2011 | PMT | (4,579.97) E-1 | 259,733.84 |
| 127 | BLR 1111 | 12/31/2011 | 09/26/2011 | PMT | (1,831.92) E-1 | 257,901.92 |
| 128 | BLR 1111 | 12/31/2011 | 09/27/2011 | PMT | (2,497.98) E-1 | 255,403.94 |
| 129 | BLR 1111 | 12/31/2011 | 09/28/2011 | PMT | (2,186.07) E-1 | 253,217.87 |
| 130 | BLR 1111 | 12/31/2011 | 09/29/2011 | PMT | (2,106.97) E-1 | 251,110.90 |
| 131 | BLR 1111 | 12/31/2011 | 09/30/2011 | INV# 1172 | 636,500.00 | 887,610.90 |
| 132 | BLR 1111 | 12/31/2011 | 09/30/2011 | PMT | (2,126.51) E-1 | 885,484.39 |
| 133 | BLR 1111 | 12/31/2011 | 10/03/2011 | PMT | (12,705.76) E-1 | 872,778.63 |
| 134 | BLR 1111 | 12/31/2011 | 10/03/2011 | PMT | (4,764.62) E-1 | 868,014.01 |
| 135 | BLR 1111 | 12/31/2011 | 10/04/2011 | PMT | (5,811.50) E-1 | 862,202.51 |
| 136 | BLR 1111 | 12/31/2011 | 10/05/2011 | PMT | (3,790.88) E-1 | 858,411.63 |
| 137 | BLR 1111 | 12/31/2011 | 10/06/2011 | PMT | (4,284.39) E-1 | 854,127.24 |
| 138 | BLR 1111 | 12/31/2011 | 10/07/2011 | PMT | (2,902.95) E-1 | 851,224.29 |
| 139 | BLR 1111 | 12/31/2011 | 10/11/2011 | PMT | (7,789.87) E-1 | 843,434.42 |
| 140 | BLR 1112 | 12/31/2011 | 10/11/2011 | PMT | (3,268.12) E-1 | 840,166.30 |
| 141 | BLR 1112 | 12/31/2011 | 10/11/2011 | PMT | (2,695.95) E-1 | 837,470.35 |
| 142 | BLR 1112 | 12/31/2011 | 10/12/2011 | PMT | (2,311.13) E-1 | 835,159.22 |
| 143 | BLR 1112 | 12/31/2011 | 10/13/2011 | PMT | (3,050.20) E-1 | 832,109.02 |
| 144 | BLR 1112 | 12/31/2011 | 10/14/2011 | PMT | (2,514.23) E-1 | 829,594.79 |
| 145 | BLR 1112 | 12/31/2011 | 10/17/2011 | PMT | (7,710.02) E-1 | 821,884.77 |
| 146 | BLR 1112 | 12/31/2011 | 10/17/2011 | PMT | (2,818.96) E-1 | 819,065.81 |
| 147 | BLR 1112 | 12/31/2011 | 10/18/2011 | PMT | (3,436.92) E-1 | 815,628.89 |
| 148 | BLR 1112 | 12/31/2011 | 10/19/2011 | PMT | (2,353.46) E-1 | 813,275.43 |
| 149 | BLR 1112 | 12/31/2011 | 10/20/2011 | PMT | (2,391.46) E-1 | 810,883.97 |
| 150 | BLR 1112 | 12/31/2011 | 10/21/2011 | PMT | (1,978.81) E-1 | 808,905.16 |
| 151 | BLR 1112 | 12/31/2011 | 10/24/2011 | PMT | (2,580.65) E-1 | 806,324.51 |
| 152 | BLR 1112 | 12/31/2011 | 10/24/2011 | PMT | (5,324.44) E-1 | 801,000.07 |
| 153 | BLR 1112 | 12/31/2011 | 10/25/2011 | PMT | (2,529.95) E-1 | 798,470.12 |
| 154 | BLR 1112 | 12/31/2011 | 10/26/2011 | PMT | (2,395.44) E-1 | 796,074.68 |
| 155 | BLR 1112 | 12/31/2011 | 10/27/2011 | PMT | (2,312.66) E-1 | 793,762.02 |
| 156 | BLR 1112 | 12/31/2011 | 10/28/2011 | PMT | (3,177.90) E-1 | 790,584.12 |
| 157 | BLR 1112 | 12/31/2011 | 10/31/2011 | PMT | (2,969.66) E-1 | 787,614.46 |
| 158 | BLR 1112 | 12/31/2011 | 10/31/2011 | PMT | (9,646.90) E-1 | 777,967.56 |
| 159 | BLR 1112 | 12/31/2011 | 11/01/2011 | PMT | (3,422.87) E-1 | 774,544.69 |
| 160 | BLR 1112 | 12/31/2011 | 11/02/2011 | PMT | (2,962.09) E-1 | 771,582.60 |
| 161 | BLR 1112 | 12/31/2011 | 11/03/2011 | PMT | (3,300.45) E-1 | 768,282.15 |
| 162 | BLR 1112 | 12/31/2011 | 11/04/2011 | PMT | (2,382.49) E-1 | 765,899.66 |
| 163 | BLR 1112 | 12/31/2011 | 11/07/2011 | PMT | (5,905.08) E-1 | 759,994.58 |
| 164 | BLR 1112 | 12/31/2011 | 11/07/2011 | PMT | (2,227.75) E-1 | 757,766.83 |
| 165 | BLR 1112 | 12/31/2011 | 11/08/2011 | PMT | (3,355.95) E-1 | 754,410.88 |
| 166 | BLR 1112 | 12/31/2011 | 11/09/2011 | PMT | (1,576.98) E-1 | 752,833.90 |
| 167 | BLR 1112 | 12/31/2011 | 11/14/2011 | PMT | (2,035.13) E-1 | 750,798.77 |
| 168 | BLR 1112 | 12/31/2011 | 11/14/2011 | PMT | (4,369.73) E-1 | 746,429.04 |

<u>STARVING STUDENTS v. EXPRESS WORKING CAPITAL</u>

## EXPRESS WORKING CAPITAL STATEMENTS - RAW DATA ENTRY

E-3

| | Bates | Statement Date | Payment Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 169 | BLR 1112 | 12/31/2011 | 11/14/2011 | PMT | (1,513.32) E-1 | 744,915.72 |
| 170 | BLR 1112 | 12/31/2011 | 11/15/2011 | PMT | (939.83) E-1 | 743,975.89 |
| 171 | BLR 1112 | 12/31/2011 | 11/16/2011 | PMT | (1,489.32) E-1 | 742,486.57 |
| 172 | BLR 1112 | 12/31/2011 | 11/18/2011 | PMT | (1,419.60) E-1 | 741,066.97 |
| 173 | BLR 1112 | 12/31/2011 | 11/21/2011 | PMT | (1,160.41) E-1 | 739,906.56 |
| 174 | BLR 1112 | 12/31/2011 | 11/22/2011 | PMT | (1,008.39) E-1 | 738,898.17 |
| 175 | BLR 1113 | 12/31/2011 | 11/23/2011 | PMT | (1,440.44) E-1 | 737,457.73 |
| 176 | BLR 1113 | 12/31/2011 | 11/23/2011 | PMT | (2,197.58) E-1 | 735,260.15 |
| 177 | BLR 1113 | 12/31/2011 | 11/25/2011 | PMT | (2,640.75) E-1 | 732,619.40 |
| 178 | BLR 1113 | 12/31/2011 | 11/25/2011 | PMT | (1,620.27) E-1 | 730,999.13 |
| 179 | BLR 1113 | 12/31/2011 | 11/28/2011 | PMT | (2,217.08) E-1 | 728,782.05 |
| 180 | BLR 1113 | 12/31/2011 | 11/29/2011 | PMT | (708.72) E-1 | 728,073.33 |
| 181 | BLR 1113 | 12/31/2011 | 11/30/2011 | PMT | (1,722.96) E-1 | 726,350.37 |
| 182 | BLR 1113 | 12/31/2011 | 12/01/2011 | PMT | (997.52) E-1 | 725,352.85 |
| 183 | BLR 1113 | 12/31/2011 | 12/02/2011 | PMT | (2,091.86) E-1 | 723,260.99 |
| 184 | BLR 1113 | 12/31/2011 | 12/05/2011 | PMT | (1,488.55) E-1 | 721,772.44 |
| 185 | BLR 1113 | 12/31/2011 | 12/05/2011 | PMT | (4,448.35) E-1 | 717,324.09 |
| 186 | BLR 1113 | 12/31/2011 | 12/06/2011 | PMT | (738.33) E-1 | 716,585.76 |
| 187 | BLR 1113 | 12/31/2011 | 12/07/2011 | PMT | (1,074.49) E-1 | 715,511.27 |
| 188 | BLR 1113 | 12/31/2011 | 12/08/2011 | PMT | (509.87) E-1 | 715,001.40 |
| 189 | BLR 1113 | 12/31/2011 | 12/09/2011 | PMT | (1,301.06) E-1 | 713,700.34 |
| 190 | BLR 1113 | 12/31/2011 | 12/12/2011 | PMT | (2,490.10) E-1 | 711,210.24 |
| 191 | BLR 1113 | 12/31/2011 | 12/12/2011 | PMT | (727.61) E-1 | 710,482.63 |
| 192 | BLR 1113 | 12/31/2011 | 12/13/2011 | PMT | (1,108.28) E-1 | 709,374.35 |
| 193 | BLR 1113 | 12/31/2011 | 12/14/2011 | PMT | (263.73) E-1 | 709,110.62 |
| 194 | BLR 1113 | 12/31/2011 | 12/15/2011 | PMT | (838.17) E-1 | 708,272.45 |
| 195 | BLR 1113 | 12/31/2011 | 12/16/2011 | PMT | (678.76) E-1 | 707,593.69 |
| 196 | BLR 1113 | 12/31/2011 | 12/19/2011 | PMT | (1,178.18) E-1 | 706,415.51 |
| 197 | BLR 1113 | 12/31/2011 | 12/19/2011 | PMT | (2,773.76) E-1 | 703,641.75 |
| 198 | BLR 1113 | 12/31/2011 | 12/20/2011 | PMT | (894.95) E-1 | 702,746.80 |
| 199 | BLR 1113 | 12/31/2011 | 12/21/2011 | PMT | (1,059.65) E-1 | 701,687.15 |
| 200 | BLR 1113 | 12/31/2011 | 12/22/2011 | PMT | (462.08) E-1 | 701,225.07 |
| 201 | BLR 1113 | 12/31/2011 | 12/23/2011 | PMT | (742.63) E-1 | 700,482.44 |
| 202 | BLR 1113 | 12/31/2011 | 12/27/2011 | PMT | (700.54) E-1 | 699,781.90 |
| 203 | BLR 1113 | 12/31/2011 | 12/27/2011 | PMT | (128.09) E-1 | 699,653.81 |
| 204 | BLR 1113 | 12/31/2011 | 12/27/2011 | PMT | (759.31) E-1 | 698,894.50 |
| 205 | BLR 1113 | 12/31/2011 | 12/28/2011 | PMT | (366.56) E-1 | 698,527.94 |
| 206 | BLR 1113 | 12/31/2011 | 12/29/2011 | PMT | (649.29) E-1 | 697,878.65 |
| 207 | BLR 1113 | 12/31/2011 | 12/30/2011 | PMT | (851.40) E-1 | 697,027.25 |
| 208 | | | | (missing January Statement) | | |
| 209 | BLR 1128 | 2/29/2012 | 01/31/2012 | Balance Forward | | 675,849.96 |
| 210 | BLR 1128 | 2/29/2012 | 02/06/2012 | PMT | (9,143.61) E-1 | 666,706.35 |
| 211 | BLR 1128 | 2/29/2012 | 02/08/2012 | PMT | (4,665.36) E-1 | 662,040.99 |
| 212 | BLR 1128 | 2/29/2012 | 02/09/2012 | PMT | (2,325.14) E-1 | 659,715.85 |
| 213 | BLR 1128 | 2/29/2012 | 02/13/2012 | PMT | (2,338.06) E-1 | 657,377.79 |
| 214 | BLR 1128 | 2/29/2012 | 02/15/2012 | PMT | (4,904.28) E-1 | 652,473.51 |
| 215 | BLR 1128 | 2/29/2012 | 02/17/2012 | PMT | (1,841.14) E-1 | 650,632.37 |
| 216 | BLR 1128 | 2/29/2012 | 02/21/2012 | PMT | (6,529.91) E-1 | 644,102.46 |
| 217 | BLR 1129 | 3/31/2012 | 03/02/2012 | PMT | (52,343.16) E-1 | 591,759.30 |
| 218 | BLR 1129 | 3/31/2012 | 03/05/2012 | PMT | (10,747.23) E-1 | 581,012.07 |
| 219 | BLR 1129 | 3/31/2012 | 03/08/2012 | PMT | (2,537.14) E-1 | 578,474.93 |
| 220 | BLR 1129 | 3/31/2012 | 03/12/2012 | PMT | (26,062.32) E-1 | 552,412.61 |
| 221 | BLR 1129 | 3/31/2012 | 03/15/2012 | PMT | (14,269.87) E-1 | 538,142.74 |
| 222 | BLR 1129 | 3/31/2012 | 03/19/2012 | PMT | (2,571.15) E-1 | 535,571.59 |
| 223 | BLR 1129 | 3/31/2012 | 03/21/2012 | PMT | (16,425.14) E-1 | 519,146.45 |
| 224 | BLR 1129 | 3/31/2012 | 03/26/2012 | PMT | (8,400.36) E-1 | 510,746.09 |

**EXPRESS WORKING CAPITAL STATEMENTS - RAW DATA ENTRY**

E-3

| | Bates | Statement Date | Payment Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 225 | BLR 1129 | 3/31/2012 | 03/29/2012 | PMT | (16,436.26) E-1 | 494,309.83 |
| 226 | BLR 1130 | 4/30/2012 | 04/05/2012 | PMT | (16,431.47) E-1 | 477,878.36 |
| 227 | BLR 1130 | 4/30/2012 | 04/09/2012 | PMT | (8,154.72) E-1 | 469,723.64 |
| 228 | BLR 1130 | 4/30/2012 | 04/12/2012 | PMT | (2,360.22) E-1 | 467,363.42 |
| 229 | BLR 1130 | 4/30/2012 | 04/16/2012 | PMT | (2,592.56) E-1 | 464,770.86 |
| 230 | BLR 1130 | 4/30/2012 | 04/16/2012 | PMT | (8,059.51) E-1 | 456,711.35 |
| 231 | BLR 1130 | 4/30/2012 | 04/17/2012 | DEP | (49,473.96) E-1 | 407,237.39 |
| 232 | BLR 1130 | 4/30/2012 | 04/17/2012 | PMT | (3,232.11) E-1 | 404,005.28 |
| 233 | BLR 1130 | 4/30/2012 | 04/18/2012 | PMT | (3,306.84) E-1 | 400,698.44 |
| 234 | BLR 1130 | 4/30/2012 | 04/19/2012 | PMT | (2,568.24) E-1 | 398,130.20 |
| 235 | BLR 1130 | 4/30/2012 | 04/20/2012 | PMT | (2,278.27) E-1 | 395,851.93 |
| 236 | BLR 1130 | 4/30/2012 | 04/23/2012 | PMT | (3,123.87) E-1 | 392,728.06 |
| 237 | BLR 1130 | 4/30/2012 | 04/24/2012 | PMT | (2,710.80) E-1 | 390,017.26 |
| 238 | BLR 1130 | 4/30/2012 | 04/25/2012 | PMT | (3,558.94) E-1 | 386,458.32 |
| 239 | BLR 1130 | 4/30/2012 | 04/26/2012 | PMT | (2,486.38) E-1 | 383,971.94 |
| 240 | BLR 1130 | 4/30/2012 | 04/26/2012 | PMT | (1,918.20) E-1 | 382,053.74 |
| 241 | BLR 1130 | 4/30/2012 | 04/27/2012 | PMT | (3,762.32) E-1 | 378,291.42 |
| 242 | BLR 1130 | 4/30/2012 | 04/30/2012 | PMT | (4,056.39) E-1 | 374,235.03 |
| 243 | BLR 1114 | 4/30/2012 | 04/30/2012 | PMT | (5,506.03) E-1 | 368,729.00 |
| 244 | BLR 1114 | 5/31/2012 | 05/01/2012 | PMT | (4,005.53) E-1 | 364,723.47 |
| 245 | BLR 1114 | 5/31/2012 | 05/03/2012 | PMT | (3,693.61) E-1 | 361,029.86 |
| 246 | BLR 1114 | 5/31/2012 | 05/04/2012 | PMT | (2,157.92) E-1 | 358,871.94 |
| 247 | BLR 1114 | 5/31/2012 | 05/07/2012 | PMT | (8,097.86) E-1 | 350,774.08 |
| 248 | BLR 1114 | 5/31/2012 | 05/07/2012 | PMT | (3,396.89) E-1 | 347,377.19 |
| 249 | BLR 1114 | 5/31/2012 | 05/08/2012 | PMT | (3,139.25) E-1 | 344,237.94 |
| 250 | BLR 1114 | 5/31/2012 | 05/09/2012 | PMT | (2,532.46) E-1 | 341,705.48 |
| 251 | BLR 1114 | 5/31/2012 | 05/10/2012 | PMT | (2,387.44) E-1 | 339,318.04 |
| 252 | BLR 1114 | 5/31/2012 | 05/11/2012 | PMT | (3,579.68) E-1 | 335,738.36 |
| 253 | BLR 1114 | 5/31/2012 | 05/14/2012 | PMT | (6,877.90) E-1 | 328,860.46 |
| 254 | BLR 1114 | 5/31/2012 | 05/14/2012 | PMT | (3,323.22) E-1 | 325,537.24 |
| 255 | BLR 1114 | 5/31/2012 | 05/15/2012 | PMT | (3,524.83) E-1 | 322,012.41 |
| 256 | BLR 1114 | 5/31/2012 | 05/16/2012 | PMT | (2,186.96) E-1 | 319,825.45 |
| 257 | BLR 1114 | 5/31/2012 | 05/17/2012 | PMT | (2,386.28) E-1 | 317,439.17 |
| 258 | BLR 1114 | 5/31/2012 | 05/18/2012 | PMT | (7,120.65) E-1 | 310,318.52 |
| 259 | BLR 1114 | 5/31/2012 | 05/21/2012 | PMT | (2,846.36) E-1 | 307,472.16 |
| 260 | BLR 1114 | 5/31/2012 | 05/22/2012 | PMT | (3,307.89) E-1 | 304,164.27 |
| 261 | BLR 1114 | 5/31/2012 | 05/23/2012 | PMT | (2,229.91) E-1 | 301,934.36 |
| 262 | BLR 1114 | 5/31/2012 | 05/24/2012 | PMT | (2,537.37) E-1 | 299,396.99 |
| 263 | BLR 1114 | 5/31/2012 | 05/25/2012 | PMT | (11,970.22) E-1 | 287,426.77 |
| 264 | BLR 1114 | 5/31/2012 | 05/29/2012 | PMT | (3,228.48) E-1 | 284,198.29 |
| 265 | BLR 1114 | 5/31/2012 | 05/29/2012 | PMT | (5,973.58) E-1 | 278,224.71 |
| 266 | BLR 1114 | 5/31/2012 | 05/29/2012 | PMT | (2,703.67) E-1 | 275,521.04 |
| 267 | BLR 1114 | 5/31/2012 | 05/30/2012 | PMT | (3,373.95) E-1 | 272,147.09 |
| 268 | BLR 1114 | 5/31/2012 | 05/31/2012 | INV # 1424 | 804,000.00 | 1,076,147.09 |
| 269 | BLR 1115 | 6/30/2012 | 06/01/2012 | PMT | (4,903.74) E-1 | 1,071,243.35 |
| 270 | BLR 1115 | 6/30/2012 | 06/04/2012 | PMT | (3,044.42) E-1 | 1,068,198.93 |
| 271 | BLR 1115 | 6/30/2012 | 06/04/2012 | PMT | (7,388.70) E-1 | 1,060,810.23 |
| 272 | BLR 1115 | 6/30/2012 | 06/05/2012 | PMT | (65.95) E-1 | 1,060,744.28 |
| 273 | BLR 1115 | 6/30/2012 | 06/06/2012 | PMT | (119.99) E-1 | 1,060,624.29 |
| 274 | BLR 1115 | 6/30/2012 | 06/08/2012 | PMT #004. | (3,725.13) E-1 | 1,056,899.16 |
| 275 | BLR 1115 | 6/30/2012 | 06/08/2012 | PMT | (26.77) E-1 | 1,056,872.39 |
| 276 | BLR 1115 | 6/30/2012 | 06/08/2012 | PMT | (29,257.48) E-1 | 1,027,614.91 |
| 277 | BLR 1115 | 6/30/2012 | 06/11/2012 | PMT #111. | (2,730.93) E-1 | 1,024,883.98 |
| 278 | BLR 1115 | 6/30/2012 | 06/12/2012 | PMT | (3,324.60) E-1 | 1,021,559.38 |
| 279 | BLR 1115 | 6/30/2012 | 06/12/2012 | PMT | (13,211.33) E-1 | 1,008,348.05 |
| 280 | BLR 1115 | 6/30/2012 | 06/13/2012 | PMT | (109.57) E-1 | 1,008,238.48 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

## EXPRESS WORKING CAPITAL STATEMENTS - RAW DATA ENTRY

E-3

| | Bates | Statement Date | Payment Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 281 | BLR 1115 | 6/30/2012 | 06/14/2012 | PMT | (5,420.77) E-1 | 1,002,817.71 |
| 282 | BLR 1115 | 6/30/2012 | 06/14/2012 | PMT | (30.93) E-1 | 1,002,786.78 |
| 283 | BLR 1115 | 6/30/2012 | 06/15/2012 | PMT | (3,084.51) E-1 | 999,702.27 |
| 284 | BLR 1115 | 6/30/2012 | 06/18/2012 | PMT | (3,845.53) E-1 | 995,856.74 |
| 285 | BLR 1115 | 6/30/2012 | 06/18/2012 | PMT | (16.38) E-1 | 995,840.36 |
| 286 | BLR 1115 | 6/30/2012 | 06/19/2012 | PMT | (19,867.91) E-1 | 975,972.45 |
| 287 | BLR 1115 | 6/30/2012 | 06/19/2012 | PMT | (2,907.33) E-1 | 973,065.12 |
| 288 | BLR 1115 | 6/30/2012 | 06/20/2012 | PMT | (397.15) E-1 | 972,667.97 |
| 289 | BLR 1115 | 6/30/2012 | 06/21/2012 | PMT | (3,252.62) E-1 | 969,415.35 |
| 290 | BLR 1115 | 6/30/2012 | 06/22/2012 | PMT | (7,747.02) E-1 | 961,668.33 |
| 291 | BLR 1115 | 6/30/2012 | 06/25/2012 | PMT | (6,499.05) E-1 | 955,169.28 |
| 292 | BLR 1115 | 6/30/2012 | 06/26/2012 | PMT | (3,916.46) E-1 | 951,252.82 |
| 293 | BLR 1115 | 6/30/2012 | 06/26/2012 | PMT | (11,385.45) E-1 | 939,867.37 |
| 294 | BLR 1115 | 6/30/2012 | 06/27/2012 | PMT | (6,157.26) E-1 | 933,710.11 |
| 295 | BLR 1115 | 6/30/2012 | 06/28/2012 | PMT | (4,547.03) E-1 | 929,163.08 |
| 296 | BLR 1115 | 6/30/2012 | 06/29/2012 | PMT | (4,236.48) E-1 | 924,926.60 |
| 297 | BLR 1116 | 7/31/2012 | 07/02/2012 | PMT | (6,139.46) E-1 | 918,787.14 |
| 298 | BLR 1116 | 7/31/2012 | 07/02/2012 | PMT | (62.44) E-1 | 918,724.70 |
| 299 | BLR 1116 | 7/31/2012 | 07/02/2012 | PMT | (9,170.76) E-1 | 909,553.94 |
| 300 | BLR 1116 | 7/31/2012 | 07/02/2012 | PMT | (11,034.87) E-1 | 898,519.07 |
| 301 | BLR 1116 | 7/31/2012 | 07/03/2012 | PMT | (37.99) E-1 | 898,481.08 |
| 302 | BLR 1116 | 7/31/2012 | 07/05/2012 | PMT | (20,883.36) E-1 | 877,597.72 |
| 303 | BLR 1116 | 7/31/2012 | 07/05/2012 | PMT | (191.66) E-1 | 877,406.06 |
| 304 | BLR 1116 | 7/31/2012 | 07/06/2012 | PMT | (50.00) E-1 | 877,356.06 |
| 305 | BLR 1116 | 7/31/2012 | 07/06/2012 | PMT | (7,203.51) E-1 | 870,152.55 |
| 306 | BLR 1116 | 7/31/2012 | 07/06/2012 | PMT | (3,375.15) E-1 | 866,777.40 |
| 307 | BLR 1116 | 7/31/2012 | 07/09/2012 | PMT | (3,949.17) E-1 | 862,828.23 |
| 308 | BLR 1116 | 7/31/2012 | 07/10/2012 | PMT | (5,606.86) E-1 | 857,221.37 |
| 309 | BLR 1116 | 7/31/2012 | 07/10/2012 | PMT | (14,810.17) E-1 | 842,411.20 |
| 310 | BLR 1116 | 7/31/2012 | 07/11/2012 | PMT | (3,638.22) E-1 | 838,772.98 |
| 311 | BLR 1116 | 7/31/2012 | 07/12/2012 | PMT | (4,299.04) E-1 | 834,473.94 |
| 312 | BLR 1116 | 7/31/2012 | 07/13/2012 | PMT | (4,023.56) E-1 | 830,450.38 |
| 313 | BLR 1116 | 7/31/2012 | 07/16/2012 | PMT | (3,445.62) E-1 | 827,004.76 |
| 314 | BLR 1116 | 7/31/2012 | 07/17/2012 | PMT | (5,403.35) E-1 | 821,601.41 |
| 315 | BLR 1116 | 7/31/2012 | 07/17/2012 | PMT | (11,706.27) E-1 | 809,895.14 |
| 316 | BLR 1116 | 7/31/2012 | 07/18/2012 | PMT | (2,765.35) E-1 | 807,129.79 |
| 317 | BLR 1116 | 7/31/2012 | 07/19/2012 | PMT | (4,849.57) E-1 | 802,280.22 |
| 318 | BLR 1116 | 7/31/2012 | 07/20/2012 | PMT | (2,816.99) E-1 | 799,463.23 |
| 319 | BLR 1116 | 7/31/2012 | 07/23/2012 | PMT | (3,988.89) E-1 | 795,474.34 |
| 320 | BLR 1116 | 7/31/2012 | 07/24/2012 | PMT | (9,895.57) E-1 | 785,578.77 |
| 321 | BLR 1116 | 7/31/2012 | 07/24/2012 | PMT | (5,701.35) E-1 | 779,877.42 |
| 322 | BLR 1116 | 7/31/2012 | 07/25/2012 | PMT | (3,382.83) E-1 | 776,494.59 |
| 323 | BLR 1116 | 7/31/2012 | 07/26/2012 | PMT | (3,239.22) E-1 | 773,255.37 |
| 324 | BLR 1116 | 7/31/2012 | 07/27/2012 | PMT | (5,506.98) E-1 | 767,748.39 |
| 325 | BLR 1116 | 7/31/2012 | 07/30/2012 | PMT | (3,860.62) E-1 | 763,887.77 |
| 326 | BLR 1116 | 7/31/2012 | 07/31/2012 | PMT | (5,163.25) E-1 | 758,724.52 |
| 327 | BLR 1116 | 7/31/2012 | 07/31/2012 | PMT | (13,524.69) E-1 | 745,199.83 |
| 328 | BLR 1117 | 8/31/2012 | 08/01/2012 | PMT | (6,131.82) E-1 | 739,068.01 |
| 329 | BLR 1117 | 8/31/2012 | 08/02/2012 | PMT | (7,413.71) E-1 | 731,654.30 |
| 330 | BLR 1117 | 8/31/2012 | 08/03/2012 | PMT | (7,983.21) E-1 | 723,671.09 |
| 331 | BLR 1117 | 8/31/2012 | 08/06/2012 | PMT | (8,305.02) E-1 | 715,366.07 |
| 332 | BLR 1117 | 8/31/2012 | 08/07/2012 | PMT | (6,543.63) E-1 | 708,822.44 |
| 333 | BLR 1117 | 8/31/2012 | 08/07/2012 | PMT | (14,258.90) E-1 | 694,563.54 |
| 334 | BLR 1117 | 8/31/2012 | 08/08/2012 | PMT | (4,278.92) E-1 | 690,284.62 |
| 335 | BLR 1117 | 8/31/2012 | 08/09/2012 | PMT | (3,506.66) E-1 | 686,777.96 |
| 336 | BLR 1117 | 8/31/2012 | 08/10/2012 | PMT | (4,168.75) E-1 | 682,609.21 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

**EXPRESS WORKING CAPITAL STATEMENTS - RAW DATA ENTRY**

E-3

| | Bates | Statement Date | Payment Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 337 | BLR 1117 | 8/31/2012 | 08/13/2012 | PMT | (3,186.70) E-1 | 679,422.51 |
| 338 | BLR 1117 | 8/31/2012 | 08/14/2012 | PMT | (10,931.65) E-1 | 668,490.86 |
| 339 | BLR 1117 | 8/31/2012 | 08/14/2012 | PMT | (4,884.10) E-1 | 663,606.76 |
| 340 | BLR 1117 | 8/31/2012 | 08/15/2012 | PMT | (4,611.83) E-1 | 658,994.93 |
| 341 | BLR 1117 | 8/31/2012 | 08/16/2012 | PMT | (4,677.05) E-1 | 654,317.88 |
| 342 | BLR 1117 | 8/31/2012 | 08/17/2012 | PMT | (464.43) E-1 | 653,853.45 |
| 343 | BLR 1117 | 8/31/2012 | 08/17/2012 | INV # 1500 | 335,000.00 | 988,853.45 |
| 344 | BLR 1117 | 8/31/2012 | 08/20/2012 | PMT | (9,051.28) E-1 | 979,802.17 |
| 345 | BLR 1117 | 8/31/2012 | 08/21/2012 | PMT | (5,375.77) E-1 | 974,426.40 |
| 346 | BLR 1117 | 8/31/2012 | 08/21/2012 | PMT | (11,257.96) E-1 | 963,168.44 |
| 347 | BLR 1117 | 8/31/2012 | 08/22/2012 | PMT | (3,514.57) E-1 | 959,653.87 |
| 348 | BLR 1117 | 8/31/2012 | 08/23/2012 | PMT | (5,751.67) E-1 | 953,902.20 |
| 349 | BLR 1117 | 8/31/2012 | 08/24/2012 | PMT | (5,395.57) E-1 | 948,506.63 |
| 350 | BLR 1117 | 8/31/2012 | 08/27/2012 | PMT | (4,421.38) E-1 | 944,085.25 |
| 351 | BLR 1117 | 8/31/2012 | 08/28/2012 | PMT | (5,105.53) E-1 | 938,979.72 |
| 352 | BLR 1117 | 8/31/2012 | 08/28/2012 | PMT | (13,722.96) E-1 | 925,256.76 |
| 353 | BLR 1117 | 8/31/2012 | 08/29/2012 | PMT | (6,331.96) E-1 | 918,924.80 |
| 354 | BLR 1117 | 8/31/2012 | 08/30/2012 | PMT | (5,429.13) E-1 | 913,495.67 |
| 355 | BLR 1117 | 8/31/2012 | 08/31/2012 | PMT | (4,212.90) E-1 | 909,282.77 |
| 356 | BLR 1118 | 9/30/2012 | 09/04/2012 | PMT | (5,422.51) E-1 | 903,860.26 |
| 357 | BLR 1118 | 9/30/2012 | 09/05/2012 | PMT | (18,277.65) E-1 | 885,582.61 |
| 358 | BLR 1118 | 9/30/2012 | 09/05/2012 | PMT | (8,500.71) E-1 | 877,081.90 |
| 359 | BLR 1118 | 9/30/2012 | 09/05/2012 | PMT | (4,666.55) E-1 | 872,415.35 |
| 360 | BLR 1118 | 9/30/2012 | 09/06/2012 | PMT | (4,635.20) E-1 | 867,780.15 |
| 361 | BLR 1118 | 9/30/2012 | 09/07/2012 | PMT | (2,939.10) E-1 | 864,841.05 |
| 362 | BLR 1118 | 9/30/2012 | 09/10/2012 | PMT | (4,351.52) E-1 | 860,489.53 |
| 363 | BLR 1118 | 9/30/2012 | 09/11/2012 | PMT | (3,817.45) E-1 | 856,672.08 |
| 364 | BLR 1118 | 9/30/2012 | 09/11/2012 | PMT | (11,233.55) E-1 | 845,438.53 |
| 365 | BLR 1118 | 9/30/2012 | 09/12/2012 | PMT | (3,026.99) E-1 | 842,411.54 |
| 366 | BLR 1118 | 9/30/2012 | 09/13/2012 | PMT | (2,778.68) E-1 | 839,632.86 |
| 367 | BLR 1118 | 9/30/2012 | 09/14/2012 | PMT | (2,833.20) E-1 | 836,799.66 |
| 368 | BLR 1118 | 9/30/2012 | 09/17/2012 | PMT | (4,380.98) E-1 | 832,418.68 |
| 369 | BLR 1118 | 9/30/2012 | 09/18/2012 | PMT | (4,353.33) E-1 | 828,065.35 |
| 370 | BLR 1118 | 9/30/2012 | 09/18/2012 | PMT | (11,040.07) E-1 | 817,025.28 |
| 371 | BLR 1118 | 9/30/2012 | 09/18/2012 | INV #1523. | 335,000.00 | 1,152,025.28 |
| 372 | BLR 1118 | 9/30/2012 | 09/19/2012 | PMT | (3,659.66) E-1 | 1,148,365.62 |
| 373 | BLR 1118 | 9/30/2012 | 09/20/2012 | PMT | (2,524.23) E-1 | 1,145,841.39 |
| 374 | BLR 1118 | 9/30/2012 | 09/21/2012 | PMT | (2,025.26) E-1 | 1,143,816.13 |
| 375 | BLR 1118 | 9/30/2012 | 09/24/2012 | PMT | (3,819.17) E-1 | 1,139,996.96 |
| 376 | BLR 1118 | 9/30/2012 | 09/25/2012 | PMT | (3,493.54) E-1 | 1,136,503.42 |
| 377 | BLR 1118 | 9/30/2012 | 09/25/2012 | PMT | (10,667.65) E-1 | 1,125,835.77 |
| 378 | BLR 1118 | 9/30/2012 | 09/26/2012 | PMT | (4,683.34) E-1 | 1,121,152.43 |
| 379 | BLR 1118 | 9/30/2012 | 09/27/2012 | PMT | (3,903.71) E-1 | 1,117,248.72 |
| 380 | BLR 1118 | 9/30/2012 | 09/28/2012 | PMT | (3,011.32) E-1 | 1,114,237.40 |
| 381 | BLR 1119 | 10/31/2012 | 10/01/2012 | PMT | (5,340.27) E-1 | 1,108,897.13 |
| 382 | BLR 1119 | 10/31/2012 | 10/02/2012 | PMT | (5,447.73) E-1 | 1,103,449.40 |
| 383 | BLR 1119 | 10/31/2012 | 10/02/2012 | PMT | (16,316.68) E-1 | 1,087,132.72 |
| 384 | BLR 1119 | 10/31/2012 | 10/03/2012 | PMT | (5,815.37) E-1 | 1,081,317.35 |
| 385 | BLR 1119 | 10/31/2012 | 10/04/2012 | PMT | (5,605.79) E-1 | 1,075,711.56 |
| 386 | BLR 1119 | 10/31/2012 | 10/05/2012 | PMT | (3,343.39) E-1 | 1,072,368.17 |
| 387 | BLR 1119 | 10/31/2012 | 10/09/2012 | PMT | (3,220.29) E-1 | 1,069,147.88 |
| 388 | BLR 1119 | 10/31/2012 | 10/10/2012 | PMT | (11,072.03) E-1 | 1,058,075.85 |
| 389 | BLR 1119 | 10/31/2012 | 10/10/2012 | PMT | (4,469.76) E-1 | 1,053,606.09 |
| 390 | BLR 1119 | 10/31/2012 | 10/10/2012 | PMT | (3,027.13) E-1 | 1,050,578.96 |
| 391 | BLR 1119 | 10/31/2012 | 10/11/2012 | PMT | (2,473.01) E-1 | 1,048,105.95 |
| 392 | BLR 1119 | 10/31/2012 | 10/12/2012 | PMT | (3,214.89) E-1 | 1,044,891.06 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

## EXPRESS WORKING CAPITAL STATEMENTS - RAW DATA ENTRY

E-3

| | Bates | Statement Date | Payment Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 393 | BLR 1119 | 10/31/2012 | 10/15/2012 | PMT | (3,288.38) E-1 | 1,041,602.68 |
| 394 | BLR 1119 | 10/31/2012 | 10/16/2012 | PMT | (9,284.40) E-1 | 1,032,318.28 |
| 395 | BLR 1119 | 10/31/2012 | 10/16/2012 | PMT | (3,261.37) E-1 | 1,029,056.91 |
| 396 | BLR 1119 | 10/31/2012 | 10/17/2012 | PMT | (4,768.91) E-1 | 1,024,288.00 |
| 397 | BLR 1119 | 10/31/2012 | 10/18/2012 | PMT | (4,832.92) E-1 | 1,019,455.08 |
| 398 | BLR 1119 | 10/31/2012 | 10/19/2012 | PMT | (2,639.85) E-1 | 1,016,815.23 |
| 399 | BLR 1119 | 10/31/2012 | 10/22/2012 | PMT | (2,930.48) E-1 | 1,013,884.75 |
| 400 | BLR 1119 | 10/31/2012 | 10/23/2012 | PMT | (9,361.70) E-1 | 1,004,523.05 |
| 401 | BLR 1119 | 10/31/2012 | 10/23/2012 | PMT | (4,619.78) E-1 | 999,903.27 |
| 402 | BLR 1119 | 10/31/2012 | 10/24/2012 | PMT | (3,258.92) E-1 | 996,644.35 |
| 403 | BLR 1119 | 10/31/2012 | 10/25/2012 | PMT | (2,766.00) E-1 | 993,878.35 |
| 404 | BLR 1119 | 10/31/2012 | 10/26/2012 | PMT | (3,622.03) E-1 | 990,256.32 |
| 405 | BLR 1119 | 10/31/2012 | 10/29/2012 | PMT | (3,501.90) E-1 | 986,754.42 |
| 406 | BLR 1119 | 10/31/2012 | 10/30/2012 | PMT | (3,730.20) E-1 | 983,024.22 |
| 407 | BLR 1119 | 10/31/2012 | 10/30/2012 | GENJRNL #103113. to adjust starving students and red parrot | 188.06 E-1 | 983,212.28 |
| 408 | BLR 1119 | 10/31/2012 | 10/30/2012 | PMT #114.04. | (11,855.11) E-1 | 971,357.17 |
| 409 | BLR 1119 | 10/31/2012 | 10/31/2012 | PMT | (5,072.32) E-1 | 966,284.85 |
| 410 | BLR 1120 | 11/30/2012 | 11/01/2012 | PMT | (4,123.72) E-1 | 962,161.13 |
| 411 | BLR 1120 | 11/30/2012 | 11/02/2012 | PMT | (5,366.07) E-1 | 956,795.06 |
| 412 | BLR 1120 | 11/30/2012 | 11/02/2012 | PMT | (3,509.00) E-1 | 953,286.06 |
| 413 | BLR 1120 | 11/30/2012 | 11/06/2012 | PMT | (4,560.86) E-1 | 948,725.20 |
| 414 | BLR 1120 | 11/30/2012 | 11/06/2012 | PMT | (13,155.50) E-1 | 935,569.70 |
| 415 | BLR 1120 | 11/30/2012 | 11/07/2012 | PMT | (4,326.47) E-1 | 931,243.23 |
| 416 | BLR 1120 | 11/30/2012 | 11/08/2012 | PMT | (3,939.92) E-1 | 927,303.31 |
| 417 | BLR 1120 | 11/30/2012 | 11/09/2012 | PMT | (2,967.34) E-1 | 924,335.97 |
| 418 | BLR 1120 | 11/30/2012 | 11/13/2012 | PMT | (2,631.49) E-1 | 921,704.48 |
| 419 | BLR 1120 | 11/30/2012 | 11/14/2012 | PMT | (11,022.01) E-1 | 910,682.47 |
| 420 | BLR 1120 | 11/30/2012 | 11/14/2012 | PMT | (3,310.98) E-1 | 907,371.49 |
| 421 | BLR 1120 | 11/30/2012 | 11/14/2012 | PMT | (2,829.65) E-1 | 904,541.84 |
| 422 | BLR 1120 | 11/30/2012 | 11/15/2012 | PMT | (2,722.26) E-1 | 901,819.58 |
| 423 | BLR 1120 | 11/30/2012 | 11/16/2012 | PMT | (3,305.61) E-1 | 898,513.97 |
| 424 | BLR 1120 | 11/30/2012 | 11/19/2012 | PMT | (4,100.84) E-1 | 894,413.13 |
| 425 | BLR 1120 | 11/30/2012 | 11/20/2012 | PMT | (4,025.04) E-1 | 890,388.09 |
| 426 | BLR 1120 | 11/30/2012 | 11/20/2012 | PMT | (10,010.76) E-1 | 880,377.33 |
| 427 | BLR 1120 | 11/30/2012 | 11/21/2012 | PMT | (5,811.58) E-1 | 874,565.75 |
| 428 | BLR 1120 | 11/30/2012 | 11/23/2012 | PMT | (3,438.86) E-1 | 871,126.89 |
| 429 | BLR 1120 | 11/30/2012 | 11/27/2012 | PMT | (7,215.14) E-1 | 863,911.75 |
| 430 | BLR 1120 | 11/30/2012 | 11/27/2012 | PMT | (509.42) E-1 | 863,402.33 |
| 431 | BLR 1120 | 11/30/2012 | 11/27/2012 | PMT | (2,747.15) E-1 | 860,655.18 |
| 432 | BLR 1120 | 11/30/2012 | 11/27/2012 | PMT | (3,890.65) E-1 | 856,764.53 |
| 433 | BLR 1120 | 11/30/2012 | 11/28/2012 | PMT | (2,329.98) E-1 | 854,434.55 |
| 434 | BLR 1120 | 11/30/2012 | 11/28/2012 | PMT | (3,060.08) E-1 | 851,374.47 |
| 435 | BLR 1120 | 11/30/2012 | 11/30/2012 | PMT | (4,047.48) E-1 | 847,326.99 |
| 436 | BLR 1121 | 12/31/2012 | 12/03/2012 | PMT | (4,543.51) E-1 | 842,783.48 |
| 437 | BLR 1121 | 12/31/2012 | 12/04/2012 | PMT | (14,020.71) E-1 | 828,762.77 |
| 438 | BLR 1121 | 12/31/2012 | 12/04/2012 | PMT | (5,032.22) E-1 | 823,730.55 |
| 439 | BLR 1121 | 12/31/2012 | 12/05/2012 | PMT | (4,127.27) E-1 | 819,603.28 |
| 440 | BLR 1121 | 12/31/2012 | 12/06/2012 | PMT | (2,881.58) E-1 | 816,721.70 |
| 441 | BLR 1121 | 12/31/2012 | 12/07/2012 | PMT | (3,427.43) E-1 | 813,294.27 |
| 442 | BLR 1121 | 12/31/2012 | 12/10/2012 | PMT | (2,443.17) E-1 | 810,851.10 |
| 443 | BLR 1121 | 12/31/2012 | 12/11/2012 | PMT | (7,601.75) E-1 | 803,249.35 |
| 444 | BLR 1121 | 12/31/2012 | 12/11/2012 | PMT | (3,660.18) E-1 | 799,589.17 |
| 445 | BLR 1121 | 12/31/2012 | 12/12/2012 | PMT | (2,777.08) E-1 | 796,812.09 |
| 446 | BLR 1121 | 12/31/2012 | 12/13/2012 | PMT | (2,519.45) E-1 | 794,292.64 |
| 447 | BLR 1121 | 12/31/2012 | 12/14/2012 | PMT | (3,406.06) E-1 | 790,886.58 |

STARVING STUDENTS V. EXPRESS WORKING CAPITAL

# EXPRESS WORKING CAPITAL STATEMENTS - RAW DATA ENTRY

E-3

| | Bates | Statement Date | Payment Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 448 | BLR 1121 | 12/31/2012 | 12/17/2012 | PMT | (2,953.39) E-1 | 787,933.19 |
| 449 | BLR 1121 | 12/31/2012 | 12/18/2012 | PMT | (10,602.52) E-1 | 777,330.67 |
| 450 | BLR 1121 | 12/31/2012 | 12/18/2012 | PMT | (3,748.51) E-1 | 773,582.16 |
| 451 | BLR 1121 | 12/31/2012 | 12/19/2012 | PMT | (4,031.05) E-1 | 769,551.11 |
| 452 | BLR 1121 | 12/31/2012 | 12/20/2012 | PMT | (3,929.85) E-1 | 765,621.26 |
| 453 | BLR 1121 | 12/31/2012 | 12/21/2012 | PMT | (4,007.70) E-1 | 761,613.56 |
| 454 | BLR 1121 | 12/31/2012 | 12/24/2012 | PMT | (3,594.28) E-1 | 758,019.28 |
| 455 | BLR 1121 | 12/31/2012 | 12/27/2012 | PMT | (3,532.43) E-1 | 754,486.85 |
| 456 | BLR 1121 | 12/31/2012 | 12/27/2012 | PMT | (874.95) E-1 | 753,611.90 |
| 457 | BLR 1121 | 12/31/2012 | 12/27/2012 | PMT | (8,077.54) E-1 | 745,534.36 |
| 458 | BLR 1121 | 12/31/2012 | 12/27/2012 | PMT | (3,010.49) E-1 | 742,523.87 |
| 459 | BLR 1121 | 12/31/2012 | 12/28/2012 | PMT | (1,921.02) E-1 | 740,602.85 |
| 460 | BLR 1121 | 12/31/2012 | 12/31/2012 | INV #1608. | 536,000.00 | 1,276,602.85 |
| 461 | BLR 1121 | 12/31/2012 | 12/31/2012 | PMT | (2,996.77) E-1 | 1,273,606.08 |
| 462 | BLR 1122 | 1/31/2013 | 01/03/2013 | PMT | (9,598.92) E-1 | 1,264,007.16 |
| 463 | BLR 1122 | 1/31/2013 | 01/03/2013 | PMT | (3,797.19) E-1 | 1,260,209.97 |
| 464 | BLR 1122 | 1/31/2013 | 01/03/2013 | PMT | (1,058.63) E-1 | 1,259,151.34 |
| 465 | BLR 1122 | 1/31/2013 | 01/03/2013 | PMT #111. | (5,206.21) E-1 | 1,253,945.13 |
| 466 | BLR 1122 | 1/31/2013 | 01/04/2013 | PMT#11. | (2,547.84) E-1 | 1,251,397.29 |
| 467 | BLR 1122 | 1/31/2013 | 01/07/2013 | PMT | (3,615.67) E-1 | 1,247,781.62 |
| 468 | BLR 1122 | 1/31/2013 | 01/08/2013 | PMT | (7,535.84) E-1 | 1,240,245.78 |
| 469 | BLR 1122 | 1/31/2013 | 01/08/2013 | PMT | (3,531.21) E-1 | 1,236,714.57 |
| 470 | BLR 1122 | 1/31/2013 | 01/09/2013 | PMT | (3,635.85) E-1 | 1,233,078.72 |
| 471 | BLR 1122 | 1/31/2013 | 01/10/2013 | PMT | (2,055.94) E-1 | 1,231,022.78 |
| 472 | BLR 1122 | 1/31/2013 | 01/11/2013 | PMT #111. | (1,878.96) E-1 | 1,229,143.82 |
| 473 | BLR 1122 | 1/31/2013 | 01/14/2013 | PMT #111. | (1,557.85) E-1 | 1,227,585.97 |
| 474 | BLR 1122 | 1/31/2013 | 01/15/2013 | PMT#11. | (2,571.71) E-1 | 1,225,014.26 |
| 475 | BLR 1122 | 1/31/2013 | 01/15/2013 | PMT#202. | (7,691.65) E-1 | 1,217,322.61 |
| 476 | BLR 1122 | 1/31/2013 | 01/16/2013 | PMT | (2,477.04) E-1 | 1,214,845.57 |
| 477 | BLR 1122 | 1/31/2013 | 01/17/2013 | PMT | (2,597.24) E-1 | 1,212,248.33 |
| 478 | BLR 1122 | 1/31/2013 | 01/18/2013 | PMT | (1,747.18) E-1 | 1,210,501.15 |
| 479 | BLR 1122 | 1/31/2013 | 01/22/2013 | PMT #111. | (2,430.80) E-1 | 1,208,070.35 |
| 480 | BLR 1122 | 1/31/2013 | 01/23/2013 | PMT | (9,186.72) E-1 | 1,198,883.63 |
| 481 | BLR 1122 | 1/31/2013 | 01/23/2013 | PMT #111. | (2,649.54) E-1 | 1,196,234.09 |
| 482 | BLR 1122 | 1/31/2013 | 01/23/2013 | PMT #111. | (3,586.19) E-1 | 1,192,647.90 |
| 483 | BLR 1122 | 1/31/2013 | 01/24/2013 | PMT | (2,347.32) E-1 | 1,190,300.58 |
| 484 | BLR 1122 | 1/31/2013 | 01/25/2013 | PMT | (1,976.98) E-1 | 1,188,323.60 |
| 485 | BLR 1122 | 1/31/2013 | 01/28/2013 | PMT | (2,409.23) E-1 | 1,185,914.37 |
| 486 | BLR 1122 | 1/31/2013 | 01/29/2013 | PMT | (3,331.45) E-1 | 1,182,582.92 |
| 487 | BLR 1122 | 1/31/2013 | 01/29/2013 | PMT | (8,932.43) E-1 | 1,173,650.49 |
| 488 | BLR 1122 | 1/31/2013 | 01/30/2013 | PMT | (4,103.57) E-1 | 1,169,546.92 |
| 489 | BLR 1122 | 1/31/2013 | 01/30/2013 | PMT | (4,189.17) E-1 | 1,165,357.75 |
| 490 | BLR 1122 | 1/31/2013 | 01/31/2013 | INV #1639. | 134,000.00 | 1,299,357.75 |
| 491 | BLR 1123 | 2/28/2013 | 02/01/2013 | PMT | (3,662.55) E-1 | 1,295,695.20 |
| 492 | BLR 1123 | 2/28/2013 | 02/04/2013 | PMT#11. | (3,682.10) E-1 | 1,292,013.10 |
| 493 | BLR 1123 | 2/28/2013 | 02/05/2013 | PMT #111. | (5,063.52) E-1 | 1,286,949.58 |
| 494 | BLR 1123 | 2/28/2013 | 02/05/2013 | PMT | (10,291.72) E-1 | 1,276,657.86 |
| 495 | BLR 1123 | 2/28/2013 | 02/06/2013 | PMT | (2,525.77) E-1 | 1,274,132.09 |
| 496 | BLR 1123 | 2/28/2013 | 02/07/2013 | PMT | (2,337.36) E-1 | 1,271,794.73 |
| 497 | BLR 1123 | 2/28/2013 | 02/08/2013 | PMT | (1,550.95) E-1 | 1,270,243.78 |
| 498 | BLR 1123 | 2/28/2013 | 02/11/2013 | PMT | (2,710.83) E-1 | 1,267,532.95 |
| 499 | BLR 1123 | 2/28/2013 | 02/12/2013 | PMT #111. | (8,080.40) E-1 | 1,259,452.55 |
| 500 | BLR 1123 | 2/28/2013 | 02/12/2013 | PMT | (2,985.56) E-1 | 1,256,466.99 |
| 501 | BLR 1123 | 2/28/2013 | 02/13/2013 | PMT | (2,558.96) E-1 | 1,253,908.03 |
| 502 | BLR 1123 | 2/28/2013 | 02/14/2013 | PMT | (2,529.42) E-1 | 1,251,378.61 |
| 503 | BLR 1123 | 2/28/2013 | 02/15/2013 | PMT #111. | (2,760.81) E-1 | 1,248,617.80 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

**EXPRESS WORKING CAPITAL STATEMENTS - RAW DATA ENTRY**

E-3

| | Bates | Statement Date | Payment Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 504 | BLR 1123 | 2/28/2013 | 02/19/2013 | PMT | (1,616.42) E-1 | 1,247,001.38 |
| 505 | BLR 1123 | 2/28/2013 | 02/20/2013 | PMT | (10,044.44) E-1 | 1,236,956.94 |
| 506 | BLR 1123 | 2/28/2013 | 02/20/2013 | PMT | (3,327.20) E-1 | 1,233,629.74 |
| 507 | BLR 1123 | 2/28/2013 | 02/20/2013 | PMT | (4,412.21) E-1 | 1,229,217.53 |
| 508 | BLR 1123 | 2/28/2013 | 02/21/2013 | PMT | (2,218.02) E-1 | 1,226,999.51 |
| 509 | BLR 1123 | 2/28/2013 | 02/22/2013 | PMT | (1,982.44) E-1 | 1,225,017.07 |
| 510 | BLR 1123 | 2/28/2013 | 02/25/2013 | PMT #111. | (1,841.11) E-1 | 1,223,175.96 |
| 511 | BLR 1123 | 2/28/2013 | 02/26/2013 | PMT | (3,371.59) E-1 | 1,219,804.37 |
| 512 | BLR 1123 | 2/28/2013 | 02/26/2013 | PMT | (9,187.09) E-1 | 1,210,617.28 |
| 513 | BLR 1123 | 2/28/2013 | 02/27/2013 | PMT | (3,174.79) E-1 | 1,207,442.49 |
| 514 | BLR 1123 | 2/28/2013 | 02/28/2013 | PMT | (3,796.31) E-1 | 1,203,646.18 |
| 515 | BLR 1124 | 3/31/2013 | 03/01/2013 | PMT | (3,633.56) E-1 | 1,200,012.62 |
| 516 | BLR 1124 | 3/31/2013 | 03/04/2013 | PMT | (4,413.77) E-1 | 1,195,598.85 |
| 517 | BLR 1124 | 3/31/2013 | 03/05/2013 | PMT #111. | (6,955.97) E-1 | 1,188,642.88 |
| 518 | BLR 1124 | 3/31/2013 | 03/05/2013 | PMT | (11,289.57) E-1 | 1,177,353.31 |
| 519 | BLR 1124 | 3/31/2013 | 03/06/2013 | PMT | (3,890.89) E-1 | 1,173,462.42 |
| 520 | BLR 1124 | 3/31/2013 | 03/07/2013 | PMT #111. | (3,249.20) E-1 | 1,170,213.22 |
| 521 | BLR 1124 | 3/31/2013 | 03/08/2013 | PMT | (1,626.55) E-1 | 1,168,586.67 |
| 522 | BLR 1124 | 3/31/2013 | 03/11/2013 | PMT #111. | (1,932.70) E-1 | 1,166,653.97 |
| 523 | BLR 1124 | 3/31/2013 | 03/12/2013 | PMT | (2,483.74) E-1 | 1,164,170.23 |
| 524 | BLR 1124 | 3/31/2013 | 03/12/2013 | PMT | (10,147.82) E-1 | 1,154,022.41 |
| 525 | BLR 1124 | 3/31/2013 | 03/13/2013 | PMT | (2,733.55) E-1 | 1,151,288.86 |
| 526 | BLR 1124 | 3/31/2013 | 03/14/2013 | PMT | (2,786.23) E-1 | 1,148,502.63 |
| 527 | BLR 1124 | 3/31/2013 | 03/15/2013 | PMT | (2,712.57) E-1 | 1,145,790.06 |
| 528 | BLR 1124 | 3/31/2013 | 03/18/2013 | PMT | (2,479.28) E-1 | 1,143,310.78 |
| 529 | BLR 1124 | 3/31/2013 | 03/19/2013 | PMT #111. | (3,629.49) E-1 | 1,139,681.29 |
| 530 | BLR 1124 | 3/31/2013 | 03/19/2013 | PMT | (10,959.39) E-1 | 1,128,721.90 |
| 531 | BLR 1124 | 3/31/2013 | 03/20/2013 | PMT | (3,539.15) E-1 | 1,125,182.75 |
| 532 | BLR 1124 | 3/31/2013 | 03/20/2013 | PMT #111. | (3,245.39) E-1 | 1,121,937.36 |
| 533 | BLR 1124 | 3/31/2013 | 03/22/2013 | PMT | (2,362.98) E-1 | 1,119,574.38 |
| 534 | BLR 1124 | 3/31/2013 | 03/25/2013 | PMT | (2,864.90) E-1 | 1,116,709.48 |
| 535 | BLR 1124 | 3/31/2013 | 03/26/2013 | PMT | (11,970.00) E-1 | 1,104,739.48 |
| 536 | BLR 1124 | 3/31/2013 | 03/26/2013 | PMT | (3,980.92) E-1 | 1,100,758.56 |
| 537 | BLR 1124 | 3/31/2013 | 03/27/2013 | PMT #111. | (3,829.33) E-1 | 1,096,929.23 |
| 538 | BLR 1124 | 3/31/2013 | 03/28/2013 | PMT | (3,727.11) E-1 | 1,093,202.12 |
| 539 | BLR 1124 | 3/31/2013 | 03/29/2013 | PMT | (4,570.97) E-1 | 1,088,631.15 |
| 540 | BLR 1125 | 3/31/2013 | 04/01/2013 | PMT | (3,265.84) E-1 | 1,085,365.31 |
| 541 | BLR 1125 | 4/23/2013 | 04/02/2013 | PMT | (6,711.11) E-1 | 1,078,654.20 |
| 542 | BLR 1125 | 4/23/2013 | 04/02/2013 | PMT | (6,438.09) E-1 | 1,072,216.11 |
| 543 | BLR 1125 | 4/23/2013 | 04/03/2013 | PMT | (12,709.85) E-1 | 1,059,506.26 |
| 544 | BLR 1125 | 4/23/2013 | 04/04/2013 | PMT | (5,131.03) E-1 | 1,054,375.23 |
| 545 | BLR 1125 | 4/23/2013 | 04/05/2013 | PMT | (5,002.34) E-1 | 1,049,372.89 |
| 546 | BLR 1125 | 4/23/2013 | 04/08/2013 | PMT | (3,635.89) E-1 | 1,045,737.00 |
| 547 | BLR 1125 | 4/23/2013 | 04/09/2013 | PMT | (3,393.97) E-1 | 1,042,343.03 |
| 548 | BLR 1125 | 4/23/2013 | 04/09/2013 | PMT #111. | (9,453.70) E-1 | 1,032,889.33 |
| 549 | BLR 1126 | 4/23/2013 | 04/10/2013 | PMT | (3,001.06) E-1 | 1,029,888.27 |
| 550 | BLR 1126 | 4/23/2013 | 04/11/2013 | PMT | (2,253.88) E-1 | 1,027,634.39 |
| 551 | BLR 1126 | 4/23/2013 | 04/12/2013 | PMT | (2,414.77) E-1 | 1,025,219.62 |
| 552 | BLR 1126 | 4/23/2013 | 04/15/2013 | PMT | (3,449.66) E-1 | 1,021,769.96 |
| 553 | BLR 1126 | 4/23/2013 | 04/16/2013 | PMT | (7,792.39) E-1 | 1,013,977.57 |
| 554 | BLR 1126 | 4/23/2013 | 04/16/2013 | PMT | (2,795.73) E-1 | 1,011,181.84 |
| 555 | BLR 1126 | 4/23/2013 | 04/17/2013 | PMT | (3,529.65) E-1 | 1,007,652.19 |
| 556 | BLR 1126 | 4/23/2013 | 04/18/2013 | INV #1702. | 435,500.00 | 1,443,152.19 |
| 557 | BLR 1126 | 4/23/2013 | 04/18/2013 | PMT | (3,530.36) E-1 | 1,439,621.83 |
| 558 | BLR 1126 | 4/23/2013 | 04/19/2013 | PMT | (3,225.11) E-1 | 1,436,396.72 |
| 559 | BLR 1126 | 4/23/2013 | 04/22/2013 | PMT | (2,934.60) E-1 | 1,433,462.12 |

<u>STARVING STUDENTS V. EXPRESS WORKING CAPITAL</u>

# EXPRESS WORKING CAPITAL STATEMENTS - RAW DATA ENTRY

E-3

| | Bates | Statement Date | Payment Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| 560 | BLR 1126 | 4/23/2013 | 04/23/2013 | PMT | (2,820.19) E-1 | 1,430,641.93 |
| 561 | BLR 1126 | 4/23/2013 | 04/23/2013 | PMT | (9,814.57) E-1 | 1,420,827.36 |
| 562 | | | | (missing end April and May statements) | | |
| 563 | | | | Balance Forward | | 1,508,440.56 |
| 564 | BLR 1127 | 6/30/2013 | 06/03/2013 | PMT | (6,638.12) E-1 | 1,501,802.44 |
| 565 | BLR 1127 | 6/30/2013 | 06/04/2013 | PMT | (16,737.02) E-1 | 1,485,065.42 |
| 566 | BLR 1127 | 6/30/2013 | 06/04/2013 | PMT | (7,404.69) E-1 | 1,477,660.73 |
| 567 | BLR 1127 | 6/30/2013 | 06/05/2013 | PMT | (5,591.32) E-1 | 1,472,069.41 |
| 568 | BLR 1127 | 6/30/2013 | 06/06/2013 | PMT#111. | (5,451.10) E-1 | 1,466,618.31 |
| 569 | BLR 1127 | 6/30/2013 | 06/07/2013 | PMT | (4,972.90) E-1 | 1,461,645.41 |
| 570 | BLR 1127 | 6/30/2013 | 06/10/2013 | PMT | (3,864.04) E-1 | 1,457,781.37 |
| 571 | BLR 1127 | 6/30/2013 | 06/11/2013 | PMT | (11,394.36) E-1 | 1,446,387.01 |
| 572 | BLR 1127 | 6/30/2013 | 06/11/2013 | PMT | (4,399.02) E-1 | 1,441,987.99 |
| 573 | BLR 1127 | 6/30/2013 | 06/12/2013 | PMT | (4,028.94) E-1 | 1,437,959.05 |
| 574 | BLR 1127 | 6/30/2013 | 06/13/2013 | PMT | (4,527.51) E-1 | 1,433,431.54 |
| 575 | BLR 1127 | 6/30/2013 | 06/14/2013 | PMT | (3,014.32) E-1 | 1,430,417.22 |
| 576 | BLR 1127 | 6/30/2013 | 06/17/2013 | PMT | (5,865.54) E-1 | 1,424,551.68 |
| 577 | BLR 1127 | 6/30/2013 | 06/18/2013 | PMT | (3,616.08) E-1 | 1,420,935.60 |
| 578 | BLR 1127 | 6/30/2013 | 06/18/2013 | PMT | (15,098.95) E-1 | 1,405,836.65 |
| 579 | BLR 1127 | 6/30/2013 | 06/19/2013 | PMT #111. | (5,310.15) E-1 | 1,400,526.50 |
| 580 | BLR 1127 | 6/30/2013 | 06/20/2013 | PMT | (4,711.62) E-1 | 1,395,814.88 |
| 581 | BLR 1127 | 6/30/2013 | 06/21/2013 | PMT#111. | (4,735.84) E-1 | 1,391,079.04 |
| 582 | BLR 1127 | 6/30/2013 | 06/24/2013 | PMT#111. 11 | (4,476.38) E-1 | 1,386,602.66 |
| 583 | BLR 1127 | 6/30/2013 | 06/25/2013 | PMT | (7,142.34) E-1 | 1,379,460.32 |
| 584 | BLR 1127 | 6/30/2013 | 06/25/2013 | PMT | (13,804.73) E-1 | 1,365,655.59 |
| 585 | BLR 1127 | 6/30/2013 | 06/26/2013 | PMT #111. | (6,495.13) E-1 | 1,359,160.46 |
| 586 | BLR 1127 | 6/30/2013 | 06/27/2013 | PMT | (4,525.20) E-1 | 1,354,635.26 |
| 587 | BLR 1127 | 6/30/2013 | 06/28/2013 | PMT | (5,481.08) E-1 | 1,349,154.18 |
| 588 | BLR 1143 | 10/21/2013 | 07/01/2013 | PMT | (5,540.69) E-1 | 1,343,613.49 |
| 589 | BLR 1143 | 10/21/2013 | 07/02/2013 | PMT | (8,804.44) E-1 | 1,334,809.05 |
| 590 | BLR 1143 | 10/21/2013 | 07/02/2013 | PMT | (14,846.83) E-1 | 1,319,962.22 |
| 591 | BLR 1143 | 10/21/2013 | 07/03/2013 | PMT | (9,543.74) E-1 | 1,310,418.48 |
| 592 | BLR 1143 | 10/21/2013 | 07/05/2013 | PMT | (8,545.19) E-1 | 1,301,873.29 |
| 593 | BLR 1143 | 10/21/2013 | 07/08/2013 | PMT | (2,263.22) E-1 | 1,299,610.07 |
| 594 | BLR 1143 | 10/21/2013 | 07/08/2013 | PMT | (7,858.85) E-1 | 1,291,751.22 |
| 595 | BLR 1143 | 10/21/2013 | 07/09/2013 | PMT | (4,213.01) E-1 | 1,287,538.21 |
| 596 | BLR 1143 | 10/21/2013 | 07/09/2013 | PMT | (11,012.35) E-1 | 1,276,525.86 |
| 597 | BLR 1143 | 10/21/2013 | 07/10/2013 | PMT | (5,717.98) E-1 | 1,270,807.88 |
| 598 | BLR 1143 | 10/21/2013 | 07/11/2013 | PMT#111. | (4,496.18) E-1 | 1,266,311.70 |
| 599 | BLR 1143 | 10/21/2013 | 07/12/2013 | PMT#111. | (5,781.24) E-1 | 1,260,530.46 |
| 600 | BLR 1143 | 10/21/2013 | 07/12/2013 | INV#1776. | 402,000.00 | 1,662,530.46 |
| 601 | BLR 1143 | 10/21/2013 | 07/15/2013 | PMT#111. | (4,067.84) E-1 | 1,658,462.62 |
| 602 | BLR 1143 | 10/21/2013 | 07/16/2013 | PMT | (11,068.94) E-1 | 1,647,393.68 |
| 603 | BLR 1143 | 10/21/2013 | 07/16/2013 | PMT#111. | (5,167.66) E-1 | 1,642,226.02 |
| 604 | BLR 1143 | 10/21/2013 | 07/17/2013 | PMT | (6,546.34) E-1 | 1,635,679.68 |
| 605 | BLR 1143 | 10/21/2013 | 07/18/2013 | PMT | (6,634.54) E-1 | 1,629,045.14 |
| 606 | BLR 1143 | 10/21/2013 | 07/19/2013 | PMT#111. | (4,614.13) E-1 | 1,624,431.01 |
| 607 | BLR 1143 | 10/21/2013 | 07/22/2013 | PMT#111. | (5,449.20) E-1 | 1,618,981.81 |
| 608 | BLR 1143 | 10/21/2013 | 07/23/2013 | PMT | (1,331.01) E-1 | 1,617,650.80 |
| 609 | BLR 1143 | 10/21/2013 | 07/23/2013 | PMT#111. | (6,333.54) E-1 | 1,611,317.26 |
| 610 | BLR 1143 | 10/21/2013 | 07/24/2013 | PMT | (20.43) E-1 | 1,611,296.83 |